JUSTINA K. SESSIONS (Bar No. 270914)
**FRESHFIELDS US LLP**
855 Main St
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

JULIE S. ELMER (*pro hac vice*)
ERIC MAHR (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
eric.mahr@freshfields.com
jennifer.mellott@freshfields.com

SAMUEL G. LIVERSIDGE (Bar No. 180578)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
DNowicki@gibsondunn.com

STEPHEN WEISSMAN (*pro hac vice* pending)
MICHAEL J. PERRY (Bar No. 255411)
KRISTEN C. LIMARZI (*pro hac vice* pending)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
SWeissman@gibsondunn.com
MJPerry@gibsondunn.com
KLimarzi@gibsondunn.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC.,<br><br>Defendants. | CASE NO. 5:25-cv-00951-PCP<br><br>**ANSWER OF DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY**<br><br>Judge:      P. Casey Pitts<br>Action Filed:  January 30, 2025 |

1    **ANSWER OF DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY**

2        Defendant Hewlett Packard Enterprise Company ("HPE") by and through its undersigned

3    counsel, answers the Complaint filed on January 30, 2025 (the "Complaint"), by the United States

4    ("Plaintiff") as set forth below. Except for those allegations expressly admitted herein, HPE denies

5    each and every allegation in the Complaint. Except as noted herein, HPE lacks knowledge or

6    information sufficient to form a belief as to the truth of the allegations regarding statements made

7    in internal documents by Juniper Networks, Inc. ("Juniper"), or any other allegations regarding

8    non-public statements, commercial plans, or intentions of companies other than HPE. HPE

9    expressly denies that Plaintiff is entitled to the relief requested or any other relief. HPE reserves

10   the right to amend this Answer.

11                              **PRELIMINARY STATEMENT**

12       In the thirteen months since HPE announced its proposed acquisition of Juniper, the European

13   Commission, UK Competition and Markets Authority, and eleven other antitrust authorities around

14   the world cleared this transaction without as much as a second look. It was, therefore, no surprise

15   that after a year of in-depth investigation requiring the production of millions of documents,

16   voluminous submissions of data and other information, and sworn testimony, HPE and Juniper—

17   along with virtually every networking industry expert, customers, partners, competitors, and antitrust

18   pundits—expected the Department of Justice ("DOJ") to reach the same conclusion and clear the

19   proposed transaction in short order. Indeed, there was no reason to believe that the DOJ would seek

20   to enjoin this acquisition for a simple reason: enjoining HPE from acquiring Juniper will provide no

21   benefit to customers, businesses, competition, or the national security interest of the United States.

22       And yet, the DOJ *did* file a Complaint to block this transaction: a Complaint that ignores both

23   the extensive benefits that will result from the proposed acquisition and the nature and extent of

24   competition in the wireless networking space. It is a Complaint that will reinforce the status quo by

25   benefiting Cisco, which has dominated wireless networking for decades (and whose dominance was

26   threatened by the acquisition); a Complaint that will hobble competition with Huawei—which has

27   been repeatedly identified as a national security risk by the U.S. government—and thus damage the

28   U.S.'s stated aim of reducing the use of Chinese technology in critical infrastructure globally; a

1  Complaint that ignores the reality that HPE and Juniper are two of at least ten competitors with

2  comparable offerings and capabilities fighting to win customers every day; a Complaint whose

3  description of competitive dynamics in the wireless local area networking (WLAN) space is divorced

4  from reality; and a Complaint that contradicts the conclusions reached by antitrust regulators around

5  the world that have unconditionally cleared the transaction. The reaction of networking industry

6  analysts to the Complaint speaks volumes:

7  - "I find it vexing that the product area which is the focus of the DOJ's suit—Wireless Local

8    Area Network (WLAN)—is intensely competitive and diverse. The acquisition should

9    prevail as I find this a most slender reed to oppose the completion of the deal." – **Ron**

10    **Westfall, Futurum Group**. Ron Westfall, *DOJ Blocks HPE's $14 billion Juniper Deal – A*

11    *Competitive Setback or Market Win,* FUTURUM (Feb. 4, 2025),

12    https://futurumgroup.com/insights/doj-blocks-hpes-14-billion-juniper-deal-a-competitive-

13    setback-or-market-win/**.**

14  - "The DoJ is not doing itself any favors… I could not disagree more. I think this creates a

15    solid and healthy dynamic between the number one company and what will be the number

16    two company, and open doors for other networking equipment providers to get added to short

17    lists for RFPs." – **Jim Frey, ESG.** Jim Frey, LINKEDIN (Jan. 30, 2025),

18    https://www.linkedin.com/posts/jimfrey1_justice-department-sues-to-block-hewlett-

19    activity-7290847097900150785-nTfb/.

20  - "The DOJ complaint ignores all other aspects of this deal, including data center switching,

21    routing, firewalls, SD-WAN, network automation. It doesn't even mention Junos, which

22    execs from both companies call 'the crown jewel' of Juniper. The press release calls Juniper

23    a 'wireless LAN vendor.' Hilarious." – **Shamus McGillicuddy, EMA.** Shamus

24    McGillicuddy, LINKEDIN (Jan. 30, 2025), https://www.linkedin.com/in/shamus-

25    mcgillicuddy/recent-activity/comments/; *see also* Shamus McGillicuddy, *Analysis of DOJ's*

26    *Opposition to HPE-Juniper Merger,* LINKEDIN (Jan. 30, 2025),

27    https://www.linkedin.com/pulse/analysis-dojs-opposition-hpe-juniper-merger-shamus-

28    mcgillicuddy-sx9rc/.

3

- "My analysis of the market is that the DOJ's concerns about the HPE-Juniper merger are unfounded … The acquisition would bring together two players in HPE and Juniper but would not significantly reduce choice or lead to price appreciation in the market." – **Steven Dickens, HyperFRAME**. Steven Dickens, *The DOJ Takes Aim at HPE's Juniper Acquisition: A Threat to Cisco's Dominance?,* HyperFRAME RESEARCH, https://hyperframeresearch.com/2025/01/31/the-doj-takes-aim-at-hpes-juniper-acquisition-a-threat-to-ciscos-dominance/ (last visited Feb. 10, 2025).

- "The DOJ missed the boat here … If HPE is able to acquire Juniper Networks, it would drive more innovation and force Cisco to stay up to date and current with regard to AI enabled networking. I believe the HPE-Juniper deal would actually have created more competition in the networking market …" – **Patrick Shelley, CTO PKA Technologies**. Steve Burke & Gina Narcisi, *'Shocked' Partners: DOJ Lawsuit to Block HPE-Juniper Deal Boosts Cisco, CRN* (Jan. 30, 2025), https://www.crn.com/news/networking/ 2025/shocked-partners-doj-lawsuit-to-block-hpe-juniper-deal-boosts-cisco.

As the reactions of those with deep WLAN experience reflect, enjoining this transaction will harm customers. Defendants will show what these and other key industry analysts, customers, and competition authorities around the world have already recognized: this is a deal that enhances competition and creates a real challenger to Cisco's dominance.

Contrary to the Complaint's assertion, this transaction is not about HPE acquiring a "WLAN company." There is not a single HPE board document or public statement to investors about the transaction supporting this assertion. While WLAN is a component of the overall transaction, it is misleading to suggest that HPE is spending roughly $14 billion to acquire Juniper for the purpose of insulating itself from WLAN competition in the United States, particularly when the WLAN solutions that are the focus of the Complaint comprise only 11% of Juniper's revenue. There are simpler—and significantly cheaper—alternatives for HPE to acquire a single digit market share in the United States in WLAN if that was its primary goal.

Rather, the primary goal of this transaction is to bring together Juniper's data center routing and switching business with HPE's storage and compute offering, spurring increased competition

4

1  and innovation across the networking segment. By combining these complementary capabilities, the

2  transaction would enhance competition by creating a credible alternative to Cisco—and, outside of

3  the U.S., Huawei—for customers looking for a wireless networking provider with a comprehensive,

4  scaled offering. The transaction will accelerate innovation by pooling the research and development

5  talent and resources of both companies to drive innovation in a highly competitive and global

6  marketplace that features numerous prominent providers. Together, HPE and Juniper would be better

7  equipped to bring new, better, and more secure networking products to public and private sector

8  customers in the U.S. and worldwide.

9      Consistent with this rationale, if the government's bid to enjoin the transaction were to be

10  sustained, it would have the perverse effect of further protecting the dominant incumbent. Contrary

11  to the government's assertions, the transaction actually *increases* competition by creating a more

12  formidable player with the requisite breadth and scale to go toe-to-toe more effectively against Cisco

13  for customers that want a "one-stop-shop." If the government's lawsuit were to succeed, the true

14  beneficiary would not be the customers, who will lose the benefits of a combined company, but Cisco,

15  which will continue to have the scale needed to preserve its controlling share.

16      In short, this transaction is critical to promoting competition. Yet, in order to manufacture a

17  reason to block this deal, the Complaint engages in a sleight of hand: it lumps Cisco's shares of the

18  alleged market with the Defendants' shares, alleging that the three have a *combined* market share of

19  "over 70 percent." But the Complaint is conspicuously silent about the *Defendants'* respective market

20  shares. This is for good reason—*Cisco alone* accounts for more than half of the alleged WLAN

21  market, with Cisco's WLAN market share in the United States consistently exceeding 50% over the

22  last ten years. Meanwhile, the Defendants' combined share of the alleged market is less than 25

23  percent, far below the levels at which courts have enjoined transactions under Section 7 of the

24  Clayton Act: HPE's share is in the 14 to 17 percent range and Juniper's share is in the 5 to 7 percent

25  range over the last three years.

26      The Complaint relies on a cherry-picked handful of out-of-context statements to suggest that

27  competition between the Defendants is particularly acute. But the body of evidence establishes that

28  Defendants face intense competition in WLAN not only from Cisco but also at least seven other

5

1   credible competitors in the U.S., including Extreme, Arista, Fortinet, Ruckus, Ubiquiti, Nile and

2   Meter. Most of these companies already have established networking footprints with enterprise

3   customers via other products they sell to the customers. Most are well-capitalized, with the market

4   capitalization for some of these competitors eclipsing that of both HPE and Juniper *combined*. All of

5   them compete aggressively. Nearly all of these competitors have secured large U.S. customer wins

6   in critical areas like retail, hospital or higher education—customers that the Complaint alleges rely

7   heavily on wireless infrastructure and have complex needs and are therefore supposedly particularly

8   harmed by this transaction. And Defendants' business records and bidding data reflect that HPE and

9   Juniper compete head to head with all of these competitors. In a segment where business is awarded

10  following lengthy competitive tenders, often with "proof of concept" installations and intensive

11  technical testing, bidding scenarios will be just as intensely competitive post-transaction as they are

12  today.

13          The industry's premier market researcher, Gartner, issues an annual "Magic Quadrant for

14  Enterprise Wired and Wireless LAN infrastructure," and its 2024 report notes how crowded this

15  space is with *eight* credible players, including Arista, Cisco, Extreme, Fortinet, Juniper, HPE and

16  Huawei, Ruckus, designated as both "Leaders" and "Visionaries" competing at the upper end of the

17  spectrum. This is in addition to four additional "Niche Players" that also supply WLAN solutions

18  that are active in this space. The very same third-party reports by the 650 Group that Plaintiff relies

19  on in the Complaint identify each of these companies (among others) as credible competitors for

20  enterprise-grade WLAN solutions, with five of them having single-digit market shares comparable

21  to that of Juniper's and each having significant strengths in the supply of WLAN solutions, as well

22  as in relevant adjacencies.

23          Finally, the government's claim that Juniper is a uniquely dynamic competitor ignores reality,

24  including the growth of recent entrants and the introduction of new business models that seek to

25  supplant WLAN vendors entirely. The Complaint also ignores that Juniper ultimately remains a

26  single-digit player in a space where there are more than eight other credible competitors, several of

27  which have comparable shares to Juniper today.

28          For these reasons and others described below, the government's claims are without merit and

ANSWER OF DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY
CASE NO. 5:25-cv-00951-PCP

1  and the relief sought in the Complaint should be denied.

2          **SPECIFIC RESPONSES TO PLAINTIFF'S ALLEGATIONS**

3      Except to the extent specifically admitted herein, HPE denies each and every allegation

4  contained in the Complaint, including all allegations contained in headings or otherwise not

5  contained in one of the Complaint's 63 numbered paragraphs.

6          1.      Paragraph 1 contains legal arguments and conclusions to which no response is

7  required. To the extent a response is deemed necessary, HPE denies the allegations. HPE admits

8  that the United States brought this action to prevent HPE from acquiring Juniper. HPE admits that

9  it offers wireless networking solutions under the HPE Aruba brand and that Juniper offers wireless

10 networking solutions under the Juniper Mist brand. HPE denies the remaining allegations in

11 Paragraph 1.

12         2.      Paragraph 2 contains legal arguments and conclusions to which no response is

13 required. To the extent a response is deemed necessary, HPE denies the allegations. HPE admits

14 that it offers discounts and invests in improving its offerings in response to customer demand and

15 competition from many vendors. HPE admits that it seeks to acquire Juniper for $14 billion. HPE

16 denies the remaining allegations in Paragraph 2.

17                      **INTRODUCTION[1]**

18         3.      HPE admits that wireless networking is used in the modern workplace. HPE

19 lacks knowledge or information sufficient to form a belief as to the remaining allegations in

20 Paragraph 3, and therefore denies the allegations.

21         4.      Paragraph 4 contains subjective characterizations and opinions instead of facts, and

22 HPE denies the allegations on that basis. HPE lacks knowledge or information sufficient to form

23 a belief as to what constitutes "big business," and on that basis denies the allegations in the first

24 sentence of Paragraph 4. HPE admits the allegations in the second sentence of Paragraph 4. HPE

25 admits that wireless access points send and receive data via radio signals and are wired to networks

26 _____

27 [1]  For ease of reference, HPE's Answer replicates headings in the Complaint. Although HPE believes
no response to the headings is required, to the extent a response is deemed necessary and to the extent
28 those headings could be construed to contain factual allegations, HPE denies those allegations.

ANSWER OF DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY
CASE NO. 5:25-cv-00951-PCP

through campus switches, but lacks knowledge or information sufficient to form a belief as to whether wireless networking solutions are "built around" wireless access points and on that basis denies the remaining allegations in the third sentence of Paragraph 4. HPE denies the remaining allegations in Paragraph 4.

5.    Paragraph 5 contains subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. The first and second sentences of Paragraph 5 contain legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. HPE admits that Cisco has for years been the leading provider of WLAN solutions in the U.S. and globally and that technological advances have changed how wireless networks are managed, but otherwise denies the allegations in the third and fourth sentences of Paragraph 5. HPE denies that other vendors are "distant competitors" and that Juniper "has risen to challenge Cisco and HPE." HPE admits that Juniper, like Cisco, HPE, and other competitors, offers a portfolio of wireless access points and a network management system, but lacks knowledge or information sufficient to form a belief as to what constitutes "third-largest," "advanced" and "sophisticated," and therefore denies the allegations in the sixth sentence of Paragraph 5. HPE admits that it competes with Juniper, in addition to many other vendors, but lacks knowledge or information sufficient to form a belief as to what constitutes "aggressively" or "distinct customer segments and industries" and on that basis denies the allegations in the seventh sentence of Paragraph 5. HPE denies the remaining allegations in Paragraph 5.

6.    Paragraph 6 contains subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. HPE lacks knowledge or information as to the term "enterprise-grade WLAN solutions," which is not commonly used in the industry, and as to what constitutes "swift," and on that basis denies the allegations in the first sentence of Paragraph 6. HPE admits the second sentence of Paragraph 6. HPE denies the third and fourth sentences of Paragraph 6. HPE admits the existence of documents containing the figures referenced in the fifth sentence of Paragraph 6, to which documents HPE respectfully refers the Court for a complete and accurate statement of their contents. To the extent the sixth sentence of Paragraph 6 purports to characterize Juniper's documents or statements, HPE lacks knowledge or information sufficient to

8

form a belief as to allegations regarding Juniper's internal documents, and therefore denies the allegations. HPE denies the remaining allegations in Paragraph 6.

7.     HPE admits that artificial intelligence and machine learning tools ("AIOps") are commonplace in the industry, with many competitors integrating AIOps into their offerings. HPE admits that AIOps tools can include conversational virtual assistants that proactively search for network misconfigurations and other issues before they cause network outages. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 7, and therefore denies the allegations.

8.     Paragraph 8 contains subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. HPE admits the existence of a document containing the quoted language in the second and third sentences of Paragraph 8, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. HPE lacks knowledge or information sufficient to form a belief as to the allegations in the first and last sentences of Paragraph 8 that concern Juniper's other competitors, and therefore denies the allegations. HPE denies the remaining allegations in Paragraph 8.

9.     The first and fifth sentences of Paragraph 9 contain subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. HPE admits the second, third, and fourth sentences of Paragraph 9. HPE admits the existence of a document containing the quoted language in the sixth sentence of Paragraph 9, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. HPE denies the remaining allegations in Paragraph 9.

10.     Paragraph 10 contains subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. HPE admits that the next generation of Aruba Central is referred to as "CNX" and that Project Gravity was an investment in improving Aruba Central's user interface. HPE admits the existence of a document containing the quoted language, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. HPE denies the remaining allegations in Paragraph 10.

11.     HPE denies the first sentence of Paragraph 11. To the extent the second sentence

9

of Paragraph 11 purports to quote or refer to Juniper documents or statements, HPE lacks knowledge or information sufficient to form a belief as to allegations regarding Juniper documents or statements, and therefore denies the allegations. HPE admits the existence of a document containing the quoted language in the third and fourth sentences of Paragraph 11, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. HPE denies the remaining allegations in Paragraph 11.

12.    Paragraph 12 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. To the extent the third sentence in Paragraph 12 purports to characterize or refer to HPE documents or statements, HPE respectfully refers the Court to the documents or statements in their entirety for a complete and accurate description of their contents. HPE denies the remaining allegations of Paragraph 12.

## BACKGROUND ON WIRELESS LOCAL AREA NETWORKING

### A. Enterprise Wireless Solutions

13.    Admitted.

14.    HPE admits the first, second, and third sentences of Paragraph 14. The fourth sentence of Paragraph 14 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations.

15.    HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 15, and therefore denies the allegations.

16.    HPE admits that its Aruba wireless access points can be cloud-managed. HPE admits that it provides on-premises network management solutions to some of its customers and cloud-based network management solutions to others. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 16, and therefore denies the allegations.

17.    HPE admits that its offerings, like those of other vendors, include AIOps and task automation features. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 17, and therefore denies the allegations.

18.    HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 18, and therefore denies the allegations.

19.    Paragraph 19 contains subjective opinions and characterizations instead of facts, and HPE denies the allegations on that basis. HPE admits that wireless access point vendors launch new generations of wireless hardware, but otherwise lacks knowledge or information sufficient to form a belief as to what constitutes "more frequently" or as to the remaining allegations in the first sentence of Paragraph 19, and therefore denies the allegations. HPE lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 19, and therefore denies the allegations. HPE admits that it is common for enterprise customers to solicit quotes from multiple vendors, but lacks knowledge or information sufficient to form a belief as to the remaining allegations in the third sentence of Paragraph 19, and therefore denies the allegations.

20.    HPE admits that some enterprises use value-added resellers to source networking equipment. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 20, and therefore denies the allegations.

21.    HPE admits that some enterprises issue formal requests for proposals seeking bids from wireless networking vendors. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 21, and therefore denies the allegations.

22.    HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 22, and therefore denies the allegations.

23.    HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 23 as to what constitutes "typically" and on that basis denies those allegations with respect to HPE. HPE lacks knowledge or information sufficient to form a belief as to Juniper or other vendors, and therefore denies the allegations in the first sentence of Paragraph 23. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 23, and therefore denies the allegations.

**B.  HPE and Juniper are Leading Providers of Enterprise-Grade WLAN Solutions**

24.    HPE admits that it is headquartered in Spring, Texas and offers a range of

11

technologies. HPE admits that it sells a variety of networking solutions, including wireless access points and campus switches. HPE admits that it sells both cloud-based and on-premise networking solutions under the Aruba and Airwave brands. HPE admits that networking is one of its fastest growing divisions. HPE lacks knowledge or information sufficient to form a belief as to what constitutes a "substantial" portion of HPE's total campus networking sales, and therefore denies the allegations. The remaining allegations of Paragraph 24 contain legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations.

25.    HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 25, and therefore denies the allegations.

26.    Paragraph 26 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. HPE admits that Cisco is by far the largest vendor and is more than twice as large as the next largest competitor. To the extent the allegations in the third sentence of Paragraph 26 purport to characterize or describe documents or other sources, such sources speak for themselves and HPE denies any characterization or description that is inconsistent therewith. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 26, and therefore denies the allegations.

27.    Paragraph 27 contains subjective opinions and characterizations instead of facts, and HPE denies the allegations on that basis. HPE admits that it has a portfolio of wireless access points and network management solutions. HPE lacks knowledge or information sufficient to form a belief as to what constitutes an "experienced" sales force, a "well developed" distribution channel, or a "track record," and on that basis denies the allegations in the second and third sentences of Paragraph 27. HPE lacks knowledge or information sufficient to form a belief as to Juniper, and therefore denies the allegations in the second and third sentences of Paragraph 27. HPE lacks knowledge or information sufficient to form a belief as to the allegations in the fourth sentence of Paragraph 27, and therefore denies the allegations.

C.  Some WLAN Vendors Face Headwinds Competing for Large Enterprise Customers

28.     HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 28, and therefore denies the allegations. HPE denies the final sentence of Paragraph 28.

29.     HPE lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 29, and therefore denies the allegations.

30.     Paragraph 30 contains subjective opinions and characterizations instead of facts, and HPE denies the allegations on that basis. HPE denies the allegations in the first sentence of Paragraph 30 except that it admits that there are many enterprise-grade WLAN vendors today. HPE lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 30, and therefore denies the allegations.

## THE RELEVANT MARKET FOR EVALUATING THE PROPOSED MERGER

31.     Paragraph 31 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 31.

32.     Paragraph 32 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 32.

33.     Paragraph 33 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 33.

### D.  Product Market

34.     Paragraph 34 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 34.

35.     Paragraph 35 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 35.

36.     Paragraph 36 contains legal arguments and conclusions to which no response is

1  required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
2  36.

3      37.    Paragraph 37 contains legal arguments and conclusions to which no response is
4  required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
5  37.

6      38.    Paragraph 38 contains legal arguments and conclusions to which no response is
7  required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
8  38.

9  **E. Geographic Market**

10      39.    Paragraph 39 contains legal arguments and conclusions to which no response is
11 required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
12 39. HPE admits that certain Chinese vendors including Huawei have been identified as potential
13 security threats by the U.S. government. HPE denies the remaining allegations in Paragraph 39.

14  <u>**HPE'S ACQUISITION OF JUNIPER IS PRESUMPTIVELY UNLAWFUL AND**</u>
15  <u>**THREATENS COMPETITION IN VIOLATION OF THE CLAYTON ACT**</u>

16  **A. The Proposed Acquisition is Presumptively Unlawful**

17      40.    Paragraph 40 contains legal arguments and conclusions to which no response is
18 required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
19 40.

20      41.    Paragraph 41 contains legal arguments and conclusions to which no response is
21 required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
22 41.

23      42.    Paragraph 42 contains legal arguments and conclusions to which no response is
24 required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph
25 42. HPE specifically denies that the Merger Guidelines are vested with the authority to determine
26 the legality of any acquisition, presumptively or otherwise.

27      43.    Paragraph 43 contains legal arguments and conclusions to which no response is
28 required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph

1  43. HPE specifically denies that the Merger Guidelines are vested with the authority to determine

2  the legality of any acquisition, presumptively or otherwise.

3  **B. The Merger Threatens Higher Prices and Less Innovation By Eliminating Fierce**

4  **Head-to-Head Competition Between Defendants**

5  44.    Paragraph 44 contains subjective characterizations and opinions instead of facts,

6  and HPE denies the allegations on that basis. HPE lacks knowledge or information sufficient to

7  form a belief as to what "compete fiercely" means, and therefore denies the allegations in the first

8  sentence of Paragraph 44, except HPE admits that it competes with Juniper, among many others.

9  HPE admits the existence of documents containing the quoted language in Paragraph 44, to which

10  documents HPE respectfully refers the Court for a complete and accurate statement of their

11  contents. To the extent Paragraph 44 purports to characterize or describe Juniper statements,

12  documents, or other sources, HPE lacks knowledge or information sufficient to form a belief as to

13  the allegations in Paragraph 44 with respect to such statements, documents, or other sources, and

14  therefore denies the allegations. HPE denies the remaining allegations in Paragraph 44.

15  45.    The first sentence of Paragraph 45 contains subjective characterizations and

16  opinions instead of facts, and HPE denies the allegations on that basis. HPE admits the existence

17  of a document containing the quoted language, to which document HPE respectfully refers the

18  Court for a complete and accurate statement of its contents. To the extent Paragraph 45 purports

19  to characterize or describe other documents or sources, such sources speak for themselves and

20  HPE denies any characterization or description that is inconsistent therewith. HPE denies the

21  remaining allegations in Paragraph 45.

22  46.    The first and last sentences of Paragraph 46 contain subjective characterizations

23  and opinions instead of facts, and HPE denies the allegations on that basis. HPE admits the

24  existence of a document containing the quoted language, to which document HPE respectfully

25  refers the Court for a complete and accurate statement of its contents. To the extent Paragraph 46

26  purports to characterize or describe other documents or sources, such sources speak for themselves

27  And HPE denies any characterization or description that is inconsistent therewith. HPE denies the

28  remaining allegations in Paragraph 46.

15

47.    The first, second, and third sentences of Paragraph 47 contain subjective characterizations and opinions instead of facts, and HPE denies the allegations on that basis. HPE admits that the many competing WLAN vendors have innovated their network management software. HPE admits the existence of documents containing the quoted language, to which documents HPE respectfully refers the Court for a complete and accurate statement of their contents. To the extent that allegations in Paragraph 47 purport to characterize or describe other documents or sources, such sources speak for themselves and HPE denies any characterization or description that is inconsistent therewith. HPE denies the remaining allegations in Paragraph 47.

48.    Paragraph 48 contains subject opinions and characterizations instead of facts, and HPE denies the allegations on that basis. HPE lacks knowledge or information sufficient to form a belief as to the allegations in the first and second sentences of Paragraph 48, and therefore denies the allegations. The second and third sentences of Paragraph 48 contain legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. HPE denies the remaining allegations in Paragraph 48.

**C. The Proposed Merger Would Facilitate Coordination Among the Remaining Enterprise-Grade WLAN Vendors**

49.    Paragraph 49 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations.

50.    Paragraph 50 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. HPE lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 50, and on that basis denies the allegations. HPE admits the existence of a document containing the quoted language in the third sentence of Paragraph 50, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. HPE denies the remaining allegations in Paragraph 50.

51.    Paragraph 51 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations.

**NOTHING OFFSETS THE MERGER'S THREATS TO COMPETITION**

52.     Paragraph 52 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. HPE lacks knowledge or information sufficient to form a belief as to the second sentence in Paragraph 52, and therefore denies the allegations.

53.     HPE lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 53, and therefore denies the allegations. HPE admits the existence of a document containing the quoted language, to which document HPE respectfully refers the Court for a complete and accurate statement of its contents. To the extent that allegations in Paragraph 53 purport to characterize or describe other documents or sources, such sources speak for themselves and HPE denies any characterization or description that is inconsistent therewith. HPE denies the remaining allegations in Paragraph 53.

54.     Paragraph 54 contains legal arguments and conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations. Paragraph 54 contains subject opinions and characterizations instead of facts, and HPE denies the allegations on that basis. HPE denies the remaining allegations in Paragraph 54.

55.     HPE admits that the proposed acquisition would generate synergies. To the extent the allegations in the second sentence of Paragraph 55 purport to characterize or describe HPE documents or other sources, such documents or sources speak for themselves and HPE denies any characterization that is inconsistent therewith. To the extent the allegations in the second sentence of Paragraph 55 purport to characterize or describe other vendors' documents or other sources, HPE lacks knowledge or information sufficient to form a belief as to the contents of those documents or other sources, and therefore denies the allegations. The third sentence of Paragraph 55 contains legal arguments and conclusions to which no response is required. To the extent a response is required, HPE denies the allegations. HPE denies the remaining allegations in Paragraph 55.

## JURISDICTION AND VENUE

56.     Paragraph 56 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE does not dispute federal subject matter jurisdiction,

but HPE denies that its acquisition of Juniper violates Section 7 of the Clayton Act. HPE denies the remaining allegations in Paragraph 56.

57.    Paragraph 57 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE does not contest that the Court has jurisdiction in this matter. HPE lacks knowledge or information sufficient to form a belief as to the allegations concerning what constitutes "enterprise-grade WLAN solutions," and on that basis denies the allegations in the second sentence of Paragraph 57. HPE denies the remaining allegations in Paragraph 57.

58.    The first sentence of Paragraph 58 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE admits that the Court has personal jurisdiction over HPE and that it transacts business within the District. HPE admits that Aruba Networks is a subsidiary of HPE based in Santa Clara, California, and that HPE executives responsible for managing its networking business live and work in the San Francisco Bay Area. HPE lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 58 as they relate to Juniper, and on that basis denies the allegations. HPE denies the remaining allegations in Paragraph 58.

59.    Paragraph 59 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE does not dispute that venue is proper in this district.

## DIVISIONAL ASSIGNMENT

60.    Paragraph 60 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE does not contest that the current assignment to the San Jose Division is proper.

## VIOLATIONS ALLEGED

61.    Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 61.

62.    Paragraph 62 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations in Paragraph 62.

## REQUEST FOR RELIEF

63. Paragraph 63 sets forth the relief sought by Plaintiff, to which no response is required. To the extent a response is deemed necessary, HPE denies the allegations contained in Paragraph 63, denies that Plaintiff is entitled to any of the remedies or relief sought in the Complaint, and denies that such relief is in any way in the public interest.

## DEFENSES

The inclusion of any defense within this section does not constitute an admission that HPE bears the burden of proof on each or any of the issues, nor does it excuse the DOJ from establishing each element of its purported claims.

### First Defense

The Complaint fails to state a claim on which relief can be granted.

### Second Defense

Granting the relief requested in the Complaint is contrary to the public interest.

### Third Defense

The Complaint fails to adequately allege any relevant antitrust product market or relevant antitrust geographic market.

### Fourth Defense

The Complaint fails to allege undue share in any plausibly defined relevant market.

### Fifth Defense

The procompetitive benefits of the transaction substantially outweigh any alleged anticompetitive effects.

### Sixth Defense

Customers have a variety of tools and options to ensure that they receive competitive pricing and terms.

### Seventh Defense

There will be no harm to competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

### Additional Defenses

19

1    HPE reserves the right to assert and rely on any defense that may become available to or

2  known to HPE throughout the course of this action, and to amend, or seek to amend, its answer or

3  defenses.

4                                           **PRAYER FOR RELIEF**

5          WHEREFORE, HPE prays for judgment as follows:

6          1.   That the above-captioned action be dismissed with prejudice;

7          2.   That judgment be entered in favor of HPE and Juniper and against Plaintiff;

8          3.   That HPE be awarded the costs incurred in defending this action; and

9          4.   That HPE be awarded any and all other relief as the Court may deem just and proper.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: February 10, 2025                   Respectfully submitted,

2                                           By: */s/ Justina Sessions*

3                                           Justina Sessions (Bar No. 270914)
                                          **FRESHFIELDS US LLP**

4                                           855 Main St
                                          Redwood City, CA 94063

5                                           Telephone: (650) 618-9250
                                          justina.sessions@freshfields.com

6

7                                           Julie S. Elmer (*pro hac vice*)
                                          Eric Mahr (*pro hac vice*)

8                                           Jennifer Mellot (*pro hac vice*)

9                                           **FRESHFIELDS US LLP**
                                          700 13th St NW

10                                           Washington, DC 20005
                                          Telephone: (202) 777-4500

11                                           julie.elmer@freshfields.com
                                          eric.mahr@freshfields.com

12                                           jennifer.mellott@freshfields.com

13                                           Samuel G. Liversidge (Bar No. 180578)
                                          Daniel Nowicki (Bar No. 304716)

14                                           **GIBSON, DUNN & CRUTCHER LLP**
                                          333 South Grand Avenue

15                                           Los Angeles, California 90071
                                          Telephone: (213) 229-7000

16                                           SLiversidge@gibsondunn.com

17                                           DNowicki@gibsondunn.com

18                                           Stephen Weissman (*pro hac vice* pending)

19                                           Michael J. Perry (Bar No. 255411)
                                          Kristen C. Limarzi (*pro hac vice* pending)

20                                           **GIBSON, DUNN & CRUTCHER LLP**
                                          1700 M Street, N.W.

21                                           Washington, D.C. 20036

22                                           Telephone: (202) 955-8500
                                          SWeissman@gibsondunn.com

23                                           MJPerry@gibsondunn.com
                                          KLimarzi@gibsondunn.com

24

25                                           *Attorneys for Defendant*
                                          *HEWLETT PACKARD ENTERPRISE CO.*

26

27

28

ANSWER OF DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY
CASE NO. 5:25-cv-00951-PCP