MICHAEL J. FREEMAN (OH Bar # 0086797)
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Michael.Freeman@usdoj.gov

[Additional counsel listed on signature page]

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC.,<br><br>        *Defendants*. | CASE NO. 5:25-cv-00951-PCP<br><br>**PLAINTIFF UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR AN EXPEDITED CASE MANAGEMENT CONFERENCE**<br><br>Judge P. Casey Pitts<br>Action Filed January 30, 2025 |

The United States welcomes the opportunity to discuss the scheduling of a case management conference during the status conference on February 14, 2025. The United States respectfully requests the Court: (1) set a deadline for a day next week for the United States, Hewlett Packard Enterprise Co. ("HPE"), and Juniper Networks, Inc. ("Juniper,") to file a joint submission that identifies any areas of agreement and impasse related to the proposed case management order and ESI protocol; and (2) schedule a case management conference thereafter at the Court's earliest convenience.

## BACKGROUND

On January 30, 2025, the United States filed a Complaint initiating this action.[1] Defendants accuse Plaintiffs of a "strategy" of delay, but in the two weeks since filing the complaint, the Parties have engaged in negotiations over a case management order (including a trial schedule), a protective order, and an ESI protocol. Def's. Ex. A, B, C; Freeman Decl. Ex. D. On February 3, 2025, the United States sent Defendants a draft case management order that included an October 26, 2025, trial date. Def's. Ex. C. Defendants rejected that proposal, asserting that the trial needs to be completed, and an opinion issued, before the October 9, 2025 "outside date"—the self-imposed date on which the Defendants may terminate the merger agreement. Freeman Decl. Ex. D. On February 5 and 7, the United States asked Defendants to explain why the outside date could not be extended. Def's. Ex. D.; Freeman Decl. Ex. D. Defendants declined to substantiate their concerns, merely saying that the outside date "cannot be easily moved." Def's. Ex. E. On February 10—the day before Defendants filed their Motion and in response to Defendants' unsubstantiated concerns about its outside date—the United States proposed a schedule with trial beginning September 8, 2025, a full seven weeks earlier than its original position, which would ensure the trial ended in advance of the outside date. Def's. Ex. F. Defendants again rejected the schedule and, without further attempts to reach compromise, sought judicial intervention on a trial schedule, even while negotiations were ongoing over the multiple other case management issues.

---

[1] Consistent with its authority under the Hart-Scott-Rodino Act ("HSR Act"), the United States began investigating HPE's proposed acquisition of Juniper after HPE filed notice of the proposed acquisition on March 1, 2024. The review period was extended several times by agreement of the Parties, as is highly common in merger reviews, with the final agreed-upon date being January 31, 2025.

# ARGUMENT

## A. Defendants' Request for a Conference Before Identifying Areas of Impasse is Inefficient

Defendants' request for a case management conference before the Parties have reached an agreement or impasse on all issues is premature and creates inefficiencies for the Court. The Parties have substantially narrowed areas of disagreement surrounding the case management order and ESI protocol and, in the days since Defendants filed their motion, agreed to the terms of a protective order. The United States expects that the Parties will narrow areas of disagreement over the next several business days, as they have done already with other provisions of the case management order including the number of depositions and trial witnesses (agreeing on the midpoint of our respective initial positions). The United States therefore respectfully requests that a case management conference be scheduled after the Parties have exhausted their negotiations so all areas of dispute can be heard at once.

## B. A September 8 Trial Date Is Reasonable and Consistent with Precedent

If the Court is inclined to set a trial schedule on an expedited basis before the Parties have completed case management negotiations, the United States respectfully submits that a September 8 trial date (221 days after filing of the Complaint) would be most appropriate, as it is well within the range of recent merger trials. *See* Freeman Decl. Ex. D. At 221 days, the United States' proposal is shorter than the schedule in *United States v. Bertelsmann SE & Co. KGaA*, No. 1:21-cv-2886-FYP (D.D.C. 2021), at 272 days, and the two most recent merger cases brought by the Department of Justice in this District, *United States v. Visa Inc.*, No. 4:20-cv-07810-JSW (N.D. Cal. 2020), at 235 days, and *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 203966 (N.D. Cal 2013), at 243 days.[2] All three cases had pre-complaint investigations similar in length to the one performed in this case.

Antitrust cases involve complex legal, factual, and economic questions,[3] and numerous issues

---

[2] Merger challenges brought by the Federal Trade Commission do not have comparable litigation schedules because the Commission seeks preliminary injunctions in federal court, not full-merits trials.

[3] *Cf. In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 1486, 2013 WL 12387371, at *24 (N.D. Cal. Nov. 5, 2013), 2014 WL 12879521 (N.D. Cal. June 27, 2014) ("It had long been recognized that antitrust class actions are 'arguably the most complex action to prosecute' as '[t]he legal and factual issues involved are always numerous and uncertain in outcome.'") (citations omitted); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) ("[A]ntitrust cases, by their nature, are highly complex.") (citations omitted).

will be before the Court, including the definition of the relevant product market, the likelihood of competitive harm, and the existence of alleged merger-specific efficiencies. The Parties need sufficient time to gather evidence relevant to these issues from Defendants and third parties. For example, documents reviewed by the United States indicate that, in some instances, Defendants may possess different and more granular data than they produced during the investigation. Obtaining that data will require the United States to issue and negotiate a data request; meet and confer on the existence and availability of that data; and potentially inquire about the data during a 30(b)(6) deposition. The United States' proposed schedule of 221 days expedites fact discovery (84 days, assuming discovery opens February 28, 2025) but permits the Parties to gather facts needed to build their cases. *See* Freeman Decl. Ex. B. That schedule was built from the ground up based on what needs to be done to bring the case efficiently to trial and then putting those elements together in a reasonable, but still expedited, schedule.

By contrast, Defendants' proposed trial schedule of only 137 days shortchanges discovery to force a resolution before a self-imposed merger deadline. Under Defendants' proposal, the Parties would have as little as 42 days to request and/or subpoena documents and data; negotiate search terms and custodians; receive and respond to data samples; issue and respond to interrogatories and requests for admissions; and take and defend up to 50 depositions. Defendants' schedule would then give the Parties a single weekend to finalize expert reports, which would be exchanged before the Parties even prepared their final witness lists. *See* Freeman Decl. Ex. C. A judge in the Southern District of New York presiding over a merger challenge case just considered and rejected the defendants' argument for a trial date 137 days after the filing of the complaint, opting for a trial date 241 days after the complaint instead. *United States v. Global Business Travel Group, Inc.* and *CWT Holdings, LLC.,* No. 1:25CV215, (S.D.N.Y. Feb. 13, 2025) (ECF No. 49).

Defendants' arguments do not support such a truncated trial schedule. Defendants have not shown that the United States' proposed trial date would cause prejudice. At most, Defendants cite the October 9 outside date in their merger agreement, one month after the United States' proposed trial date.

But the outside date is entirely within their control—they created it and they can extend it.[4]—and not binding on the Court. Courts have repeatedly entered schedules knowing a decision would arrive after the merging parties' original outside date. *See, e.g.*, Transcript of Status Conference at 69:13–17, *United States v. Aetna*, No. 16-01494 (D.D.C. Aug. 10, 2016) (ECF No. 50) (Trial started: 12/5/2016; Original Outside Date: 12/31/2016; Decision: 1/23/2017) ("THE COURT: . . . But given everything that I've heard, both with respect to the concerns from a more compressed schedule and because I haven't heard that much that gives legitimacy, if you will, to the December 31st cutoff date, I've decided to try this case beginning in early December[.]"); Transcript of Status Conference at 10:4–13, *United States v. AT&T*, No. 17-02511 (D.D.C. Dec. 7, 2017) (ECF No. 35) (Trial started: 3/22/2018; Original Outside Date: 4/22/2018; Decision: 6/12/2018) ("THE COURT: . . . Getting an opinion out on April 22nd is not happening. It can't be done . . . So the defendants are going to have to talk to their clients about this drop-dead date. Extend it 60 days, maybe 90, whatever. But build some time into this so that I can do my job post trial[.]").

In addition, a truncated trial schedule is not warranted simply because the United States conducted a pre-filing merger investigation. Courts have long recognized that pre-complaint investigations are not substitutes for, nor should they limit, post-complaint discovery.[5] And for good reason. Pre-complaint investigations focus on whether to bring an enforcement action and, if so, the scope of the lawsuit, not on building a case for trial.[6] Merger investigations frequently pursue avenues unrelated to what is ultimately filed. Defendants make much of the "five extensions" the United States received during its investigation, but most of those agreed-upon extensions were short and several were

---

[4] Agreement and Plan of Merger, dated Jan. 9, 2024, *available at* https://www.sec.gov/Archives/edgar/data/1645590/000114036124001613/ny20018436x1_ex2-1.htm.

[5] *See, e.g.*, *SEC v. Biogenic, Inc.*, 2022 WL 1228782, at *1 (E.D. Mich. Apr. 26, 2022) ("[A]s several other courts have explained, 'discovery should not be foreclosed to the SEC merely because of its pre-filing investigation.'" (quoting Sargent, 229 F.3d at 80); *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. 2:23-CV-01495-JHC, 2024 WL 5238834, at *1 (W.D. Wash. Dec. 27, 2024) ("Courts liberally grant discovery in antitrust cases…Liberal discovery is particularly appropriate in a government antitrust suit because of the important public interest involved.") (citations omitted).

[6] *See, e.g., SEC v. Rayat*, No. 21-CV-4777 (LJL), 2022 WL 1423300, at *3 (S.D.N.Y. May 5, 2022) ("[N]o rule of law requires the SEC to request in the investigative stage every document that might turn out to be relevant in the litigation phase. . . . The SEC need not have accumulated all of the evidence that it will ultimately need to win the case before it brings a case.").

in exchange for limits on Defendants' discovery obligations. In a merger investigation, extensions beyond the HSR Act's requirements are entirely under the merging parties' control, and Defendants often (as here) agree to extensions when in their interests. The fact that Defendants agreed to a timing agreement beyond the statutory requirement is neither unusual nor dispositive of the key question before the Court: whether Defendants' request to adopt a truncated trial date will allow for an orderly and efficient proceeding. For the reasons set forth above, the United States submits that it will not.

## CONCLUSION

Based on the foregoing reasons, the United States respectfully requests that the Court: (1) direct the Parties to file a joint submission identifying all agreed upon and disputed provisions in their proposed case management order and ESI protocol by a date next week; and (2) schedule a case management conference thereafter at the Court's convenience.

Dated: February 13, 2025

Respectfully submitted,

    */s/ Michael J. Freeman*
MICHAEL J. FREEMAN (OH BAR # 0086797)
Jeremy M. Goldstein (CA Bar # 324422)
Craig W. Conrath (MN Bar # 0018569)
Michael Mikawa (CA Bar # 316787)
Aaron M. Sheanin (CA Bar # 214472)
Miriam M. Arghavani (CA Bar # 334536)
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Email: Michael.Freeman@usdoj.gov

*Attorneys for Plaintiff United States of America*