MICHAEL J. FREEMAN (OH No. 086797)
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Michael.Freeman@usdoj.gov

*Attorney for Plaintiff*
UNITED STATES OF AMERICA

JACK P. DICANIO (CA Bar. No 138782)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
 jack.dicanio@skadden.com

[Additional counsel listed on signature page]

*Attorneys for Defendant*
JUNIPER NETWORKS, INC

JULIE ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
FRESHFIELDS US LLP
700 13th St NW
Washington, DC 20005
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

SAMUEL G. LIVERSIDGE (CA No. 180578)
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

[Additional counsel listed on signature page]

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:25-cv-00951-PCP |
| Plaintiff, | |
| v. | **STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., | |
| Defendants. | Judge:          P. Casey Pitts<br>Action Filed:  January 30, 2025 |

## I.     PURPOSE

This Order will govern discovery of electronically stored information ("ESI"), Hard Copy Documents ("Documents"), and Data in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information ("Guidelines"), and any other applicable orders and rules. Nothing in this Order is intended to limit the parties' obligations under the Federal Rules of Civil Procedure. Any dispute arising out of the production of ESI, Documents, or Data subject to this Order shall be resolved according to the Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders.

## II.     GENERAL PROVISIONS & COOPERATION

1.     The parties to this action ("Parties") are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines.

2.     The production specifications for ESI and Documents set forth in this ESI Order do not apply to databases, data sources, and other structured data except as described in Section IX below.

3.     The production specifications set forth in this ESI Order apply to Documents and ESI that are to be produced in the first instance in this Action. To the extent a Producing Party produces documents that were previously produced in the Investigation, those previously produced documents need not be reprocessed so long as the documents are produced in a reasonably usable form and need not be assigned new Bates numbers, so long as the prior Bates prefix is unique and not repeated in this Action. The Parties shall meet and confer if the Requesting Party raises questions or concerns about the format of any such production after receiving it.

4.     This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. The Parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

5.     If disputes arise concerning the scope and nature of a production, the Parties must promptly meet and confer to reach agreement prior to seeking leave of the Court to resolve any disputed issues. If the Parties' disagreement persists after meeting and conferring in good faith,

the Parties must notify the Court of their unresolved dispute(s) and seek resolution from the Court.

## III.    LIASON

1.    The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.    PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially responsive ESI, Documents, and Data will be reasonably proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI, Documents, and Data are preserved, the Parties agree that each Party must preserve only non-duplicative potentially responsive ESI, Documents, and Data in its possession, custody, or control.  Subject to and without waiving any protection described above, the Parties agree that:

1.    Only ESI, Documents, and Data that were reasonably accessible as of April 1, 2024, when the preservation obligation was triggered, will be preserved.

2.    The Parties will endeavor to agree upon a list of the types of relevant ESI, Documents, and Data that should be preserved and the custodians for whom relevant ESI, Documents, and Data should be preserved. The Parties will add or remove custodians as reasonably necessary.

3.    The Parties need not preserve:

a.    Voicemail messages, except in the case where they are contained within the Parties' email systems;

b.    Information from handsets, mobile devices, personal digital assistants, and tablets, provided that a copy of such information is saved and preserved elsewhere for potential production in discovery;

c.      Temporary or cache files, including Internet history, web browser cache, and cookie files, wherever located;

d.      Server, system, or network logs;

e.      Back-up and legacy IT systems and tapes used for disaster recovery;

f.      Fragmented, slack, or unallocated data accessible only by forensics; and

g.      Data stored in random access memory ("RAM"), temporary files, or other ephemeral non-message data that are difficult to preserve without disabling the operating system.

Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI, Documents, or Data are not reasonably accessible, overly burdensome to produce, or disproportionate to the needs of the case.

**Preservation Does Not Affect Discoverability or Claims of Privilege**. By preserving ESI, Documents, and Data for the purpose of this Action, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## V.      DOCUMENTS PROTECTED FROM DISCOVERY

1.      The Parties agree that they need not preserve nor produce in discovery the following categories of documents:

a.      Documents or communications sent solely among outside counsel for Defendants (or persons employed by or acting on behalf of such counsel) or solely among counsel for Plaintiff (or persons employed by or acting on behalf of such counsel);

b.      Documents authored by Defendants' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for Plaintiff (or persons employed by or acting on behalf of such counsel), that were not directly or indirectly furnished to any non-party, such as internal memoranda; and

c.      Documents or communications sent solely between inside counsel for a Party (acting in a purely legal capacity) or between inside counsel for a Party (acting in a purely legal capacity) and outside counsel for a Party (or persons employed by or acting on behalf of such counsel).

## VI.     COLLECTION AND REVIEW

1.     **Meet and Confer.** The Parties agree that in responding to any request pursuant to Rule 34 of the Federal Rules, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2.     **Excluded from Collection and Review.** The Parties do not need to collect and review the excluded ESI, Documents, or Data listed in Section V.

3.     **Relevance Review Permitted.** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by technology-assisted review ("TAR") or search terms are in fact relevant to the Requesting Party's request.

4.     **Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all ESI or Documents captured by any search term or TAR if any such ESI or Documents are reasonably deemed not responsive to the Requesting Party's request or are otherwise privileged.

5.     **Identification Process.** Each Party will use its best efforts to filter out all common system files, executable files, program files, application executable files, and any other non-user created data that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." All available metadata from files withheld from delivery due to deNISTing process must be made available upon request. If a Producing Party proposes filters other than those found in the NIST hash set list to collect for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party must advise the Requesting Party and the Requesting and Producing Parties must meet and confer regarding such additional proposed filters.

6.     **De-Duplication.** Each Party is required to produce only a single copy of a responsive Document. A Producing Party must de-duplicate across Custodians and at the family-level (i.e., if there are identical child documents that have different parents, they are not

duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). Each Party must de-duplicate responsive ESI based on Source Hash, MD5 hash values, or other industry standard methods. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through hash values is not possible, the Parties must meet and confer to discuss any other proposed method of de-duplication. A Producing Party must make reasonable effort to identify all agreed upon Custodians who were in possession of any de-duplicated Documents through an appropriate load file field such as All Custodians. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field. In the event of rolling productions of Documents or ESI, the Producing Party will, as needed, supplement the load files with updated All Custodian information and updated File Path information, as well as BCC information to the extent such metadata exists.

7. **Email Threading.** Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

8. **Filtering.** If a producing party proposes to apply other filters to limit ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party will advise the Requesting Party and the Requesting and Producing parties will meet and confer regarding such additional proposed filters.

9. **Use of Institutional Knowledge.** Each Party must use its institutional knowledge of how its ESI and Documents are stored and accessed in the ordinary course of business to identify responsive Documents. This institutional knowledge includes, but is not limited to, a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI.

**VII.     PRODUCTION OF ESI**

The Parties must produce all ESI and Documents in the following format:

1.   **ESI and Documents.** ESI and Documents that are produced as scanned images should be produced in Standard Group IV Black and White single page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain ESI and Documents identified in Section VII.2, below, which may be produced in native format. If after reviewing any black and white Document, a Receiving Party believes that color is critical to a document, the Parties must engage in discussion regarding production of the specified documents in color, which production will not be unreasonably withheld. Hidden content (comments, draft markup, etc.) must be made visible prior to image conversion. The Parties must provide image load files in Concordance (*.OPT) format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata (including the fields described in Appendix A) should be provided in a Concordance *.DAT format, or other standard, compatible file format and extension as the Receiving Party specifies. For Documents from which text cannot be extracted, such as non-native or non-searchable native files, the text will be generated using Optical Character Recognition ("OCR") and provided as multi-page text (.txt) files or other standard, compatible file format as specified by the Receiving Party.

2.   **Native Format.** Parties will produce agreed-upon ESI and Documents in native format, including spreadsheets (e.g., Excel, OpenOffice, etc.), presentations (e.g. PowerPoint), and other files that cannot be converted to TIFF (such as audio and video files). Native files should contain the Bates number in the file title. Native files should be accompanied by a TIFF placeholder that contains the beginning Bates number, any confidentiality designation, and text indicating "DOCUMENT PRODUCED IN NATIVE FORMAT" displayed on the page. Wherever feasible, the Producing Party must include accompanying metadata in the load file. ESI and Documents with privileged information will not be produced in native format, unless the Party is able to redact privileged information in native format. Additionally, if after reviewing production of Documents in a non-native format, a Receiving Party believes that it is necessary to review a certain Document or Documents in native format, the Parties must engage in discussion regarding production of discrete Documents in native form, which production will not be unreasonably withheld.

3.    **Parent-Child Relationships**. Except as to the materials listed in Section V that need not be preserved or collected, Parent-child relationships (the association between an attachment and its parent Document) must be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

4.    **Metadata Fields.** All required metadata fields are identified in the attached Appendix A.

5.    **Document Unitization.** If hard copy Documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For Documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of ESI and Documents in an ESI or Document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

6.    **Redacted Documents.** ESI or Documents that contain redactions will be produced in single-page TIFF format with corresponding OCR text and a Concordance-delimited DAT file containing the metadata fields outlined in Appendix A to the extent that such metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image format (such as spreadsheets), those files may be produced in native format with redactions. ESI or Documents that are produced with redactions will be noted as "Redacted" in the DAT file. ESI or Documents with any metadata field redacted will be produced with a Redaction Status "Metadata Redacted" indicating the metadata for that document has been redacted in the DAT file.

7.    **Production Media.** A Producing Party will produce responsive ESI and Documents in an encrypted electronic form via Secure File Transfer wherever feasible. Alternative means, including use of a USB thumb drive, external hard drive, or other readily accessible computer or electronic media produced by hand delivery or overnight mail, should be used only

1    when an individual production is voluminous enough that use of a Secure File Transfer would be
2    onerous.

3        8.    **Embedded Objects.** Graphic objects embedded within ESI or Documents or
4    emails, such as logos, signature blocks, and backgrounds should not be extracted as separate
5    Documents. To the extent that embedded images present recognition problems during processing,
6    the Parties will meet and confer to discuss any proportional and appropriate countervailing
7    measures.

8        9.    **Compressed Files.** Container file types (*e.g.*, *.CAB, *.GZ, *.TAR, *.Z, *.ZIP)
9    must be decompressed in a manner that ensures any and all nested containers are also
10   decompressed into the lowest uncompressed element, resulting in individual files. The container
11   file(s) itself must not be produced.

12       10.    **Linked Files.** A Producing Party must conduct an automated search of ESI and
13   Documents to be produced to identify in those ESI and Documents links to additional ESI and
14   Documents in the Microsoft 365 Environment maintained by the Party (such as OneDrive or
15   SharePoint). For any such ESI and Documents, the Producing Party must produce the document
16   corresponding with each identified link in conformance with Section VII.

17        A Receiving Party may request that the Producing Party conduct a reasonable
18   manual search for no more than 200 Documents corresponding to links identified by the Receiving
19   Party in produced documents ("manual links"). The Producing Party shall consider that request in
20   good faith, including the timing of the request.  To the extent the Producing Party agrees to
21   undertake a manual collection of some or all of the requested manual links and is able to locate
22   and access the linked documents, the Producing Party shall process and produce responsive, non-
23   privileged documents corresponding with the links with reasonably available Metadata.

24        For any such manual links ("Linked Parent"), the Producing Party must populate the
25   LINKEDATTACHIDS field with the document control numbers of the attachments ("Linked
26   Attachment") for which the Producing Party agreed to and successfully undertook a manual
27   collection; for each Linked Attachment for which the Producing Party agreed to and successfully
28

undertook a manual collection, the Producing Party must populate the LINKEDPARENTIDS field with the document control number for the Linked Parent.

To the extent the Receiving Party agrees to undertake a manual collection of requested links and is able to locate and access the linked documents, the Receiving Party's production of the requested links is not a concession that the document collected is the same version as the shared link. For documents produced pursuant to this Section, the Producing Party is not required to conduct any further search of documents corresponding with the links.

11. **Text and Chat Messages.** The Parties must preserve, collect, and produce relevant text and chat messages. When producing text and chat messages (*e.g.*, messages sent via SMS, Teams, Slack, WhatsApp, Signal, and other short messaging platforms), those messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day. Each conversation day must be reviewed and produced as a single record, with redactions for privilege as provided in Section VIII below. The records must be produced with the metadata specified in the "IM/Text/Chat" column in Appendix A, including TXT-THREAD-GROUP (the DOCID of the first conversation day in a given discussion/channel) and TXT-PARTICIPANTS (a list of participant names).

12. **Ephemeral Messages.** The Parties are obligated to preserve, collect, and produce ephemeral and encrypted messages (*e.g.*, messages sent via Snapchat, Signal, or WhatsApp) to the extent the applications are used for business.

13. **Passwords and Encryption.** The Parties must provide all Documents and ESI such that the Receiving Party is not blocked by any passwords or encryptions on those Documents and ESI.

## VIII.   PRIVILEGE LOGS

1. Excluded from Privilege Logs.  The Parties agree that the following privileged or otherwise protected communications may be excluded from privilege logs:

a. documents or communications sent to or from outside counsel for a Party (or persons employed by or acting on behalf of such counsel), including documents and

communications that include outside counsel for both Defendants that are subject to a joint-defense privilege;

        b.    documents or communications sent solely between counsel for the United States (or persons employed by or acting on behalf of such counsel);

        c.    documents or communications sent solely between inside counsel for a Party (acting in a purely legal capacity) or between inside counsel for a Party (acting in a purely legal capacity) and outside counsel for a Party (or persons employed by or acting on behalf of counsel);

        d.    documents authored by Defendants' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for Plaintiff (or persons employed by or acting on behalf of such counsel), that were not directly or indirectly furnished to any non-party, such as internal memoranda;

        e.    privileged documents or communications between: (i) Defendant's outside counsel, or Plaintiff's counsel, and that side's testifying expert, nontestifying expert and/or any staff assisting the testifying expert or nontestifying expert; (ii) a testifying expert or nontestifying expert and other testifying experts and nontestifying experts, as well as any staff assisting such testifying experts or nontestifying experts; and (iii) testifying expert or nontestifying experts and any staff assisting such testifying experts or nontestifying experts;

        f.    draft contracts;

        g.    privileged draft litigation filings; and

        h.    non-responsive privileged documents attached to responsive documents.

    2.    **Privilege Log Production.** Any Producing Party will use their best efforts to produce a privilege log within 30 days after each production. For any Document withheld or redacted, the Producing Party will produce privilege logs in MS Excel (.xlsx) format. For each document on which a privilege is claimed, the privilege log must provide sufficient information to enable the Parties to assess the applicability of the privilege claimed. A Party or Non-Party seeking to withhold or redact a document under the attorney-client privilege, deliberative process privilege, work product protection, or any other privilege or protection must, at a minimum, provide the

essential elements necessary to sustain a claim of privilege, including a description of the document's subject matter with sufficient detail to enable the Parties to assess the privilege claim and the facts relied upon to support the claim.

3.    **Placeholder Slipsheets.** If any member of a produced Document family is withheld on grounds of privilege or work-product, the Producing Party will produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and will identify the Document in the Privilege Log by the Bates number on the placeholder slipsheet. If the withheld Document is part of a responsive Document family, the Parties will insert a placeholder to indicate that the Document has been withheld from that family and will produce all non-privileged Documents in the family.

4.    **Privilege Log Contents.** Privilege logs must contain the following information, to the extent reasonably available:

a.    BegBates;

b.    EndBates;

c.    Where applicable, Parent BegBates;

d.    Author/Sender;

e.    All addressees, including CC and BCC (copyees and blind copyees shall appear in separate fields);

f.    The date of the document;

g.    The number of pages;

h.    The title of the Document or email subject line or Document file name, according to Document metadata;

i.    A description, pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), of the contents of the withheld Document that is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

1         j.     The name of the attorney(s) or, only when that information is not reasonably

2 available, legal department who provided the legal advice at issue and/or who requested or

3 prepared the Document; and

4         k.     The privilege or protection asserted (i.e., attorney-client privilege, work

5 product doctrine).

6    5.    **Accompanying Legends.** Each privilege log must include a separate legend

7 containing an alphabetical list (by last name) of each person included on the privilege log, and for

8 those individuals employed by any Party, the person's title and affiliation. Attorneys who acted in

9 a legal capacity must be marked with the designation ESQ after their last name (include a space

10 before and after "ESQ").

11    6.    **Categorical Privilege Designations.** If a Producing Party contends that all

12 Documents of a particular type or category are privileged, or requiring the creation of an

13 individualized privilege log is not reasonable or proportionate for documents of a particular type

14 or category, they will meet and confer with the Receiving Party on identifying such Documents on

15 a privilege log by category rather than individually. The Receiving Party will consider any such

16 request in good faith. The Producing Party's categorical privilege log entry must still provide the

17 Requesting Party, and the Court if necessary, with information sufficient to evaluate the Producing

18 Party's privilege claims.

19    7.    **Single Entries.** A single Document containing multiple email messages in the body

20 of the document (i.e., in an email chain) may be logged as a single entry.

21    8.    **Assert All Bases.** If the Producing Party contends that more than one basis for

22 withholding applies to a single document, all bases must be asserted in the privilege log.

23    9.    **Redactions.** A Party or nonparty asserting a privilege claim must redact only those

24 portions of the document that are protected by the privilege. If a document contains both privileged

25 and non-privileged communications, the nonprivileged communications must be produced. The

26 redactions will be narrowly applied so the Receiving Party has the ability to discern to the

27 maximum extent practicable the privilege assertion within the document and to view all non-

28 privileged communications and material. Redactions based on relevance, responsiveness, or

confidentiality are disallowed. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

10.    **Privilege Disputes.** The Parties will comply with L. Civ. R. 37.1 to address any dispute over a Party's claim of privilege or privilege log before seeking the Court's intervention.

## IX.    DATABASES, DATA SOURCES, AND STRUCTURED DATA

1.    The Parties must meet and confer in good faith regarding any requests for the production of data or data compilations, including the production format and scope of data to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format. Subject to objections, for responsive sources of data or data compilations, the Parties will make good faith efforts to produce (a) data samples for data sources for which no such samples were previously provided during the Investigation (if any), and (b) data dictionaries, to the extent not previously provided during the Investigation, or a written or verbal explanation from the Producing Party sufficient to describe the data to permit it to be reasonably useable, no later than 10 days after service of the requests, will make good faith efforts to substantially complete production of data or data compilations no later than 21 days after production and agreement as to the data sample provided, and will make good faith efforts to finally complete production of data or data compilations no later than 28 days after production and agreement as to the data sample provided.

## X.    PAPER DOCUMENTS

1.    A Producing Party must scan and OCR paper Documents. The following information must be produced in the load file accompanying production of paper Documents produced by scan and OCR to the extent reasonably practicable: (a) DOCID (b) ENDDOC, (c) CUSTODIAN, (d) BEGDOC, (e) BEGATTACH, and (f) ENDATTACH, and (g)TEXTLINK. Paper Documents should be logically unitized for production to the extent reasonably practicable as outlined in Section VII. Generally, when scanning paper Documents for production, distinct

Documents should not be merged into a single record and single Documents should not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly. Where a Document or a Document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label must be scanned and produced as the first page of the Document or grouping to the extent reasonably practicable.

## XI.    DEFINED TERMS

For purposes of this ESI Order, the Definitions below shall apply.

1.      "Action" means the action filed in this Court under the caption *United States, et al. v. Hewlett Packard Enterprises Co. and Juniper Networks, Inc.*, 4:25-cv-00951 (PCP), as well as any additional actions subsequently consolidated with this Action, including any consolidated discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt, "Action" excludes pre-Complaint investigations by Plaintiff.

2.      "Investigation" means any pre-Complaint review, assessment, or investigation of the Proposed Transaction, including of any defense to any claim that the Proposed Transaction would violate Section 7 of the Clayton Act.

3.      "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a). including but not limited to Emails, calendar items, Instant Messages, Text Messages, Chat Messages, and Other ESI.

4.      "DeNIST" means the act of filtering and removing system files, executable files, application files, program files, and other non-user created data from ESI that has been collected

5.      "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, hard copy discovery, and tangible things.

6.      "Format" means the internal structure of a file, which defines the way it is stored and used.

7.      "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.msg, *.pst, and *.pdf files).

8.    "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual Custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

9.    "Producing Party" means a Party that produces documents.

10.    "Proposed Transaction" means Hewlett Packard Enterprise Company's proposed acquisition of Juniper Networks, Inc.

11.    "Receiving Party" means a Party to whom documents are produced.

12.    "Responsive Document" means any document that the Producing Party has agreed to produce or log, or that the Producing Party has been ordered to produce by the Court.

13.    "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of:

    a.    An alphanumeric portion identifying the Producing party and/or other characteristics of the production; and

    b.    A numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than 16 characters in length.

14.    "Metadata" means non-privileged information (i) embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

15.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

16.    "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files

belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as OCR or Extracted Text.

17.    "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

18.    "Extracted Text" means the text extracted from a Native File and includes all header, footer, document body information, and tracked changes content (comments, markup, etc.).

## XII.    NON-PARTY DISCOVERY

1.    A party that issues a non-party subpoena shall include a copy of this ESI Order with the subpoena.

## XIII.    MISCELLANEOUS

1.    **Costs of Production.**  Unless this Court orders otherwise for good cause shown, each Party and nonparty will bear the costs of collecting, processing, reviewing, and producing its own documents.

1  Dated: February 21, 2025                    /s/ Michael J. Freeman
                                               MICHAEL J. FREEMAN
2                                              U.S. DEPARTMENT OF JUSTICE
                                               ANTITRUST DIVISION
3                                              450 Golden Gate Avenue, Suite 10-0101
                                               San Francisco, CA 94102
4                                              Tel: (415) 934-5300
                                               Emaidoj.gov
5

6                                              Attorney for Plaintiff
                                               UNITED STATES OF AMERICA
7

8  Dated: February 21, 2025                    /s/ Julie Elmer
                                               JULIE ELMER (pro hac vice)
9                                              JENNIFER MELLOTT (pro hac vice)
                                               FRESHFIELDS US LLP
10                                             700 13th St NW
                                               Washington, DC 20005
11                                             (202) 777-4500
                                               julie.elmer@freshfields.com
12

13                                             BETH A. WILKINSON (pro hac vice)
                                               WILKINSON STEKLOFF LLP
14                                             2001 M Street NW, 10th Floor
                                               Washington, DC 20036
15                                             (202) 847-4010
                                               bwilkinson@wilkinsonstekloff.com
16

17                                             SAMUEL G. LIVERSIDGE (CA No.
                                               180578)
18                                             GIBSON DUNN & CRUTCHER LLP
                                               333 South Grand Avenue
19                                             Los Angeles, CA 90071-3197
                                               (213) 229-7000
20                                             sliversidge@gibsondunn.com
21

22                                             Attorneys for Defendant
                                               HEWLETT PACKARD ENTERPRISE CO.
23
   Dated: February 21, 2025                    /s/ Tara Reinhart
24                                             STEVEN C. SUNSHINE (pro hac vice)
                                               TARA REINHART (pro hac vice)
25                                             SKADDEN, ARPS, SLATE, MEAGHER &
                                               FLOM LLP
26                                             1440 New York Ave., NW
                                               Washington, DC 20005
27                                             (202) 371-7000
                                               steve.sunshine@skadden.com
28

                                               18

1    tara.reinhart@skadden.com

2    JACK P. DICANIO (CA Bar. No 138782)
     SKADDEN, ARPS, SLATE, MEAGHER &
3    FLOM LLP
     525 University Avenue
4    Palo Alto, CA 94301
     (650) 470-4500
5    jack.dicanio@skadden.com

6

7    *Attorneys for Defendant*
     JUNIPER NETWORKS, INC.

8

9

10   PURSUANT TO STIPULATION, IT SO ORDERED.

11

12   Dated: February 24, 2025                    _____
                                                 HONORABLE SUSAN VAN KEULEN
13                                               United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 5:25-cv-00951-PCP

**ATTORNEY ATTESTATION**

I, Jeremy M. Goldstein, am the ECF user whose identification and password are being used to file the STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION.  In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

/s/  Jeremy M. Goldstein
Jeremy M. Goldstein

# Appendix A

Specifications for Unicode Compliant Production of ESI and Other Documents

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|:-:|:-:|:-:|:-:|:-:|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ALLCUSTODIANS | All custodians who were in possession of a deduplicated document, including the person or group identified in the CUSTODIAN field. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| MEDIAID | The unique identifier applied to each physical piece of media delivered (e.g., ABC001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| BEGATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| TIMEZONE | The TimeZone is either the time zone in which the custodian is normally located or Coordinated Universal Time (UTC). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FROM | Sender of the Email, Instant Message, Text Message, Chat, or Calendar item. | Note Text | | ✓ | | ✓ | ✓ |
| TO | Primary recipients of the Email, Instant Message, Text Message, Chat, or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| CC | Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| BCC | Blind Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| SUBJECT | Subject line of the Email, Instant Message, Text Message, Chat, calendar item, or Notes item. | Note Text | | ✓ | | ✓ | ✓ |
| DATEHC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. Leave time segment blank. | Date | ✓ | | | | |
| DATESENT | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✓ | | ✓ | ✓ |
| DATERECEIVED | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✓ | | ✓ | ✓ |
| HEADER | The internet header information from each Email. | Note Text | | ✓ | | ✓ | |

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F338179524D555@m1p.innovy.net | Note Text | | ✓ | | ✓ | |
| MESSAGEID | Unique identifier of email messages in mail stores. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats. | Note Text | | ✓ | | ✓ | |
| INREPLYTOID | Internet message ID of the Email being replied to. | Note Text | | ✓ | | ✓ | |
| CONVERSATIONINDEX | Conversation index value for Microsoft Exchange emails. | Note Text | | ✓ | | ✓ | |
| IMPORTANCE | Indicates priority level set for message. | Note Text | | ✓ | | ✓ | ✓ |
| DELIVERYRECEIPT | Delivery receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| READRECEIPT | Read Receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| SENSITIVITY | Sensitivity field from Email messages or calendar items. | Note Text | | ✓ | | ✓ | |
| REVISION | Revision number extracted from metadata of native file. | Note Text | | | ✓ | | |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | | ✓ | | ✓ |
| DATESAVED | Date and time the electronic file was last modified. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | ✓ | | ✓ |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| LASTAUTHOR | Last Saved By field value pulled from metadata of a native file. | Note Text | | | ✓ | | |
| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✓ | | |
| FILENAME | Original file name of the native file, including file extension. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| APPLICATION | Application used to create or transmit the original native files, document, message, appointment (e.g., WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FILEEXTENSION | File extension of original native file; e.g. XLSX, PDF, DOCX | Max 5 chars | | ✓ | ✓ | ✓ | |

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| FILEPATH | Full qualified original path to the native when collected, including original file name. Prepend with recognizable Custodian Name; e.g. Smith, James-C\My Documents\Sales Info\ACME\2017-Monthly-Sales.xlsx | Multi-Entry | | ✓ | ✓ | ✓ | |
| DOCLINK | File path location to the current native file location on the delivery medium. | Note Text | | | ✓ | | |
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| ACCOUNT | Unique account ID | Note Text | | | | | ✓ |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✓ | | |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. | Note Text | | | | | ✓ |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat or with a separate hash value to identify the thread. | Note Text | | | | | ✓ |
| HASHMD5 | Document MD5 hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| HASHSHA | Document SHA hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |