MICHAEL J. FREEMAN (OH BAR # 0086797)
Senior Litigation Counsel
JEREMY M. GOLDSTEIN (CA Bar # 324422)
Trial Attorney
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Email: Michael.Freeman@usdoj.gov

[Additional counsel listed on signature page]

Attorneys for Plaintiff
United States of America

William Devaney (*Pro Hac Vice* pending)
BAKER MCKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626 4100
william.devaney@bakermckenzie.com

Andrew L. Black (*Pro Hac Vice* pending)
BAKER MCKENZIE LLP
815 Connecticut Avenue NW
Washington, DC 20006
Tel: (202) 452-7000
andrew.black@bakermckenzie.com

Byron Tuyay (CA Bar # 308049)
BAKER MCKENZIE LLP
10250 Constellation Boulevard
Suite 1850
Los Angeles, California 90067
Tel: (310) 201-4728
Byron.Tuyay@bakermckenzie.com

Attorneys for Gartner, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC.<br><br>*Defendants*. | CASE NO. 5:25-CV-00951-PCP<br><br>JUDGE: Hon. P. Casey Pitts<br>MAGISTRATE JUDGE: Hon. Susan van Keulen<br><br>**PLAINTIFF UNITED STATES OF AMERICA AND NON-PARTY GARTNER, INC.'S JOINT STATEMENT REGARDING DISCOVERY DISPUTE** |

Plaintiff United States of America ("Plaintiff" or "United States") moves to compel non-party Gartner, Inc. ("Gartner") to produce non-privileged information responsive to Plaintiff's subpoena dated March 27, 2025, for the production of compensation data and other documents ("the Subpoena"; **Exhibit 1**). Defendants Hewlett Packard Enterprise Co. ("HPE") and Juniper Networks, Inc. ("Juniper" and, with HPE, "Defendants") identified Gartner as a trial witness on their preliminary witness list and later noticed a deposition of Tim Zimmerman, a Gartner analyst, for May 27, 2025. Plaintiff is seeking materials responsive to the Subpoena for use in Mr. Zimmerman's deposition and at trial. This case was filed on January 30, 2025. Fact discovery closes on May 28, 2025, five days from the date of this filing and 47 days from the start of trial on July 9, 2025. Gartner's responses and objections are attached as **Exhibit 2.**

The Subpoena is the second subpoena the United States served on Gartner in this action. The United States and Gartner met and conferred on several occasions to discuss both subpoenas, including more than six video conferences and multiple emails. While the United States and Gartner reached a compromise related to the earlier subpoena, they failed to resolve their impasse as to the second subpoena. The Subpoena calls for Gartner to produce, among other things, documents sufficient to show payments Gartner received from Defendants and other market vendors between 2019 and the 2024. A joint chart setting forth in columns the disputed requests and their status is attached as **Exhibit 3.** The parties' respective proposed Orders are attached as **Exhibit 4 (Plaintiff)** and **Exhibit 5 (Gartner)**.

<strong><u>STATEMENT OF THE UNITED STATES</u></strong>

### A. Background of Subpoena and Impasse

Gartner is a publicly traded research and advisory firm that operates within markets including enterprise grade wireless local area network ("WLAN"). Gartner publishes industry reports, including an annual "Magic Quadrant" that categories vendors as "leaders," "visionaries," "challengers," and "niche players." Gartner does not disclose the formulation uses to categorize vendors. Vendors including Defendants routinely use the "Magic Quadrant" in their sales and marketing efforts and pay Gartner handsomely for access to Gartner's industry analysts and the information they collect from competitors, for reprints of the "Magic Quadrant" and for other Gartner services and products relating to their

industry.

On March 14, Defendants listed Gartner on their preliminary witness list and, on March 21, noticed a deposition for Tim Zimmerman, a Gartner analyst that reports on the WLAN market and evaluates and ranks vendors for Gartner's Magic Quadrant on Wired and Wireless LAN. On March 27, the United States served the Subpoena, which sought documents sufficient to show (1) compensation Gartner has earned from Defendants and other WLAN vendors between 2019 and 2024 for consulting and other services, (2) compensation Gartner has earned from Defendants from Mr. Zimmerman's consulting and other services specifically; and (3) the dates Mr. Zimmerman met, spoke, or otherwise communicated with Defendants and any materials, including data and presentations, he shared during those sessions. The United States dropped the request for information about Mr. Zimmerman's meetings with Defendants in an attempt to narrow and resolve the impasse over payment information. Further, the United States offered to drop the document request if Mr. Zimmerman could testify about these topics at the deposition; however, Gartner stated that is unworkable.

Throughout the United States' and Gartner's meet-and-confer calls, Gartner has never denied maintaining responsive financial information in the ordinary course—or in an easily exportable format—or argued that the money Defendants pay for consulting and other services are not probative of Gartner's and Mr. Zimmerman's bias in their favor. Instead, Gartner has expressed concern that the compensation it receives from Defendants and other WLAN vendors is confidential information that, if disclosed, could damage Gartner's reputation for "independence." Gartner has further argued other garden-variety objections like the Subpoena's requests are overly broad and burdensome and cumulative.

### B. Court's Jurisdiction

Jurisdiction and venue are proper in this court. Section 13 of the Clayton Act, 15 U.S.C. § 23, provides for nationwide service of process, including for subpoenas to third parties. Where the court hearing the antitrust case has adopted the parties' joint submission in a scheduling order, as it did here (ECF No. 80), good cause has been shown to enforce compliance with subpoenas issued to third parties. *FTC v. Meta Platforms, Inc.*, 2025 WL 985530, *3 (D.D.C. April 2, 2025) (collecting cases); *FTC v.*

*Kroger Co.*, 2024 WL 3400098, at *3 (D. Ore. July 12, 2024) (finding that Section 23 provides the court with jurisdiction to hear the motion to compel in an antitrust enforcement action by the United States).

### C. Argument

Plaintiff's Subpoena seeks quintessential impeachment evidence that is regularly maintained and easily producible. Because none of Gartner's objections have merit, the Court should order Gartner to comply with the Subpoena as written.

*First*, the information is clearly probative of Mr. Zimmerman's potential bias toward Defendants. Documents produced by Defendants and Gartner establish that Defendants meet regularly with Mr. Zimmerman to promote their products and features and solicit feedback on their performance within the market. Defendants pay Gartner substantial sums for access to Gartner analysts, including Mr. Zimmerman. Information about those payments sheds light on Defendants' relationship with Gartner and could be used to show that Mr. Zimmerman has an incentive to provide testimony consistent with Defendants' case.

*Second*, Gartner's confidentiality concerns are squarely addressed by the Protective Order. *See* Joint Stipulation and Protective Order, ECF No. 50. The Protective Order permits third parties to designate information confidential or highly confidential and limits its use "solely for the conduct of this Action" and not "for any business, commercial, competitive, personal, or other purpose." *Id.* at ¶ 33. Moreover, any concerns about the sufficiency of the Protective Order are now untimely. Gartner received a copy of the Protective Order with the Subpoena, and it did not seek modification or additional protection from the Court within the required five days.

*Third*, Gartner has not substantiated its claim that the requested payment information is overly broad or burdensome to produce. *See American Broadcasting Companies, Inc. v. Aero, Inc.*, 2013 WL 1508894, *1 (N.D. Cal. April 10, 2013) (placing the burden on the objecting party to show that relevant discovery should not be allowed). Nor could it. Gartner is a large and sophisticated public company, with a $34 billion market capitalization. It collects and maintains invoicing data in the ordinary course, and it has accounting and other personnel who are able to quicky collect and produce it. The cost of producing the data is modest compared to its probative value in showing a potential witness's bias

toward Defendants. While Gartner has said in its written Responses and Objections that the Subpoena is impermissibly broad because it is not limited to WLAN (several WLAN vendors sell other networking components), the United States is willing to accept—and in fact would prefer—payment information related to WLAN consulting and research.

*Finally*, the United States is entitled to subpoena information from Gartner even if some of the same information could have been sought from Defendants. Seeking payment information from Gartner is the most direct, convenient, and least burdensome way to obtain the needed information. Gartner is the one company that can provide payment information for Defendants *and* six other WLAN vendors the United States identified during their meet-and-confer calls. Seeking it from each vendor would require two Requests for Production and six third-party subpoenas. Gartner is not entitled to pass the modest cost of responding to the subpoena off to other third-parties.

As such, the Court should order Gartner to comply with the Subpoena in time for the information to be included, if needed, on the United States' exhibit lists and used at trial.

## STATEMENT OF GARTNER, INC. IN OPPOSITION

### I.     Background

Gartner is a disinterested third party to this action. It is not a competitor or other market participant, nor is it a customer or consumer of the Enterprise WLAN products at issue in this litigation. It is a publicly-traded, industry leading, research and advisory firm that, among other things, produces publications and reports across multiple markets, including Enterprise WLAN, that are accessible to paid subscribers (the "Research Business"). Beyond its Research Business, Gartner also provides consulting services (the "Consulting Business") and hosts global events (the "Events Business"). Gartner has not provided consulting services relating to the proposed merger between Defendants. Despite Gartner's disinterested status as a third-party, the government has aggressively pursued discovery from it.

Gartner has already produced over three-thousand pages of documents. First, Gartner agreed to produce proprietary research reports and analyses relating to the transaction at issue. Next, the government pressed Gartner to produce all communications between Mr. Zimmerman and Defendants

for a six-year period and Mr. Zimmerman's email communications with any industry participant about the proposed merger between HPE and Juniper. Gartner agreed. The government then sought: all payments made to Gartner—for its Research Business, Consulting Business, and Events Business—between 2019 and 2024 by (i) Defendants, (ii) Cisco, (iii) "all firms, and all their affiliates, that sell wireless local area networking hardware, software, and any Relevant Product" ("All Other Firms"), and (iv) specific payment information from HPE and Juniper received by Gartner in relation to work performed by Mr. Zimmerman (collectively, the "Payment Data").

Defendants have called Mr. Zimmerman as a lay, fact witness to testify primarily about his role in putting together particular research reports known as "Magic Quadrants." Further, Gartner repeatedly has told the government that Mr. Zimmerman, like any other analyst, has no knowledge of or any insight into the specifics of any payments made to Gartner by any of its clients. As such, the only use for the Payment Data can be an attempt to discredit Mr. Zimmerman and Gartner by incorrectly suggesting that anything Mr. Zimmerman might say or anything in the documents that damage the government's case is bought and paid for.

**II.    Argument**

Gartner objects to producing the Payment Data on the grounds that: (i) the HPE and Juniper payment data can be obtained from the parties; (ii) it is proprietary and confidential information, and as such Gartner's burden in producing it far exceeds any need the government has articulated; (iii) the Payment Data requests are overly broad creating additional undue burden on Gartner; and the Payment Data is wholly irrelevant to the case and unlikely to lead to the discovery of admissible evidence.

**A.    Payment Data from HPE and Juniper Can Be Obtained from the Parties**

Despite Gartner's objection that the government should first seek payment data from HPE and Juniper, the government has insisted that it has no obligation to do so. That is incorrect. Courts have consistently held that discovery should be sought from a party, rather than a non-party, if the information is available from both entities. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Jacoby v. Bd. Of Supervisors of the Univ. of La. Sys.*, 709 F. Supp. 3d 1087, 1090

(E.D. Cal. 2023) (same); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) (same) (collecting cases); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii).

Even if the government did not seek this information from the parties in its initial Rule 34 document requests to Defendants, Gartner served its objections to the third-party subpoena requests on April 10, 2025, eighteen days before the close of fact, document discovery providing ample time for the government to obtain this information from the parties.

Gartner has already been subjected to significant burden and expense, including review costs, attorneys' fees, and e-discovery costs.  Production of the requested Payment Data will only increase those costs.  More importantly, it will significantly increase the burden on Gartner, as discussed in Parts B and C, below.  Accordingly, these requests should be denied.  *See Nidec Corp.*, 249 F.R.D. at 577 (granting a motion to quash discovery because "the burden on the third party . . . outweighs the likely benefit of the subpoena at least in the absence of a convincing showing that the subpoena is likely to yield unique and material evidence from the third party.").

### B.    The Payment Data Comprise Proprietary and Confidential Information the Production of Which Serves No Purpose Other than to Discredit and Harm Non-Party Gartner

"Nonparties faced with civil discovery requests deserve special solicitude.  They should not be drawn into the parties' dispute unless the need to include them outweighs the burdens of doing so, considering their nonparty status." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019). Here, the government is not only trying to draw Gartner into the dispute, it is trying to drag it through the mud.

The total amount spent at Gartner by HPE, Juniper, Cisco, and All Other Firms between 2019 and 2024[1] is proprietary and confidential information that if disclosed would expose Gartner to potential financial and reputational harm.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (stating that a court may quash a subpoena that requires disclosure of trade secret or other confidential information).  Here, the government appears to seek the Payment Data for no other purpose than to try to

---

[1] The Government seeks Payment Data relating to all three business units of Gartner, even though Mr. Zimmerman is only involved with the Research Business and Gartner did not consult on the merger.

discredit a non-party. Gartner has built its market-leading brand over many decades through its hard-earned reputation of providing independent, objective, and unbiased research and analysis. The government's attempt to sully that reputation through acquiring proprietary and confidential data should not be countenanced. And for the Payment Data requested in relation to Mr. Zimmerman, Gartner has already informed the government that Gartner does not account for payment data in this way, and thus it has no ability to produce such data based on information kept in the ordinary course of business.

Gartner closely guards all client information, including pricing and payment information. If the Payment Data is produced and ultimately becomes public at trial or otherwise, Gartner's competitors will be able to gain invaluable insights into Gartner's pricing and strategy and how much particular clients spend with Gartner, allowing them to undercut Gartner in the market.

Producing the Payment Data would subject Gartner to an undue burden, as measured by the impact on Gartner against the value of the information to the government. *Amini Innovation Corp.*, 300 F.R.D. at 409. Here the burden on Gartner is significant, as the production of the requested Payment Data could cause Gartner serious financial and reputational harm. *See Jaiyeola v. Toyota Motor Corp.*, No. 1:17-cv-562, 2018 WL 9785497, at *5 (W.D. Mich. Aug. 10, 2018) ("Requiring a non-party to reveal confidential information the disclosure of which could potentially harm its business and/or subject it unnecessarily to litigation certainly qualifies as 'undue expense or burden.'"). Yet the government has failed to articulate a specific need for the Payment Data, beyond trying to discredit Gartner and Mr. Zimmerman. That reason is insufficient measured against the burden to Gartner. Neither Gartner nor Mr. Zimmerman are parties to this action. They are not competitors or customers with firsthand knowledge bearing upon the issues at trial. They are neutrals.

The utility of Mr. Zimmerman as a witness is minimal at best. Neither the government nor Defendants can elicit Mr. Zimmerman's opinion. Mr. Zimmerman has not been noticed as an expert witness, and his testimony is unlikely to qualify as lay opinion testimony because it would be based on technical or other specialized knowledge. Fed. R. Evid. 701(c). And it is unlikely Mr. Zimmerman, who is far outside the 100-mile geographic limit, could be called at trial. Accordingly, to require Gartner to produce confidential and proprietary Payment Data—which would serve no other purpose

than to harm itself—is far more burdensome than the putative value to the government in its unnecessary desire to discredit a neutral analyst compelled to testify.

This burden is even more pronounced for Payment Data relating to clients other than HPE and Juniper—*i.e.*, Cisco and All Other Firms. These clients are not parties, and, as defined, "All Other Firms" encompasses Gartner clients that are entirely unrelated to the industry. As such, how much Cisco or other third parties paid Gartner for any period, let alone a six-year period, is irrelevant—even as an attempt to impeach Mr. Zimmerman or to discredit Gartner's analyses that the government fears may favor Defendants. This Court should thus deny the government's request for Payment Data.

### C.     The Information Requested Is Overly Broad and Thus Unduly Burdensome

The government's requests are not limited to participants in the WLAN market or even a defined set of companies. Rather the government asks for Payment Data not only for identified entities but also for the "domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives" for each entity. Further, the request as to All Other Firms is completely unbounded. Based on the government's request, any company that sells wireless local area networking hardware, software, or any Relevant Product[2] is captured by the request. That request is untethered to the issues in this litigation and would force Gartner to undergo a burdensome analysis of thousands of clients to determine whether they would fall under this expansive set of potential companies, which could include retail stores, web platforms, service companies, and a host of other entities wholly unrelated and irrelevant to this litigation. *See Jacoby*, 709 F. Supp. 3d at 1089 (holding that determining undue burden "requires consideration of relevance, the need of the party for the documents, the breadth of the request, the time period covered by it, the particularity with which the documents are described and the burden imposed."). The burden of these nebulous and sprawling requests on Gartner is profound. They are also unnecessary for the government's case. Even if the scope of the requests is limited to the government's compromise proposals, shown in Exhibit 3, the significant and undue burden to Gartner as a result of the financial and reputational harm described in Part B above, remains unchanged. *See Del Campo v. Kennedy*, 236

---

[2] Relevant Product is defined in Exhibit 1.

F.R.D. 454, 458 (N.D. Cal. 2006) ("[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'").

Dated: May 23, 2025

| | |
|---|---|
| JACKLIN CHOU LEM (CA Bar # 255293)<br>Civil Chief<br>San Francisco Office<br><br>ELIZABETH S. JENSEN (CA Bar # 302355)<br>Assistant Civil Chief<br>San Francisco Office<br><br>*/s/ Jack G. Lerner*<br>JACK G. LERNER (NY Bar # 1937143)<br>Michael J. Freeman (OH Bar # 0086797)<br>Craig W. Conrath (MN Bar # 0018569)<br>Jeremy M. Goldstein (CA Bar # 324422)<br>Aaron M. Sheanin (CA Bar # 214472)<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 8000<br>Washington, DC 20530<br>Telephone: (202) 227-9295<br>Fax: (202) 514-5847<br>Email: Jack.Lerner@usdoj.gov<br><br>*Attorneys for Plaintiff United States of America* | */s/ William Devaney*<br>William Devaney (*Pro Hac Vice* pending)<br>BAKER MCKENZIE LLP<br>452 Fifth Avenue<br>New York, NY 10018<br>Tel: (212) 626 4100<br>william.devaney@bakermckenzie.com<br><br>Andrew L. Black (*Pro Hac Vice* pending)<br>BAKER MCKENZIE LLP<br>815 Connecticut Avenue NW<br>Washington, DC 20006<br>Tel: (202) 452-7000<br>andrew.black@bakermckenzie.com<br><br>Byron Tuyay (CA Bar # 308049)<br>BAKER MCKENZIE LLP<br>10250 Constellation Boulevard, Suite 1850<br>Los Angeles, California 90067<br>Tel: (310) 201-4728<br>Byron.Tuyay@bakermckenzie.com<br><br>*Attorneys for Gartner, Inc.* |

# CERTIFICATE OF SERVICE

I certify that on May 23, 2025, I served the foregoing on the below individuals via e-mail.

For Defendant Hewlett Packard Enterprise Co.:

    Julie Elmer (julie.elmer@freshfields.com)
    Jennifer Mellott (jennifer.mellott@freshfields.com)
    Connie Forkner (constance.forkner@freshfields.com)
    Sara Salem (sara.salem@freshfields.com)
    Lauren Vaca (lauren.vaca@freshfields.com)
    Freshfields US LLP
    700 13th Street, NW, 10th Floor
    Washington, DC 20005-3960
    Tel: (202) 777-4500

For Defendant Juniper Networks, Inc.:

    Steven C. Sunshine (steve.sunshine@skadden.com)
    Tara Reinhart (tara.reinhart@skadden.com)
    Ryan Travers (ryan.travers@skadden.com)
    Maria Raptis (maria.raptis@skadden.com)
    Joseph M. Rancour (joseph.rancour@skadden.com)
    Skadden, Arps, Slate, Meagher & Flom LLP
    1440 New York Ave., NW
    Washington, DC 20005
    Tel.: (202) 371-7000

Dated: May 23, 2025

By:    */s/ Jack G. Lerner*
Jack G. Lerner
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8000
Washington, DC 20530
Telephone: (202) 227-9295
Fax: (202) 514-5847
Email: Jack.Lerner@usdoj.gov

*Counsel for Plaintiff United States of America*