BETH A. WILKINSON (*pro hac vice*)
KOSTA S. STOJILKOVIC (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4010
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

SAMUEL G. LIVERSIDGE (Bar No. 180578)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

JACK P. DICANIO (SBN 138782)
MICHAEL C. MINAHAN (SBN 311873)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Jack.DiCanio@skadden.com
Michael.Minahan@skadden.com

STEVEN C. SUNSHINE (*pro hac vice*)
TARA REINHART (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-8301
Steve.Sunshine@skadden.com
Tara.Reinhart@skadden.com

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., <br><br> *Defendants.* | CASE NO. 5:25-cv-00951-PCP <br><br> **DEFENDANTS' MOTION FOR EVEN ALLOTMENT OF TRIAL TIME AND TO PRECLUDE TRIAL BY SUBMISSION** <br><br> Judge:       P. Casey Pitts <br> Action Filed:   January 30, 2025 <br> Hearing Requested:   June 30, 2025 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

    I.      Brief Overview of Discovery Conducted to Date .................................... 3

    II.     Negotiations Over Trial Logistics ........................................................... 3

    III.   Status of Pretrial Exchanges .................................................................... 6

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT .................................................................................................................... 7

    I.      The Parties Should Be Allotted Equal Time at Trial .............................. 7

    II.     Deposition Designations and Counter-Designations Should Count Against the Trial Clock and Be Played at Trial .................................................... 8

    III.   The Rule on Sponsoring Witnesses Should Be Enforced at Trial. ......... 11

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases(s)**                                                                    **Page(s)**

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996) ........................................................................... 8

*Barnes v. Dist. of Columbia*,
   924 F. Supp. 2d 74 (D.D.C. 2013) ................................................................... 8

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
   809 F.3d 1092 (9th Cir. 2016) ......................................................................... 12

*Fed. Trade Comm'n v. Microsoft Corp.*,
   681 F.Supp.3d 1069 (N.D. Cal. 2023) ........................................................ 9, 12

*Luce v. United States*,
   469 U.S. 38 (1984) .............................................................................................. 8

*United States v. AT&T Inc.*,
   310 F. Supp. 3d 161 (D.D.C. 2018) ................................................................. 13

**Rules**

Fed. R. Evid. 611(a)(1) ............................................................................................ 8

DEFENDANTS' MOTION FOR EVEN ALLOTMENT OF TRIAL TIME AND TO PRECLUDE TRIAL BY SUBMISSION
CASE NO. 5:25-cv-00951-PCP

# INTRODUCTION

Defendants have not filed any motions during the discovery phase of this case, preferring to work out issues with the Department of Justice Antitrust Division ("DOJ") by negotiation and agreement. That approach has resulted in the successful completion of document discovery, 43 fact depositions conducted to date, and extensive expert discovery that is proceeding according to schedule. As a result of this work, the parties are well-positioned to present this case over the eight business days (July 9-11 and 14-18) that the Court has allotted for trial.

At this juncture, Defendants seek the Court's involvement because it has become clear that DOJ does not intend to constrain its case to its fair share of that trial time. Instead, DOJ wants to use more than half of the in-court time at trial for its case, and to supplement this uneven division of time by conducting what amounts to a second, out-of-court trial through the introduction of deposition testimony outside of trial and exhibit admissions with no witness examination.

In particular, in negotiations between the parties, the DOJ has taken the following positions:

1. That the in-court trial record time should be divided unevenly between the parties, with DOJ initially proposing 33 hours for itself and 23 hours for Defendants, and ultimately modifying its proposal to 30 hours for itself and 26 for Defendants.

2. That DOJ also should be allowed to introduce deposition designations, without limitation, for the Court to review outside of trial. DOJ's opening set of designations confirms the breadth of its intent, as it designated more than 25 hours of testimony from 13 witnesses. Defendants, by contrast, designated less than 8 hours in total from 18 witnesses.

3. That the Court should not enforce the rule on sponsoring witnesses, such that DOJ can admit any document into evidence so long as it is authenticated and satisfies a hearsay exception. In practice, this means that DOJ could seek to move in virtually any documents from its exhibit list (which currently features 880 entries) without having any witness put the documents into proper context or explain what they mean.

DOJ's primary justification for these positions is that it bears the burden of persuasion. But this does not entitle DOJ to tilt the playing field in its favor, or to supplement its in-court presentation via the equivalent of a second trial composed of deposition designations and documents admitted

without any witness testimony.  If DOJ is correct in its view that the merger should be blocked, it should be able prevail on an even playing field, in proceedings conducted in open court and subject to the customary rules of trial.  For such reasons, courts in other merger trials—including several recent cases in this District—have allotted the parties equal trial time, required deposition designations to be played in court, and enforced the rule on sponsoring witnesses.

Moreover, the dangers of DOJ's proposed approach are elevated here, because the Court must assess the entire challenged market to determine whether the merger would substantially lessen competition. DOJ's case rests on a myopic focus on competition between HPE and Juniper. Defendants do not dispute this competition but maintain that it is only properly understood in the context of the broader market.  Thus, Defendants have amassed economic analyses that HPE and Juniper compete with each other no more (and often less) than with other competitors, documentary evidence corroborating those analyses, and testimony from third parties including the other competitors, reputable industry analysts, customers, and resellers, all of which shows the challenged market to be highly competitive and dynamic.

At trial, the Court will decide whether such evidence, or DOJ's myopic focus on HPE's competition with Juniper, is more persuasive.  But allowing DOJ to dominate the trial time, and supplement it through limitless deposition designations and unsponsored document submissions, will not help answer that question.

For these reasons, and as explained more fully below, Defendants ask the Court to order that:

(1) Trial time will be allotted equally between the sides and will be tracked via a chess clock applicable to all witness questioning.

(2) Deposition designations and counter-designations will be played at trial and will count against the chess clock the same as live testimony.

(3) The rule on sponsoring witnesses will be enforced at trial.

**BACKGROUND**

**I.     Brief Overview of Discovery Conducted to Date**

DOJ alleges that HPE's proposed acquisition of Juniper "risks substantially lessening competition" in the market for enterprise-grade WLAN solutions in the United States." Compl. ¶¶ 2, 31, 34, 39.  In accordance with the Court's scheduling order and case management plan, the parties have worked diligently and in good faith to take discovery from dozens of market participants, including customers, resellers, analysts, and competitors.  Pursuant to notices it issued, DOJ has taken 22 fact depositions (with at least one more outstanding),[1] 16 of which were of HPE and Juniper witnesses.  DOJ also disclosed an affirmative economic expert whose opening and rebuttal reports focused primarily on reviewing documentary evidence of competition between HPE and Juniper. Pursuant to notices they issued, Defendants have taken 21 depositions (with at least one more outstanding),[2] all of which were of third parties, including competitors, customers, resellers, and industry analysts.  Defendants also disclosed two economic experts, one to rebut the DOJ's expert's opinions on unilateral effects, and the other to rebut the DOJ's expert's opinions on collateral effects and innovation.

**II.     Negotiations Over Trial Logistics**

In keeping with their collaborative approach, the parties have discussed trial logistics in advance of the June 30 pretrial conference.  To that end, on May 28, 2025, DOJ outlined a proposal on numerous trial topics. *See* Stojilkovic Decl., Ex. A, May 28, 2025 Email from M. Freeman to Defendants' Counsel.  As relevant here, DOJ proposed that: (1) "Plaintiff gets 33 hours (about 60%) and Defendants get 23 hours" of trial time; (2) the "time allocation is calculated by use of a chess clock, meaning that time is only deducted when questioning a witness or playing a deposition designation or read in;" and (3) "[p]arties will not object to exhibits on the basis of authenticity or lack of foundation because the exhibit is being admitted without a sponsoring witness." *Id*.

---

[1] At least one fact deposition noticed by DOJ – a Juniper witness – will occur out of time by agreement of the parties.

[2] At least one fact deposition noticed by Defendants – the CEO of a key WLAN competitor – will occur out of time by agreement of the parties because of the CEO's limited availability. Defendants reserve the right to submit designations for this witness at a later date.

3

The parties exchanged further correspondence and met and conferred multiple times to discuss DOJ's proposal. Based on those discussions, the parties have reached or are likely to reach agreement on many other issues, subject to the Court's approval. These include the length of opening statements; seeking guidance from the Court on the format and length of closing arguments; an understanding on the circumstances under which the parties would preview demonstratives with each other; a timeline for the exchange of witness order; and the proposed length of pre- and post-trial briefs and proposed findings of fact and conclusions of law.

It has become clear, however, that the parties are at an impasse on the matters presented in this motion. In particular:

Allocation of Trial Time: In support of an uneven allocation of trial time, DOJ argued that it bears the burden of persuasion and that it will put on its case first and will thus have to present necessary background for the Court. Defendants argued that an uneven division of time would invite meeting the burden by fiat rather than persuasion, by allowing DOJ to present more evidence than Defendants. Defendants also disagreed that DOJ should be permitted more time because it is going first, noting that DOJ's background recitation will align with its theory and not that of the defense. As the parties confirmed impasse and prepared for motions practice, DOJ amended its proposed split of time to 30 hours for itself and 26 for Defendants, and also noted that "if the Court disagrees with our position, we will be seeking additional time- either starting on an earlier date (such as July 7) or by having longer trial days." Stojilkovic Decl., Ex. B, June 9, 2025 Email from M. Freeman to Defendants' Counsel, at 3. Defendants responded by reiterating their position that the trial time should be split equally, and by noting that DOJ's suggestion of extending the trial days or time underscored the importance of the impasse. Stojilkovic Decl., Ex. B, June 10, 2025 Email from K. Stojilkovic to DOJ Counsel, at 2.

Chess Clock: The parties agreed that a chess clock should be used and that the time each side spends at trial with a witness (whether by live questioning or by its deposition designations and counters that are played at trial) should count against the clock. However, the parties disagreed as to whether the chess clock should also apply to any deposition designations submitted to the Court but not played at trial. DOJ has emphasized this Court's statement at the February 28, 2025 status

4

conference, where the Court indicated that it does not "need every deposition . . . to be played for me" and is "happy to [read designations] on [its] own and use the time in here more productively," leaving it to the parties to decide whether "it's important to play [designations] and use that time." Hr'g Tr. 19:17–20:10, Feb. 28, 2025, Case Mgmt. Conf., *United States v. Hewlett Packard Enter. Co*. Defendants acknowledged these statements, but noted that the parties had not briefed or argued the issue before or at the February 28 conference. In the meet and confer, Defendants offered two substantive reasons why, in this case, deposition designations should be played at trial: the public interest favors this practice, and this trial involves many third parties for whom live attendance at trial is a substantial imposition but whose testimony is no less important than that of the witnesses who will be appearing live. In addition, Defendants argued that, as a procedural matter, running deposition designations against the chess clock when they are played but not if they are submitted outside of court creates perverse incentives, in that the former would need to be carefully edited for time while the latter would not. DOJ maintained that it intends to rely on the Court's statement from the February 28 conference to present deposition designations outside of trial, without limitation.

    Sponsoring Witnesses: DOJ argued that dispensing with the rule on sponsoring witnesses would be efficient, noting that the case management plan permits the parties to establish authenticity and hearsay exceptions for party and third-party documents. Defendants responded that the rule on sponsoring witnesses is a different requirement than authenticity or hearsay exceptions, as it ensures that there is a percipient witness who can put a document into proper context. Defendants also noted that DOJ's proposal would prejudice them, because Defendants would either be forced to use their witness trial time to put documents into proper context if DOJ is permitted to admit them without a sponsoring witness, or for third parties not called at trial, Defendants would lack any means of contextualizing sponsor-less documents. Finally, Defendants expressed their concern that, in combination with DOJ's position on deposition designations, the sponsoring witness abrogation was suggestive of a strategy to move in large swaths of evidence outside of trial time and then argue that the evidence so admitted should carry the burden of persuasion and overcome the showing that Defendants made at trial. Defendants noted that courts have resisted such practices.

DEFENDANTS' MOTION FOR EVEN ALLOTMENT OF TRIAL TIME AND TO PRECLUDE TRIAL BY SUBMISSION
CASE NO. 5:25-cv-00951-PCP

### III.     Status of Pretrial Exchanges

The importance of the impasses described above was driven home by the parties' exchange of exhibit lists, final witness lists, and affirmative deposition designations.  Even though the parties have spent roughly equal time in questioning witnesses and introducing documents at depositions, DOJ included 880 documents on its exhibit list while Defendants included 428 on theirs.  DOJ also indicated that it would call at least 9 fact witnesses live at trial (in addition to its expert), while Defendants indicated that they would call at least 6 fact witnesses live at trial (in addition to their two experts).  Most concerning, while Defendants affirmatively designated approximately 8 hours of testimony in total from 18 deposition witnesses, DOJ affirmatively designated more than 25 hours from 13 deposition witnesses.  When the parties exchange counter-designations on June 11, the number of hours of designated deposition testimony will inevitably expand.

These exchanges reflect a fundamental misalignment between the parties about how this case will be tried.  Defendants have been working hard to streamline and synthesize their case to fit the eight days of trial that have been set by the Court, which is a normal length of time for a merger trial.  DOJ has not, and it is hard to square their pre-trial disclosures with an eight-day trial.

### LEGAL STANDARD

Courts have inherent authority to control the course of litigation, including discretion to manage time allotments at trial and the mode of presenting evidence.   *See, e.g.*, Fed. R. Evid. 611(a)(1) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence."); *Amarel v. Connell*, 102 F.3d 1494, 1513 (9th Cir. 1996), *as amended* (Jan. 15, 1997) ("A district court is generally free to impose reasonable time limits on a trial . . . to prevent undue delay, waste of time, or needless presentation of cumulative evidence.") (citation omitted); *Barnes v. Dist. of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)) (observing the district court's "inherent authority to manage the course of trials").

Courts routinely allocate time equally between the parties in antitrust cases, including merger cases.  *See, e.g.*, Pretrial Conf. Tr. 33:7-9, Dec. 5, 2022, *Fed. Trade Comm'n v. Meta Platforms, Inc.*, No. 5:22-cv-04325 (N.D. Cal.), ECF No. 494 (ordering an even split).  They also order deposition

6

1  designations be played as part of the trial. *See, e.g.*, Ord. Continuing Further Case Mgmt. Conf. and

2  Providing Guidance Regarding Particular Issues, at 1, Sept. 7, 2018, *Fed. Trade Comm'n v.*

3  *Qualcomm, Inc.*, No. 17-cv-00220-LHK (N.D. Cal), ECF No. 826 (rejecting submission of

4  deposition designations in writing). And they have enforced the rule on sponsoring witnesses. *See*

5  *Fed. Trade Comm'n v. Qualcomm, Inc.*, No. 17-cv-00220-LHK (N.D. Cal), ECF No. 1208, (listing

6  sponsoring witness for each exhibit); Ex. List, Nov. 18, 2022, *Fed. Trade Comm'n v. Meta Platforms,*

7  *Inc.*, No. 5:22-cv-04325 (N.D. Cal.), ECF No. 246 (same). As several of the undersigned defense

8  counsel can attest, such practices were also generally followed by Judge Corley in this District's

9  most recent merger trial, *Fed. Trade Comm'n v. Microsoft Corp.*, 681 F.Supp.3d 1069 (N.D. Cal.

10  2023).

11                                    **ARGUMENT**

12  **I.    The Parties Should Be Allotted Equal Time at Trial**

13         DOJ's suggestion that Defendants be allotted less than half of the trial time is inequitable and

14  prejudicial. An unequal division of time would give DOJ an unfair advantage. In particular, it would

15  allow DOJ to meet its burden not by persuasion, but by the fiat of presenting more evidence and then

16  arguing that the font and weight of the admitted evidence supports its claims.

17         Even though the government bears the burden, courts routinely give parties equal time in

18  merger challenges. *See* Case Mgmt. and Scheduling Ord. at 11, May 1, 2024, *Fed. Trade Comm'n*

19  *v. Tapestry, Inc.*, No 1:24-cv-03109 (S.D.N.Y.), ECF No. 71 (allocating 20 hours per side); Pretrial

20  Memo. at 16, Sep. 15, 2023, *United States v. JetBlue Airways Corp.,* No. 1:23-cv-10511-WGY (D.

21  Mass), ECF No. 191 (allocating 35 hours per side); Pretrial Conf. Tr. 33:7-9, Dec. 5, 2022, *Fed.*

22  *Trade Comm'n v. Meta Platforms, Inc.*, No. 5:22-cv-04325 (N.D. Cal.), ECF No. 494 ("[E]ach of

23  you would have 50 percent of those hours to use as you saw fit."); Pretrial Conf. Ord. at 1, Apr. 5,

24  2022, *United States v. U.S. Sugar Corp.*, No. 1:21-cv-01644 (D. Del.), ECF No. 176 (allocating 14

25  hours per side); Pretrial Conf. Tr. 10:10-11, Jan. 17, 2020, *United States v. Sabre Corp.*, No. 1:19-

26  cv-01548 (D. Del.), ECF No. 197 ("And to be clear, I will give you both the same amount of time.");

27  Joint Civ. Case Mgmt. Plan and Scheduling Ord. at 6, Aug. 20, 2019, *State of N.Y. v. Deutsche*

28  *Telekom AG* No. 1:19-cv-05434 (S.D.N.Y.), ECF 201 (committing to equitably divided time at trial).

So too here, Defendants should have an equal opportunity to present their defense and respond to DOJ's evidence.  Moreover, the above cases show that the eight days the Court has allocated are well within the mainstream for trial length in merger cases, and undermine DOJ's suggestion in the meet and confer that the trial should be extended if DOJ is not allotted more than half of the time in an eight-day trial.

DOJ's remaining argument—that it needs additional time to introduce foundational concepts and explanatory information—is unavailing.  First, this is a bench trial, where the Court will have the benefit of pre-trial briefing from the parties.  *See* Scheduling Ord. at 3, Mar. 7, 2025, *United States v. Hewlett Packard Enter. Co.*, No. 25-cv-00951-PCP (N.D. Cal.), ECF No. 104.  Second, trial is an adversarial process.  DOJ will frame issues for the Court in a manner that is most persuasive to its case, and Defendants will require an equal amount of time to set forth any relevant background from their perspective.  For instance, it is highly unlikely that DOJ would present background information on other WLAN competitors, or on industry analysis, in the same way as Defendants would, since DOJ's case rests on trying to discredit such players while Defendants view them as vital proof of the competitive landscape.

Finally, an equal division of trial time is particularly warranted here because the Court has made clear that July 18 is a hard stop, as the Court is not available to sit the following week.  Hr'g Tr. 6:6–11, Feb. 28, 2025, Case Mgmt. Conf., *United States v. Hewlett Packard Enter. Co*.  Thus, if DOJ is permitted to take up more than half of the trial time over the scheduled eight days, the Court will be unable to remedy the issue by allowing the trial to run beyond July 18.  Any extra time that DOJ gets at trial will necessarily be at Defendants' expense.  The only way to prevent this outcome is to make clear, from the outset, that the parties will have equal time, and to enforce those limits.

## II. Deposition Designations and Counter-Designations Should Count Against the Trial Clock and Be Played at Trial

Defendants understand that the Court previously indicated that deposition designations could be played at trial or submitted outside of it.  *Id.* at 19:17–20:10. But this guidance was provided without briefing or argument, and without an understanding of how the parties would approach the issue if left to their own devices.  The pretrial exchange of affirmative deposition designations makes

8

1  clear that DOJ is looking to use deposition designations as a means of doubling (or more) its trial

2  record. DOJ has no intention of playing the more than 25 hours of affirmative designations at trial—

3  nor could it, since doing so would leave it with virtually no time to call any of the at least 9 fact

4  witnesses DOJ intends to call live at trial, or its expert.

5      This is no way to try a case. The Court should require that the parties' deposition designations

6  and counter-designations be played at trial and count against their allotted time for trial. This forces

7  both sides to focus their case on the most persuasive evidence and to present it efficiently. It also

8  allows the Court to hear the testimony in the context of the other evidence being presented. In short,

9  if DOJ believes evidence is important enough for the Court to consider, it should present it in open

10 court where the Defendants can respond, the Court can take it in at the same time as the remaining

11 evidence, and the public can observe within the perimeters of reasonable confidentiality limitations.

12 A ruling to this effect, issued before trial, would cause DOJ to trim its deposition designations to

13 realistically comport with the length of trial.[3]

14     Courts in this district have required that deposition designations count against a party's total

15 trial time. *See* Ord. at 1-2, Mar. 3, 2022, *City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 3:18-cv-

16 07591-CRB (N.D. Cal.), ECF No. 1131 (explaining that "[t]ime devoted to reviewing these

17 designations will be charged against trial time" based on the "run time" of video or pages); Pretrial

18 Ord. No. 2, at ¶ 2, Mar. 23, 2021, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D.

19 Cal.), ECF No. 381 (explaining that the court will "read" deposition designations "determined as

20 timed by the deposition" and count against the designating party's afforded hours).

21     In addition, courts in this district have specifically required that deposition designations be

22 played at trials, including bench trials. *See, e.g.*, Ord. Continuing Further Case Mgmt. Conf. and

23 Providing Guidance Regarding Particular Issues, at 1, Sep. 7, 2018, *Fed. Trade Comm'n v.*

24 *Qualcomm, Inc.*, No. 17-cv-00220-LHK (N.D. Cal), ECF No. 826 (explaining that "the Court will

25 not accept into evidence deposition testimony solely in writing" in lieu of presenting the deposition

---

26

27  [3] Defendants will respond to DOJ's extensive affirmative designations with counter-designations during the pendency of this motion, but Defendants will reserve the right to narrow their

28  counter-designations if DOJ narrows its affirmative designations in response to a ruling from the Court. Both sides should have full incentive to present tight and focused designations and counters.

1    testimony during the parties' trial time).  This was also the practice in the *Microsoft* case.  And courts

2    outside this District have reached similar conclusions.  *See, e.g.*, Pretrial Conf. Tr. 5:12-14, Jan. 17,

3    2020, *United States v. Sabre Corp.,* No. 1:19-cv-01548 (D. Del.), ECF No. 197 (instructing the

4    parties that they must "use time at trial" for any deposition designations to be considered by the court

5    "either by reading the deposition testimony in or playing it by video"); *id*. at 6:7-12 ("[T]he reality

6    is when I'm in the courtroom with you, I will be thinking about your case; and when I'm not, I can't

7    promise that I will be thinking about your case; and so to insure that I am exposed to the full record,

8    it works best for me if you take up time in trial for [depositions].")

9         Presenting the deposition designations in court furthers the public's interest in access to the

10   judicial process.  This is the first merger enforcement challenge of the new Administration, and the

11   lawsuit has generated media coverage and industry analysis.[4]  Public access to judicial records

12   bolsters the public's "understanding of the judicial process" and provides a "measure of

13   accountability" for courts.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir.

14   2016); *see also* Pretrial Conf. Tr. 5:04-05, June 21, 2023, *Fed. Trade Comm'n v. Microsoft Corp.*,

15   No. 3:23-cv-02880-JSC (N.D. Cal.), ECF No. 276 (requiring depositions to be played at trial and

16   reminding the parties that "public access is important").

17        What's more, DOJ *agreed* that deposition designations should be played at trial—and not

18   submitted outside of the trial time—in at least two recent merger cases.  *See* Joint [Proposed] Pretrial

19   Ord. at 13, April 4, 2022, *U.S. Sugar Corp.*, No. 1:21-cv-01644 (D. Del.), ECF No. 173 (requiring

20   deposition excerpts to be played at trial in order to be introduced into evidence); Proposed Joint

21   Pretrial Ord. [as ordered], at 8, Apr. 11, 2017, *United States. v. Energy Sols, Inc. et al.*, Case No. 16-

22   cv-01056 (D. Del.), ECF No. 203 (same).  Invariably some testimony, including portions of

23   deposition designations, will be sealed for confidentiality reasons, but that is a far cry from inviting

24   a mass submission of deposition designations out of court as DOJ's position here would allow.

25        Finally, if the Court is unwilling to require that all deposition designation be played at trial,

26   it should at least strictly curtail the amount that can be submitted out of trial.  Even in a non-merger

27   

28        [4] *See, e.g.*, HPE Answer at 3-4, ECF No. 44; Juniper Answer at 6-7, ECF No. 41.

DEFENDANTS' MOTION FOR EVEN ALLOTMENT OF TRIAL TIME AND TO PRECLUDE TRIAL BY SUBMISSION
CASE NO. 5:25-cv-00951-PCP

1  context, courts recognize the dangers of trying antitrust enforcement cases via large submissions of

2  deposition designations outside of court.  *See* Ord. at ¶ 2, *Fed. Trade Comm'n v. Meta Platforms,*

3  *Inc.*, Feb. 10, 2025, No. 20-3590-JEB (D.D.C.), ECF No. 398 (observing that the court "is not

4  interested in receiving a substantial number of written deposition designations to review after the

5  trial, and it intends to largely base its verdict on testimony introduced at trial").  Here, the compressed

6  timeline of merger litigation, and the necessity for a decision in advance of the October 9, 2025

7  transaction termination date, makes such concerns starker.  This is not only a matter of fairness to

8  Defendants, but also to the Court, which must digest any materials submitted outside of trial in short

9  order.  If the Court were to rule for Defendants at trial and permit the merger to proceed, DOJ should

10  be constrained in any potential appeal to the matters heard at trial and addressed in the Court's

11  decision, rather than to be able to point to some hitherto un-emphasized evidence in the hours of

12  deposition testimony and exhibits introduced out of court.  For these reasons, even if the Court is

13  willing to receive some deposition designations and counters outside of the trial time, they should be

14  limited to no more than three hours per side.

15  **III.    The Rule on Sponsoring Witnesses Should Be Enforced at Trial.**

16          The Court should enforce the rule on sponsoring witnesses.  Without it, the parties would be

17  able to move documents into evidence, including from third parties that are not on either party's

18  witness list,[5] without a fact witness who can speak to a document's meaning and context.  This would

19  be improper.

20          The rule on sponsoring witnesses serves several functions beyond authenticating a document

21  or laying the foundation for a hearsay exception such as the business records.  Requiring a sponsoring

22  witness ensures the opportunity "to contextualize and explain the technical and lengthy documents

23  at issue, which might otherwise be misunderstood or selectively cited in post-trial briefs." *United*

24  *States v. AT&T Inc.*, 310 F. Supp. 3d 161, 186-87 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir.

25  2019).  The record in this case is voluminous, and the combined exhibit lists amount to well over

26  _____

27          [5] DOJ has telegraphed its intention to admit these documents into evidence wholesale by
   sending out 25 requests for Rule 902(11) declarations to third parties on June 5, 2025, including third
28  parties that were not deposed and are not on either side's witness list. *See* Stojilkovic Decl. ¶ 6.

1   1,000 documents. These materials showcase years-long deliberations and negotiations, analyses,
2   strategies, apprehensions, and wins and losses from the countless businesses entwined in this
3   litigation. A sponsoring witness ensures that pivotal knowledge about the exhibits can be provided
4   (*e.g.*, Are the drafts or final versions? Do they reflect broader views of an issue? Have circumstances
5   changed? Are any statements misconstrued or taken out of context?).

6       Unsurprisingly, courts in this district have required sponsoring witnesses, including in
7   complex antitrust trials with voluminous records. *See, e.g.*, Ex. List, Jan. 9, 2019, *Fed. Trade*
8   *Comm'n v. Qualcomm, Inc.*, No. 17-cv-00220-LHK (N.D. Cal), ECF No. 1208, (listing sponsoring
9   witness for each exhibit); Ex. List, Nov. 18, 2022, *Fed. Trade Comm'n v. Meta Platforms, Inc.*, No.
10  5:22-cv-04325 (N.D. Cal.), ECF No. 246 (same); Pretrial Conf. Tr. No. 4,  29:11-30:12, Apr. 22,
11  2021, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.), ECF No. 471
12  (instructing the parties to identify portions of a deposition that authenticate an exhibit). The same is
13  true outside this District. *See, e.g.*, Pretrial Conf. Tr. 15:11-16, Jan. 17, 2020, *United States v. Sabre*
14  *Corp.*, No. 1:19-cv-01548 (D. Del.), ECF No. 197 ("[Y]ou do need to show a witness an exhibit if
15  you want it to be made part of the evidentiary record. I don't allow, you know, at the end of trial
16  suddenly a whole universe of exhibits come into evidence that no one took the time to even show to
17  a witness and therefore showed to me."); *see also* Pretrial Conf. Tr. 10:22-23, April 4, 2022, *U.S.*
18  *Sugar Corp.*, No. 1:21-cv-01644 (D. Del.), ECF No. 175 ("Documents can only come into evidence
19  if they are on an exhibit list and shown to a witness.").

20      DOJ's proposal to discard the sponsoring witness rule suggests an intent to push large
21  volumes of documents into evidence without ever having a percipient witness address them. Without
22  a sponsoring witness, DOJ can cite documents in their post-trial submission and re-package and re-
23  contextualize those documents to align with whatever narrative best fits their case, *after* the Court
24  will have heard from both the DOJ's and the Defendants' witnesses. In this scenario, the parties are
25  left to fight over the meaning of documents after trial without the benefit of knowledgeable witnesses.
26  This is all the more concerning here because the case schedule calls for a simultaneous exchange of
27  post-trial submissions with no replies, meaning that there will be no opportunity for Defendants to
28  answer mischaracterizations of an unsponsored exhibit in DOJ's post-trial submissions. DOJ's

12

1    proposal also raises the same public access concerns posed by introducing deposition transcripts

2    without presenting them at trial, as it would leave the public to rummage the docket for documents

3    admitted outside of trial.

4        Defendants' concern about DOJ's misuse of exhibits moved into evidence without a

5    sponsoring witness is not hypothetical—it is borne out by recent practice.  Just a few months ago,

6    after concerns were raised about DOJ's presentation of evidence for the first time in post-trial

7    submissions during the liability phase of *United States v. Google*—a case that features a number of

8    DOJ attorneys who are also on this case—District Court Judge Amit Mehta urged the parties that

9    "the exhibits you want me to really focus on ought to be presented here in trial and live," and "as a

10   practical and general matter, we ought to avoid having substantial evidence . . . pushed in and not

11   presented to [the Court]." *See* Hr'g Tr. 29:11-30:1, Mar. 10, 2025, *United States v. Google LLC*, No.

12   20-cv-03010-APM (D.D.C.).  If that was a colorable concern in a conduct case that has taken years

13   to litigate, where the court is not under any imminent time pressure to issue a decision, it is far more

14   so in the merger context presented here.

15       Adhering to the rule on sponsoring witnesses will ensure that the evidence admitted at trial

16   is properly contextualized for the Court through percipient fact witnesses.  Defendants respectfully

17   submit that DOJ should not be permitted to engage in trial by submission.

18   **CONCLUSION**

19       For the foregoing reasons, Defendants respectfully ask the Court to order that:

20       (1) Trial time will be allotted equally between the sides and will be tracked via a chess clock

21   applicable to all witness questioning.

22       (2) Deposition designations and counter-designations will be played at trial and will count

23   against the chess clock same as live testimony.

24       (3) The rule on sponsoring witnesses will be enforced at trial.

25

26

27

28

13

Dated:  June 10, 2025

By: /s/ Jack P. DiCanio
Jack P. DiCanio
*Attorney for Defendant*
*JUNIPER NETWORKS, INC.*

Jack P. DiCanio (SBN 138782)
Michael C. Minahan (SBN 311873)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Jack.DiCanio@skadden.com
Michael.Minahan@skadden.com

Steven C. Sunshine (*pro hac vice*)
Tara Reinhart (*pro hac vice*)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-8301
Steve.Sunshine@skadden.com
Tara.Reinhart@skadden.com

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

Respectfully Submitted,

By: /s/ Kosta S. Stojilkovic
Kosta S. Stojilkovic (*pro hac vice*)
*Attorney for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*

Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Roxana C. Guidero (Bar No. 319299)
Jenna Pavelec (*pro hac vice*)
Kellen M. McCoy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4010
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com
kmccoy@wilkinsonstekloff.com

Owen W. Gallogly (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
ogallogly@wilkinsonstekloff.com

Julie S. Elmer (*pro hac vice*)
Eric Mahr (*pro hac vice*)
Jennifer Mellott (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
eric.mahr@freshfields.com
jennifer.mellott@freshfields.com

Justina K. Sessions (Bar No. 270914)
**FRESHFIELDS US LLP**
855 Main St
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

Samuel G. Liversidge (Bar No. 180578)
Daniel Nowicki (Bar No. 304716)

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
DNowicki@gibsondunn.com

Stephen Weissman (*pro hac vice*)
Michael J. Perry (Bar No. 255411)
Kristen C. Limarzi (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
SWeissman@gibsondunn.com
MJPerry@gibsondunn.com
KLimarzi@gibsondunn.com

*Attorneys for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*

DEFENDANTS' MOTION FOR EVEN ALLOTMENT OF TRIAL TIME AND TO PRECLUDE TRIAL BY SUBMISSION
CASE NO. 5:25-cv-00951-PCP