MICHAEL J. FREEMAN (OH BAR # 0086797)
Senior Litigation Counsel
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Email: Michael.Freeman@usdoj.gov

[Additional counsel listed on signature page]

Attorney for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  5:25-CV-00951-PCP |
| *Plaintiff,* | JUDGE: Hon. P. Casey Pitts |
| v. | MAGISTRATE JUDGE: Hon. Susan van Keulen |
| HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION REGARDING TRIAL LOGISTICS** |
| *Defendants.* |  |

1

Plaintiff the United States of America ("United States") respectfully files this opposition to Defendants Hewlett Packard Enterprise Co. ("HPE") and Juniper Networks, Inc.'s ("Juniper's") "Motion for Even Allotment of Trial Time and to Preclude Trial By Submission" ("Motion"), ECF No. 126. For the reasons stated below, Defendants' Motion should be denied.

## INTRODUCTION

Defendants' Motion is a request to change the rules in the final innings of the game. Less than four weeks before trial, Defendants request that the Court revisit the manner in which the Parties submit designated deposition testimony and require exhibits to be admitted with sponsoring witnesses. Those changes would dramatically change the presentation of evidence at trial and should be denied.

Defendants make only passing reference to the fact that the Court already issued guidance on a key issue presented in their Motion. At the initial Case Management Conference in February, the United States sought guidance on the submission of designated deposition testimony. The Court stated that it did not need "every deposition that you're putting in as a factual matter to be played for me." Instead, like many other courts presiding over merger litigation, including in this district, the Court said it would read deposition transcripts on its own so the Parties could "use the time in [court] more productively." *See e.g.*, *United States v. Bazaarvoice, Inc.*, No. 13-CV-00133-WHO, 2014 WL 203966, at *2 (N.D. Cal. Jan. 8, 2014) (court ruled after "listening to the testimony of 40 witnesses, reading more than 100 depositions, [and] reviewing more than 980 exhibits."). Defendants did not express concern about the Court's guidance at the time, nor did they raise the issue with the United States once during fact discovery. Instead, they waited three months and until the eve of trial—*after* the Parties exchanged final witness lists, *after* they identified witnesses testifying live and by designation, and *after* they exchanged deposition designations—to request the Court change course and require the Parties to use their limited in-court time to play designated deposition testimony.

Timeliness is just one of many flaws in Defendants' proposed rule change. The United States followed the Court's guidance during fact discovery when making decisions about who to depose and how to present testimony at trial. Changing the rules now would force the United States to revisit its trial plan and potentially its final witness list as Defendants' proposal would eat up a substantial amount of trial time better spent examining witnesses. And, most importantly, Defendants' Motion if granted

would result in a less robust evidentiary record.

Defendants' second proposal, that every exhibit be admitted through a sponsoring witness, suffers from similar infirmities. Nothing in the Case Management Plan or the Federal Rules of Evidence or Procedure mandates exhibits come in through a sponsoring witness, and had Defendants raised the issue in February, the United States would have sought more trial time, more depositions, and a higher cap on the number of trial witnesses. Moreover, Defendants' request would introduce inefficiency to the presentation of evidence, requiring witness testimony for the sole purpose of admitting exhibits. In some cases, witnesses may appear just to recite facts in a 902(11) certification. Unless trial is extended, that process would eat up court time that would otherwise be used for substantive witness testimony.

Defendants hide their evidentiary proposals behind a more mundane request for equal allotment of trial time. With only four trial days allocated to each side, there is a risk that the United States will need to cut live witnesses to ensure it has time to present its full case-in-chief. Other courts presiding over antitrust cases have given plaintiffs slightly more time than defendants to present their cases and the Court should do so here, since the United States holds the ultimate burden and, as the first to present, will spend more time establishing background concepts and facts.

Since the inception of the case, Defendants have attempted to limit the evidentiary record available for the Court's review. Defendants first advocated for a shorter trial on the most condensed schedule and now petition the Court for rules that would result in the least number of witnesses testifying and the least number of exhibits entered into the record. The Court should deny Defendants' request for these late-game rule changes. But if the Court is inclined to grant Defendants' Motion, the United States respectfully requests (1) an additional 14 hours of trial time allocated to the United States, to ensure adequate time to introduce exhibits and play designated deposition testimony in open court, (2) an increase in the number of witnesses each side can call live to ensure there is a custodian for each document, and (3) an opportunity to revise its deposition designations.

## BACKGROUND

Defendants are the second and third largest providers of enterprise-grade wireless local area networking solutions ("WLAN") in the United States today. The WLAN market is already highly

concentrated and will become more so as a result of the merger. Even Defendants concede the merger is presumptively illegal under the 2023 Merger Guidelines issued by the Department of Justice and the Federal Trade Commission. Moreover, as alleged in the Complaint, ECF No. 1., Defendants compete fiercely for customers today and the loss of head-to-head competition between them is likely to reduce discounting and the combined firm's incentive to invest in new product features. *See Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN, 2024 WL 5053016, at *17 (D. Or. Dec. 10, 2024) ("Courts recognize that a merger that eliminates head-to-head competition between close competitors can result in a substantial lessening of competition.").

On February 28, 2025, the Court held a case management conference in which it set trial dates and addressed other matters raised by the Parties. Those matters included the form in which designated deposition testimony would be presented during trial. The Court instructed the Parties to submit deposition designations, rather than play them during trial, so long as the Court could understand them adequately on its own:

> MR. FREEMAN: [A]ny other guidance you have about your trial routine and protocol would be helpful for planning purposes, just in terms of, like, deposition designations, do you like videos played during the trial or submission or things along that line? . . .
>
> THE COURT: . . . As a bench trial, I probably don't need every deposition that you're putting in as a factual matter to be played for me. . . . If there are areas where you think there are going to be important questions of credibility, then I think it is helpful for me to view that video. But if I feel that—I will sort of let you know—I will leave it to you if you think it's important to play that and use that time, that you can do so. But if you think that I can understand adequately reading the deposition transcript—I've read many in my life— then I'm happy to do that work on my own and use the time in here more productively.

Hr'g Tr. 19:08–20:04, Feb. 28, 2025, No. 25-cv-951, ECF No. 98.

On March 6, 2025, the Court entered a Case Management Plan negotiated by the Parties. ECF No. 103. The Case Management Plan provided for the exchange of each Party's exhibit list and deposition designations, along with deadlines for objecting to each, but has no provisions requiring deposition designations to be played live in court; limiting in any fashion the number of deposition designation submitted by each Party; or precluding the Parties from admitting into evidence exhibits

without a sponsoring witness. Defendants could have sought to negotiate with Plaintiff for these provisions, but they did not.

In March, April, and May 2025, the Parties engaged in extensive fact discovery on an expedited basis. The Parties collectively served nine requests for production of documents and data, over 200 third-party subpoenas, and three rounds of interrogatories. Plaintiff noticed 25 depositions of fact witnesses (including two 30(b)(6) depositions) and will take 23 before the start of trial. Defendants noticed 24 depositions and will take 22 by the start of trial. The Parties also served reports from five experts and deposed three experts.

On May 28, 2025, the United States sent Defendants a list of discussion topics related to trial logistics for discussion on a previously scheduled call between the Parties. The topics included the length of opening and closing arguments; allocation of trial time; use of a chess clock; group admission of exhibits; the exchange of demonstrative exhibits; the length of proposed findings of fact and conclusions of law; and the form and substance of the pre-trial brief. The United States proposed requesting a status conference for June 5, 2025. Defendants suggested instead that the Parties continue discussing trial logistics and, if needed, brief areas of impasse at a later date.

On May 29 and June 2, 2025, the Parties exchanged final witness lists. Plaintiff identified nine witnesses who may testify live, nine witnesses who may testify by deposition designations, and seven witnesses who may be called either live or by deposition designations. Defendants identified six witnesses who may testify live, 12 witnesses who may testify by deposition designations, and seven witnesses who may be called either live or by deposition designations. On June 2, the Parties also exchanged exhibit lists and opening deposition designations. The exchange included designations for any witness who may testify through deposition designations.

On June 9, Defendants informed the United States that it intended to file a motion to resolve the three areas identified in their Motion. In response, the United States identified areas of agreement between the Parties and amended its proposed trial allocation to 30 hours for the United States and 26 hours for Defendants. Defendants filed their Motion on June 10. The next day, the Parties exchanged

objections to each other's exhibit lists and opening deposition designations and exchanged counter designations.

## ARGUMENT

Federal Rule of Evidence 611(a) grants district courts broad discretion over the presentation of evidence at trial. Fed. R. Evid. 611(a)(1). *See generally Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995) ("[T]rial courts have broad discretion in making evidence rulings and handling late objections."); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (district courts have "inherent authority to manage the course of trials"). Defendants ask the Court to exercise that discretion to amend its February 2025 guidance permitting the Parties to submit deposition testimony without playing it in in live court and preclude admission of evidence without sponsoring witnesses. Those requests should be denied. Neither proposal is required by the Federal Rules of Civil Procedure or Evidence, and federal district courts routinely permit designated testimony to be submitted on paper and exhibits to come in without a sponsoring witness. Defendants' proposals would also waste trial time and could result in fewer witnesses testifying live and a less robust evidentiary record.

Defendants further ask for an even allocation of trial time between the Parties, even though courts presiding over other antitrust merger challenges have given the government more time to prove its case.

### I.    The Court Should Not Revisit its Instructions for Submitting Deposition Testimony

Defendants argue that the Parties' deposition designations and counter-designations should be played at trial and counted against their allotted trial time, asking the Court to reverse its February guidance on the same issue. No. 25-cv-951, ECF No. 126 at 12-14. The Court should decline to do so. Defendants' proposal is untimely and would disrupt Plaintiff's trial preparation, waste limited trial time, and, ultimately, result in a less robust evidentiary record.

As a threshold mater, courts routinely permit parties to submit designated testimony rather than use trial time for it to be played or read into the record. *See, e.g.,* Minute Ord., Nov. 02, 2023, *United States v. JetBlue Airways Corporation*, No. 23-cv-10511-WGY (D. Mass), ECF No. 426 (accepting paper submission of designated testimony); *see* Ord. at 1, Aug. 28, 2023, *United States v. Google LLC*,

No. 20-cv-03010-APM (D.D.C.), ECF No. 666 (same); Pretrial Ord. at 3, Oct. 31, 2016, *United States v. Aetna Inc.*, No. 16-cv-1494-JDB (D.D.C.), ECF No. 167 (same); Pretrial Ord. at 6, Oct. 13, 2015, *United States v. AB Electrolux*, No. 15-cv-1039-EGS (D.D.C.), ECF No. 157 (same); Ord. at 2, Aug 14, 2013, *United States v. Bazaarvoice, Inc.*, No. 13-cv-0133-WHO (N.D. Cal.), ECF No. 104 (same).[1] Courts frequently place no limits on the amount of designated deposition testimony that can be submitted out of court, *see, e.g.,* Ord. at 1, Aug. 28, 2023, *United States v. Google LLC*, No. 20-cv-03010, ECF No. 666, and even when they do, paper submissions are not deducted against the parties' allotted trial time, *see, e.g.*, Mem. to Counsel at 1, Sept. 6, 2022, *United States v. Booz Allen Hamilton Inc.*, No. 22-cv-1603-CCB (D. Md.), ECF No. 154.

Defendants' request to change the rules at this stage in the litigation is highly disruptive to trial preparations. Defendants' Motion comes three months after the case management conference and several days after the Parties exchanged final witness lists and deposition designations. The United States made witness selections and designated testimony in reliance on the Court's instruction regarding deposition testimony, and Defendants' request would require the United States to revisit its final witness list and designations to account for the changed rules, diverting resources away from trial preparation.

Worse, Defendants' request would significantly reduce the amount of time the Parties have to litigate their cases. At eight days, the trial is already short. For the United States to fit testimony from approximately fifteen live witnesses into the time allotted for its case-in-chief—while reserving time for openings, closings, cross-examinations—it already needs to move expeditiously through witness testimony and avoid redundancy. Unless the Court extends the length of trial, Defendants' proposal would force the United States to drop live witnesses, omit discussion of exhibits, and remove entire lines of inquiry to account for the time required to play designated testimony into the record. The result would be a less robust trial record. In return, little is gained. As the Court explained at the Case Management

---

[1] *See also* Suppl. Order at 1, Dec. 9, 2022, *United States v. Assa Abloy AB*, No. 22-cv-2791-ABJ (D.D.C.), ECF No. 51 (providing guidance for paper submission of deposition testimony); Joint Status Rep. at 3-5, July 20, 2022, *United States v. UnitedHealth Grp. Inc.*, No. 22-cv-481-CJN, ECF No. 80 (joint submission of agreed procedures for paper submission of deposition testimony); Pretrial Ord. at 2, April 27, 2017, *United States v. Deere & Company*, No. 16-cv-08515-EEC (N.D. Ill.), ECF No. 288 (accepting submission of deposition testimony); Ord. at 4, Oct. 18, 2016, *United States v. Anthem, Inc.*, No. 16-cv-1493-ABJ (D.D.C.), ECF No. 196 (providing guidance for paper submission of deposition testimony).

Conference, it is more than capable of reading deposition transcripts on its own and may even prefer to do so. Feb. 28, 2025 Hr'g Tr. 19:08–20:04, ECF No. 98 ("I've read many [deposition transcripts] in my life" and "I'm happy to do that work on my own and use the time in here more productively.").

Tellingly, many of the cases cited by Defendants involved longer trials where reading testimony into the record did not prejudice either party's ability to put on its case. For example, although the court in *Epic Games, Inc. v. Apple Inc.*, counted designated testimony against the parties' trial time, that court allotted 45 hours to each side for trial presentation. *See* Pretrial Ord. No. 2, at ¶¶ 1-2, Mar. 23, 2021, No. 4:20-cv-05640-YGR (N.D. Cal.), ECF No. 381. Similarly, in *City & Cnty. of S.F. v. Purdue Pharma L.P.*, the parties submitted direct testimony by declaration, which did not count against the 45 hours of trial time allotted to each side. *See* No. 3:18-cv-07591-CRB (N.D. Cal.), ECF No. 1237 at 13:3-9; 14:13-15:3; *see also* ECF No. 1189 at 1 (allocating one day to make opening statements to each side, which did not count against the allotted trial time).

None of Defendants' arguments in favor of its proposed rule change holds weight. Defendants accuse the United States of improperly expanding the trial record through designated testimony, but there is nothing improper about making additional evidence available to the factfinder and, regardless, it is not uncommon for a substantial amount of testimony to come in on the papers. *See, e.g.*, *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 182 (D.D.C. 2017) (discussing "deposition excerpts from more than 100 individuals"). Defendants suggest testimony submitted out of court cannot be rebutted, but there is no chance of surprise here as Defendants attended every deposition, examined each witness, and submitted objections and counter-designations. If Defendants are concerned about rebutting submitted testimony, they can submit counter-designations or call those witnesses to testify live in their case-in-chief. *See* Case Management Plan, ECF. No. 103, at 12 (permitting Parties to call any witness on either final witness list). Defendants also argue that their proposed rule change would encourage the parties to be more efficient with their court presentations and designations, but, as noted, the limited trial time already encourages efficiency. Defendants' public interest argument in favor of presenting deposition designations in court fares no better. The Court can guarantee public access to designated deposition

testimony by simply ordering the Parties to file the designated transcripts on the public docket. Defendants' proposed rule change should be denied.

## II. Requiring Sponsors for Exhibits Would Waste Trial Time and Inconvenience Witnesses

Defendants similarly ask the Court to prohibit the Parties from admitting exhibits without a sponsoring witness. Again, the Court should reject Defendants' proposal as it would waste limited trial time and could result in fewer live witnesses at trial and a less robust evidentiary record.

Neither the Federal Rules of Evidence nor the Case Management Order requires exhibits to be admitted through a sponsoring witness, and nothing cited by Defendants in their Motion states otherwise. The Federal Rules require parties to lay the necessary foundation for the authenticity and relevance of documents and address concerns about hearsay, but they do not mandate those steps be satisfied through live testimony. *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc*., No. 11-CV-00774-VC, 2017 WL 952955, at *1 (N.D. Cal. Mar. 12, 2017) ("There is no freestanding 'sponsoring witness' requirement in the Federal Rules of Evidence."). To the contrary, the Rules explicitly permit admissibility to be established through other means, including certifications. *See, e.g.,* Fed. R. Evid. 902(13) (permitting the authenticity of records generated by an electronic process or system to be established through a "certification of a qualified person" that complies with Rule 902(11) or 902(12)); Fed. R. Evid. 803(6)(D) (permitting the admissibility of records of a regularly conducted activity to be established, despite the rule against hearsay, "by a certification that complies with Rule 902(11) or (12)"); *see also* Fed. R. Evid. 902 advisory committee's notes on 2017 amendments ("The Rule specifically allows the authenticity foundation that satisfies Rule 901(b)(9) to be established by a certification rather than the testimony of a live witness.").

As the Rules Advisory Committee notes, a strict rule requiring a sponsoring witness to establish admissibility would be time consuming and wasteful. *See* Fed. R. Evid. 902 advisory committee's notes on 2017 amendments ("[T]he Committee has found that the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary."). For those same reasons, courts routinely exercise their discretion to admit exhibits into evidence without a sponsoring witness, enabling parties to "just move forward with [witness] testimony and not worry about foundational

1  questions." *See* Hr'g Tr. 86:9–86:16, Sept. 1, 2023, *United States v. Google LLC*, No. 20-cv-03010-

2  APM (D.D.C.) (allowing parties to admit exhibits without a live witness "[s]o we don't have to go

3  through the song and dance of asking me to admitted it, et cetera, et cetera, and we can just move

4  forward with the testimony and not worry about foundational questions.").

5        Efficiency concerns raised by the Rules Advisory Committee are particularly relevant here.

6  Requiring exhibits to be admitted through a sponsoring witness will result in less time for substantive

7  live witness testimony, inconvenience party and third-party witnesses, and ultimately deprive the Court

8  of the fullest record possible. *First*, it is not efficient to use trial time to establish foundation for exhibits

9  through live testimony. Authenticity and hearsay concerns can be addressed through certifications.

10  Exhibits' relevance is either clear on its face or detailed in post-trial briefing. For many exhibits, the

11  testimony of sponsoring witnesses adds little value—as party-produced documents are presumed

12  authentic, and, if kept in the regular course of business, do not pose hearsay concerns—but nonetheless

13  consumes trial time. *See e.g., Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1091–92 (S.D.

14  Cal. 2023) ("documents produced by a party in discovery can be deemed authentic when offered by the

15  party-opponent if there are sufficient indicia of authenticity on the face of the document and the party-

16  opponent does not contest the document's authenticity"); Fed. R. Evid. 801(d)(2), 803(6). Those timing

17  concerns are significant; as noted, the United States intends to use every minute of its allotted time. With

18  so little fat to cut, requiring sponsoring witnesses for every exhibit would force the United States to cut

19  substantive live witness testimony.

20        *Second,* requiring every exhibit to be shown to a live witness will inconvenience party and third-

21  party witnesses. It could result in witnesses staying on the stand longer—in some cases, just to be shown

22  exhibits to get them in the record—or coming to court to testify if they are connected to trial exhibits

23  that were not used in their depositions. That could impose additional expenses and inconveniences on

24  third parties, in particular, who have generally agreed to provide 902(11) certifications.

25        *Third,* requiring sponsoring witnesses for all exhibits will result in excluded evidence and,

26  ultimately, a less complete trial record, as the Parties drop exhibits that support trial live testimony and

27  build out the factual record, but are not efficient to present before a live witness given limited trial time.

28

*See, e.g.,* Hr'g Tr. 2997:13-17, Sept. 27, 2023, *United States v. Google LLC*, No. 20-cv-03010-APM (D.D.C.) ("[W]hat I want to avoid is a situation where a party is not in a position to introduce a piece of evidence simply because a records custodian wasn't called or something that is really very, you know, procedural in nature.").

Defendants argue that requiring sponsoring witnesses ensures the opportunity to contextualize and explain documents and prevents the United States from mischaracterizing key evidence in their post-trial filings, but that is a red herring. In practice, parties put critical exhibits before live witnesses to elicit helpful testimony so they can direct the Court's attention to key issues; exhibits admitted without a sponsoring witness often support collateral points or add additional context to testimony already elicited in open court. For example, an HPE trial witness may discuss a meeting held to discuss competition from Juniper's Mist product in higher education accounts. With limited trial time, it is often not efficient to hear from other witnesses who attended that same or similar meetings, but seeing their documents and reactions can provide additional context for live witness's testimony.

In support of their argument, Defendants cite *United States v. AT&T Inc.*, but while the *AT&T* court did generally—though not exclusively—require parties to admit documents through sponsoring witnesses, it "recogniz[ed] that doing so would extend, somewhat, the length of the trial." 310 F. Supp. 3d 161, 187 (D.D.C. 2018), *aff'd sub nom. United States v. AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019). That trial, which spanned 23 court days (starting March 19 and ending April 30, 2018), provided substantially more time for litigants to introduce documents than we have here. Similarly, Defendants cite a hearing transcript in *United States v. Google LLC* to argue that the United States will misuse evidence admitted without a sponsoring witness, but omit that, despite Google raising those same concerns, Judge Amit Mehta permitted the parties to admitted evidence without a sponsoring witness in the remedies phase of that trial, as he had in the liability phase. Hr'g Tr. 7:22–8:12, Apr. 10, 2025, *United States v. Google LLC*, No. 20-cv-03010-APM (D.D.C.). There, the court recognized there are alternative ways to disincentivize reliance on evidence not shown to live witnesses at trial without a wholesale exclusion of materials that did not come in with a sponsoring witness.

### III.    The Court Should Provide Plaintiff Additional Time to Present Its Arguments

Finally, Defendants ask the Court to allocate trial time between the Parties equally. Courts have assigned parties in merger challenges different amounts of time to put on their cases. *See, e.g,* Minute Ord., July 11, 2022, *United States v. Bertelsmann SE & Co. KGaA, et al.*, No. 21-cv-2886-FYP (D.D.C.) (allocated 38 trial hours to the United States and 34 hours to defendants); Pretrial Ord. at 1-2, Oct. 31, 2016, *United States v. Aetna Inc.*, No. 16-cv-1494-JDB (D.D.C.), ECF No. 167 (allocating 47 trial hours to the United States and 37.5 hours to defendants). A division that gives the United States a modest amount of additional time to present its case makes sense here, considering that it holds the ultimate burden and, as the first to present, will spend more time establishing background concepts and facts. Moreover, if the Parties' final witness lists are any indication, the United States currently intends to call more live witnesses, further cementing the need for Plaintiff to have more time than Defendants. Accordingly, the Court should allocate 30 hours of trial time to the United States and 26 to Defendants to present their cases.

Alternatively, if the Court adopt Defendants' proposals on designated testimony and sponsoring witnesses, the United States requests an additional 14 hours of testimony allocated to the United States, to ensure adequate time to introduce exhibits and submit designated testimony in whatever manner is most convenient for the Court.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion regarding trial logistics.

Dated: June 16, 2025

| | |
|---|---|
| JACKLIN CHOU LEM (CA Bar # 255293) | _/s/ Michael J. Freeman_ |
| Civil Chief | MICHAEL J. FREEMAN (OH BAR # 0086797) |
| San Francisco Office | Brian White |
| | U.S. Department of Justice |
| ELIZABETH S. JENSEN (CA Bar # 302355) | Antitrust Division |
| Assistant Civil Chief | 450 Fifth Street NW, Suite 4000 |
| San Francisco Office | Washington, DC 20530 |
| | Telephone: (212) 213-2774 |
| | Michael.Freeman@usdoj.gov |

Jeremy M. Goldstein (CA Bar # 324422)
Aaron M. Sheanin (CA Bar # 214472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (212) 229-2934
Jeremy.Goldstein@usdoj.gov
Aaron.Sheanin.usdoj.gov

*Attorneys for Plaintiff United States of America*

1

## **ATTORNEY ATTESTATION**

2       I, Jeremy M. Goldstein, am the ECF user whose identification and password are being used to file

3 PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION REGARDING TRIAL LOGISTICS. In

4 compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

5

6                                   /s/ *Jeremy M. Goldstein*
                                  Jeremy M. Goldstein

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I certify that on June 16, 2025, I served the foregoing on all counsel of record via ECF.

3

4

5    Dated: June 16, 2025                    By:   /s/ Jeremy M. Goldstein
                                              Jeremy M. Goldstein
6                                             U.S. Department of Justice, Antitrust Division
                                              San Francisco Office
7                                             450 Golden Gate Ave., Room 10-0101
                                              San Francisco, CA 94102-3478
8                                             Telephone: (415) 818-4752
                                              Jeremy.Goldstein@usdoj.gov
9

10                                            *Counsel for Plaintiff United States of America*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28