MICHAEL J. FREEMAN (OH BAR # 0086797)
Senior Litigation Counsel
JEREMY M. GOLDSTEIN (CA Bar # 324422)
Trial Attorney
United States Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (212) 213-2774
Fax: (202) 514-5847
Email: Michael.Freeman@usdoj.gov

[Additional counsel listed on signature page]

*Attorneys for Plaintiff United States of America*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC. <br><br> *Defendants*. | CASE NO. 5:25-CV-00951-PCP <br><br> JUDGE: Hon. P. Casey Pitts <br> MAGISTRATE JUDGE: Hon. Susan van Keulen <br><br> **PLAINTIFF UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*** |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION……………………………………………………………………………...1

II. BACKGROUND………………………………………………………………………….....1

III. Plaintiff's Motion in Limine No. 1: Evidence Related to Alleged Efficiencies or Synergies of the Merger is Barred by Defendants' Bait and Switch……………………………………………..2

    A. Background of Efficiencies Discovery……………………………………………………...3

    B. Defendants Thwarted Plaintiffs' Discovery…………………………………………………4

    C. Defendants' Proposed Fact Testimony on Efficiencies Constitutes Impermissible Fact Witness Opinion………………………………………………………………………………6

IV. Plaintiff's Motion in Limine No. 2: Defendants' Late-Disclosed Expert Analyses and New Opinions Based Thereupon Should be Excluded…………………………………………8

    A. Background of Expert Discovery……………………………………………………………8

    B. Defendants' Disclosures of Dr. Hill's Analyses Served After the Close of Expert Discovery and Any New Opinions Based Thereupon are Untimely and Should be Excluded…………..11

    C. Defendants Cannot Show that Their Untimely Expert Disclosures are Substantially Justified or Harmless………………………………………………………………………………...12

IV. Conclusion………………………………………………………………………………….14

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Akeva L.L.C. v. Mizuno Corp.*,
   212 F.R.D. 306 (M.D.N.C. 2002) .................................................................................... 13

*California v. American Stores*,
   872 F.2d 837 (9th Cir. 1989) ........................................................................................... 1

*Chi. Bridge & Iron Co. v. FTC*,
   534 F.3d 410 (5th Cir. 2008) ........................................................................................... 1

*FTC v. H.J. Heinz Co.*,
   246 F.3d 708 (D.C. Cir. 2001) ......................................................................................... 3

*FTC v. Hackensack Meridian Health, Inc.*,
   30 F.4th 160 (3d Cir. 2022) ......................................................................................... 7, 8

*FTC v. Peabody Energy Corp.*,
   492 F. Supp. 3d 865 (E.D. Mo. 2020) ............................................................................. 3

*FTC v. Penn State Hershey Med. Ctr.*,
   838 F.3d 327 (3d Cir. 2016) ......................................................................................... 2, 7

*FTC v. Sysco Corp.*,
   113 F. Supp. 3d 1 (D.D.C. 2015) .................................................................................... 3

*FTC v. Tapestry, Inc.*,
   755 F. Supp. 3d 386 (S.D.N.Y. 2024) ............................................................................. 8

*FTC v. Wilh. Wilhelmsen Holding ASA*,
   341 F. Supp. 3d 27 (D.D.C. 2018) .................................................................................. 7

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ........................................................................................................ 5

*Hoffman v. Constr. Protective Servs., Inc.*,
   541 F.3d 1175 (9th Cir. 2008) ........................................................................................ 6

*Howell v. Earl*,
   No. CV 13-48-BU-DWM-JCL, 2014 WL 2593573 (D. Mont. June 10, 2024) ...... 11, 12, 13

*Leland v. County of Yavapai*,
   No. CV-17-8159-PCT-SPL (DMF), 2019 WL 1546998 (D. Ariz. Mar. 18, 2019) ...... 12, 13

*Leland v. County of Yavapai*,
   No. CV-17-8159-PCT-SPL (DMF), 2019 WL 1531874 (D. Ariz. Apr. 9, 2019) .............. 12

*Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................... 11, 12, 13

*Montana Med. Assoc. v. Knudsen*,
   CV 21-108-M-DWM, 2022 WL 7010633 (D. Mont. Oct. 12, 2022) .................................................. 12

*Olin Corp. v. FTC*,silv
   986 F.2d 1295 (9th Cir. 1993) ........................................................................................................ 1

*Ralon v. Kaiser Found. Health Plan, Inc.*,
   No. 23-CV-03344-JCS, 2025 WL 833448 (N.D. Cal. Mar. 17, 2025) .................................................. 6

*S.H. Silver Co., Inc. v. Sentinel Ins. Co., Ltd.*,
   No. 24-cv-00017-AMO (PHK), 2025 WL 517741 ............................................................................ 5

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
   778 F.3d 775 (9th Cir. 2015) ........................................................................................... 1, 2, 5, 7

*Tolliver v. Illinois Tools Works Inc.*,
   Case No. 18-cv-01078-KAW, 2019 WL 6251279 (N.D. Cal. Nov. 22, 2019) .................................. 12

*United States v. Anthem, Inc.*,
   855 F.3d 345 (D.C. Cir. 2017) ........................................................................................................ 2

*United States v. Baker Hughes, Inc.*,
   908 F.2d 981 (D.C. Cir. 1990) ........................................................................................................ 1

*United States v. H&R Block, Inc.*,
   833 F. Supp. 2d 36 (D.D.C. 2011) .................................................................................................. 7

*United States v. Marine Bancorporation*, *Inc.*,
   418 U.S. 602 (1974) ...................................................................................................................... 1

**Statutes**

15 U.S.C. § 18 ................................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) .............................................................................................................. 11

Fed. R. Civ. P. 26(a)(2)(D) .............................................................................................................. 11

Fed. R. Civ. P. 26(e)(1)(A) .............................................................................................................. 13

Fed. R. Civ. P. 37(c) ........................................................................................................................ 12

Fed. R. Evid. 602 .............................................................................................................................. 6

Fed. R. Evid. 701 .............................................................................................................................. 6

**Other Authorities**

2023 Merger Guidelines (2023) ........................................................................................................ 2

-iii-
PLAINTIFF UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*
Case No. 5:25-cv-00951-PCP

# INTRODUCTION

Plaintiff the United States moves in *limine* to preclude Defendants Hewlett Packard Enterprise Co., Inc. ("HPE") and Juniper Networks, Inc. ("Juniper") from presenting evidence and argument at the upcoming trial related to the following topics:

(1) Evidence related to alleged efficiencies or synergies of the merger; and

(2) Late disclosed expert analyses by Dr. Hill and all opinions based thereupon.

Precluding such evidence on each of the above topics will streamline the trial by keeping irrelevant and improper evidence out of the courtroom.

# BACKGROUND

In this merger enforcement action, Plaintiff seeks to block HPE from acquiring Juniper. HPE and Juniper are the second- and third-largest suppliers of enterprise-grade wireless local area networking ("WLAN") solutions in the country. The transaction violates Section 7 of the Clayton Act, which prohibits any acquisition whose effect "*may be* substantially to lessen competition" in "*any* line of commerce" and "*any* section of the country." 15 U.S.C. § 18 (emphases added).

Section 7 claims, such as the one Plaintiff brings here, are typically assessed under a "burden-shifting framework." *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.,* 778 F.3d 775, 783 (9th Cir. 2015) (quoting *Chi. Bridge & Iron Co. v. FTC*, 534 F.3d 410, 423 (5th Cir. 2008)). The plaintiff generally first defines the product market and establishes a *prima facie* case that a merger has a probable anticompetitive effect, which can be shown through statistical evidence of market share. *See Olin Corp. v. FTC*, 986 F.2d 1295, 1305 (9th Cir. 1993) (citing *United States v. Baker Hughes, Inc.*, 908 F.2d 981, 983 (D.C. Cir. 1990)). The burden then shifts to the defendant to rebut the *prima facie* case. *See id.*; *see also California v. American Stores*, 872 F.2d 837, 842 (9th Cir. 1989), *rev'd on other grounds*, 495 U.S. 271 (1990) (citing *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 631 (1974)). "[I]f the [defendant] successfully rebuts the *prima facie* case, the burden of production shifts back to the Government and merges with the ultimate burden of persuasion, which is incumbent on the Government at all times." *Saint Alphonsus,* 778 F.3d at 783 (citation omitted).

Here, unusually, Plaintiff's *prima facie* case is essentially uncontested: Defendants do not dispute the product market, the geographic scope of that market, or that the acquisition presumptively

violates Section 7 based on the increase in market concentration. *See* Decl. of Michael J. Freeman In Support of Pl. United States of America's Omnibus Mot. *In Limine* ("Freeman Decl."), Ex. G (Tr. of Depo. of Nicholas Hill, Ph.D., June 11, 2025) at 11:1–13:11. Nor do the Defendants dispute that if this transaction is completed, two WLAN suppliers—Cisco and HPE—would control of more than 75% of the market with the next closest competitor in the single digits of market share. *See id.* at 19:20-21:11.

In the face of this essentially uncontroverted *prima facie* case, Defendants have indicated they intend to introduce irrelevant, untimely, and speculative testimony about purported efficiencies. Even when properly presented, courts "remain skeptical about the efficiencies defense in general and about its scope in particular." *Saint Alphonsus*, 778 F.3d at 790; *see also United States v. Anthem, Inc.*, 855 F.3d 345, 353 (D.C. Cir. 2017) ("[I]t is not at all clear that [efficiencies] offer a viable legal defense to illegality under Section 7" of the Clayton Act); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 348 (3d Cir. 2016) ("[W]e are skeptical that such an efficiencies defense even exists.").

Considering this skepticism, the Ninth Circuit in *Saint Alphonsus* held that—assuming such an efficiencies defense existed—defendants bear the burden of establishing several critical prerequisites: The claimed efficiencies must be (1) "verifiable, not merely speculative"; (2) "'merger-specific,'…which is to say that the efficiencies cannot readily 'be achieved without the concomitant loss of a competitor'"; and (3) "enhance[] rather than hinder[] competition," meaning that the efficiencies must prevent a reduction in competition in the relevant market and not be anticompetitive themselves. *Saint Alphonsus.*, 778 F.3d at 790-91 (internal citations omitted). *Accord* United States Department of Justice and Federal Trade Commission, 2023 Merger Guidelines (the "Merger Guidelines") §3.3 (2023). "[P]roof of 'extraordinary efficiencies' is required to offset the anticompetitive concerns in highly concentrated markets." *Saint Alphonsus*, 778 F.3d at 790.

**PLAINTIFF'S MOTION IN LIMINE NO. 1**
**Evidence Related to Alleged Efficiencies or Synergies**
**of the Merger is Barred by Defendants' Bait and Switch**

Because of the "rigorous standard that applies to efficiencies," *Penn State Hershey Med. Ctr.*, 838 F.3d at 349, defendants typically present such a defense through an expert.[1] Consistent with that

---

[1] Even when offered through an expert, the efficiencies defense regularly fails. *See, e.g., Penn State*

-2-

approach, Defendants represented here that they would present their efficiencies defense through an expert, Dr. Mark E. Zmijewski. Defendants also refused to comply with Plaintiff's interrogatory and Rule 30(b)(6) deposition notice seeking discovery about their efficiencies defense on the ground that these requests sought "premature expert testimony." The parties resolved their discovery dispute through a stipulation whereby Defendants agreed that Plaintiff would have the opportunity to depose Dr. Zmijewski. Relying on Defendants' representation, Plaintiff withdrew its discovery requests. But then Defendants pulled the expert one week before his deposition and instead seek to offer testimony on efficiencies only from fact witnesses. That testimony should be excluded under Rule 37 and as impermissible lay testimony.

### A. Background of Efficiencies Discovery

Defendants' Answers asserted "that the proposed acquisition would generate synergies." ECF No. 44 (HPE's Answer) ¶ 55; ECF No. 41 (Juniper's Answer) ¶ 55. Dubious of such claims, Plaintiff propounded fact discovery on efficiencies: document requests, an interrogatory, and a Rule 30(b)(6) deposition notice. While agreeing to produce responsive documents, Defendants objected to Plaintiff's Interrogatory No. 3, which sought information about "each synergy or efficiency that You claim from the Transaction." Freeman Decl., Ex. C (Defendant Hewlett Packard Enterprise Co.'s Objections and Responses First Set of Interrogatories). Defendants invoked numerous objections, including that the interrogatory "prematurely and improperly seeks expert opinion." *Id.* Similarly, when Plaintiff served a Rule 30(b)(6) deposition notice seeking testimony from an HPE corporate representative on three topics relating to "efficiencies," "cost savings," "synergies," and related topics, Defendants asserted that no Rule 30(b)(6) deposition was needed and referred Plaintiff to Dr. Zmijewski's expert report, which Defendants submitted on April 28, 2025.

To resolve this discovery dispute, the Parties reached an agreement memorialized in a stipulation dated May 8, 2025 (the "Stipulation"). *See* Freeman Decl., Ex. D (Stipulation dated May 8, 2025). The Stipulation recounted that: (1) Defendants had "served an expert report of Dr. Mark Zmijewski in which

---

*Hershey Med. Ctr.*, 838 F.3d. at 350-51; *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 720-22 (D.C. Cir. 2001); *FTC v. Peabody Energy Corp.*, 492 F. Supp. 3d 865, 913-18 (E.D. Mo. 2020); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 81-85 (D.D.C. 2015).

he opines on synergies and efficiencies related to the Transaction"; (2) "Defendants represent[ed] that the noticed 30(b)(6) depositions on synergies are unnecessary"; and (3) Defendants represented that "the United States will be able to depose Defendants' experts on synergies or efficiencies." *Id.* at 1-2. Relying on this stipulation, Plaintiff withdrew the applicable Rule 30(b)(6) deposition topics.

Dr. Zmijewski's report suffered from numerous overarching flaws, which were described by Plaintiff's efficiencies' expert in the Expert Rebuttal Report of Adoria Lim. Despite claiming to have interviewed 20 employees, Dr. Zmijewski did not produce any notes or records of those interviews and failed to identify the facts from those interviews that he relied upon to form his opinions. His report assigned an absurdly high value to the transaction's supposed efficiencies, which contradicted the public statements HPE made when it announced the transaction—not to mention the governing standard from *Saint Alphonsus*.[2]

On June 6, 2025, one week before his deposition scheduled for June 13, 2025, Defendants suddenly jettisoned Dr. Zmijewski as an expert. *See* Freeman Decl., Ex. F (Email from Kosta Stojilkovic to Michael Freeman, et al. re Dr. Zmijewski dated June 6, 2025). Defendants have now conceded that they will not present Dr. Zmijewski or any expert to testify on efficiencies but still intend to call fact witnesses to discuss supposed efficiencies. *See* Freeman Decl., Ex. H (Email from Michael Freeman to Kosta Stojilkovic, et al. re Dr. Zmijewski dated June 16, 2025). Defendants have not specified which witnesses or what purported factual evidence they intend to present. *Id*.

**B. Defendants Thwarted Plaintiffs' Discovery**

Defendants' conduct has left Plaintiff without any of the usual and necessary discovery on Defendants' primary rebuttal defense. When the Parties entered the Stipulation, Plaintiff justifiably relied on Defendants' representation that the Rule 30(b)(6) deposition and interrogatory were unnecessary, and that Plaintiff would have an opportunity to discover the basis of the efficiencies evidence through Dr. Zmijewski's report and deposition. Now, Defendants have pulled a bait-and-switch: they got relief from fact discovery on efficiencies; Plaintiff got nothing in return.

The purpose of the discovery rules is to ensure that parties "obtain the fullest possible knowledge

---

[2] Freeman Decl., Ex. E (Excerpt of Expert Report of Mark E. Zmijewski, Ph.D) ¶ 2.

of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). "A court should not permit a trial by ambush, which the federal discovery rules are designed to avoid." *S.H. Silver Co., Inc. v. Sentinel Ins. Co., Ltd.,* No. 24-cv-00017-AMO (PHK), 2025 WL 517741 at*5 (N.D. Cal., Feb. 18, 2025) (internal quotation marks and citation omitted). Here, Defendants have failed to meet their most fundamental discovery obligations by preventing Plaintiff from obtaining either fact or expert discovery on efficiencies.

Defendants bear the burden of establishing the prerequisites for an efficiencies defense. *See* infra at 2; *Saint Alphonsus*, 778 F.3d at 790. Defendants' bait-and-switch tactics have deprived Plaintiff of any meaningful ability to ascertain to what extent any of the operational synergies identified by HPE and its due diligence consultants might qualify as cognizable efficiencies. For example, Plaintiff carefully tailored Rule 30(b)(6) topic No. 11 to uncover facts that could be applied to the cognizable efficiency criteria set forth in *Saint Alphonsus***:**

> For all efficiencies, including any cost savings, synergies, revenue increases, or any benefits that HPE has analyzed at any point with regard to the Transaction, including both those analyzed by HPE and those analyzed by the Synergy Consultants:
>
> a. How each claimed efficiency is likely to be achieved, including any plans, strategies, or actions necessary for achieving each efficiency;
>
> b. the actual or estimated costs and resources necessary to achieve each claimed efficiency, including the bases and assumptions for any such estimate;
>
> c. the time needed to achieve each claimed efficiency, including the bases and assumptions for any time estimate and when such estimate was made;
>
> d. the actual or estimated dollar value of each claimed efficiency, including the bases and assumptions for estimating the value of each claimed efficiency and when such estimate was made;
>
> e. the specific steps to be taken, including the consolidation, combination, relocation, closing, or shutting down with respect to any office, facility, transaction, data processing platform, or any other operation or function, that will result in each claimed efficiency from cost or other operational savings; and
>
> f. the reasons that each claimed efficiency could not reasonably be achieved by HPE absent the Transaction; and how each claimed efficiency is likely to benefit consumers or customers.

Freeman Decl., Ex. B (Notice of Depositions dated April 8, 2025).

In the interests of avoiding a discovery dispute, Plaintiff agreed with Defendants to forego

written discovery responses and a Rule 30(b)(6) deposition and written discovery, and instead to seek responsive information instead from Dr. Zmijewski, who claimed to have interviewed more than 20 people on these issues. Having relied on Defendants' representations and inducements, Plaintiff have been left without any way to test how Defendants' fact witnesses will attempt to translate the purported operational synergies into cognizable efficiencies. Given the compressed time frame and rapidly approaching trial date, Plaintiff cannot pursue supplementary discovery, which has already ended. In these circumstances, the "appropriate and proportionate sanction" under Rule 37 for a failure to respond to Plaintiff's interrogatory and testify in a Rule 30(b)(6) deposition is to preclude Defendants from "offering any evidence or testimony" responsive to those discovery requests. *Ralon v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-03344-JCS, 2025 WL 833448, at *6 (N.D. Cal. Mar. 17, 2025); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) ("Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless.").

### C. Defendants' Proposed Fact Testimony on Efficiencies Constitutes Impermissible Fact Witness Opinion

Apart from violating Rule 37, Defendants' gambit seeks to elicit improper opinion testimony from fact witnesses. None of Defendants' fact witnesses on their witness list have the requisite personal knowledge to testify about whether the purported efficiencies from the merger are cognizable efficiencies under applicable case law. Rule 602 prohibits testimony outside a witness's "personal knowledge." Fed. R. Evid. 602. And Rule 701 only allows lay opinion testimony where it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Defendants' fact witnesses do not meet these requirements.

*First*, Defendants' analyses of cost efficiencies from Dr. Zmijewski's since-withdrawn expert report were principally performed by third party consultants, McKinsey & Company and Bain & Company, neither of which appears on Defendants' witness list. *See* Freeman Decl., Ex. Q (Final Trial

Fact Witness List for Defendants Hewlett Packard Enterprise Co. & Juniper Networks Inc.). Even if HPE or Juniper executives could testify about those analyses, none of them even attempt to identify which synergies could be considered cognizable under the antitrust laws.

*Second*, and most importantly, Defendants' efficiencies evidence would have to establish that their claims are verifiable and have been verified. Defendants bear the burden to prove efficiencies are "verifiable, not merely speculative," *Saint Alphonsus*, 778 F.3d at 791, which means that "they 'must be shown in what economists label 'real' terms," *Penn State Hershey Med. Ctr.*, 838 F.3d at 349 (citation omitted). To that end, "defendants have the burden to establish that [their] efficiencies were independently verified and they assume a risk in litigation in arguing to a court that a court should do that work that in many precedents was performed by experts with much more knowledge about the industry and expertise in dealing with financial models and assumptions than a court could reasonably be expected to have." Freeman Decl., Ex. P (*United States v. Bertelsmann SE & Co. KGAA*, No. 21-02886) Tr. at 2764:5-10. Other courts have rejected an efficiencies defense where "cost estimates were largely premised on [company's] managers experiential judgment about likely costs, rather than a detailed analysis of historical accounting data," noting that "[w]hile reliance on the estimation and judgment of experienced executives about costs may be perfectly sensible as a business matter, the lack of a verifiable method of factual analysis resulting in the cost estimates renders them not cognizable by the Court." *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 91 (D.D.C. 2011); *see also FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 73 (D.D.C. 2018) ("Nor can reference to the merging parties' past practices, managerial expertise and incentives, or internal verification processes serve to substantiate any efficiencies. The court cannot substitute Defendants' assessments and projections for independent verification.").

Defendants cannot avoid the efficiencies-defense requirements by relabeling their arguments as concerning "procompetitive benefits." *See FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 175-76 (3d Cir. 2022) (rejecting defendants' argument that they were making a "procompetitive benefits" argument and were "not making an efficiencies defense, thus the stringent [efficiencies] standard developed in other circuits need not apply"). "[T]he argument 'that procompetitive effects must simply

-7-
PLAINTIFF UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*
Case No. 5:25-cv-00951-PCP

be weighed in the balance together with anticompetitive effects when considering whether [the defendants] have rebutted the [plaintiff]'s prima facie case ... *is* an efficiencies defense.'" *FTC v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 481 (S.D.N.Y. 2024) (quoting *Hackensack*, 30 F.4th at 176)). Thus, the Court should preclude Defendants from offering fact witness testimony concerning purported synergies or efficiencies to be gained as a result of HPE's proposed acquisition of Juniper.

**PLAINTIFF'S MOTION IN LIMINE NO. 2:**
**Defendants' Late-Disclosed Expert Analyses and**
**New Opinions Based Thereupon Should be Excluded**

Defendants disclosed additional quantitative analyses from their economist, Dr. Nicholas Hill, on June 17, 2025, after the close of expert discovery, in violation of this Court's Scheduling Order. Such late-disclosed analyses and opinions based thereupon should be excluded as untimely and prejudicial. The Parties are less than three weeks from trial and finished with discovery but for the deposition of one remaining fact witness. Defendants' tardy disclosures, propounded without notice to or permission of the Court, constitute further trial by ambush and should not be permitted for the reasons set forth in more detail below.

**A.  Background of Expert Discovery**

On March 7, 2025, the Court entered the Parties' joint Scheduling Order, ECF No. 104, which sets forth the following schedule for expert disclosures and expert discovery:

| | |
|---|---|
| Parties serve initial expert reports on the issues on which the Parties bear the burden | April 28, 2025 |
| Parties to serve any rebuttal expert reports to the initial expert reports | May 19, 2025 |
| Parties to serve any reply expert reports to the rebuttal expert reports | June 4, 2025 |
| Deadline for expert depositions and close of expert discovery | June 13, 2025 |

Consistent with the Scheduling Order, on April 28, 2025, Plaintiff served the Expert Report of Marc Remer, Ph.D. On May 12, 2025, Plaintiff served an Errata to Dr. Remer's report and the Corrected Expert Report of Marc Remer, Ph.D.[3] On May 19, 2025, Defendants served the Expert Report of

---

[3] Dr. Remer's Errata and Corrected Report corrected certain calculations based on duplicate data in Juniper's production as well as calculations re-run on a data extract from HPE's April 12, 2025 production. Dr. Remer did not change his opinions or add new opinions.

1  Nicholas Hill in rebuttal to Dr. Remer. On June 4, 2025, the United States served the Expert Reply
2  Report of Marc Remer, Ph.D. Dr. Hill's deposition took place on June 11, 2025, and Dr. Remer's
3  deposition took place on June 12, 2025.
4      In his deposition just one week ago, Dr. Hill testified that he anticipated presenting ▮
5  ▮
6  ▮ Freeman Decl., Ex. G at 60:7-21. Dr. Hill did not identify all ▮
7  ▮ he intends to present; however, he provided examples. First, Dr. Hill explained, ▮
8  ▮
9  ▮
10  ▮ *Id*. at 61:2-7. Dr. Hill continued, ▮
11  ▮
12  ▮
13  ▮ *Id*. at 61:16-21.
14      Second, Dr. Hill testified that he had done additional quantitative analysis concerning Dr.
15  Remer's opinion regarding the transition of enterprise grade WLAN from on-premises to cloud-based
16  solutions. Historically, network management software for WLAN was installed on a company's self-
17  hosted infrastructure and allows the WLAN network to be managed in-house. This type of network
18  management software is commonly referred to as "on-prem." For the last several years, network
19  management software can also be cloud-based, meaning that the WLAN network can be monitored,
20  configured, and optimized through a cloud-hosted platform. Witnesses and Defendants' internal
21  documents indicate that the market is shifting away from "on-prem" to cloud-based network
22  management software. For instance, Extreme Networks CEO Edward Meyercord testified in deposition
23  that ▮ of Extreme's WLAN customers use cloud-based network management software, and that he
24  expected to ▮. *See* Freeman Decl., Ex. K (Dep. of Edward
25  Meyercord Tr. dated June 16, 2025) at 75:1-21. HPE projects that ▮% of their WLAN customers will
26  use cloud-based network management software, *see* Freeman Decl., Ex. N (HPEUS-006067991, at -
27  049), and Juniper says that the entire market is ▮ Freeman Decl., Ex. L
28

-9-
PLAINTIFF UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*
Case No. 5:25-cv-00951-PCP

1  (Dep. of Thomas Wilburn Tr. dated June 17, 2025) at 34:22-35:4. HPE apparently does not maintain
2  detailed information on its share of on-prem versus cloud WLAN customers. Freeman Decl., Ex. C
3  (███
4  ███
5  ███). s
6  Despite the foregoing, Dr. Hill opined in his Rebuttal Report that ███
7  ███ and purports to ███
8  ███ Freeman Decl., Ex. O at 61 ¶ 142. However,
9  the evidence he cited as support for the ███ had nothing to do with revenue; all such
10 evidence only described the number of on-prem and cloud-based customers for the various WLAN
11 suppliers. Freeman Decl., Ex. G at 191:7-210:17. Dr. Hill cited nothing additional to support this claim.
12 Freeman Decl., Ex. O at 61 & 144, ¶¶ 142 & 232. Confronted with these evidentiary discrepancies
13 during deposition, Dr. Hill repeatedly shifted tactics, testifying ███
14 ███. Freeman Decl., Ex. G at
15 62:11-17, 196:1-13, 201:6-202:2, 204:4-19, 206:11-207:2. For the first time in his deposition, Dr. Hill
16 indicated that he had conducted new analyses and ███
17 ███ Freeman Decl., Ex. G
18 at 62:7-17 ███
19 ███ Id. at 62:18-20.
20 On June 13, 2025, two days after Dr. Hill's deposition, counsel for the United States wrote to
21 counsel for Defendants to ask, "Do you intend to seek leave from the Court to supplement any of your
22 expert reports and/or serve a sur-reply expert report? We do not consent to such a modification to the
23 scheduling order, and such a request would alter other pretrial filing dates." Freeman Decl., Ex. I (Email
24 from Michael Freeman to Beth Wilkinson, dated June 13, 2025). On June 15, 2025, two days after the
25 close of expert discovery, counsel for Defendants responded, "we may provide brief disclosures
26 regarding the issues they found in Dr. Remer's reply report." Freeman Decl., Ex. J (Email from Kosta
27 Stojilkovic to Michael Freeman, dated June 15, 2025).
28

     Yesterday, on June 17, 2025, Defendants served backup files from Dr. Hill including "analyses of (i) diversions based on Juniper opportunities data; (ii) Dell'Oro data regarding on-prem and cloud WLAN; and (iii) public cloud share based on HPE opportunities." Freeman Decl., Ex. M (Email from Timothy Swartz to Michael Freeman, et al., re HPE/Juniper – Sur-Rebuttal and Backup dated June 17, 2025). Dr. Hill's June 17 disclosures do not include any discussion about how he is interpreting the data. The quantitative analyses which purport to support Dr. Hill's opinions are untimely, coming after the expert depositions and after the court-ordered close of expert discovery.

     **B.    Defendants' Disclosures of Dr. Hill's Analyses Served After the Close of Expert Discovery and Any New Opinions Based Thereupon are Untimely and Should be Excluded**

     Rule 26(a)(2) requires the Parties to timely disclose their experts' opinions on the schedule set forth by the Court. Fed. R. Civ. P. 26(a)(2)(D). The Rule provides that the experts' reports include, among other things: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them[.]" Fed. R. Civ. P. 26(a)(2)(B). "Litigants must comply with expert disclosure deadlines established in a court's scheduling order because the order is an invaluable tool to 'foster the efficient treatment and resolution of cases.' . . . Consequences must be imposed for non-compliance." *Howell v. Earl,* No. CV 13-48-BU-DWM-JCL, 2014 WL 2593573, at *5 (D. Mont. June 10, 2024). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Trial courts have "particularly wide latitude" to issue sanctions under Rule 37(c)(1) when a party fails to adhere to discovery requirements. *Id.* at 1106.

     Defendants' efforts to proffer Dr. Hill's additional analyses and new opinions based thereupon are untimely and improper. The Scheduling Order sets forth clear deadlines for service of expert reports and the close of expert discovery. Defendants' rebuttal expert reports were due on May 19, 2025, and expert discovery closed on June 13, 2025. Defendants' disclosure of Dr. Hill's new analyses and

opinions after the expert discovery cutoff violates the Scheduling Order. The Court should exclude them under Rule 37(c)(1). *See Yeti by Molly*, 259 F.3d at 1105-07 (affirming trial court's decision to exclude testimony of defendant's damages expert whose report was untimely submitted 28 days before trial); *Leland v. County of Yavapai,* No. CV-17-8159-PCT-SPL (DMF), 2019 WL 1546998, at *2-4 (D. Ariz. Mar. 18, 2019), R&R adopted, 2019 WL 1531874 (D. Ariz. Apr. 9, 2019) (excluding defendants from offering expert opinions disclosed late under the case management order: "Plaintiffs were entitled to assume that … Rule 37(c)(1) means what it says, and that untimely disclosed evidence would be excluded from evidence at trial."); *Montana Med. Assoc. v. Knudsen*, CV 21-108-M-DWM, 2022 WL 7010633, at *1 (D. Mont. Oct. 12, 2022) (excluding untimely rebuttal opinions of defendants' experts); *Tolliver v. Illinois Tools Works Inc.,* Case No. 18-cv-01078-KAW, 2019 WL 6251279, at *4-5 (N.D. Cal. Nov. 22, 2019) (excluding untimely rebuttal expert reports); *Howell v. Earl,* No. CV 13-48-BU-DWM-JCL, 2014 WL 2593573, at *5 (D. Mont. June 10, 2024) (excluding expert opinions contained in untimely report).

### C. Defendants Cannot Show that Their Untimely Expert Disclosures are Substantially Justified or Harmless

Defendants cannot satisfy their burden here to be exempted from the requirements of Rule 26. "If a party fails to provide information … as required by Rule 26(a) …, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "The party making the late disclosure bears the burden of establishing that the failure to disclose is substantially justified or harmless." *Leland*, 2019 WL 1546998, at *2 (citing *Yeti by Molly,* 259 F.3d at 1107).

There is no justification for Dr. Hill's untimely disclosure of his new quantitative analyses. Dr. Hill disclosed analyses based on Juniper's and HPE's opportunities data as well as Dell'Oro data regarding on-prem and cloud WLAN. Although Dr. Hill had this data and could have performed those analyses before he submitted his Rebuttal Report on May 19, he did not do so until after the close of expert discovery. While supplemental expert disclosures are proper if "in some material respect the [initial expert] disclosure or response is incomplete or incorrect, and . . . the additional or corrective

information has not otherwise been made known to the other parties during the discovery process or in writing," Fed. R. Civ. P. 26(e)(1)(A), late disclosures that are not actually supplemental but instead seek to bolster previous opinions—including Dr. Hill's disclosures of June 17—are improper and excludable.[4] *See Akeva L.L.C. v. Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("The Court cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions."); *Howell*, 2014 WL 2593573, at *5 (holding that it was improper to characterize second report as permissible supplement when it did not "identif[y] inaccuracies or incomplete interstices" in first report); *Leland*, 2019 WL 1546998, at *3 ("But parties may not use the supplement process to extend the deadline for expert disclosures and disclose information that should have been included in the original disclosure.") (quotation omitted).

Allowing Dr. Hill to testify about his untimely analyses and opinions would be prejudicial to Plaintiff. Defendants made these disclosures after the experts' depositions were taken, after the close of expert discovery, and only 22 days before trial. Many other events must occur between these June 17 disclosures and the start of trial. There is simply no time for additional discovery related to these opinions and their bases. *See Yeti by Molly*, 259 F.3d at 1107 (affirming exclusion of untimely expert opinions disclosed one month before trial); *Howell*, 2014 WL 2593573, at *6 (excluding opinions in untimely expert report served three months before trial: "The public and the parties' interest in expeditious resolution of litigation is promoted by adherence to the disclosure rules. Similarly, effective management of the Court's docket can only be achieved if the disclosure rules are enforced, thereby avoiding continuances caused by an untimely disclosure of expert opinions."). Defendants cannot demonstrate that their belated disclosures were substantially justified or harmless. The Court should exclude Dr. Hill's untimely expert analyses and new opinions from evidence at trial.

---

[4] Defendants' experts' untimely disclosures stand in contrast to Plaintiff's service of Dr. Remer's Errata and Corrected Report on May 12, 2025—one week in advance of the deadline for Defendants to serve their rebuttal expert reports and one month before the close of expert discovery. Per his obligations under Rule 26(e), Dr. Remer corrected certain data calculations but did not change his opinions or add new opinions. Defendants had ample time to question Dr. Remer about his Errata and Corrected Report in his June 12 deposition.

# CONCLUSION

For the foregoing reasons, the Court should preclude Defendants from presenting evidence and argument at the upcoming trial related to the following topics:

(1) Evidence related to alleged efficiencies or synergies of the merger; and

(2) Late disclosed expert analyses by Dr. Hill and all opinions based thereupon.

Precluding such evidence on each of the above topics will streamline the trial by keeping irrelevant and improper evidence out of the courtroom.

Dated: June 18, 2025

| | |
|---|---|
| JACKLIN CHOU LEM (CA Bar # 255293)<br>Civil Chief<br>San Francisco Office<br><br>ELIZABETH S. JENSEN (CA Bar # 302355)<br>Assistant Civil Chief<br>San Francisco Office | */s/ Michael J. Freeman*<br>MICHAEL J. FREEMAN (OH BAR # 0086797)<br>Brian White<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street NW, Suite 4000<br>Washington, DC 20530<br>Telephone: (212) 213-2774<br>Michael.Freeman@usdoj.gov<br><br>Jeremy M. Goldstein (CA Bar # 324422)<br>Aaron M. Sheanin (CA Bar # 214472)<br>U.S. Department of Justice<br>Antitrust Division<br>450 Golden Gate Ave, Room 10-0101<br>San Francisco, CA 94102<br>Telephone: (212) 229-2934<br>Jeremy.Goldstein@usdoj.gov<br>Aaron.Sheanin.usdoj.gov<br><br>*Attorneys for Plaintiff United States of America* |

# CERTIFICATE OF SERVICE

I certify that on June 18, 2025, I served the foregoing on the below individuals via e-mail.

For Defendant Hewlett Packard Enterprise Co.:

Julie Elmer (julie.elmer@freshfields.com)
Jennifer Mellott (jennifer.mellott@freshfields.com)
Connie Forkner (constance.forkner@freshfields.com)
Sara Salem (sara.salem@freshfields.com)
Lauren Vaca (lauren.vaca@freshfields.com)
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
Tel: (202) 777-4500

Beth A. Wilkinson (bwilkinson@wilkinsonstekloff.com)
Kosta Stojilkovic (kstojilkovic@wilkinsonstekloff.com)
Roxana Guidero (rguidero@wilkinsonstekloff.com)
Jenna Pavelec (jpavelec@wilkinsonstekloff.com)
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000

Samuel G. Liversidge (sliversidge@gibsondunn.com)
Michael Perry (mjperry@gibsondunn.com)
Kristen Limarzi (klimarzi@gibsondunn.com)
Jamie France (jfrance@gibsondunn.com)
Thomas Tyson (ttyson@gibsondunn.com)
Kunal Jhaveri (kjhaveri@gibsondunn.com)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7000

For Defendant Juniper Networks, Inc.:

Steven C. Sunshine (steve.sunshine@skadden.com)
Tara Reinhart (tara.reinhart@skadden.com)
Ryan Travers (ryan.travers@skadden.com)
Maria Raptis (maria.raptis@skadden.com)
Joseph M. Rancour (joseph.rancour@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., NW
Washington, DC 20005
Tel.: (202) 371-7000

| | |
|---|---|
| Dated: June 18, 2025 | By:  /s/ *Jeremy M. Goldstein* <br> Jeremy M. Goldstein (CA Bar # 324422) <br> U.S. Department of Justice <br> Antitrust Division <br> 450 Golden Gate Ave, Room 10-0101 <br> San Francisco, CA 94102 <br> Telephone: (212) 229-2934 <br> Jeremy.Goldstein@usdoj.gov <br><br> *Counsel for Plaintiff United States of America* |