BETH A. WILKINSON (*pro hac vice*)
KOSTA S. STOJILKOVIC (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4010
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

SAMUEL G. LIVERSIDGE (Bar No.
180578)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

[Additional counsel listed on signature page]

JACK P. DICANIO (SBN 138782)
MICHAEL C. MINAHAN (SBN 311873)
**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Jack.DiCanio@skadden.com
Michael.Minahan@skadden.com

STEVEN C. SUNSHINE (*pro hac vice*)
TARA REINHART (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**
1440 New York Avenue N.W.
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-8301
Steve.Sunshine@skadden.com
Tara.Reinhart@skadden.com

*Attorneys for Defendant*
JUNIPER NETWORKS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., <br><br> *Defendants.* | CASE NO. 5:25-cv-00951-PCP <br><br> **DEFENDANTS' MOTION IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*** <br><br> **PUBLIC REDACTED VERSION** <br><br> Judge:  P. Casey Pitts <br> Action Filed:  January 30, 2025 |

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ......................................................................................... ii

3    INTRODUCTION ................................................................................................... 1

4    BACKGROUND .................................................................................................... 3

5          A.    The Parties' Communications Related to Efficiencies Evidence................ 3

6          B.    The Context for Dr. Hill's Rebuttal Report. ................................. 5

7    ARGUMENT ........................................................................................................ 8

8    I.    The Court Should Not Exclude Evidence of Non-Cost Efficiencies,
           Synergies, or Pro-Competitive Benefits, as It Goes to the Heart of
           Challenging DOJ's Burden at Trial................................................... 8

9
10         A.    The Government's Demand for Exclusion Is Impermissibly
                 Overbroad................................................................................ 9

11         B.    The Government Mischaracterizes the Facts by Omitting that the
                 Parties' Efficiency Stipulation Expressly Permits Fact-Witness
12               Testimony on Synergies and Efficiencies. ................................. 9

13         C.    Fact Witness Testimony on Competition-Enhancing Aspects of the
                 Transaction and Deal Rationale Is Highly Relevant and Critical to
14               Rebut the Government's Case................................................ 11

15    II.   The Court Should Not Exclude Dr. Hill's Supplemental Quantitative
           Analyses. ............................................................................... 15

16         A.    Dr. Hill's Supplemental Disclosures Are Not Substantively New
                 Opinions and Were Timely Disclosed Soon After Receiving Dr.
17               Remer's Reply Report................................................................ 15

18         B.    Dr. Hill's Disclosure Did Not Harm or Unfairly Prejudice the
                 Government.............................................................................. 17

19    CONCLUSION ................................................................................................. 19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Bardinet v. Tolino*,
2022 WL 16958628 (C.D. Cal. 2022)...................................................................... 9

*Betzel v. State Farm Lloyds*,
480 F.3d 704 (5th Cir. 2007).................................................................................. 18

*Bullard v. Wastequip Mfg. Co.*,
2015 WL 13757143 (C.D. Cal. 2015)...................................................................... 9

*Camenisch v. Umpqua Bank*,
763 F. Supp. 3d 871 (N.D. Cal. 2025) .................................................................. 14

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,
2025 WL 980830 (N.D. Cal. 2025) ....................................................................... 16

*Ernst v. City of Chicago*,
2013 WL 4804837 (N.D. Ill. 2013) .......................................................................... 3

*Finjan, Inc. v. Symantec Corp.*,
2018 WL 620156 (N.D. Cal. 2018) ................................................................... 16, 18

*FTC v. Arch Coal, Inc.*,
329 F. Supp. 2d 109 (D.D.C. 2004) ...................................................................... 12

*FTC v. Meta Platforms, Inc.*,
2024 WL 4772423 (D.D.C. 2024) ......................................................................... 10

*FTC v. Peabody Energy Corp.*,
492 F. Supp. 3d 865 (E.D. Mo. 2020).................................................................... 14

*FTC v. Wilh. Wilhelmsen Holding ASA*,
341 F. Supp. 3d 27 (D.D.C. 2018) ........................................................................ 13

*Hill v. Reederei F. Laeisz G.M.B.H., Rostock*,
435 F.3d 404 (3d Cir. 2006).................................................................................. 15

*In re Accutane Prods. Liab. Litig.*,
2007 WL 201091 (M.D. Fla. 2007) ....................................................................... 16

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 F. App'x 705 (9th Cir. 2010) .......................................................................... 18

*Luke v. Fam. Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) .......................................................................... 16

*McHugh v. Olympia Ent., Inc.*,
37 F. App'x 730 (6th Cir. 2002) ............................................................................ 15

*New York v. Deutsche Telekom AG*,
439 F. Supp. 3d 179 (S.D.N.Y. 2020).................................................................... 13

1

**Cases (cont.)**

2

*Olin Corp. v. FTC*,
    986 F.2d 1295 (9th Cir. 1993) .................................................................................. 2

3

4

*Robson v. Duckpond Ltd.*,
    2021 WL 719887 (E.D. Mo. 2021) ..................................................................... 3, 16

5

*Tenet Health Care*,
    186 F.3d .................................................................................................................. 13

6

7

*United States v. AT & T Inc.*,
    310 F. Supp. 3d 161 (D.D.C. 2018) ................................................................. 13, 14

8

*United States v. Baker Hughes Inc.*,
    908 F.2d 981 (D.C. Cir. 1990) .............................................................................. 12

9

10

*United States v. Bertelsmann SE & Co. KGaA*,
    646 F. Supp. 3d 1 (D.D.C. 2022) ........................................................................... 2

11

*United States v. Gen. Dynamics Corp.*,
    415 U.S. 486 (1974) ................................................................................................. 2

12

13

*United States v. H & R Block, Inc.*,
    833 F. Supp. 2d 36 (D.D.C. 2011) ....................................................................... 12

14

*United States v. Oracle Corp.*,
    331 F. Supp. 2d 1098 (N.D. Cal. 2004) ............................................................... 12

15

16

*United States v. UnitedHealth Grp. Inc.*,
    630 F. Supp. 3d 118 (D.D.C. 2022) ..................................................................... 13

17

*Ward v. Crow Vote LLC*,
    634 F. Supp. 3d 800 (C.D. Cal. 2022) ................................................................. 14

18

19

*Wechsler v. Macke Intern. Trade, Inc.*,
    221 F.R.D. 619 (C.D. Cal. 2004) .................................................................... 17, 18

20

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ........................................................................... 17, 19

21

**Statutes**

22

23

15 U.S.C. § 18 ................................................................................................................ 2, 11

24

**Rules**

25

Fed. R. Civ. P. 26 .................................................................................................... *passim*

26

Fed. R. Civ. P. 37(c)(1) ...................................................................................................... 17

27

28

1

## INTRODUCTION

2       The government's omnibus motion *in limine* is not an attempt to "streamline the trial," DOJ

3   Mot. in Limine (MIL) 1—it is an effort to limit Defendants from contesting the competitive effects

4   of the proposed merger by improperly restricting Defendants' fact and expert testimony. This Court

5   should not entertain blocking a $14 billion deal without allowing Defendants their fair say at trial

6   on the fundamental issue of whether the government can prove a substantial lessening of

7   competition.

8       Start with the facts. The government strains to conjure discovery violations in service of its

9   requested relief. But the complete picture merely shows that no good deed goes unpunished.

10  Defendants streamlined the upcoming trial by indicating that they will not present the findings and

11  conclusions of one of their experts, Dr. Zmijewski, whose sole role was to quantify cost efficiencies

12  from the proposed merger. Unlike the competitive effects inquiry on which the government bears

13  the burden of persuasion throughout trial, quantifying cost efficiencies is an affirmative analysis

14  that Defendants can present—or not—at their choice. Here, Defendants have elected not to do so.

15  But, contrary to the arguments in DOJ's motion, this was not a "bait-and-switch." Defendants never

16  suggested that other witnesses would not testify as to the broader upsides of the proposed merger,

17  including non-cost efficiencies, synergies, and procompetitive rationales for the deal. Indeed, the

18  very stipulation which DOJ cites in its motion provides that Defendants can present such evidence

19  through fact witnesses. DOJ has already deposed those fact witnesses on those topics, and there is

20  no good basis for precluding the fact witnesses from testifying about them at trial.

21      Elsewhere, DOJ submitted a new opening report from its economic expert, Dr. Remer, two

22  weeks after the deadline. While styled as a "corrected" report, this new report in fact ████████

23  ████████████████████████, which Dr. Remer ████████████████████

24  but ██████████████████████████████████████ The new report

25  changed dozens of Dr. Remer's calculations and findings and left Defendants' economic expert on

26  unilateral effects—Dr. Nicholas Hill—only seven days to prepare his rebuttal report. Defendants

27  did not cry foul or initiate motions practice; instead, Dr. Hill rolled with the punches and submitted

28  his rebuttal report on time. Then, Dr. Remer submitted a reply report that was again inconsistent,

in several respects, with the available data. DOJ deposed Dr. Hill days after Dr. Remer's reply report, and Dr. Hill pointed out these errors in response to DOJ's questioning. Out of comity, Defendants promptly disclosed three simple analyses—each based on data that Dr. Hill already disclosed with his initial reports—which substantiated Dr. Hill's testimony about the issues in Dr. Remer's reply report. DOJ now argues that these disclosures should be excluded, and that Dr. Hill should be barred from testifying about what Dr. Remer got wrong in his reply report. This request, too, lacks a colorable basis, and is hypocritical given DOJ's flaunting of the expert disclosure schedule earlier in the case.

DOJ's legal contentions are equally unsound. The problems begin with the DOJ's remarkable claim that its prima facie case is "essentially uncontested." MIL 1. Nothing could be further from the truth. The prima facie case rests on Herfindahl-Hirschman Index ("HHI") thresholds in DOJ's own Merger Guidelines. Those Guidelines—which are mere metrics the agency uses to guide its own charging decisions—"are not binding on the courts." *Olin Corp. v. FTC*, 986 F.2d 1295, 1299 (9th Cir. 1993). This is because HHI metrics, like all market concentration statistics, are "not conclusive indicators of anticompetitive effects." *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974). ██████████████ As the evidence at trial will make clear, other features typical of successful horizontal merger challenges are absent here, making it unlikely that DOJ can successfully establish a prima facie case.

Moreover, even if DOJ could establish a prima facie case, it will not shoulder its ultimate burden of persuasion. Throughout trial, DOJ bears the burden to persuade the Court that the effect of this merger "may be substantially to lessen competition." 15 U.S.C. § 18. Under the burden-shifting framework governing Section 7, if a prima facie case is made, Defendants produce evidence to rebut it. In so doing, Defendants can present "any relevant real-world evidence." *United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1, 47 (D.D.C. 2022) (internal quotation

████████████████████████████

marks omitted). That limitless category includes the kinds of testimony that HPE and Juniper fact witnesses may provide about non-cost efficiencies, synergies, and procompetitive benefits of the proposed merger. That Defendants have simplified trial by omitting Dr. Zmijewski's quantification of merger-specific cost efficiencies does not restrict their ability to contest DOJ's burden of persuasion on competitive effects, including through non-cost efficiencies, synergies, and procompetitive benefits.

Likewise, DOJ's contentions as to Dr. Hill's analyses ignore the fact that Federal Rule of Civil Procedure 26(e) permits parties to supplement prior expert disclosures with additional information any time prior to when their pretrial expert disclosures under Rule 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2). Here, that was two days ago, so there is no doubt that timeline was met. "If an expert truly were to respond to another expert's report, the obvious thing to do—and the most useful thing for a jury or a judge—would be to address that expert's points, either in sequence or by identifying them and critiquing them." *Ernst v. City of Chicago*, 2013 WL 4804837, at *3 (N.D. Ill. 2013). That is all Dr. Hill did. *See also Robson v. Duckpond Ltd.*, 2021 WL 719887, at *4 (E.D. Mo. 2021) (permitting supplemental analysis based on previously available information in response to the opposing expert's opinions).

Ultimately, the government's motion *in limine* says more about its intent than about Defendants' conduct. Despite DOJ's recent emphasis on bearing the burden at trial, it is looking to shed that burden and hide behind an agency-created presumption, then block Defendants' fact witnesses from explaining why the proposed deal is procompetitive. Despite DOJ's claims that it wants evidence readily admitted at trial, it wants to present its expert analyses (which have undergone at least three sets of changes) while barring Dr. Hill from fully responding to those shifting targets. None of this is called for, and none of it would further the pursuit of truth at trial.

# BACKGROUND

### A.    The Parties' Communications Related to Efficiencies Evidence.

On April 21, 2025, Defendants disclosed the fields of expertise for all experts they intended to call in their case. *See* Ex. A. In that disclosure, Defendants stated they would designate among other experts, a "financial economics and accounting expert who will opine on the efficiencies that

1    are expected to be generated by the proposed transaction." *Id.* Importantly, Defendants "reserve[d]

2    the right to elicit fact and opinion testimony from fact witnesses identified by any of the parties to

3    this action." *Id.* Defendants also "reserve[d] the right to un-designate or amend the designation of

4    any of the above referenced expert fields and utilize an expert in a consulting-only capacity." *Id.*

5      Consistent with this disclosure, on April 28, 2025, Defendants served the Expert Report of

6    Mark E. Zmijewski, Ph.D. (the "Zmijewski Report"). *See* Ex. B. In the introduction of his report,

7    Dr. Zmijewski stated that he had been asked "to evaluate and opine on the operational cost savings

8    (cost synergies or cost efficiencies) that HPE expects to achieve as a result of the Merger." Ex. B,

9    Zmijewski Rep. at 6. The Zmijewski Report repeatedly explains that his expert testimony would be

10    limited to "cost efficiencies," not other efficiencies or benefits from the merger. *See id.* ("[B]ased

11    on my review and analysis of the data, processes, and methods HPE used to calculate the

12    operational *cost efficiencies* (*cost synergies*) it expects to achieve from the Merger, I was asked to

13    opine on whether the *cost efficiencies* are defined (i.e., not vague) and achievable (i.e., not

14    speculative). In addition, I was asked to opine on whether the *cost efficiencies* are merger

15    specific . . . ." (emphasis added)).

16      On May 8, 2025, ten days after DOJ received the Zmijewski Report, the Parties agreed to a

17    stipulation (Dkt. No. 154-5), which provided that DOJ would drop its pursuit of 30(b)(6) testimony

18    regarding efficiencies in exchange for Defendants agreeing to rely on already disclosed fact

19    witnesses or Dr. Zmijewski, for their synergies and efficiencies evidence. The WHEREAS clauses

20    of the stipulation note that "Defendants represent that the noticed 30(b)(6) depositions on synergies

21    are unnecessary because Defendants intend to put on their efficiencies case through expert

22    testimony or through fact witnesses who have already been deposed on synergies or efficiencies."

23    *Id.* at 1-2. And the operative portion of the stipulation memorialized the parties' agreement that: (1)

24    "Defendants will not call fact witnesses to testify at trial on synergies or efficiencies beyond those

25    witnesses identified on Plaintiff's or Defendants' preliminary witness lists"; and (2) "The United

26    States will withdraw topics related to synergies or efficiencies from the noticed 30(b)(6) depositions

27    of HPE and Juniper." *Id.*

28

DEFENDANTS' MOTION IN OPPOSITION TO
PLAINTIFF'S OMNIBUS MOTION *IN LIMINE*
      4

On June 4, 2025, Defendants served the Expert Reply Report of Mark E. Zmijewski, Ph.D. (the "Zmijewski Reply Report") in response to the May 19, 2025 Rebuttal Report of DOJ's efficiencies expert, Adoria Lim. *See* Ex. C. In the Zmijewski Reply Report, Dr. Zmijewski reaffirmed his conclusions and findings of the Zmijewski Report, and once again stated that the scope of his opinions and conclusions is limited to "operational cost savings (cost synergies or cost efficiencies) that HPE expects to achieve as a result of the Merger." Ex. C, Zmijewski Reply at 3.

On June 6, 2025, Defendants notified DOJ that "as Defendants continue to work on streamlining our case to fit the allotted trial time, we have decided that we will not be calling Dr. Zmijewski at trial or otherwise presenting his findings and analyses to the Court." Dkt. No. 154-7 at 2. Defendants further stated that "[g]iven our decision, we will pull down his deposition and that of Ms. Lim, who was a rebuttal witness to Dr. Zmijewski" and expressly provided that DOJ "may rely on this written representation in planning [its] trial preparation." *Id.*

Defendants have stood by their representation that they will not call Dr. Zmijewski at trial or otherwise present his analyses and conclusions to the Court. *See* Dkt. No. 154-9 at 3. And, consistent with the stipulation, Defendants will not call any fact witnesses not identified on Defendants' preliminary fact witness list to testify about non-cost efficiencies or synergies at trial.

### B.    The Context for Dr. Hill's Rebuttal Report.

DOJ challenges a very short submission by one of Defendants' experts (Dr. Nicholas Hill) that helps explain his critiques of DOJ's expert (Dr. Marc Remer) and provides context for Dr. Hill's deposition testimony. Tellingly, DOJ does not seek to exclude the opinions of Defendants' other expert (Dr. Elizabeth Bailey)[2] although she, like Dr. Hill, criticized Dr. Remer's reply report during her deposition and subsequently prepared a disclosure that provided context for that deposition. The following chronicles the parties' communications regarding the economic experts:

On April 28, 2025, DOJ served Dr. Remer's initial opening report. On May 12—two weeks after the deadline to serve its opening report and just one week before Defendants' rebuttal report

---

[2] While Dr. Hill's report explains why the transaction is unlikely to result in "unilateral" effects (i.e., it will not allow the merged firm to raise prices or decrease output), Dr. Bailey's report explains why the transaction is unlikely to increase the risk of coordination among WLAN competitors or decrease innovation.

was due—DOJ disclosed a "corrected" expert report from Dr. Remer that ████████████ ████████████. This new report, which was served under the claim of an "errata," included ████████████████████████████████████████████████████████████████████ ████████████████. *See* Ex. D; Ex. E. Nor did Dr. Remer offer any justification for providing a late disclosure. Instead, at his deposition he ████████████████████████████████████████ ████████████████████████. Ex. F, Remer Dep. 69:8. As a result of DOJ's untimely opening report, Defendants' experts had only *seven days* to review the report and prepare their response. While DOJ now touts the importance of sticking to the expert deadlines, it fails to mention this history of its own disregard of those deadlines in its motion.

On May 19, Defendants served a rebuttal report from Dr. Hill. In his report, Dr. Hill reaches two conclusions relevant to DOJ's motion. First, he concludes that the transaction is unlikely to substantially lessen competition in part because Defendants serve different types of customers. Ex. G, Hill Rep. ¶¶ 16-18, 141-43. More specifically, Juniper offers only public-cloud-managed WLAN solutions, while a majority of HPE's business is focused on on-premises (also referred to as "on prem") or private cloud WLAN solutions. *Id.* at ¶¶ 16-18. Second, Dr. Hill concludes that the transaction is also unlikely to substantially lessen competition because, according to HPE's sales opportunities data, HPE's most frequent competitor is Cisco in at least 80 percent of opportunities. *Id.* at ¶¶ 218-220, Fig. 34. Meanwhile, Juniper appeared as HPE's primary competitor in only a single-digit percentage of opportunities and its competitive significance is similar to other WLAN competitors, such as Extreme, Ruckus, Arista, Ubiquiti, and Fortinet. *Id.*

On June 4, DOJ served a reply report prepared by Dr. Remer that, among other things, included ████████████████████████████████████████████████████████████ ████████. Ex. H, Remer Reply ¶¶ 211-27. Dr. Remer also cited ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* at ¶¶ 41-44. In addition, while

<hr>

[3] ████████████████████████████████████████████████████████████████████████
████████████████████████████.

1   Dr. Remer does not identify any error in Dr. Hill's analysis of HPE's sales opportunities data

2   showing that HPE's most frequent competitor is Cisco and that Juniper is a much smaller

3   competitor, ████████████████████████████████████████████████ *Id.* at

4   ¶¶ 143-44.

5          On June 11, seven days after serving Dr. Remer's reply report, DOJ deposed Dr. Hill.

6   During the deposition, DOJ asked Dr. Hill whether he planned to offer any opinions not discussed

7   in his rebuttal report. Ex. I, Hill Dep. 59:11-13. Dr. Hill explained that he had only recently received

8   Dr. Remer's reply report but anticipated having responses to certain of Dr. Remer's opinions. *Id.*

9   at 59:14-19. Dr. Hill clarified that any additional analysis likely would not "be anything significant."

10  *Id.* at 60:21-22. During the course of the deposition, Dr. Hill identified specific areas where he

11  disagreed with the analysis in Dr. Remer's reply report and described for DOJ the contents of the

12  additional submission now being challenged.

13         First, Dr. Hill testified that while in his rebuttal report he had provided an analysis showing

14  that Cisco is HPE's most frequent competitor based on HPE's sales opportunities data, he realized

15  in reviewing Dr. Remer's reply report that he had not provided the corresponding analysis for

16  Juniper. *Id.* at 61:2-7, 16-21. Dr. Hill said he would provide a similar analysis from Juniper's sales

17  opportunity data. *Id.* at 61:16-21. Like HPE's sales opportunities data, this analysis shows that

18  Juniper's most frequent competitor is Cisco. *Id.*

19         Second, Dr. Hill testified that Dr. Remer's assertion that ████████████████████

20  ████████████████████████████████████████████ is "contradicted by the

21  evidence." *Id.* at 63:1-5. Dr. Hill testified that his conclusion that HPE primarily serves on-prem

22  and private cloud customers, whereas Juniper exclusively supplies public cloud customers, is

23  supported by data prepared by third-party analyst Dell'Oro. *Id.* at 196:1-4. That data breaks out on-

24  prem and cloud-managed WLAN revenue and was previously produced with Dr. Hill's rebuttal

25  report. Dr. Hill testified that the Dell'Oro data supported the conclusions expressed in his rebuttal

26  report and contradicted those in Dr. Remer's reply report. *Id.* at 62:7-17. Dr. Hill also testified that

27  HPE's opportunities data shows that an overwhelming majority of HPE's WLAN revenue is from

28

the sale of on-premise solutions. *Id.* at 191:13-192:2. Dr. Hill promised to provide this additional analysis in response to the claims in Dr. Remer's reply report. *Id.* at 62:7-63:5.

On June 17, Defendants provided DOJ with backup files prepared by Dr. Hill that support the analyses he disclosed in his deposition testimony.[4] *See* Ex. J. On the same day, Defendants also provided DOJ a sur-rebuttal report prepared by Dr. Bailey, showing a separate issue: that—in preparing his reply report—Dr. Remer ran his own discounting analysis, the results of which corroborate Dr. Bailey's analysis and show that HPE did not employ uniquely aggressive discounts when Juniper was their primary competitor. *Id.*

On June 23, the parties exchanged Rule 26(a)(3) disclosures identifying the expert witnesses each side plans to call at trial. Consistent with their earlier disclosures and representations to DOJ, Defendants disclosed Drs. Hill and Bailey as the experts who would testify on their behalf at trial and did not include Dr. Zmijewski.

## ARGUMENT

### I.    The Court Should Not Exclude Evidence of Non-Cost Efficiencies, Synergies, or Pro-Competitive Benefits, as It Goes to the Heart of Challenging DOJ's Burden at Trial.

To streamline their presentation during the limited time in the upcoming bench trial, Defendants informed DOJ that: (1) they will not introduce the findings or conclusions of one of their experts, Dr. Zmijewski, whose work was limited to quantifying cost efficiencies attributable to the proposed merger; and (2) the only fact witnesses who will present testimony regarding "synergies or efficiencies" of the merger more generally will be fact witnesses identified on the parties' preliminary witness lists. Painting Defendants' withdrawal of Dr. Zmijewski as a "bait-and-switch," MIL 4, DOJ now seeks to exclude *all* evidence and fact-witness testimony on any potential efficiencies of the merger—insinuating that Defendants somehow represented that they would introduce such evidence and testimony *exclusively* through Dr. Zmijewski. Then, swinging for the fences, DOJ goes further, arguing that *any* testimony from fact witnesses regarding any "procompetitive benefits" of the merger should be excluded. *See* MIL 7-8.

---

[4] On June 20, 2025, Defendants provided the government with a corrected version of the backup materials because the prior version had inadvertently excluded the file analyzing the value of HPE's cloud versus on-premise share based on HPE's opportunities data. *See* Ex. K.

The Court should categorically reject DOJ's extraordinary request. It is impermissibly overbroad. It rests on a severe distortion of the facts. And it is wrong on the law many times over.

### A.    The Government's Demand for Exclusion Is Impermissibly Overbroad.

DOJ's motion is impermissibly overbroad. In its sweeping argument that the Court should exclude all "evidence relating to alleged efficiencies or synergies of the merger," MIL 1, DOJ has not even attempted to show that every fact witness is incapable of offering any admissible testimony regarding any synergies, efficiencies, or "procompetitive benefits" of the merger. "[C]ourts routinely deny motions in limine that seek to exclude broad or vague categories of evidence." *Bardinet v. Tolino*, 2022 WL 16958628, at *6 (C.D. Cal. 2022) (collecting cases). That rule applies here, where DOJ has not tried to explain why any specific testimony from any specific witness is inadmissible. DOJ's arguments for a sweeping exclusion of all "efficiencies" evidence can be rejected for that reason alone. *See Bullard v. Wastequip Mfg. Co.*, 2015 WL 13757143, at *7 (C.D. Cal. 2015) (concluding that movants' "failure to specify the evidence they seek to exclude constitutes a sufficient basis upon which to deny their motion").

### B.    The Government Mischaracterizes the Facts by Omitting that the Parties' Efficiency Stipulation Expressly Permits Fact-Witness Testimony on Synergies and Efficiencies.

DOJ's primary argument for exclusion of "efficiencies" evidence is that Defendants implicitly promised or represented they would not put on such evidence through fact witnesses. That is demonstrably incorrect. The plain language of the efficiencies stipulation—key portions of which DOJ omits from its Motion—shows that the parties agreed that efficiencies and synergies evidence may be presented using fact witnesses identified on Defendants' preliminary witness list. The third paragraph of the stipulation states that "Defendants intend to put on their efficiencies case through expert testimony *or through fact witnesses who have already been deposed on synergies or efficiencies.*" Dkt. No. 154-5 (emphasis added). And the parties to the stipulation expressly agreed that "Defendants will not call fact witnesses to testify at trial on synergies or efficiencies *beyond those witnesses identified on Plaintiff's or Defendant's preliminary witness lists.*" *Id.* (emphasis added). Thus, the stipulation expressly contemplates that Defendants may present

1  efficiencies evidence through the deposition or trial testimony of witnesses on the parties'

2  "preliminary witness lists." *Id.*

3       DOJ does not mention this in its Motion. Instead, DOJ argues that "(1) Defendants had

4  'served an expert report of Dr. Mark Zmijewski in which he opines on synergies and efficiencies

5  related to the Transaction'; (2) 'Defendants represent[ed] that the noticed 30(b)(6) depositions on

6  synergies are unnecessary'; and (3) Defendants represented that 'the United States will be able to

7  depose Defendants' experts on synergies or efficiencies.'" MIL 3-4.

8       DOJ also argues that Defendants should be precluded by Rule 37 from relying on fact

9  witness testimony about synergies and efficiencies to prevent "trial by ambush." MIL 5-6. This

10  claim is incredible, given that Defendants and DOJ stipulated that Defendants could present such

11  testimony through "those witnesses identified on Plaintiff's or Defendant's preliminary witness

12  lists." Dkt. No. 154-5. There is nothing even approaching "ambush" or surprise—Defendants

13  explicitly stated that they intended to ask already disclosed fact witnesses to testify about synergies

14  and efficiencies, and DOJ agreed.

15       DOJ's portrayal of Dr. Zmijewski's role is also demonstrably incorrect. Dr. Zmijewski was

16  not some catch-all expert on any possible "efficiency"—his report explains that his testimony was

17  confined to "cost synergies or cost efficiencies" (meaning the cost savings that would be passed on

18  to customers as a result of the merger), and not other synergies or benefits that the merger would

19  create. *See FTC v. Meta Platforms, Inc.*, 2024 WL 4772423, at *35 (D.D.C. 2024) (cost efficiencies

20  focus on the cost savings from a merger that are potentially passed through to customers, compared

21  to procompetitive benefits, which may broadly cover "increased output, . . . improved service or

22  quality, spurred greater innovation, or the like"). Even if Dr. Zmijewski had been deposed, he would

23  not have opined on anything other than cost savings.

24       And in fact, DOJ had more than ample opportunity to take discovery regarding synergies

25  and efficiencies (including cost savings) from other witnesses: DOJ deposed 21 current and former

26  HPE and Juniper employees, who were included on the Parties' preliminary fact witness lists.

27  During these depositions, DOJ had every opportunity to ask witnesses about synergies and

28  efficiencies, including but not limited to cost savings. Indeed, certain witnesses testified on those

topics at their depositions as a result of DOJ's questioning. *See, e.g.*, Ex. L, Banka Dep. 230:3-9; Ex. M, Lipton Dep. 223:4-24; Ex. N, Neri Dep. 310:22-312:13. Not once did DOJ complain that these witnesses were unqualified or otherwise unable to discuss the synergies or efficiencies that flow from the deal and how those factored into the deal rationale. If DOJ was concerned about these witnesses testifying about synergies and efficiencies—and had a legitimate basis to resist their testimony—then it should not have stipulated that they could testify about those very topics.

Finally, DOJ's requested relief—barring Defendants from offering any evidence on efficiencies, synergies, or procompetitive benefits—has little relationship to the purported harm that DOJ claims to have suffered. As explained, DOJ has been able to depose every defense fact witness on these topics, and all that DOJ lost when Defendants withdrew Dr. Zmijewski was the ability to depose an expert on the quantification of cost efficiencies. That did not harm DOJ at all, because Defendants will not be seeking to quantify cost efficiencies at trial—the very reason they withdrew Dr. Zmijewski. In other words, Defendants have elected to remove one issue from the case, and DOJ has been granted discovery on every issue that remains live, including on non-cost efficiencies, synergies, and procompetitive benefits. Those broader issues—which include HPE's and Juniper's vision of creating a 'full stack' technology company to better compete with Cisco— have nothing to do with Dr. Zmijewski's work or opinions.

### C.    Fact Witness Testimony on Competition-Enhancing Aspects of the Transaction and Deal Rationale Is Highly Relevant and Critical to Rebut the Government's Case.

DOJ's legal arguments for exclusion fare no better than its demonstrably false depiction of the facts. This is so for multiple reasons.

*First*, DOJ erroneously contends that evidence of efficiencies, synergies, and procompetitive benefits is relevant only as part of an "efficiencies defense." *See* MIL 7-8 (asserting that "procompetitive benefits" are just "efficiencies" in disguise). In fact, such evidence is a critical component of Defendants' rebuttal case on competitive effects. It is DOJ's burden to prove that "the effect of [the merger] may be substantially to lessen competition." 15 U.S.C. § 18. Clayton Act merger cases require a "totality-of-the-circumstances approach" that considers a variety of factors, including the procompetitive benefits of the merger, to determine whether DOJ has carried

that burden. *United States v. Baker Hughes Inc.*, 908 F.2d 981, 984 (D.C. Cir. 1990). Thus, in rebutting a prima facie case, Defendants' may rely on "*any relevant 'real-world evidence*.'" *Bertelsmann*, 646 F. Supp. 3d at 47 (emphasis added). Evidence about competition-*enhancing* aspects of the merger goes to the heart of whether DOJ can prove *harm* to competition.

Accordingly, courts have found that "even where evidence of efficiencies in the relevant market will not support an outright defense to an anticompetitive merger, such evidence is relevant to the competitive effects analysis of the market required to determine whether the proposed transaction will substantially lessen competition." *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 151, 159 (D.D.C. 2004) (finding that evidence of efficiencies and other benefits, while not amounting to a full defense on their own, successfully rebutted a "fairly weak prima facie case of a Section 7 violation"); *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1110 (N.D. Cal. 2004) ("Arguments related to efficiencies resulting from the merger may also be relevant in opposing plaintiffs' case.").

DOJ knows this to be true: its own Merger Guidelines acknowledge that "[m]erging parties sometimes raise a rebuttal argument that, notwithstanding other evidence that competition may be lessened, evidence of procompetitive efficiencies shows that no substantial lessening of competition is in fact threatened by the merger." 2023 Merger Guidelines 32. The Guidelines themselves state that the agencies, in determining whether to challenge a merger, will "examine whether the evidence presented by the merging parties" on the procompetitive aspects of a merger meets certain criteria. *Id.* (footnote omitted). If the antitrust agencies *themselves* consider such arguments about procompetitive benefits in bounds, there is no ground to argue that *courts* are categorically precluded from considering them.

*Second*, DOJ misleadingly relies on cases where courts rejected efficiencies and procompetitive benefits arguments on the merits to claim that *evidence* supporting such arguments is *inadmissible*. *See* MIL 7-8. Indeed, DOJ does not cite a *single case* excluding efficiencies evidence. All its cases are ones where courts considered evidence of procompetitive benefits presented at trial and found it insufficient to rebut DOJ's case. *See, e.g.*, *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 91 (D.D.C. 2011) (concluding that "[t]he testimony at the hearing"

regarding efficiencies was insufficient to rebut DOJ's case); *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 73 (D.D.C. 2018) (similar).

Evidence about procompetitive benefits is routinely admitted in Clayton Act trials, and this Court is well equipped to assess it—especially in this bench trial where the Court, not a jury, will evaluate the totality of the evidence to determine the transaction's likely impact on competition. *See New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 208 (S.D.N.Y. 2020) ("[T]his Court will consider evidence of efficiencies, given courts' and federal regulators' increasingly consistent practice of doing so, and because Section 7 requires evaluation of a merger's competitive effects under the totality of the circumstances."). While DOJ is free to argue in its post-trial briefing that Defendants' evidence of procompetitive benefits is insufficient to rebut the government's case, it cannot prevent Defendants from presenting such evidence in the first place. *See Tenet Health Care*, 186 F.3d at 1054 ("[A]lthough [an] efficiencies defense may have been properly rejected by the district court, the district court should nonetheless have considered evidence of enhanced efficiency in the context of the competitive effects of the merger.").

*Third*, DOJ ignores that testimony from Defendants' executives about the procompetitive benefits of the merger is relevant not merely to show the merger will not substantially lessen competition, but also to show the rationale for the deal. Evidence that the merger had a procompetitive rationale is often introduced to rebut the government's argument that the merger was undertaken for anticompetitive reasons. *See United States v. UnitedHealth Grp. Inc.*, 630 F. Supp. 3d 118, 144 (D.D.C. 2022) (relying on trial testimony from fact witnesses on "the purpose of, or rationale for, the acquisition," as well as exhibits and deposition testimony, to reject DOJ's argument of improper deal motivation); *United States v. AT & T Inc.*, 310 F. Supp. 3d 161, 181-82, 187-88 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019) (recounting trial evidence around the defendants' view of the proposed merger, including fact testimony from multiple executives about "their decision to merge" and "the rationale for the merger"). Here, DOJ has alleged in its complaint that HPE agreed to acquire Juniper to lessen competition. Compl. ¶ 2 ("Having failed to beat Juniper's Mist on the merits, HPE seeks to acquire Juniper for $14 billion."). This allegation is demonstrably false, as the evidence presented at trial will reveal. Far from an attempt to curtail

competition, the deal was driven by the goal of combining complementary offerings across multiple networking markets and better competing with the market hegemon (Cisco). It cannot be that DOJ can allege an anticompetitive motive for a merger while blocking Defendants from rebutting that claim.

*Finally*, DOJ incorrectly seeks to paint fact witnesses' testimony regarding procompetitive benefits of the merger as impermissible expert opinion. DOJ contends that "[n]one of Defendants' fact witnesses on their witness list have the requisite personal knowledge to testify about whether the purported efficiencies from the merger are cognizable efficiencies under applicable case law." MIL 6. But witnesses are not required to render a legal opinion about "which synergies could be considered cognizable under the antitrust laws" before testifying about the synergies or efficiencies the merger is expected to create. *Id.* 7. Indeed, for both fact and expert witnesses, testimony as to such legal conclusions would be forbidden by bedrock principles of evidence law. *See, e.g.*, *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 810 (C.D. Cal. 2022) ("Although a lay witness may give an opinion on an ultimate issue to be decided by the trier of fact, she may not offer legal conclusions." (citation omitted)); *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 881 (N.D. Cal. 2025) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." (citation omitted) (Pitts, J.)).

To the extent DOJ is arguing that Defendants' witnesses lack the requisite knowledge to testify about procompetitive benefits of the merger, it is wrong. Courts regularly accept fact-witness testimony from company executives and other employees with an understanding of the factors informing deal rationale, including potential efficiencies. *See, e.g., AT & T*, 310 F. Supp. 3d at 187-88 (allowing fact testimony regarding "the rationale for the merger as well as the synergies and efficiencies that would result from the merger"); *FTC v. Peabody Energy Corp.*, 492 F. Supp. 3d 865, 914-17 (E.D. Mo. 2020) (citing multiple executives' testimony on efficiencies of the transaction). Here, HPE executives and other key personnel involved in the due diligence process of the proposed transaction have personal knowledge of HPE's rationale for seeking to acquire Juniper, including the potential synergies expected from the acquisition. *See, e.g.*, Ex. N, Neri Dep.

312:5-13 ("Because we are buying the company in cash, all the synergies will be on the HPE side . . . there was a detailed model that we review[ed] with our advisors.").

DOJ also complains that the "analyses of cost efficiencies" that Dr. Zmijewski relied on were "principally performed by third party consultants . . . neither of which appears on Defendants' witness list." MIL 6. But fact witnesses can testify about their own knowledge of the merger without reviewing the consultants' cost efficiencies analysis. DOJ improperly conflates the role that Dr. Zmijewski would have played—of quantifying cost efficiencies upon review of particular materials—with the different role that any fact witnesses may play. As explained above, the fact witnesses will testify to facts known to them about the merger and the rationales for the transaction, not about the quantification merger-specific cost efficiencies.

## II.    The Court Should Not Exclude Dr. Hill's Supplemental Quantitative Analyses.

DOJ also seeks to exclude quantitative analyses offered by Dr. Hill to supplement his rebuttal report and provide context to his critiques of Dr. Remer. This request, too, should be denied. The Federal Rules of Civil Procedure explicitly contemplate supplements to prior expert disclosures. *See* Fed. R. Civ. P. 26(e). And even if DOJ were right that Dr. Hill's additional disclosures constituted a technical discovery violation, exclusion would still not be warranted because admission of his supplemental disclosure would in no way prejudice the government. And exclusion is further unwarranted because DOJ in this very case has engaged in far more material and substantive untimely expert disclosures.

### A.    Dr. Hill's Supplemental Disclosures Are Not Substantively New Opinions and Were Timely Disclosed Soon After Receiving Dr. Remer's Reply Report.

Federal Rule of Civil Procedure 26(e) contemplates parties supplementing prior expert disclosures with additional information.[5] Fed. R. Civ. P. 26(e)(2). Parties can supplement any time prior to when their pretrial expert disclosures under Rule 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2).

---

[5] There is no "bright line rule that every opinion by an expert must be preliminarily stated in the report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (quotation omitted); *see also McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 735 (6th Cir. 2002), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002) ("Nothing in Rule 26, however, precludes an expert from revising or further clarifying opinions, particularly in response to points raised in the presentation of a case.").

Such additional disclosures are not limited to new information and can be based on information "available at the time of the initial disclosure or response." Fed. R. Civ. P. 26, advisory committee notes to 2007 amendment; *see, e.g.*, *Robson v. Duckpond Ltd.*, 2021 WL 719887, at *4 (E.D. Mo. 2021) (permitting supplemental analysis based on previously available information to clarify the expert's prior opinions in response to the opposing expert's opinions).

Supplementation is proper when it is of "limited scope," *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2025 WL 980830, at *3 (N.D. Cal. 2025), or when it "correct[s] inaccuracies, or fill[s] the intersticies of an incomplete report based on information that was not available at the time of the initial disclosure," *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). This includes when an expert provides a limited additional disclosure to complete a prior disclosure. *See Robson*, 2021 WL 719887, at *4 (permitting supplementation that did not alter the underlying methodology); *Finjan, Inc. v. Symantec Corp.*, 2018 WL 620156, *2-3 (N.D. Cal. 2018) (permitting supplementation where the expert "did not add a new theory but rather identified [information] associated with his proffered theory" to which the other side had previous access); *In re Accutane Prods. Liab. Litig.*, 2007 WL 201091, at *1 (M.D. Fla. 2007) (denying motion to strike supplemental expert report that merely "reveal[ed] additional literature review" and "a degree of new or additional rationale in support of" the expert's conclusions). Supplementation is impermissible, by contrast, when it advances a "new theory" or new opinion not contained in the original report. *See Finjan*, 2018 WL 620156, at *2.

Dr. Hill's supplemental disclosures are appropriate under Rule 26(e). First, Dr. Hill's supplemental disclosures do not alter the methodology or overarching economic analysis presented in his rebuttal expert report, nor do they offer any conclusions substantively different from those in his rebuttal report. And these disclosures rely on data that has been available to DOJ for many months. Dr. Hill's supplemental disclosures merely provide additional information completing his prior analysis in response to Dr. Remer's reply report. *See Carl Zeiss X-Ray*, 2025 WL 980830, at *3 (allowing a supplemental report that "incorporate[d] additional sales of allegedly infringing products since the service of the initial reports" and "merely extend[ed] the same logic in the experts' original reports to the additional sales"). With respect to the additional analysis of Juniper's sale

1    opportunities data, that information is consistent with Dr. Hill's prior analysis of HPE's

2    opportunities data and responds to Dr. Remer's claim ███████████████████████████

3    ████████████████████████████████ With respect to the additional analysis of Dell'Oro and HPE

4    sales opportunities data, that analysis is consistent with Dr. Hill's initial conclusion that HPE and

5    Juniper have different customer profiles (HPE focused on on-prem customers and Juniper

6    exclusively selling cloud solutions) and responds to Dr. Remer's ████████████████████████

7    ████████████████████████████████████

8        Second, Dr. Hill's supplemental disclosures are not untimely. As is required under Rule

9    26(e), Defendants' served Dr. Hill's supplemental disclosures before the parties were due to

10   exchange pretrial expert witness disclosures under Rule (a)(3). *See Wechsler v. Macke Intern. Trade,*

11   *Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (permitting expert's second supplemental report which

12   was served "on the very day that the parties were required to file Pretrial Conference papers").

13   Moreover, the facts demonstrate that Defendants endeavored to serve the disclosures in a timely

14   manner. Dr. Hill identified the additional analysis during his deposition just seven days after

15   receiving the report and nearly a month before trial. Dr. Hill's backup files supporting his

16   deposition testimony were provided less than a week later. The speed with which Dr. Hill provided

17   the backup files, and their modest scope stands in contrast to Dr. Remer's corrected opening report,

18   which was served two weeks after the Court-imposed deadline and only one week before

19   Defendants' experts had to serve their rebuttal reports.

20       **B.    Dr. Hill's Disclosure Did Not Harm or Unfairly Prejudice the Government**

21       Even if a disclosure were untimely, Rule 37(c) does not require exclusion of the evidence

22   if the supplemental disclosure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

23   To determine whether the sanction of exclusion of expert testimony for a discovery violation is

24   proper, the Ninth Circuit has instructed courts to apply "a five-factor test analyzing: 1) the public's

25   interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk

26   of prejudice to the [party seeking sanctions]; 4) the public policy favoring disposition of cases on

27   their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806,

28   814 (9th Cir. 1997). This Court has denied motions to strike supplemental disclosures, like the ones

at issue here, that cite data previously available to the other side. *See Finjan*, 2018 WL 620156, at *2-3 (denying motion to strike supplemental report in part because "the code cited in the supplemental report does not prejudice [the opposing party] because the code has been available to [it] since May 2014"). And a generalized assertion of prejudice to attorney preparation is insufficient to support excluding evidence. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007) (reversing exclusion of expert testimony disclosed three months late where the moving party would not experience unfair surprise and failed to explain why it was prejudiced).

The Ninth Circuit has affirmed the admission of far more extensive supplemental expert disclosures than Defendants' here. In *Lanard Toys Ltd. v. Novelty, Inc.*, for example, the court affirmed the district court's admission of expert testimony where the expert provided an initial, partial disclosure that did not comply with Rule 26(a) that was then supplemented by an untimely full report. 375 F. App'x 705, 713 (9th Cir. 2010). The Ninth Circuit emphasized that the expert's testimony was "not a 'surprise' to appellants, [who] were obviously able to take steps they thought necessary to contend with his testimony at trial." *Id.*

DOJ cannot credibly claim it has been harmed by Defendants' production of three modest backup files supporting Dr. Hill's deposition testimony. Dr. Hill testified at his deposition about the information he would provide in a supplemental disclosure. DOJ has not (and cannot) explain how reviewing these backup files is burdensome, particularly in comparison to their late service of Dr. Remer's corrected opening report which featured far greater changes and which dramatically compressed Dr. Hill's time to prepare his rebuttal report. Allowing Dr. Hill to testify about the supplemental disclosure cannot plausibly hinder DOJ's trial preparation, given that DOJ has already obtained his deposition testimony on the analysis at issue. *See Wechsler*, 221 F.R.D. at 623 (permitting disclosure of Plaintiff's expert's supplemental report because defendants could depose the expert "regarding the damages calculations contained in [the report]"). Nor does Dr. Hill's supplement subject DOJ to any "unfair surprise." *Betzel*, 480 F.3d at 708. To the contrary, the government has received the benefit of obtaining more expert disclosure from Defendants (who could have merely rested on Dr. Hill's deposition testimony as sufficient notice to DOJ) than it is owed. And excluding testimony would prejudice Defendants and undermine "the public policy

favoring disposition of cases on their merits," *Wendt*, 125 F.3d at 814, because it would allow certain issues in Dr. Remer's reply report to go unconnected. Finally, the supplemental disclosure does not prevent the Court from resolving the case expeditiously or managing its docket efficiently.

## CONCLUSION

The Court should deny the government's motions *in limine* in full.

1    Dated:  June 25, 2025

2    By: /s/ Jack P. DiCanio
     Jack P. DiCanio
3    Attorney for Defendant
     JUNIPER NETWORKS, INC.
4

5    Jack P. DiCanio (SBN 138782)
     Michael C. Minahan (SBN 311873)
6    **SKADDEN, ARPS, SLATE,**
     **MEAGHER & FLOM LLP**
7    525 University Avenue
     Palo Alto, CA 94301
8    Telephone: (650) 470-4500
     Facsimile: (650) 470-4570
9    Jack.DiCanio@skadden.com
     Michael.Minahan@skadden.com
10

11   Steven C. Sunshine (*pro hac vice*)
12   Tara Reinhart (*pro hac vice*)
     Joseph Rancour (*pro hac vice*)
13   Ryan J. Travers (*pro hac vice*)
     Anisa A. Somani (*pro hac vice*)
14   **SKADDEN, ARPS, SLATE,**
     **MEAGHER & FLOM LLP**
15   1440 New York Avenue N.W.
16   Washington, DC 20005
     Telephone: (202) 371-7000
17   Facsimile: (202) 661-8301
     Steve.Sunshine@skadden.com
18   Tara.Reinhart@skadden.com
     Joseph.Rancour@skadden.com
19   Ryan.Travers@skadden.com
20   Anisa.Somani@skadden.com

21   *Attorneys for Defendant*
     JUNIPER NETWORKS, INC.
22

23

24

25

26

27

28

Respectfully Submitted,

By: /s/ Beth A. Wilkinson
Beth A. Wilkinson (*pro hac vice*)
*Attorney for Defendant*
HEWLETT PACKARD ENTERPRISE
CO.

Beth A. Wilkinson (*pro hac vice*)
Kosta S. Stojilkovic (*pro hac vice*)
Daniel Epps (*pro hac vice*)
Roxana Guidero (SBN 319299)
Jenna Pavelec (*pro hac vice*)
Kellen M. McCoy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4010
bwilkinson@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
depps@wilkinsonstekloff.com
rguidero@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com
kmccoy@wilkinsonstekloff.com

Owen W. Gallogly (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
ogallogly@wilkinsonstekloff.com

Julie S. Elmer (*pro hac vice*)
Eric Mahr (*pro hac vice*)
Jennifer Mellott (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
eric.mahr@freshfields.com
jennifer.mellott@freshfields.com

Justina K. Sessions (Bar No.  270914)
**FRESHFIELDS US LLP**
855 Main St
Redwood City, CA 94063
Telephone: (650) 618-9250

justina.sessions@freshfields.com

Samuel G. Liversidge (SBN 180578)
Daniel Nowicki (SBN 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
DNowicki@gibsondunn.com

Stephen Weissman (*pro hac vice*)
Michael J. Perry (SBN 255411)
Kristen C. Limarzi (*pro hac vice*)
Jamie E. France (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
SWeissman@gibsondunn.com
MJPerry@gibsondunn.com
KLimarzi@gibsondunn.com
JFrance@gibsondunn.com

*Attorneys for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*