**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC.<br><br>*Defendants*. | Case: 5:25-CV-00951-PCP |

**ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER**

It is stipulated by and between the undersigned parties, through their respective attorneys, that:

**I.      DEFINITIONS**

A.      "AI Ops for Mist Bidder(s)" means the companies that participate in the AI Ops for Mist Source Code Auction.

B.      "Defendant(s)" means either defendant acting individually or both defendants acting collectively, as appropriate. Where the Final Judgment imposes an obligation to engage in certain conduct, that obligation shall apply where reasonable to each defendant individually, both defendants acting together, and the merged firm.

C.      "HPE" means defendant Hewlett Packard Enterprise Co., a company with its headquarters in Spring, Texas, its successors and assigns, and its subsidiaries, divisions, groups,

affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.  "Juniper" means defendant Juniper Networks, Inc., a company with its headquarters in Sunnyvale, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.  "AI Ops for Mist Licensee" means the Bidder or Bidders that meets the required criteria for the Mist AIOps Source Code Auction and to which Defendants license the AI Ops for Mist Source Code License.

F.  "AI Ops for Mist Source Code" means the source code for Juniper's AI Ops for Mist software used in Juniper's WLAN products.

G.  "AI Ops for Mist Source Code Auction" means an auction to license the AI Ops for Mist Source Code under the terms described in Section V of the proposed Final Judgement.

H.  "AI Ops for Mist Source Code License" means the license of the AI Ops for Mist Source Code.

I.  "Divestiture Acquirer" means the entity that acquires the HPE Divestiture Assets.

J.  "HPE Divestiture Assets" means the HPE Instant On Business, including:

    i.  All tangible assets related to or used in connection with the Instant On Business, including but not limited to: personal property, hardware inventory, and other tangible property; all contracts, contractual rights, and all other agreements, commitments, and purchase orders; all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations;

    ii.  All intangible assets related to or used in connection with the Instant On Business, including but not limited to: all data and information controlled by HPE for the Instant On business; R&D employees specific to the Instant On business, together with all tangible and electronic embodiments of know-how, documentation of ideas, research and development files, and other similar tangible or electronic materials specific to the Instant On business; all Instant On specific intellectual property owned, licensed, or sublicensed (and, for shared intellectual property, a perpetual license), including the Instant On trademark (but, for the avoidance of doubt, excluding any trademarks or trade names containing the name "HPE"); a license to the version of HPE's AOS 8 software used with Instant On; all rights to causes of action, lawsuits, judgments, claims, defenses, indemnities, guarantees, refunds, and other rights and privileges against third parties; and goodwill arising primarily out of the conduct of the Instant On business.

 K. "HPE Instant On Business" means HPE's worldwide Instant On campus and branch business.

 L. "Relevant HPE Divestiture Personnel" are the individuals associated with the HPE Divestiture Business.

M. "Relevant AI Ops for Mist Personnel" are the individuals described in Paragraph V.1.B.5 of the proposed Final Judgment.

N. "Transaction" means the acquisition of Juniper by HPE.

O. "WLAN" means wireless local area network.

## II. OBJECTIVES

The Final Judgment filed in this case is meant to ensure Defendants' prompt sale and license of the HPE Divestiture Assets and license of the AI Ops for Mist Source Code for the purpose of preserving competition in the sale of enterprise-grade wireless local area networking ("WLAN") solutions in the United States in order to remedy the effects that the United States alleges would otherwise result from the Transaction. This Asset Preservation and Hold Separate Stipulation and Order ensures, prior to such sale and license, that the HPE Divestiture Assets and the AI Ops for Mist Source Code remain independent, economically viable, and ongoing business concerns that will be uninfluenced by HPE or Juniper and that competition is maintained during the pendency of the ordered divestiture.

## III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue of this action is proper in the United States Northern District of California.

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent. The United States may withdraw its consent at any time before the entry of

the proposed Final Judgment by serving notice thereof on Defendants and by filing that notice with the Court.

B.   Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no later than three (3) business days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

C.   Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment as though it were in full force and effect as the Final order of the Court.

D.   Defendants shall not consummate the Transaction sought to be enjoined by the Complaint herein before the Court has signed this Stipulation and Order.

E.   This Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

F.	In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above; or (2) the proposed Final Judgment is not entered pursuant to this Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

G.	Defendants represent that the divestiture and license ordered in the proposed Final Judgment can and will be made in accordance with the terms of the proposed Final Judgment, and that Defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. HOLD SEPARATE PROVISIONS

Until the divestiture of the HPE Divestiture Assets required by the Final Judgment have been accomplished:

A.	Defendants must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the HPE Divestiture Assets including by (1) operating the HPE Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit.

B.	Defendants must use reasonable efforts to maintain and increase the sales and revenues of the HPE Divestiture Assets and must maintain HPE Fiscal Year 2024

levels or approved HPE Fiscal Year 2025 levels, whichever are higher, for all promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the HPE Divestiture Assets.

      C.      Defendants must use reasonable efforts to maintain and preserve existing relationships with customers, suppliers, governmental authorities, vendors, landlords, creditors, agents, and all others having business relationships relating to the HPE Divestiture Assets.

      D.      Defendants must maintain, in accordance with sound accounting principles, separate accurate and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the HPE Divestiture Assets.

      E.      Defendants must maintain the working conditions, staffing levels, and work force training and expertise of all Relevant HPE Divestiture Personnel. Relevant HPE Divestiture Personnel must not be transferred or reassigned except to the Acquirer, or if initiated by the employee pursuant to HPE's regular, established job posting policies. Defendants must provide the United States with 10 calendar days' notice of the transfer of Relevant HPE Divestiture Personnel, and upon objection by the United States to such transfer, Relevant HPE Divestiture Personnel may not be transferred or reassigned. Defendants must use reasonable efforts, including by providing financial incentives, to encourage the Relevant HPE Divestiture Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by Defendants, and financial incentives may not be structured so as to disincentivize employees from accepting employment with the Divestiture Acquirer.

F.  Defendants must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the HPE Divestiture Assets and must operate the HPE Divestiture Assets in compliance with all regulatory obligations and requirements.

G.  Defendants must take all steps necessary to ensure that the HPE Divestiture Assets are fully maintained in operable condition at no less than their current level of sales, with the same level of quality, functionality, access, and customer support consistent with past practices.

H.  Except as approved by the United States in accordance with the terms of the Proposed Final Judgment, Defendants must not remove, sell, lease, transfer, assign, pledge, encumber, or otherwise dispose of any of the HPE Divestiture Assets.

I.  Defendants shall take no action that would jeopardize, delay, or impede the sale of the HPE Divestiture Assets.

J.  Defendants must hold management, sales, and operations of the HPE Divestiture Assets entirely separate, distinct, and apart from Defendants' other operations. Defendants must not coordinate the production, marketing, or terms of sale of any products produced or sold by the HPE Divestiture Assets with the production, marketing, or terms of sale of any other products produced or sold by Defendants.

K.  Defendants must appoint, subject to approval of the United States in its sole discretion, a person or persons to oversee the HPE Divestiture Assets. Such person or persons will be responsible for Defendants' compliance with this Section V, for managing the sale and operations of the HPE Divestiture Assets separately from Defendants' other operations, and for ensuring the preservation of the HPE Divestiture Assets for the

duration of this Stipulation and Order.  In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to approval of the United States in its sole discretion, a replacement within ten (10) business days.  Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

L.     Within twenty (20) calendar days after entry of this Stipulation and order, Defendants will inform the United States of the steps Defendants have taken to comply with this Stipulation and Order.

## VI.    DURATION OF OBLIGATIONS

Defendants' obligations under Section V of this Stipulation and Order will expire upon the (1) completion of the divestiture and license required by the Proposed Final Judgment or (2) further order of the Court.  If the United States voluntarily dismisses the Complaint in this matter, Defendants are released from all further obligations under this Stipulation and Order.

Dated: June 27, 2025

/s/ Chad Mizelle
CHAD MIZELLE
*Acting Associate Attorney General*

/s/ Stanley Woodward
STANLEY WOODWARD
*Counselor to the Attorney General*

/s/ Ketan Bhirud
KETAN BHIRUD
*Associate Deputy Attorney General*

/s/ Abigail A. Slater
ABIGAIL A. SLATER
*Assistant Attorney General*

ROGER P. ALFORD
*Principal Deputy Assistant Attorney General*

OMEED ASSEFI
MARK HAMER
WILLIAM J. RINNER
*Deputy Assistant Attorneys General*

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue N.W.
Washington, DC 20530
Tel.: 202-616-1473

s/ JENNIFER MELLOTT (*pro hac vice*)
 JULIE ELMER (*pro hac vice*)
JAN RYBNICEK (*pro hac vice*)
MARY LEHNER
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
(202) 777-4500

/s/ BETH A. WILKINSON (*pro hac vice*)
KOSTA S. STOJILKOVIC (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4010

/s/ SAMUEL G. LIVERSIDGE (CA No. 180578)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000

Attorneys for HEWLETT PACKARD ENTERPRISE CO.

/s/ STEVEN C. SUNSHINE (*pro hac vice*)
JOE RANCOUR (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000

Attorneys for
JUNIPER NETWORKS, INC.