# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEWLETT PACKARD<br><br>ENTERPRISE CO. and JUNIPER<br><br>NETWORKS, INC.<br><br>*Defendants*. | Case: 5:25-CV-00951-PCP |

## PROPOSED FINAL JUDGMENT

WHEREAS, plaintiff United States of America filed its Complaint on January 30, 2025, and whereas the United States and Defendants, Hewlett Packard Enterprise Co. and Juniper Networks, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt divestiture of certain assets and license of certain rights by Defendants to ensure that competition is not substantially lessened;

AND WHEREAS, the United States requires that Defendants agree to undertake certain actions for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the actions described below can and will be made;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.     JURISDICTION

This Court has jurisdiction over the subject matter of and, for purposes of this case only, each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.     DEFINITIONS

As used in this Final Judgment:

A.     "AI Ops for Mist Bidder(s)" means the companies that participate in the AI Ops for Mist Source Code Auction.

B.     "Defendant(s)" means either defendant acting individually or both defendants acting collectively, as appropriate. Where the Final Judgment imposes an obligation to engage in certain conduct, that obligation shall apply where reasonable to each defendant individually, both defendants acting together, and the merged firm.

C.     "HPE" means defendant Hewlett Packard Enterprise Co., a company with its headquarters in Spring, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "Juniper" means defendant Juniper Networks, Inc., a company with its headquarters in Sunnyvale, California, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.    "AI Ops for Mist Licensee" means the Bidder or Bidders that meet the required criteria for the Mist AI Ops Source Code Auction and to which Defendants license the AI Ops for Mist Source Code License.

F.    "AI Ops for Mist Source Code" means the source code for Juniper's AI Ops for Mist software used in Juniper's WLAN products.

G.    "AI Ops for Mist Source Code Auction" means an auction to license the AI Ops for Mist Source Code under the terms described in Section V.

H.    "AI Ops for Mist Source Code License" means the license of the AI Ops for Mist Source Code.

I.    "Divestiture Acquirer" means the entity that acquires the HPE Divestiture Assets.

J.    "HPE Divestiture Assets" means the HPE Instant On Business, including:

i.    All tangible assets related to or used in connection with the Instant On Business, including but not limited to: personal property, hardware inventory, and other tangible property; all contracts, contractual rights, and all other agreements, commitments, and purchase orders; all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations;

ii.    All intangible assets related to or used in connection with the Instant On Business, including but not limited to: all data and information controlled by HPE for the Instant On business; R&D employees specific to the Instant On business, together with all tangible and electronic embodiments of know-how, documentation of ideas, research and development files, and other

3

similar tangible or electronic materials specific to the Instant On business; all Instant On specific intellectual property owned, licensed, or sublicensed (and, for shared intellectual property, a perpetual license), including the Instant On trademark (but, for the avoidance of doubt, excluding any trademarks or trade names containing the name "HPE"); a license to the version of HPE's AOS 8 software used with Instant On; all rights to causes of action, lawsuits, judgments, claims, defenses, indemnities, guarantees, refunds, and other rights and privileges against third parties; and goodwill arising primarily out of the conduct of the Instant On business.

K.    "HPE Instant On Business" means HPE's worldwide Instant On campus and branch business.

L.    "Relevant HPE Divestiture Personnel" are the individuals associated with the HPE Divestiture Business.

M.    "Relevant AI Ops for Mist Personnel" are the individuals described in Paragraph V.1.B.5 of the Final Judgment.

N.    "Transaction" means the acquisition of Juniper by HPE.

O.    "WLAN" means wireless local area network.

### III.    APPLICABILITY

A.    This Final Judgment applies to HPE and Juniper, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.    DIVESTITURE

1.    *Divestiture of the HPE Divestiture Assets*

A.    Defendants are ordered and directed within one hundred and eighty (180) calendar days after the filing of this proposed Final Judgment, or five (5) days after notice of entry of this Final Judgment by the Court, whichever is later, to divest the HPE Divestiture Assets in a manner consistent with this Final Judgment to a Divestiture Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to extensions of this time period of up to sixty (60) days per extension, and shall notify the Court in such circumstances.

B.    For all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the HPE Divestiture Assets, Defendants must assign or otherwise transfer all contracts, agreements, and customer relationships to Divestiture Acquirer within the deadlines set forth in Paragraph IV.1.A; provided, however, that for any contract or agreement that requires the consent of another party to assign or otherwise transfer, Defendants must use best efforts to accomplish the assignment or transfer. Defendants must not interfere with any negotiations between Divestiture Acquirer and a contracting party.

C.    Defendants must inform any person making an inquiry relating to a possible purchase of the HPE Divestiture Assets that the HPE Divestiture Assets are being sold in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Divestiture Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.

**2.**     *Appointment of Divestiture Trustee*

A.     If Defendants have not divested the HPE Divestiture Assets after one hundred and eighty (180) calendar days after the filing of this proposed Final Judgment (or, as provided above, as extended by additional sixty (60) day periods by the United States in its sole discretion), or five (5) days after notice of entry of this Final Judgment by the Court, whichever is later, Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to sell the HPE Divestiture Assets (the "Divestiture Trustee"). Defendants consent to appointment of a Divestiture Trustee prior to entry of this Final Judgment if the HPE Divestiture Assets have not been sold within the time periods provided in Paragraph IV.1.A.

B.     After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the HPE Divestiture Assets. The Divestiture Trustee shall have the power and authority to sell the HPE Divestiture Assets to a Divestiture Acquirer acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of this Final Judgment, and will have other powers as the Court deems appropriate.

C.     Subject to Paragraph IV.2.E of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, and that are reasonably necessary in the Divestiture Trustee's judgment to assist in selling the HPE Divestiture Assets.

D.     Defendants shall not object to a sale of the HPE Divestiture Assets by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the Divestiture

Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section IV.3.

E.      The Divestiture Trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves and shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the HPE Divestiture Business based on the price and terms of the divestiture and the speed at which it is accomplished.  Within three (3) business days of hiring an agent or consultant, the Divestiture Trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

F.      Defendants shall use their best efforts to assist the Divestiture Trustee in selling the HPE Divestiture Assets. The Divestiture Trustee and any consultants, accountants, attorneys, and other persons retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of Defendants, including any information provided to the United States during its investigation of the Transaction related to the HPE Divestiture Assets, and Defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's sale of the HPE Divestiture Assets.

G.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and the Court setting forth the Divestiture Trustee's efforts to sell the HPE Divestiture

7

Assets ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to purchase, expressed an interest in purchasing, entered into negotiations to purchase, or was contacted or made an inquiry about purchasing the HPE Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to sell the HPE Divestiture Assets.

      H.     If the Divestiture Trustee has not sold the HPE Divestiture Assets ordered under this Final Judgment within six (6) months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to sell the HPE Divestiture Assets, (2) the reasons, in the Divestiture Trustee's judgment, why the required sale of the HPE Divestiture Assets has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

**3.**     ***Notice of Proposed Sale of the HPE Divestiture Assets***

      A.     Within two (2) business days following execution of a definitive agreement to sell the HPE Divestiture Assets, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the sale required herein, shall notify the United States of any such proposed sale under Section IV.1 or Section IV.2 of this Final Judgment. If the Divestiture Trustee

is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed sale and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to purchase the HPE Divestiture Assets.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Divestiture Acquirer, or any other third party, or the Divestiture Trustee if applicable, additional information concerning the proposed sale, the proposed Divestiture Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Divestiture Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed Divestiture Acquirer or any other aspects of the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph IV.2.D of this Final Judgment. Absent written notice that the United States does not object to the proposed Divestiture Acquirer or upon objection by the United States, a sale proposed under Section IV.1 or IV.2 shall not be consummated. Upon objection by Defendants under Paragraph IV.2.D, a sale proposed under Section IV.2 shall not be consummated unless approved by the Court.

## 4.      *Hold Separate*

Until the sale of the HPE Divestiture Assets required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Asset Preservation and

Hold Separate Stipulation and Order entered by the Court. Defendants shall take no action that would jeopardize the divestiture ordered by the Court.

## V.     SOFTWARE LICENSE

### 1.     *The AI Ops for Mist Software License*

A.     Defendants are ordered and directed within one hundred and eighty (180) calendar days after the filing of this proposed Final Judgment, or five (5) days after notice of entry of this Final Judgment by the Court, whichever is later, to hold the AI Ops for Mist Source Code Auction according to the criteria set forth below and, to enter into a AI Ops for Mist Source Code License in a manner consistent with this Final Judgment, to a Licensee acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to extensions of this time period of up to sixty (60) days per extension, and shall notify the Court in such circumstances.

B.     The AI Ops for Mist Source Code License shall consist of a one-time, perpetual, worldwide, non-exclusive license to the AI Ops for Mist Source Code on the following basis:

1.     The AI Ops for Mist Source Code License shall be irrevocable except in the case of malfeasance by the Licensee(s). Negligent or intentional breaches of the Defendants' intellectual property rights shall be construed as malfeasance for purposes of this provision.

2.     The AI Ops for Mist Source Code License shall not include the right to use the Mist trademark.

3.     Defendants warrant that they have the authority to license all intellectual property included in the AI Ops for Mist Source Code free and clear of any encumbrances, contractual commitments or obligations, except that for any third party software dependencies contained in the AI Ops for Mist Source Code, Defendants will (1) include a sub-license to any such software that is sublicensable and does not require

10

either the consent of, or payment to, any such third party licensor; and (2) to the extent that any such software requires consent of or payment to any such third party licensor, reasonably facilitate the Licensee(s)'s discussions with any other relevant third parties to obtain licenses.

4.    At the option of the Licensee, Defendants will, for a period of twelve (12) months after the date of the license and on reasonable commercial terms, enter into a contract to provide transition services whereby Defendants will provide the Licensee with any knowledge transfer assistance, software updates, engineering support for ordinary course maintenance and bug fixes that it releases for the AI Ops for Mist Source Code, and engineering support for integrating the Mist AIOps source code into the Licensee's software.

5.    At the option of the Licensee, Defendants will facilitate the transfer of up to thirty (30) Juniper engineers familiar with the Mist AI Ops Source Code, and up to twenty five (25) Juniper sales personnel experienced in selling Mist. Defendants will provide financial incentives to encourage relevant employees to transfer to the Licensee.  The license will include a non-solicit provision preventing Licensee from soliciting any additional Juniper engineers or sales personnel beyond the agreed upon personnel, which shall lapse twelve (12) months from the date of the license. The license will also include a non-solicit provision preventing Defendants from soliciting to rehire any personnel transferred to Licensee  under the license, which shall lapse 12 months after the date of the license.

6.    At the option of the Licensee, Defendants will provide the Licensee with relevant contact information for and facilitate introductions to (i) Juniper's original design manufacturer ("ODM") suppliers for WLAN hardware, (ii) Juniper's distributors for

WLAN in the United States, and (iii) channel partners that work with Juniper to sell WLAN in the United States.

    C.      Defendants shall conduct the AI Ops for Mist Source Code Auction on the following terms:

1.      Defendants will hold the AI Ops for Mist Source Code Auction to license the AI Ops for Mist Source Code.

2.      Defendants will select a Licensee acceptable to the United States based on their assessment of the totality of the bid submitted by each Bidder, including but not limited to price.

3.      Defendants will negotiate a definitive license agreement with the selected Licensee within 180 days of entry of this proposed Final Judgment.

4.      In the event that more than one bid is received that exceeds $8 million, Defendants will license the AI Ops for Mist Source Code to a second Licensee acceptable to the DOJ on the following basis:

- If only two bids are received that exceed $8 million, Defendants will also license the AI Ops for Mist Source code, excluding the transitional services and employees described in Paragraphs V.1.B.4, V.1.B.5 and V.1.B.6 of this proposed Final Judgment, to the second-place Licensee at the price contained in that Licensee's bid.

- If three or more bids are received that exceed $8 million, Defendants will hold a secondary auction to license the AI Ops for Mist Source Code, excluding the transitional services and employees described in Paragraphs V.1.B.4, V.1.B.5 and V.1.B.6 of this proposed Final Judgment, to either the second- or third-place bidder in the primary auction, in which case the

secondary auction will have a reserve price set at the license fee paid by the
winning bidder of the primary auction.

D.    Provided one or more Licensee(s) emerges as the winning bidder at the auction as
set forth in Section V.1.C or Section V.2:

1.    The Licensee(s) shall have the right to utilize the AI Ops for Mist Source Code for
its networking products.

2.    The Licensee(s) shall have the right to further develop and innovate the AI Ops for
Mist Source Code, and any improvements to and derivatives of the AI Ops for Mist
Source Code developed after the license date by the Licensee will be owned by the
Licensee.

3.    The Licensee(s) shall have the right to grant rights of use to the AI Ops for Mist
Source Code to its end users, intermediaries, and service providers as reasonably
needed in connection with the sale of its networking products.

4.    Defendants and Licensee(s) will provide patent cross-licenses to enable the
parties' activities within WLAN.

*2.*    ***Appointment for AI Ops for Mist License Trustee***

A.    If Defendants have not licensed the AI Ops for Mist Source Code to a Licensee(s)
after one hundred and eighty (180) calendar days after the filing of this proposed Final Judgment
(or, as provided above, as extended by additional sixty (60) day periods by the United States in its
sole discretion), or five (5) days after notice of entry of this Final Judgment by the Court, whichever
is later, Defendants shall notify the United States of that fact in writing. Upon application of the
United States, the Court shall appoint a trustee selected by the United States and approved by the
Court to conduct the AI Ops for Mist Source Code Auction and license the AI Ops for Mist Source
Code in a manner consistent with this Final Judgment (the "License Trustee"). Defendants consent

to appointment of a License Trustee prior to entry of this Final Judgment if the AI Ops for Mist Source Code Auction and license of the AI Ops for Mist Source Code have not been completed within the time periods provided in Paragraph V.1.A.

B.      After the appointment of a License Trustee becomes effective, only the License Trustee shall have the right to conduct the AI Ops for Mist Source Code Auction and license the AI Ops for Mist Source Code. The License Trustee shall have the power and authority to conduct the AI Ops for Mist Source Code Auction and to license the AI Ops for Mist Source Code to a Licensee(s) acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the License Trustee, subject to the provisions of this Final Judgment, and will have other powers as the Court deems appropriate.

C.      Subject to Paragraph V.2.E of this Final Judgment, the License Trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the License Trustee, and that are reasonably necessary in the License Trustee's judgment to assist in the AI Ops for Mist Source Code Auction and in licensing the AI Ops for Mist Source Code.

D.      Defendants shall not object to a License by the License Trustee on any ground other than the License Trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the License Trustee within ten (10) calendar days after the License Trustee has provided the notice required under Section V.3.

E.      The License Trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves and shall account for all monies derived from the sale of the assets sold by the License Trustee and all costs and expenses so incurred. After approval by the Court of the License Trustee's accounting, including fees for its services and those of any professionals and agents retained by the License Trustee, all remaining money shall be paid to

Defendants and the trust shall then be terminated. The compensation of the License Trustee and any professionals and agents retained by the License Trustee shall be reasonable in light of the value of the AI Ops for Mist Source Code License and based on the price and terms of the license and the speed at which it is accomplished.  Within three (3) business days of hiring an agent or consultant, the License Trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

F.      Defendants shall use their best efforts to assist the License Trustee in accomplishing the required AI Ops for Mist Source Code Auction and in licensing the AI Ops for Mist Source Code. The License Trustee and any consultants, accountants, attorneys, and other persons retained by the License Trustee shall have full and complete access to the personnel, books, records, and facilities of Defendants, including any information provided to the United States during its investigation of the Transaction related to the AI Ops for Mist Source Code, and Defendants shall develop financial and other information relevant to such business as the License Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the License Trustee's accomplishment of the AI Ops for Mist Source Code Auction or AI Ops for Mist Source Code License.

G.      After its appointment, the License Trustee shall file monthly reports with the United States and the Court setting forth the License Trustee's efforts to conduct the AI Ops for Mist Source Code Auction and license the AI Ops for Mist Source Code ordered under this Final Judgment. To the extent such reports contain information that the License Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to license, expressed an interest in licensing, entered into negotiations to license, or was contacted or made an

inquiry about licensing the AI Ops for Mist Source Code, and shall describe in detail each contact with any such person. The License Trustee shall maintain full records of all efforts made to conduct the AI Ops for Mist Source Code Auction or license the AI Ops for Mist Source Code.

H.    If the License Trustee has not entered into the license ordered under this Final Judgment within six (6) months after its appointment, the License Trustee shall promptly file with the Court a report setting forth (1) the License Trustee's efforts to accomplish the required AI Ops for Mist Source Code Auction and AI Ops for Mist Source Code License, (2) the reasons, in the License Trustee's judgment, why the required AI Ops for Mist Source Code Auction and AI Ops for Mist Source Code License has not been accomplished, and (3) the License Trustee's recommendations. To the extent such reports contain information that the License Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The License Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the License Trustee's appointment by a period requested by the United States.

### 3.    *Notice of Proposed AI Ops for Mist License*

A.    Within two (2) business days following execution of a definitive agreement to license the AI Ops for Mist Source Code, Defendants or the License Trustee, whichever is then responsible for effecting the license required herein, shall notify the United States of any such proposed license under Section V.1 or Section V.2 of this Final Judgment. If the License Trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed license and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to license the AI Ops for Mist Source Code.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Licensee(s), or any other third party, or the License Trustee if applicable, additional information concerning the proposed license, the proposed Licensee(s), and any other potential Licensee(s). Defendants and the License Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Licensee(s), any third party, and the License Trustee, whichever is later, the United States shall provide written notice to Defendants and the License Trustee, if there is one, stating whether or not it objects to the proposed license. If the United States provides written notice that it does not object, the license may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.2.D of this Final Judgment. Absent written notice that the United States does not object to the proposed Licensee(s) or upon objection by the United States, a license proposed under Section V.1 or Section V.2 shall not be consummated. Upon objection by Defendants under Paragraph V.2.D, a license proposed under Section V.2 shall not be consummated unless approved by the Court.

### 4.      Preservation of AI Ops for Mist Assets

Until the license required by this Final Judgment has been accomplished:

A.      Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the AI Ops for Mist Source Code as an economically viable asset.

B.      Defendants shall not remove, sell, lease, assign, transfer, pledge, exclusively license, or otherwise dispose of the AI Ops for Mist Source Code.

C.    Defendants shall take no action that would interfere with the ability of any License Trustee appointed pursuant to the Final Judgment to conduct the AI Ops for Mist Source Code Auction or complete the license of the AI Ops for Mist Source Code.

## VI.    AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the proposed Final Judgment in this matter, and every thirty (30) calendar days thereafter until both the HPE Divestiture Assets have been divested under Section IV and completion of the AI Ops for Mist Source Code Auction and any license of the AI Ops for Mist Source Code under Section V, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Sections IV and V of this Final Judgment. Each such affidavit shall include a description of the efforts Defendants have taken to sell the HPE Divestiture Assets and conduct the AI Ops for Mist Source Code Auction, as applicable. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.    Defendants shall keep all records of all efforts made to preserve and sell the HPE Divestiture Assets until one year after such sale has been completed and shall keep records of all efforts made to preserve and license the AI Ops for Mist Source Code until one year after such license has been completed.

## VIII.    COMPLIANCE INSPECTION

A.        For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States, including consultants and other persons retained by the United States shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

1.    access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

2.    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.        Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at Defendants' cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

C.        No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the

executive branch of the United States, except in the course of legal proceedings to which any Plaintiff is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## IX.    NOTIFICATION

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States shall be sent to the person at the address and emails set forth below (or such other addresses as the United States may specify in writing to Defendants):

United States

Jacklin Lem
Civil Chief, San Francisco Office
U.S. Department of Justice, Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Jacklin.Lem@usdoj.gov

## X.    RETENTION OF JURSIDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XI.    EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XII.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.

Date: _____

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

_____

Hon. P. Casey Pitts

United States District Judge