UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>HEWLETT PACKARD ENTERPRISE CO., et al.,<br><br>       Defendants. | Case No.  5:25-cv-00951-PCP<br><br>**NOTICE OF LETTER RECEIVED** |

   Please take notice that the letter attached hereto as Exhibit A was submitted to chambers on July 28, 2025.

Dated: July 29, 2025

_____
P. Casey Pitts
United States District Judge

# EXHIBIT A

# United States Senate
## WASHINGTON, DC 20510

July 28, 2025

The Honorable P. Casey Pitts
United States District Court
Northern District of California
San Jose Courthouse, Courtroom 8, 4th Floor
280 South First Street
San Jose, CA 95113

*United States v. Hewlett Packard Enterprise Co. et al.*, 5:25-CV-00951-PCP

Your Honor:

We write to alert the Court to concerning allegations regarding the proposed settlement in the U.S. Department of Justice's (DOJ) antitrust challenge to Hewlett Packard Enterprise Co.'s (HPE) $14 billion acquisition of Juniper Networks, Inc. (Juniper) that is currently pending before the Court.[1] For the reasons outlined below, we urge the Court to use its broad discretion to hold an evidentiary hearing pursuant to Section 2 of the *Antitrust Procedures and Penalties Act*,[2] 15 U.S.C. 16(b)–(h) (the *Tunney Act*), to determine whether the settlement is in the public interest.

Recent reporting and submissions filed with the Court make clear the settlement in this case, and the circumstances around it, deserve substantial scrutiny. *First*, the proposed settlement, which was filed late on a Friday night, just days before the start of trial,[3] falls well short of resolving the serious antitrust concerns identified in the United States' complaint and pretrial submissions. *Second*, recent news reporting suggests the defendants retained lobbyists and consultants with ties to the White House and the Office of the Attorney General to obtain a settlement that falls well outside the public interest and that they likely would not have been able to obtain in the ordinary course.[4] *Third*, we are dismayed by allegations that officials in the Antitrust Division may have been sidelined because they opposed the backroom negotiations that led to this settlement and the weak substance that the Department and this Court will be required to enforce in the future.[5]

These are precisely the types of facts and circumstances that compelled Congress to pass the *Tunney Act*. It is an essential transparency tool that obligates district courts to ensure that final

---

[1] We have submitted this letter as a public comment to the Antitrust Division as part of the *Tunney Act* process and simultaneously alert the Court to our concerns.
[2] Antitrust Procedures and Penalties Act, S. 782, https://www.congress.gov/bill/93rd-congress/senate-bill/782.
[3] Reuters, "US Justice Department settles antitrust case for HPE's $14 billion takeover of Juniper," Rishabh Jaiswal, June 30, 2025, https://www.reuters.com/business/us-doj-settles-antitrust-case-hpes-14-billion-takeover-juniper-2025-06-28/.
[4] Semafor, "Justice Department drama clouds White House's antitrust approach," Ben Smith and Liz Hoffman, July 24, 2025, https://www.semafor.com/article/07/24/2025/us-justice-department-drama-clouds-white-houses-antitrust-approach; The Capitol Forum, "HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms," July 24, 2025, https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils/.
[5] *Id.*

agreements between the United States and private parties are in accordance with federal law and are in the public interest rather than the interests of individual government officials and corporate executives. The Justice Department must stand as the lawyers for the entire United States. A settlement to resolve the challenge to HPE's proposed acquisition of Juniper should not be made on the backs of the American people while enriching well-connected lobbyists. As U.S. Senators, we have a responsibility to the constituencies we represent to ensure the Department is making this determination in the best interests of the public, and raise relevant concerns as part of the public comment period mandated by the *Tunney Act*.[6] The Court, likewise, "[b]efore entering any consent judgment proposed by the United States [under the antitrust laws,] … shall determine that the entry of such judgment is in the public interest,"[7] and is well within its authority to compel testimony under oath from any individuals familiar with the settlement negotiations.[8] The Court should make robust use of the *Tunney Act*'s provisions as it fulfills its obligation to ensure the proposed settlement with the United States is in the public interest.

### The *Tunney Act* Would Apply Much-Needed Sunlight to the Settlement Between DOJ and HPE/Juniper Networks

On January 30, 2025, the Antitrust Division filed a lawsuit to block HPE's proposed $14 billion acquisition of Juniper Networks,[9] citing concerns that the combination of the nation's second- and third-largest providers of enterprise wireless networking solutions would result in two companies controlling 70 percent of enterprise-grade wireless networking solutions.[10] The case was scheduled to go to trial on July 9, 2025.[11] With less than two weeks remaining, however, DOJ notified the Court that it intended to drop its challenge to the transaction because it reached a settlement agreement with HPE and Juniper Networks that "resolves the government's competitive concerns" about the acquisition.[12]

Unfortunately, it appears the settlement does not in fact address the concerns DOJ cited as the basis for its January 30 challenge. The settlement between the merging parties and DOJ primarily requires HPE to divest its HPE Instant On Business.[13] The Instant On Business is a line of Wi-Fi-enabling products designed for small businesses[14] and, according to experts, "isn't an option for the large, 'enterprise-grade WLAN solutions' customers DOJ's complaint alleged the merger would

---

[6] 15 U.S.C. 16(b).
[7] 15 U.S.C. 16(e).
[8] 15 U.S.C. 16(f).
[9] U.S. Department of Justice, "Justice Department Sues to Block Hewlett Packard Enterprise's Proposed $14 Billion Acquisition of Rival Wireless Networking Technology Provider Juniper Networks," press release, January 30, 2025, https://www.justice.gov/opa/pr/justice-department-sues-block-hewlett-packard-enterprises-proposed-14-billion-acquisition.
[10] U.S. v. Hewlett Packard Enterprise and Juniper Networks, (N.D. Cal., 2025), Complaint, p. 3, https://www.justice.gov/atr/media/1406591/dl?inline
[11] Reuters, "US Justice Department settles antitrust case for HPE's $14 billion takeover of Juniper," Rishabh Jaiswal, June 30, 2025, https://www.reuters.com/business/us-doj-settles-antitrust-case-hpes-14-billion-takeover-juniper-2025-06-28/.
[12] U.S. v. Hewlett Packard Enterprise and Juniper Networks, (N.D. Cal., 2025), Joint Submission Regarding Settlement, p. 2, https://www.law360.com/dockets/download/6862b6123e0ebc711067560a?doc_url=https%3A%2F%2Fecf.cand.uscourts.gov%2Fdoc1%2F035125910413&label=Case+Filing.
[13] U.S. v. Hewlett Packard Enterprise and Juniper Networks, (N.D. Cal., 2025), Proposed Final Judgment, June 27, 2025, pp. 3, 5, https://www.justice.gov/atr/media/1406596/dl?inline
[14] HPE, Instant On, https://instant-on.hpe.com/.

harm."[15] It therefore appears that the divestiture does not allay concerns arising from the combination of HPE and Juniper Networks's enterprise-grade solutions, which would merge two current competitors and create an apparent duopoly. HPE's CEO essentially confirmed this fact on a July 10 call with investors, describing Instant On as "a distinct offering separate from the traditional HPE Aruba platform and Aruba Central," and "specifically designed to serve the small business segment, … a small portion of our overall business."[16]

Reporting has also raised procedural concerns regarding how DOJ and HPE arrived at the settlement agreement. First, as with the settlement agreement in the Nixon-era deal involving ITT, Inc. further described below that led Congress to pass the *Tunney Act*, no DOJ trial attorneys signed the consent decree documents, according to reporting.[17] Second, HPE reportedly hired lobbyists friendly to the White House, including "MAGA-aligned antitrust thought leader Mike Davis"[18] and "longtime behind-the-scenes operator" Arthur Schwartz,[19] in an apparent attempt to curry favor and win approval of the case.[20] However, the disclosures HPE filed under Section 16(g) of the *Tunney Act* omit Mr. Schwartz.[21] This raises questions about whether the disclosures are complete, given the fact that Section 16(g) requires parties to disclose "any and all written or oral communications … on behalf of [defendants] … with any officer or employee of the United States concerning or relevant to" the settlement agreement at issue.[22] And third, there have been reports regarding the abnormally close involvement in this settlement of Chad Mizelle, Chief of Staff to Attorney General Pam Bondi and other appointees in the senior leadership offices of the Justice Department, who signed onto the settlement[23] and reportedly overruled the Antitrust Division's analysis.[24] Together, these reports raise concerns regarding whether the settlement advances the interests of the public or a well-connected, well-paid group of insiders. At a minimum, it's unclear whether the settlement even addresses the Justice Department's original antitrust concerns.

The *Tunney Act* requires DOJ to file proposed antitrust consent decrees with the appropriate district court and publish the proposed agreements in the Federal Register for 60 days of public comment.[25]

---

[15] The Capitol Forum, "HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms," July 24, 2025, https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils/.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] Punchbowl News, "The power in Trump's Washington," Jake Sherman, John Bresnahan, Andrew Desiderio, and Melanie Zanona, November 7, 2024, https://punchbowl.news/article/washington/power-in-trumps-washington/.
[20] The Capitol Forum, "HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms," July 24, 2025, https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils/.
[21] *Id.*
[22] 15 U.S.C. 16(g).
[23] U.S. v. Hewlett Packard Enterprise and Juniper, (N.D. Cal., 2025), Asset Preservation and Hold Separate Stipulation and Order, June 27, 2025, p. 10, https://www.law360.com/dockets/download/6862b6123e0ebc7110675609?doc_url=https%3A%2F%2Fecf.cand.uscourts.gov%2Fdoc1%2F035125910183&label=Case+Filing; U.S. v. Hewlett Packard Enterprise and Juniper, (N.D. Cal., 2025), Competitive Impact Statement, June 27, 2025, p. 17, https://www.justice.gov/atr/media/1406601/dl?inline.
[24] The Capitol Forum, "HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms," July 24, 2025, https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils/.
[25] 15 U.S.C. 16(b).

The Act requires the district court to determine if the consent decree is in the public interest, considering the competitive impact of the agreement, the impact of the agreement on the public and individuals alleging specific injury, and the public benefit derived from deciding the issues at trial.[26] In its review of the consent decree to determine whether it serves the public interest, the court is empowered to, among other actions, take testimony of Government officials or experts; request and obtain the views of any individual, group, or agency of government with respect to any aspects or effects of the proposed agreement; authorize participation in the proceedings by interested persons or agencies; and review any comments filed in objection to the agreement.[27] In addition, the *Tunney Act* requires the merging parties to file a description of "any and all" communications with any government employees "concerning or relevant to" the agreement.[28]

The Court would be well within its authority to:

- Order the parties, including HPE's and Juniper's agents, lobbyists, and consultants, to preserve all documents relevant to the settlement negotiations;
- Order HPE's and Juniper's agents, lobbyists, and consultants who may have information about the settlement negotiations to testify under oath, including Mike Davis and Arthur Schwartz;
- Order HPE's and Juniper's corporate executives who have information about the settlement negotiations to testify under oath, including HPE's and Juniper's Chief Executive Officers and Chief Operating Officers, and any other executives as appropriate;
- Require DOJ officials with knowledge of the settlement negotiations to testify under oath, including Associate Deputy Attorney General Ketan Bhirud, Counselor to the Attorney General Stanley Woodward, and Acting Associate Attorney General and DOJ Chief of Staff Chad Mizelle, as well as, if appropriate, Attorney General Pam Bondi, to the extent she may have relevant information given the involvement of her Chief of Staff; and
- Hold an evidentiary hearing during which these individuals testify as soon as practicable.

**The Legislative History and Plain Text of the *Tunney Act* Support the Rigorous Independent Review of a Consent Decree by a District Court**

The *Tunney Act*, named for its lead sponsor Senator John V. Tunney, arose out of congressional alarm that President Nixon's administration had approved a proposed merger following "a massive behind-closed-doors campaign" orchestrated by "corporate pressures."[29] In 1969, the DOJ had brought an antitrust suit challenging manufacturing company ITT, Inc.'s attempt to merge with Hartford Fire Insurance Company.[30] DOJ changed course and agreed to settle the suit in 1971, shortly after which ITT offered to help fund the 1972 Republican National Convention and the Deputy Attorney General involved in the case was promoted.[31] This fact pattern raised the

---

[26] 15 U.S.C. 16(e).
[27] 15 U.S.C. 16(f).
[28] 15 U.S.C. 16(g).
[29] U.S. Senate Congressional Record, Volume 120, December 9, 1974, p. 38585, https://www.congress.gov/93/crecb/1974/12/09/GPO-CRECB-1974-pt29-2-1.pdf.
[30] Antitrust Bulletin, "The Death of the Tunney Act at the Hands of an Activist D.C. Circuit," Darren Bush, April 11, 2018, p. 115, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3161181.
[31] *Id.*

possibility that the merger was approved as a result of secret negotiations unrelated to economic competition principles or the public interest.[32]

In response, Congress passed the *Tunney Act* to make plain that a court reviewing a consent decree in an antitrust case "has an independent duty to assure itself that entry of the decree will serve the interests of the public generally."[33] Congress intended for the review to be substantial, and rejected the idea that a federal judge's review of a consent decree should serve "merely … as a rubberstamp upon out-of-court settlements."[34] In fact, in transcripts of the Senate Judiciary Committee considerations of the Act, Senators and officials expressed opposition to courts rubber stamping decrees no fewer than 26 times.[35] The *Tunney Act*, officially named the *Antitrust Procedures and Penalties Act*, was approved by Congress on a bipartisan basis and signed by President Ford in 1974.[36]

Despite the clear language of the statute and congressional intent against rubber stamping, courts were hesitant to apply the kind of independent review the *Tunney Act* envisioned, including in the 2001 case of *U.S. v. Microsoft*. In that case, Judge Kollar-Kotelly, following an exceedingly deferential review, approved the consent decree that DOJ and Microsoft negotiated in secret and which was not signed by trial staff.[37] Congress then stepped in to correct the record and clarify that it was in fact the lawmakers' intent for courts to perform an independent and rigorous review of merger settlements by passing the *Antitrust Criminal Penalty Enhancement and Reform Act of 2004*.[38] In enacting the bill, Congress found that "it would misconstrue the meaning and Congressional intent in enacting the Tunney Act to limit the discretion of district courts to review antitrust consent judgments solely to determining whether entry of those consent judgments would make a 'mockery of the judicial function,'"[39] strengthening the statutory language to require ("the court *shall* consider"), rather than permit ("the court *may* consider") the court to consider certain factors when assessing whether a settlement is in the public interest.[40]

As it currently appears in federal law, the *Tunney Act* is a powerful sunshine law that requires courts to consider a series of factors when determining whether a merger settlement is in the public interest, and grants courts ample authority to compel testimony and gather information in order to make that determination.

---

[32] *Id.*
[33] Senate Committee on the Judiciary, Subcommittee on Antitrust and Monopoly, "S. 782 The Antitrust Procedures and Penalties Act and S. 1088 The Antitrust Settlement Act of 1973," March 15-16 and April 5, 1973, p. 452, https://www.justice.gov/sites/default/files/jmd/legacy/2014/07/18/hear-s782-s1088-1973.pdf.
[34] *Id.*, p. 3.
[35] Senate Committee on the Judiciary, Subcommittee on Antitrust and Monopoly, "S. 782 The Antitrust Procedures and Penalties Act and S. 1088 The Antitrust Settlement Act of 1973," March 15-16 and April 5, 1973, https://www.justice.gov/sites/default/files/jmd/legacy/2014/07/18/hear-s782-s1088-1973.pdf.
[36] Antitrust Procedures and Penalties Act, S. 782, https://www.congress.gov/bill/93rd-congress/senate-bill/782/all-actions.
[37] United States v. Microsoft; State of New York v. Microsoft , (D.D.C., 2001), "Stipulation," pp. 3-4, https://www.justice.gov/atr/case-document/file/504111/dl; The Wall Street Journal, "A Tenacious Microsoft Emerges From Suit With Its Software Monopoly Largely Intact," John Wilke, November 9, 2001, https://www.wsj.com/articles/SB1005255211920328640.
[38] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Public Law 108-237.
[39] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Public Law 108-237, Sec. 221(a)(1)(B).
[40] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Public Law 108-237, Sec. 221(b) (emphasis added).

**Conclusion**

The consent decree between DOJ and HPE/Juniper Networks requires additional sunlight, and the *Tunney Act* provides the means through which the public can gain access to information it deserves to know. Without transparency, the public cannot have confidence in DOJ's decisions. As representatives of the public, it is our duty to ensure that agencies can conduct their work based on the merits in the public interest, and not based on political favors. This is particularly the case in multi-billion-dollar transactions, which have a significant effect on our economy. If this or any other transaction is approved based on political favors rather than on the merits, the public will surely bear the cost.

Section 16(f) of the *Tunney Act* grants the Court broad discretion to solicit information that may be helpful in assessing whether the consent decree at issue in this case is in the public interest. At a time when concerns continue to emerge regarding apparent pay-to-play schemes at other Trump administration agencies,[41] the public deserves a rigorous application of the law. The *Tunney Act* is a bulwark against deals that threaten to concentrate money and power in the hands of the few, out of view of and at the expense of the public. We therefore express our confidence that the Court's ample authority under the *Tunney Act*, as supported by the statute's plain meaning and legislative history, will allow it, in the interest of transparency, to undertake an independent examination into whether the consent decree in this case is in the public interest.

Sincerely,

Elizabeth Warren
United States Senator

Amy Klobuchar
United States Senator

Cory A. Booker
United States Senator

Richard Blumenthal
United States Senator

---

[41] *See, e.g.*, President Trump's Federal Communications Commission (FCC) approved the mega-merger of Paramount Global and Skydance Media after Paramount settled President Trump's "meritless" lawsuit against Paramount subsidiary CBS for $16 million to be paid to President Trump's Presidential Library fund, shortly following Paramount's cancellation of Late Night with Stephen Colbert three days after the host criticized the settlement, and amid reports Skydance may have agreed to give President Trump up to $20 million in pro-Trump advertising. As part of the FCC's approval, the merging companies made written concessions to change the programming of CBS to content more to the liking of the Trump administration. NPR, "Trump administration approves sale of CBS parent company Paramount after concessions," David Folkenflik, July 24, 2025, https://www.npr.org/2025/07/24/nx-s1-5477530/paramount-cbs-skydance-sale-fcc-approves.