PHILIP J. WEISER
Attorney General
ARTHUR BILLER*
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
            Bryn.Williams@coag.gov
*Pro hac vice application forthcoming

*Attorneys for Movants*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:25-cv-00951-PCP |
| *Plaintiff,* | **MOTION FOR INTERVENTION** |
| vs. | Judge: P. Casey Pitts |
| HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., | Action Filed: January 30, 2025 |
| | Hearing Requested:  TBD |
| *Defendants.* | |

The Attorneys General for the States of Colorado, California, Connecticut, Hawaii, Illinois, Massachusetts, Minnesota, North Carolina, New York, Oregon, Washington, Wisconsin, and the District of Columbia (the "States") hereby move for intervention into this case pursuant to Federal Rule of Civil Procedure 24 and 15 U.S.C. § 16.  The States have notified the parties to this case of this Motion, but as of filing, have not been advised of the parties' position on this Motion.  The States will further confer with the parties on a mutually convenient hearing date.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT .......................................................................................................... 7

I.     The States Have a Right to Intervene Pursuant to Rule 24(a)(2).................................. 8

II.    The States Also Satisfy the Conditions for Permissive Intervention. ........................... 12

   A.   The States Are Entitled to Permissive Intervention Because They Are Sovereigns
Charged with Joint Enforcement of the Clayton Act. ................................................. 12

   B.   The States Are Entitled to Permissive Intervention Because They Have Claims That
Share Common Questions of Law or Fact With the Action. ........................................ 14

III.   The States' Motion Satisfies Rule 24's Pleading Requirement. .................................. 14

CONCLUSION ...................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*California v. Am. Stores Co.*,
   495 U.S. 271 (1990) ............................................................................................... 9, 12

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
   595 U.S. 267 (2022) ................................................................................................... 9

*Kalbers v. United States Dep't of Justice*,
   22 F.4th 816 (9th Cir. 2021) .................................................................................. 8, 9

*NAACP v. New York*,
   413 U.S. 345 (1973) ................................................................................................... 9

*New York v. Deutsche Telekom AG*,
   439 F. Supp. 3d 179 (S.D.N.Y. 2020) ..................................................................... 10

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ................................................................................ 12

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) .................................................................................... 8

*Smith v. Pangilinan*,
   651 F.2d 1320 (9th Cir. 1981) ..................................................................... 8, 11, 14

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ................................................................................................. 11

*United States v. Aerojet Gen. Corp.*,
   606 F.3d 1142 (9th Cir. 2010) ............................................................................ 9, 11

*United States v. CVS Health Corp.*,
   No. 18-cv-2340, 2019 WL 2085718 (D.D.C. May 13, 2019) ................................... 2

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) .................................................................................. 11

*Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*,
   684 F.2d 627 (9th Cir. 1982) .................................................................................... 7

*Westchester Fire Ins. Co. v. Mendez*,
   585 F.3d 1183 (9th Cir. 2009) ................................................................................ 14

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .................................................................................. 8

**Statutes**

15 U.S.C. § 16 ............................................................................................... 1, 2, 13
15 U.S.C. § 18 ...................................................................................................... 10
15 U.S.C. § 26 ...................................................................................................... 10

**Rules**

Fed. R. Civ. P. 24 ............................................................................................ passim

**Other Authorities**

Wright & Miller's Federal Practice & Procedure (3d ed. 2025) ............................................. 13, 14

The Antitrust Procedures and Penalties Act:Hearings on S. 782 and S. 1088 Before the
  Subcomm. onAntitrust & Monopoly of the S. Comm. on the Judiciary, 93d Cong. 151
  (1973)..................................................................................................................................... 13

1

**INTRODUCTION**

2          The Attorneys General for the States of Colorado, California, Connecticut, Hawaii,
3    Illinois, Massachusetts, Minnesota, North Carolina, New York, Oregon, Washington, Wisconsin,
4    and the District of Columbia (collectively, the "States"), move to intervene in this litigation to
5    participate in the Court's review of a settlement under the Tunney Act that was reportedly the
6    product of undue influence by well-connected lobbyists. Rather than address the anticompetitive
7    harm alleged in the United States' Complaint and its pretrial brief, the settlement accepts what
8    appear to be wholly deficient remedies relative to the harm pled in the Complaint.  As sovereigns
9    and joint enforcers of the federal antitrust laws, the States have a strong interest in ensuring that
10   antitrust settlements are in the public interest and in preventing unlawful mergers from harming
11   their citizens.

12         Pursuant to the Tunney Act, 15 U.S.C. § 16(e), all antitrust settlements proposed by the
13   United States must be independently reviewed by a court to "determine that the entry of such
14   judgment is in the public interest."  If there were ever a settlement that demanded a thorough
15   investigation and an evidentiary hearing under the Tunney Act, it is this one.  Two senior
16   Antitrust Division leaders were apparently fired for their opposition to the Settlement.[1]  One of
17   them is former Principal Deputy Assistant General Roger Alford, who has since publicly said:

18             [I]t is my opinion that in the HPE/Juniper merger scandal [the DOJ's then-Chief of

19             Staff] Chad Mizelle and [Associate Attorney General nominee] Stanley Woodward

20             perverted justice and acted inconsistent with the rule of law . . .  Although the

21             Tunney Act has rarely served its intended purpose, this time the court may demand

22             extensive discovery and examine the surprising truth of what happened.  I hope the

23

24

25

26   ───────────────────────
     [1] Hannah Rabinowitz & David Goldman, *Justice Department Fires Two Antitrust Attorneys,*
27   *Alleging Insubordination*, CNN (July 29, 2025),
     https://www.cnn.com/2025/07/29/politics/justice-department-fires-two-senior-antitrust-attorneys.
28

court blocks the HPE/Juniper merger. If you knew what I knew, you would hope so too.[2]

Mr. Alford also characterized the Settlement as a violation of the rule of law in favor of the rule of lobbyists. Public reporting similarly indicates that the settlement was not driven by antitrust concerns but was instead the product of improper influence on high-level DOJ officials. If the public reports and Mr. Alford's comments about the process that led to the settlement are true, then the settlement must be rejected.

The substantive terms of the Settlement are also facially inadequate. The structural remedy requiring HPE to divest its Instant On business—which, according to public statements by the HPE CEO, is targeted at small businesses—does not appear to address the harms alleged in the Complaint and the United States' pretrial brief, which focused on HPE's Aruba business line. The other key term of the Settlement, which requires HPE to license Juniper's AIOps Mist source code, likewise appears inadequate because it applies to only a small portion of the Mist code. In light of the significant concerns surrounding the process and substance of the Settlement, this Court should apply its authority under the Tunney Act to order an evidentiary hearing in which these States can appear as parties.[3]

The States making this motion also were signatories to a public comment to the DOJ opposing the Settlement. As detailed below, the States are entitled to intervention of right under Rule 24(a) because of their interests in this case, which are no longer adequately represented by the United States. The States also meet the requirements for permissive intervention under Rule 24(b). The States are well-positioned to intervene in light of their role as sovereigns and joint enforcers of the antitrust laws. Without the States' intervention, the only parties will be those that support the settlement, and the Court would hear a one-sided argument. Intervention would also

---

[2] Roger P. Alford, *The Rule of Law Versus the Rule of Lobbyists,* Remarks before Technology Policy Institute Aspen Forum, 3-4 (Aug. 18, 2025), https://techpolicyinstitute.org/wp-content/uploads/2025/08/TPI-Aspen-Final.pdf.

[3] Although evidentiary hearings under the Tunney Act are rare, they are authorized by the statute and have been held before. *See* 15 U.S.C. § 16(f); *United States v. CVS Health Corp.*, No. 18-cv-2340, 2019 WL 2085718, at *1 (D.D.C. May 13, 2019) (ordering evidentiary hearing).

give the States an efficient path forward to challenge the merger, should it be necessary.

## BACKGROUND

The United States filed its Complaint on January 30, 2025, seeking to block outright the merger between Hewlett Packard Enterprise Co. ("HPE") and Juniper Networks, Inc. ("Juniper"). In the months that followed, the United States vigorously litigated the case, conducting fact and expert discovery, and readying the case for trial, including the filing of pretrial briefs. As the Court is aware, in its pretrial brief, the United States previewed significant and persuasive evidence and expert analysis demonstrating that HPE's acquisition of Juniper, "a maverick—an aggressive competitor that exerts outsize influence on industry pricing and innovation," threatens to substantially lessen competition in the market for enterprise-grade WLAN solutions. United States' Pretrial Brief at 9 (June 30, 2025) (Dkt. No. 221). This included (i) evidence of fierce head-to-head competition between the merging parties, including HPE losing business to Juniper, HPE lowering prices to better compete with Juniper, and HPE launching a "Kill Mist" campaign internally; (ii) uncontested market share analysis showing that HPE, Juniper, and another competitor, Cisco, control over 75% of the highly concentrated relevant market, therefore making this a presumptively unlawful 3-to-2 merger; (iii) uncontested evidence that the merger is presumptively unlawful due to market concentration; and (iv) economic analysis estimating that the merger would raise prices by 3-6% on HPE products and 7-14% on Juniper products. *Id.* at 7-11 (June 30, 2025) (Dkt. No. 221).

Then, despite this significant evidence, and less than two weeks before trial, the United States abruptly settled the case under suspicious circumstances and on bizarre terms that demand close scrutiny. The terms, in brief, simply do not line up with the anticompetitive effects alleged by the United States only days before in its pretrial brief. In fact, the United States' Competitive Impact Statement does not argue that the Settlement will prevent higher prices for consumers or that it will alleviate the unlawful market concentration created by this merger.

In accordance with the Tunney Act procedures, the Proposed Final Judgment was filed with the Court on June 27, 2025, (the "Settlement") and was published in the Federal Register on

July 10, 2025. The filing in the Federal Register triggered a 60-day public comment period, which ended on September 8, 2025.[4]

In the aftermath of the Settlement announcement, public reporting emerged alleging that the Settlement was the product of undue influence by Defendants' well-connected lobbyists who engaged in secretive backroom dealing with higher level officials at the DOJ, including then-Chief of Staff Chad Mizelle[5] and Acting Associate Attorney General Stanley Woodward. *See* Ex. 1 at 2. It was also reported that the antitrust attorneys at DOJ working on this case, including Assistant Attorney General Gail Slater (the head of the DOJ Antitrust Division), her direct reports, and her staff opposed the Settlement. *Id.* at 6. Ms. Slater reportedly pleaded with Defendants to stop using lobbyists to go over her head and was concerned that the Settlement would not pass muster under the Tunney Act. *Id.* Nevertheless, Mr. Mizelle reportedly pushed the Settlement through over the Antitrust Division's objection. *Id.*

The DOJ then fired two of Ms. Slater's top deputies—Roger Alford (Principal Deputy Assistant Attorney General) and William Rinner (Deputy Assistant Attorney General for Civil Enforcement)— over their opposition to the Settlement. *Id.* at 7.

The most shocking revelation came on August 18, 2025, when Mr. Alford gave a speech lambasting the Settlement as a "scandal" and a perversion of justice perpetrated by Mr. Mizelle and Mr. Woodward.[6] In particular, Mr. Alford stated:

> [I]n the HPE/Juniper merger scandal Chad Mizelle and Stanley Woodward
> perverted justice and acted inconsistent with the rule of law. I am not given to

---

[4] The States submitted a public comment to the DOJ opposing the Settlement on September 5, 2025. A copy of that public comment is submitted herewith as Exhibit 1 to the Declaration of Arthur Biller in Support of Motion for Intervention. The public comment (cited throughout as Exhibit 1) contains citations to various public reports about the process that led to the Settlement and the apparent internal turmoil at the DOJ that ensued.

[5] It has been publicly reported that Mr. Mizelle resigned from this position on September 23, 2025. *See, e.g.,* Paula Reld, et al., *Attorney general's chief of staff to depart Justice Department following tumultuous few months*, CNN (Sept. 23, 2025), https://www.cnn.com/2025/09/23/politics/chad-mizelle-pam-bondi-doj.

[6] Alford, *supra* note 2, at 1. A copy of Mr. Alford's remarks is attached to the States' public comment as Exhibit A.

1
2
3
4
5
6
7

> hyperbole, and I do not say that lightly. As part of the forthcoming Tunney Act proceedings, it would be helpful for the court to clarify the substance and the process by which the settlement was reached. Although the Tunney Act has rarely served its intended purpose, this time the court may demand extensive discovery and examine the surprising truth of what happened. I hope the court blocks the HPE/Juniper merger. If you knew what I knew, you would hope so too. Someday I may have the opportunity to say more.

8

Ex. 1 at Ex. A p. 3-4.

9
10
11
12

Mr. Alford added that the Settlement was the product of the "rule of lobbyists," rather than the rule of law. *See* Ex. 1 at Ex. A p. 3-4. He further stated, "it would be helpful for the court to clarify the substance and the process by which the settlement was reached . . . and examine the surprising truth of what happened." *Id.*

13
14
15
16
17
18
19
20
21
22
23
24
25

The terms of the Settlement are also of great concern. The Settlement has two substantive components: (1) a divestiture of HPE's Instant On business line, and (2) a license for Juniper's AIOps Mist source code. Neither addresses the harm alleged in the United States' Complaint and its pretrial brief. As to the first component, HPE's Instant On business appears irrelevant, because it is directed to small businesses, whereas the litigation focused on HPE's Aruba business line directed at large enterprises. Instant On is not mentioned anywhere in the Complaint or the pretrial briefing, which focus exclusively on the Aruba platform. *See generally* Complaint (Jan. 30, 2025) (Dkt. No. 1) (no mention of Instant On); United States' Pretrial Brief (June 30, 2025) (Dkt. No. 221) (same); *see also* Defs.' Pretrial Brief at 8 (July 1, 2025) (Dkt. No. 222) ("HPE offers both on-prem and cloud-based WLAN solutions under its Aruba brand."). HPE's CEO confirmed the irrelevance of this divestiture when explaining it to HPE's investors, explaining that Instant On is "a distinct offering separate from the traditional HPE Aruba platform and Aruba Central," "was specifically designed to serve the small business segment,"

26
27
28

and "represents a small portion of our overall business."[7]

The second component likewise appears to fail to remedy the merger's harm. Here again, HPE's CEO celebrated HPE's minimal concession, explaining that HPE would have to license only a "portion" of Mist's code.[8] The Settlement apparently contemplates that this license will only fetch about $8 million—and yet HPE is paying **$14 billion** to buy Juniper, and Juniper's WLAN revenues were $411 million in 2023. Proposed Final Judgment at 12 (June 27, 2025) (Dkt. 217-1); Defs.' Pretrial Brief at 8 (July 1, 2025) (Dkt. 222). Clearly, whatever the code is that is being licensed has little to do with Juniper's value. And in light of the high barriers to entry identified by the United States in its pretrial brief, there is no reason to believe that this license will lower those barriers or somehow enable competition. United States' Pretrial Brief at 13 (June 30, 2025) (Dkt. No. 221); *see also* Complaint ¶¶ 52–54 (Jan. 30, 2025) (Dkt. No. 1).

Having reviewed the public reporting, Mr. Alford's stunning remarks, and the Settlement itself, the States (along with several other State Attorneys General) submitted a public comment opposing the Settlement. *See* Ex. 1. The comment explained that, if public reporting is true, the Settlement is not in the public interest and violates the core principles of the Tunney Act because of the process that led to it. It also contends that the substance of the Settlement heightens concerns that it is not in the public interest because it fails to address the harms of the merger alleged in the Complaint and the United States' Pretrial Brief.

The States now seek to intervene to protect their sovereign interest in shielding their citizens from violations of the antitrust laws, including by (i) participating in all proceedings pursuant to the Court's Tunney Act review authority, which should include discovery into the Settlement and the process that led to it, an evidentiary hearing, and a mandatory pause in

---

[7] *HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms*, The Capitol Forum (July 24, 2025) (quoting HPE CEO comments on a July 10, 2025, call with investors), https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils/.

[8] *HPE CEO: We can offer true client-to-cloud networking solutions with Juniper deal*, CNBC (July 2, 2025), https://www.cnbc.com/video/2025/07/02/hpe-ceo-we-can-offer-true-client-to-cloud-networking-solutions-with-juniper-deal.html.

1    integration of the merging entities pending the outcome of those proceedings; and (ii) as

2    necessary, and as determined by each State, to pursue a claim for relief to block Defendants'

3    merger.

4        Upon becoming parties, the States would proceed efficiently toward an evidentiary

5    hearing on the Settlement.  The States would issue straightforward initial discovery requests, for,

6    among other things, (i) the unredacted pretrial materials, including filings under seal, deposition

7    transcripts, expert reports exchanged between the parties and documents cited in those materials,

8    and planned trial exhibits; and (ii) communications, documents, and information exchanged

9    between Defendants or their representatives and the DOJ during settlement discussions.  These

10   discovery requests would not burden any party because the documents in category (i) are readily

11   identified and were already exchanged between the parties and the documents in category (ii) are

12   also a readily identifiable set of documents shared between a limited number of known

13   participants.  This discovery would allow the States to determine what, if any, further discovery

14   should be conducted and to offer the Court more specific suggestions on how the evidentiary

15   hearing should be conducted.

### ARGUMENT

17       "Rule 24 traditionally has received a liberal construction in favor of applicants for

18   intervention."  *Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d

19   627, 630 (9th Cir. 1982).  The States have three independent grounds for intervention.  First, the

20   States are entitled to intervention of right pursuant to Rule 24(a)(2).  The States have an interest

21   in ensuring a thorough Tunney Act review and in rejection of settlements reached by the federal

22   government that are not in the public interest.  The States also have an interest in blocking

23   anticompetitive mergers, which harm their citizens.

24       Second, the States meet the requirements for permissive intervention under Rule

25   24(b)(2)(A) because the States are government entities charged with enforcement of Section 7 of

26   the Clayton Act, which is the same claim at issue here, and have a strong interest in ensuring

27   antitrust settlements are free from the taint of corruption.  Third, the States qualify for permissive

28

1  intervention under Rule 24(b)(1) because their interest in enforcing the antitrust laws, including

2  the Tunney Act review, shares common questions of law and fact with those already present in

3  this action.

4  **I.    The States Have a Right to Intervene Pursuant to Rule 24(a)(2)**

5         Rule 24(a)(2) confers a mandatory right to intervene on anyone who "claims an interest

6  relating to the property or transaction that is the subject of the action, and is so situated that

7  disposing of the action may as a practical matter impair or impede the movant's ability to protect

8  its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

9  The Ninth Circuit applies a four-part test for this intervention of right: "(1) the applicant's

10 motion must be timely; (2) the applicant must assert an interest relating to the property or

11 transaction which is the subject of the action; (3) the applicant must be so situated that without

12 intervention the disposition of the action may, as a practical matter, impair or impede his ability

13 to protect that interest; and (4) the applicant's interest must be inadequately represented by the

14 other parties." *Smith v. Pangilinan*, 651 F.2d 1320, 1323-24 (9th Cir. 1981).

15        In evaluating motions for intervention of right, courts must "follow 'practical and

16 equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors,'"

17 because a "liberal policy in favor of intervention serves both efficient resolution of issues and

18 broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th

19 Cir. 2011) (quotations omitted).

20        The States satisfy the requirements for intervention of right and therefore must be granted

21 intervention.

22        ***First***, the motion is timely. The Ninth Circuit has ruled that timeliness depends on three

23 factors: "'(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the

24 prejudice to other parties; and (3) the reason for and length of the delay.'" *Kalbers v. United*

25 *States Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021) (quoting *Smith v. L.A. Unified Sch.*

26 *Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)). Each factor is assessed "by reference to the 'crucial

27 date' when proposed intervenors should have been aware that their interests would not be

28

1

2     adequately protected by the existing parties," and "*not the date it learned of the litigation*."  *Id.* at

3     822, 823 (quotations omitted); *see also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595

4     U.S. 267, 279-80 (2022) (allowing Kentucky Attorney General to intervene to defend

5     constitutionality of state statute after state agency decided to stop defending statute).  As a result,

6     timeliness must be "'determined from all the circumstances'" and "'the point to which [a] suit

7     has progressed is . . . not solely dispositive.'"  *Cameron*, 595 U.S. at 279 (quoting *NAACP v.

8     New York*, 413 U.S. 345, 365-66 (1973)).

9          Here, the States reasonably believed their interests were protected until the United States

10    entered into a Settlement that facially fails to address the competitive concerns outlined in the

11    United States' own Complaint and that seems to have been achieved through undue influence.

12    Once public reporting emerged in August 2025 that the Settlement may have been the product of

13    improper influence against the public interest, it became clear that the States' interests would no

14    longer be adequately protected by the United States.  The States then promptly moved to protect

15    their interests.  The States first submitted a public comment to the DOJ in September 2025

16    pursuant to the Tunney Act to lodge their objection to the Settlement, and are now moving to

17    intervene.  This motion is being filed before the DOJ has completed its required actions under

18    the Tunney Act—namely, filing and publication of all of the public comments received and the

19    DOJ's responses thereto.  The States have taken all these steps in less than three months from

20    when the DOJ first published the Settlement in the Federal Register.  *See United States v. Aerojet

21    Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (applicants acted promptly by submitting

22    comments, filing FOIA request, and moving to intervene within four months of learning of

23    proposed consent decree in CERCLA litigation).  Intervention now will allow the States to

24    timely participate in the process the Court will use to determine whether to approve or reject the

25    Settlement.

26          ***Second***, the States have an interest relating to the transaction that is the subject of the

27    action.  The States are sovereign and joint enforcers of the federal antitrust laws along with the

28    federal government.  *See, e.g.*, *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990) (state

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

enforcement of federal antitrust laws "was an integral part of the congressional plan for protecting competition"); *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 225 n.21 (S.D.N.Y. 2020) (permitting states to challenge merger notwithstanding that DOJ had reached a settlement and rejecting notion that federal government "represent[s] the national public interest more so than any state").  Specifically, the States have a mandate to protect their citizens from antitrust violations, including violations of Section 7 of the Clayton Act and therefore have standing to bring a claim to seek injunctive relief against this merger and to protect their citizens from the merger's anticompetitive effects.  15 U.S.C. §§ 18, 26.  That is the same claim that the United States asserted in the Complaint.

Moreover, the States have an interest in ensuring that settlements reached by the United States in antitrust cases are in the public interest.  States sometimes join the United States in antitrust litigation and sometimes proceed independently; States likewise may settle cases with or without the United States.  States do not join every antitrust case the United States files, and may not file suit separately, even when the case implicates markets or conduct in their State.  In those instances, States have historically relied on the United States to uphold its duty to the public and litigate or resolve those cases on the merits, consistent with the public interest.  The States therefore have a legitimate interest in verifying whether the Settlement is in the public interest, which includes discovery into the process that led to the settlement to confirm whether public reporting is accurate.  And if public reports are accurate, the States are determined to present the evidence to the Court to urge that the Settlement be rejected. Without State intervention, as a practical matter, the Court may only hear from one side—that of the settling parties that desire the settlement to proceed.

This interest also extends to protecting the States' citizens from a merger whose anticompetitive effects seem unremedied by a tainted settlement.  The United States' Competitive Impact Statement does not argue that the Settlement will prevent higher prices for consumers or that it will alleviate the unlawful market concentration created by this merger.  *See* Competitive Impact Statement (June 27, 2025) (Dkt. No. 217-2).

1
2
3
4
5
6
7

***Third***, disposition of the action without intervention may, as a practical matter, impair or impede the States' ability to protect their interests. The States have an interest in shedding light on the process that led to the Settlement, determining whether it is in the public interest, and if it is not, advocating for its rejection. That interest can only be satisfied here, not in any other litigation, because only this Court is empowered by the Tunney Act to review and reject the Settlement on public interest grounds. That interest would therefore be impeded if the States are not allowed to intervene.

8
9
10
11
12
13
14
15

Further, the States' understanding is that HPE and Juniper are currently integrating their operations, making it more difficult (though not impossible) to unwind the transaction. Intervention now would allow the States to seek modification of the parties' stipulated hold separate order to freeze any further integration and preserve the status quo while the Court conducts its Tunney Act review. The States can obtain that relief more quickly in this case than in a separately filed case because this case was on the precipice of trial and any necessary evidence for temporary or permanent relief can be quickly obtained by the States if permitted to intervene.

16
17
18
19
20
21
22
23
24
25
26
27

***Fourth***, the parties inadequately represent the States' interest. On this point, courts "examine whether existing parties' interests are such that they will make all of the arguments the applicants would make." *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (citation omitted). An applicant need only "show[] that representation of his interest 'may be' inadequate," and the burden of such showing is "minimal." *Smith*, 651 F.2d at 1325 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The existing parties will make none of the arguments the States will make, and are now directly opposed to the States. Both the United States and Defendants are parties to the Settlement and will advocate for its approval. *See Aerojet*, 606 F.3d at 1153 (reversing denial of intervention where EPA, having settled, had "an interest in securing approval of the decree," which interests were "directly opposed" to those of the movants). The parties also have every incentive to shield the process that led to the Settlement from discovery to prevent the public from learning what happened,

28

which is directly contrary to the Tunney Act's purpose of bringing "sunshine" to antitrust settlements. Without the States' intervention, the Court and the public may never fully learn how this Settlement occurred.

The States' interest in protecting its citizens from the anticompetitive effects of the merger are likewise not adequately represented, as the United States will argue in favor of the Settlement rather than an appropriate remedy or outright injunction.

Because the States meet the conditions of intervention of right, the Court should grant intervention on this basis.

**II.    The States Also Satisfy the Conditions for Permissive Intervention.**

In addition to having a right to intervene, the States also qualify for permissive intervention under Rule 24(b)(2) and Rule 24(b)(1)(B).

**A. The States Are Entitled to Permissive Intervention Because They Are Sovereigns Charged with Joint Enforcement of the Clayton Act.**

Under Rule 24(b)(2), a "court may permit a . . . state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency." Fed. R. Civ. P. 24(b)(2). "It is a significant fact that the applicant for permissive intervention is a government official." *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967). Accordingly, Rule 24(b)(2) "considers the governmental application with a fresh and more hospitable approach." *Id.* at 705. Permissive intervention for a government official is generally approved when "an aspect of the public interest with which he is officially concerned is involved in the litigation." *Id.* at 706.

Here, the movants are government officers (State Attorneys General) charged with enforcing Section 7 of the Clayton Act and protecting their citizens from illegal mergers and anticompetitive harms. *Am. Stores*, 495 U.S. at 284 (authority given to State Attorneys General "was an integral part of the congressional plan for protecting competition"). That is all Rule 24(b)(2) requires.

In determining whether to allow permissive intervention, a court must also "consider

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

There will be no undue delay or prejudice here. The Court must undertake a Tunney Act analysis and the States' participation will aid the Court in that analysis through targeted discovery and presentation of evidence to the Court. Without State intervention, the Court may only hear a one-sided view of the evidence from any antitrust enforcer. The Tunney Act expressly contemplates that the Court may allow intervention to aid its determination whether a settlement is in the public interest, and to hold hearings and take testimony from government officials, experts, and other witnesses as necessary, and obtain documents. 15 U.S.C. § 16(f).[9]

A thorough review is warranted here, and it can be accomplished efficiently. For example, as parties, the States will be able to probe the facts that need to be brought to the Court's attention efficiently. As discussed above, upon becoming parties, the States would issue straightforward initial discovery requests, which the present parties should be able to quickly respond to and produce. Efficient initial discovery would allow the States to determine what, if any, further discovery should be conducted and to offer the Court a specific proposal for an evidentiary hearing. Intervention would therefore not cause undue delay, nor unduly prejudice any party.

Accordingly, the States should be granted permissive intervention. *See* Wright & Miller's Federal Practice & Procedure § 1912 (3d ed. 2025) (the "whole thrust" of the rule is to "allow[] intervention liberally to governmental agencies and officers seeking to speak for the public interest").

---

[9] That Tunney Act proceedings in cases of great importance, such as this one, may take time, was expressly contemplated by Congress in passing the Act. *See* The Antitrust Procedures and Penalties Act: Hearings on S. 782 and S. 1088 Before the Subcomm. on Antitrust & Monopoly of the S. Comm. on the Judiciary, 93d Cong. 151 (1973) (testimony from Judge W.J. Skelly Wright that in cases of great importance, the Tunney Act "would require judicial time, necessarily so, and I believe rightfully so"). Any potential delay, therefore, would not be *undue* delay, but necessary to serve the purpose of the Tunney Act.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  The States Are Entitled to Permissive Intervention Because They Have Claims That Share Common Questions of Law or Fact With the Action.**

Under Rule 24(b)(1), a "court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The States have authority to assert, and seek to protect through the Tunney Act proceedings, the same claim that the United States asserted in its Complaint at the outset of this case.  The same questions of law and fact are therefore present in the States' claim as in the main action.  And the States' concerns that the Settlement is against the public interest share the same questions of law and fact that the Court will consider in its Tunney Act review.  Permissive intervention should also be granted on this alternate ground.

**III.  The States' Motion Satisfies Rule 24's Pleading Requirement.**

Rule 24(c) states that a motion for intervention "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  The Ninth Circuit has made clear that the "purely technical" requirement of a pleading should be excused as long as the movant has stated its interest such that the court is "apprised of the grounds for the motion."  *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009); *see also Smith*, 651 F.2d at 1326 (treating memorandum in support of motion to intervene "sufficient to satisfy the requirements of Rule 24(c)").  This motion, along with the States' attached Tunney Act comment, clearly asserts the States' interest and the technical requirement of attaching a pleading should therefore be excused.

Nevertheless, if the Court were to require a pleading, the States believe that the allegations in the United States' Complaint will likely have evidentiary support, and if so, after an opportunity for reasonable discovery to examine the record, the States would adopt the United States' Complaint as their own.  Such adoption would satisfy the pleading requirement.  *See Westchester Fire*, 585 F.3d at 1188 (quoting Wright & Miller, *supra*, § 1914) ("If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical in its

allegations with one that is already in the file.").

## CONCLUSION

For the reasons set forth in this motion, the States respectfully request that the Court grant the Motion for Intervention, and grant such other relief as the Court deems just and proper.

PHILIP J. WEISER
Attorney General

*/s/ Bryn A. Williams*
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
ARTHUR BILLER*
Senior Assistant Attorney General
JONATHAN B. SALLET*
Special Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
            Bryn.Williams@coag.gov
            Jon.Sallet@coag.gov
*Pro hac vice application forthcoming*

*Attorneys for the State of Colorado*

ROB BONTA
Attorney General of California

*/s/ Brian D. Wang*
PAULA L. BLIZZARD, Senior Assistant Attorney General (SBN 207920)
MICHAEL W. JORGENSON, Supervising Deputy Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN 284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400

WILLIAM TONG
ATTORNEY GENERAL

*/s/  Nicole Demers*
Nicole Demers (*pro hac vice application
forthcoming*)
Deputy Associate Attorney General
Antitrust Section
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel.: (860) 808-5030
nicole.demers@ct.gov


*Attorneys for the State of Connecticut*


BRIAN SCHWALB
Attorney General of the District of Columbia

*/s/ Coty Montag*
Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy
Division
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*


ANNE E. LOPEZ
Attorney General

*/s/ Rodney I. Kimura\**
RODNEY I. KIMURA
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813

Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov
*Pro hac vice application forthcoming*

*Attorneys for State of Hawaii*


KWAME RAOUL
Attorney General of Illinois

*/s/ Paul J. Harper*

ELIZABETH L. MAXEINER (*pro hac vice application forthcoming*)
Chief, Antitrust Bureau
PAUL J. HARPER (*pro hac vice application forthcoming*)
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*


COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

*/s/ Anthony W. Mariano*
Anthony W. Mariano
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov
*Pro hac vice application forthcoming*

*Attorneys for*
*Commonwealth of Massachusetts*

KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*

ELIZABETH ODETTE (*pro hac vice* forthcoming)
Manager, Assistant Attorney General
Antitrust Division

JON M. WOODRUFF (*pro hac vice* forthcoming)
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*

LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*

ELINOR R. HOFFMANN
(*pro hac vice* forthcoming)
Chief, Antitrust Bureau
AMY McFARLANE
(*pro hac vice* forthcoming)
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
(*pro hac vice* forthcoming)
Assistant Attorney General

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005

Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*

JEFF JACKSON
Attorney General of North Carolina

*/s/ Kunal J. Choksi*
*(pro hac vice forthcoming)*

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*

Dan Rayfield
Attorney General of Oregon

*/s/ Rachel K. Sowray*
Rachel K. Sowray*
Senior Assistant Attorney General
Timothy D. Smith*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR 97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov
*pro hac vice application forthcoming*

*Attorneys for State of Oregon*

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Amy N. L. Hanson*

*(pro hac vice forthcoming)*

JONATHAN A. MARK (*pro hac vice* forthcoming)
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*

JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/Caitlin M. Madden*
Caitlin M. Madden (*pro hac vice application forthcoming*)
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*

Motion for Intervention - Case No. 5:25-cv-00951-PCP