# EXHIBIT B

SAMUEL G. LIVERSIDGE (Bar No. 180578)
ERIC VANDEVELDE (Bar No. 240699)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and<br><br>JUNIPER NETWORKS, INC,<br><br>*Defendants.* | Case No. 5:25-cv-00951-PCP<br><br>**DECLARATION OF JOHN F. SCHULTZ IN SUPPORT OF HPE'S OPPOSITION TO THE STATES' MOTION FOR INTERVENTION**<br><br>Judge:          P. Casey Pitts<br>Action Filed:  January 30, 2025 |

I, John F. Schultz, declare as follows:

1. I am currently employed by Hewlett Packard Enterprise Company ("HPE"). My title is Executive Vice President and Chief Operating & Legal Officer. I have personal knowledge of each of the facts set forth below, and, if called as a witness, I could and would testify to each of them under oath.

2. I make this declaration in support of HPE's Opposition to the States' Motion for Intervention Pursuant to Civil L.R. 7-5.

3. On July 2, 2025, HPE and Juniper Networks, Inc. ("Juniper") closed their merger, and Juniper's shareholders were paid $40 for each of their shares, totaling approximately $14 billion. As of the closing, Juniper is no longer a separate publicly traded company and has been subsumed within HPE's legal entity structure along with its subsidiaries. Juniper's former CEO, Rami Rahim, was named Executive Vice President and President & General Manager of HPE Networking on July 2, 2025.

4. Pursuant to the Asset Preservation and Hold Separate Stipulation and Order (the "Stipulation") entered by this Court on June 30, 2025, as well as the Proposed Final Judgment agreed to among HPE, Juniper, and the DOJ, HPE is required to hold separate and conduct a "prompt sale" of the HPE Divestiture Assets, which comprise the Instant On Business. HPE is also required to maintain the AI Ops for Mist Source Code in such a way as to maintain its economic and practical viability for the ultimate licensee in preparation for a "prompt … license" of the AI Ops for Mist Source Code.

5. For the past four months, HPE and all third parties interested in purchasing the HPE Divestiture Assets (as that term is defined in the Stipulation) or licensing AI Ops for Mist have been proceeding with the auctions as required in the Stipulation and the Proposed Final Judgment.

6. By July 31, 2025, HPE had begun both the AI Ops for Mist Source Code Auction and the auction of the HPE Divestiture Assets by sharing a copy of the Proposed Final Judgment with interested parties as required by the Proposed Final Judgment, though I also understand that HPE had received indications of interest from potential buyers and licensees as early as June 30, 2025.

7. HPE has received bids for the AI Ops for Mist Source Code License. Several parties have also expressed interest in acquiring the HPE Divestiture Assets, and HPE expects to receive bids from potential Divestiture Acquirers by early November 2025.

8. Under the terms of the Proposed Final Judgment, by December 27, 2025 or five days after notice of entry of a final judgment by the Court, whichever is later, HPE must identify a proposed Divestiture Acquirer and a proposed AI Ops for Mist Source Code Licensee, obtain the DOJ's approval as to the Divestiture Acquirer and the Licensee, and close on the divestiture and the license. If HPE fails to close on either process by December 27, or five days after notice of entry of a final judgment by the Court, whichever is later, the DOJ may request that the Court appoint a trustee to sell the Divestiture Assets and a trustee to license the AI Ops for Mist Source Code. Because divestiture trustees are incentivized to make divestitures as soon as possible and on terms within their sole discretion, HPE's best opportunity to obtain commercially favorable sales or license terms for the HPE Divestiture Assets and the AI Ops for Mist Source Code License is during the auctions it is now conducting.

9. To meet the December deadline for the DOJ's approval of the acquirer and the licensee and the ultimate closing of both transactions, HPE will need to close both processes to additional bids in November 2025 in order to allow the DOJ time to vet the potential purchasers.

10. Any delay or disruption to that process will inject uncertainty into the ongoing auction processes. Uncertainty may cause bidders to rethink their participation in the auction process because they will not know whether or when the future expenditure associated with bidding for, and potentially acquiring, a strategic asset will come to fruition. Given their need to plan and forecast for their own businesses, bidders may abandon their current bids or plans to bid and opt for alternative plans that are more certain.

11. Because intervention by the States would delay the ongoing auction processes and create uncertainty, it puts the success of such remedies at risk, thereby causing material harm to HPE. Enterprise-grade WLAN, like the rest of the networking industry, is a fast-moving marketplace with many participants, all of whom are investing heavily in research and development. The sooner that uncertainty can be resolved regarding the AI Ops for Mist Source Code and the Instant On business,

DECLARATION OF JOHN F. SCHULTZ IN RESPONSE TO MOTION FOR INTEVENTION, Case No. 5:25-cv-00951-PCP

US-LEGAL-13968406/1  166756-0025

3

the sooner the acquirer and licensee can incorporate these assets into their existing businesses and provide even more competitive options for customers. Should uncertainty persist, the technology on offer to bidders may lose competitive relevance.

12. Finally, I was responsible for, and directly participated in, the negotiation of the terms of the Settlement. The Proposed Final Judgment contains all terms of the Settlement; there is no agreement between HPE and the DOJ or the U.S. Government to settle this litigation outside of the Proposed Final Judgment.

13. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: October 28, 2025

_____
John F. Schultz
*EVP, Chief Operating and Legal Officer*
*HEWLETT PACKARD ENTERPRISE CO.*