# Exhibit A-14

# United States v. Hewlett Packard Enterprise Co., et al.; Proposed Final Judgment and Competitive Impact Statement

**ALDEN ABBOTT**
*Senior Research Fellow and Director, Competition Project, Mercatus Center at George Mason University*

**SATYA MARAR**
*Visiting Postgraduate Fellow, Mercatus Center at George Mason University*

We thank the Antitrust Division, Department of Justice for the opportunity to comment on the proposed Final Judgment designed to eliminate the alleged anticompetitive effects of HPE's acquisition of Juniper Networks.[1]

Established in 1980, the Mercatus Center at George Mason University serves as a leading university-based hub for market-oriented research, dedicated to connecting academic insights with real-world policy challenges. Through its graduate programs, research initiatives, and economic analysis, Mercatus works to deepen understanding of how markets function and how they can improve lives. Its mission is to advance knowledge about the institutions that support prosperity and to identify lasting solutions that remove obstacles to individual freedom, peace, and economic well-being. This comment reflects that mission and is not submitted on behalf of any particular interest group. Rather, it is intended to inform and support the FTC's decision-making process.

Alden Abbott is a senior research fellow at the Mercatus Center.[2] His research focuses on competition policy, regulation, international trade, and intellectual property. He is a former general counsel of the FTC (2018–21) and an adjunct professor at the Scalia Law School at George Mason University.

Satya Marar is a visiting postgraduate fellow at the Mercatus Center,[3] where he was formerly an MA Fellow. His research interests include antitrust and competition policy, intellectual property, trade, and technology policy.

Discussion

We are pleased to respond to the Antitrust Division's request for public comments in the above-captioned matter ("Proposed Final Judgment and Competitive Impact Statement").[4] Our comment is limited to the position that DOJ's challenge was unnecessary from the outset and did not represent an efficient allocation of scarce antitrust enforcement resources. Although the proposed final judgment imposed certain limitations on HPE, the merger did not exhibit sufficient signs of anticompetitive concerns to warrant antitrust enforcement.

The DOJ's complaint[5] in this matter notes:

> HPE's acquisition of Juniper may result in the following anticompetitive effects, among others, in the relevant markets:
> - Significantly increasing concentration in an already highly concentrated market;

---

[1] https://www.justice.gov/atr/media/1406601/dl?inline
[2] See Mercatus Center Scholars, Alden Abbott, last visited Sep 11, 2025, https://www.mercatus.org/scholars/alden-abbott.
[3] https://www.mercatus.org/scholars/satya-marar
[4] https://www.federalregister.gov/documents/2025/07/10/2025-12887/united-states-v-hewlett-packard-enterprise-co-et-al-proposed-final-judgment-and-competitive-impact
[5] https://www.justice.gov/atr/media/1406591/dl?inline

- Eliminating head-to-head competition; and
- Increasing prices paid by customers and causing a decrease in quality, service, and innovation.

These assertions ignore market realties because (1) the merged entity would not attain a sufficiently large share of the relevant market to trigger a presumption of anticompetitive harm, (2) the complaint fails to articulate a coherent or credible theory of consumer or competitive harm, (3) rather than reducing competition, the transaction would likely enhance competition against Cisco, the largest player in the relevant market, and (4) for the preceding reasons, the DOJ ought to have exercised its prosecutorial discretion in the expenditure of its limited resources by not bringing a challenge to the merger.

### Market Definition

As a starting point, the DOJ's asserted market definition of a "U.S. enterprise-grade WLAN market … roughly in line with [the competitors'] shares of the U.S. market for access points alone" fails to account for the competition that WLAN businesses face from AI and cloud-based solutions in attracting the same customers. This fails to adequately apply Section 4.2.A of the 2023 DOJ-FTC merger guidelines, which states that the competition enforcement agencies will consider the degree to which customers are willing to substitute one business's product for another in defining the limits of the relevant market.[6] Although these guidelines lack the force of law and are thus non-binding, they are meant to provide clarity to parties investing potentially millions of dollars into deals and proposals about whether said proposals are likely to attract antitrust scrutiny. Regardless, the following comments will take as given the relevant market defined by the DOJ in its complaint.

### Market Shares

The complaint repeatedly emphasizes the collective market share of Cisco, HPE, and Juniper Networks, which represent over 70% of U.S. enterprise-grade wireless access point revenue. However, the individual market shares of the companies are pertinent. Even taking the DOJ's market concentration figures and market definition of a "U.S. enterprise-grade WLAN market … roughly in line with [the competitors'] shares of the U.S. market for access points alone"[7] at face value, the HPE-Juniper merger would only capture between 22 and 26% of the market.[8] The remaining 74-78% of sales in the market would be captured by Cisco and other competitors. Therefore, Cisco remains the largest player post-merger. The HPE-Juniper merger would be positioned to intensify beneficial competition with Cisco by creating pressure to innovate and offer better value products.[9]

Importantly, under longstanding Supreme Court precedent, mergers are presumptively anticompetitive if they would result in a firm that corners at least 30% of the market.[10] The HPE-Juniper Networks merger is well below this threshold. In its complaint, the DOJ references the 2023 joint DOJ-FTC merger guidelines' claim that a merger that results in the collective share of two firms in the market being over 70% is also presumptively anticompetitive (as this would amount to a Herfindahl-Hirschman

---

[6] U.S. Dep't of Justice & Fed. Trade Commission, Merger Guidelines § 4.2.A (2023), 36. https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf

[7] https://www.justice.gov/atr/media/1406591/dl?inline

[8] https://www.americanbar.org/groups/business_law/resources/business-law-today/2025-august/doj-enterprise-wireless-merger-victory/

[9] https://truthonthemarket.com/2025/06/24/the-doj-may-consider-dropping-its-hpe-juniper-networks-merger-challenge/

[10] *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 363 (1963).

Index (HHI) increase of 100 points for the relevant market).[11] However, these guidelines do not have the force of law, and courts are obliged to apply legal precedent. Furthermore, an ample body of economic evidence since the establishment of the Philadelphia National Bank (PNB) precedent cited above has found that market concentration figures are not dispositive as to whether a merger is likely to be anticompetitive.[12] Thus, a post-merger firm's market share exceeding 30% should only be the starting point in determining whether a merger should be challenged.[13]

**Lack of Credible Theory of Anticompetitive Harm**

While the DOJ's complaint raises concerns that the merger "puts at risk myriad consumer benefits that have resulted from competition between Defendants in the market for enterprise-grade WLAN solutions," analyst Ron Westfall suggests a different perspective:

> HPE's proposed acquisition of Juniper is driven by the increasing importance of AI-native and cloud-driven networking. Juniper's Mist AI platform, which competes with Cisco Meraki and HPE Aruba's Edge Services Platform, has been a disruptive force in the industry. By integrating Juniper's AI-powered networking capabilities with its own, HPE aims to create a next-generation networking portfolio that enhances automation, security, and performance for enterprise customer, which is expected to expand customer choice rather than limit it and offer them a stronger alternative to Cisco's long-standing grip on the sector.[14]

The HPE-Juniper merger not only seeks to deliver advanced and differentiated products, but also to intensify competition directly challenging Cisco's market dominance. In effect, the merger injects new competitive pressure into an "already highly concentrated market" where Cisco has historically maintained a commanding lead.

Importantly, since the merger does not present a competition issue, or threaten to reduce consumer benefits, there is no need for a remedy, and thus we don't see a need to comment on the remedy proposed in the consent agreement. The Tunney Act process itself is designed to evaluate whether a consent decree remedies the injury alleged on the complaint. If there is no injury to competition, even on the face of the complaint, then there is nothing to remedy.

In this case, the complaint failed to articulate a credible theory of harm, leaving the proposed consent decree without any substantive problem to address. This reinforces our position that the DOJ's challenge was unnecessary, and the remedies pursued in this matter serve no competitive purpose.

**Prosecutorial Discretion**

---

[11] U.S. Dep't of Justice & Fed. Trade Commission, Merger Guidelines § 2.1 (2023)).
[12] For a summary of these studies and their findings, see: Bruce H. Kobayashi & Timothy J. Muris, Turning Back the Clock: Structural Presumptions in Merger Analyses and Revised Merger Guidelines, COMPETITIVE ENTER.INST. (Feb. 22, 2023), 6-8. https://cei.org/wp-content/uploads/2023/02/KobayashiMuris-FINAL-Layout-RY-approved.pdf
[13] Carl Shapiro, The 2010 Horizontal Merger Guidelines: From Hedgehog to Fox in Forty Years, 77 ANTITRUST L.J. 701 (2010). https://www.law.berkeley.edu/wp-content/uploads/2015/04/Shapiro-The-2010-Horizontal-Merger-Guidelines-From-Hedgehog-to-Fox-in-40-Years-2010.pdf
[14] https://futurumgroup.com/insights/doj-blocks-hpes-14-billion-juniper-deal-a-competitive-setback-or-market-win/

      Under the US constitution's "takings clause," the President (and his executive agency subordinates)[15] are obliged to faithfully enforce the laws.[16] Supreme Court precedent also recognizes that the President and federal executive agencies have substantial discretion in determining "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law."[17] Other Supreme Court precedent acknowledges that federal executive agencies facing limited resources and competing demands must make tradeoffs between their competing priorities. They may thus balance the factors within their own expertise in choosing whether to bring a case, even if the case would meet a legal threshold that would allow them to.[18] These decisions are beyond the purview of judicial review. Thus, the DOJ ought to have exercised shrewd prosecutorial discretion by not bringing the present complaint given the lack of likely anticompetitive concerns even if the DOJ's market definition and assertion that the merger would increase the HHI of the relevant market by over 100 points is accepted.

**Conclusion**

Given the circumstances, market share and competitive dynamics outlined above, we respectfully submit that the HPE-Juniper merger does not raise anticompetitive concerns. The Antitrust Division's expenditure of significant resources on a case with such limited anticompetitive potential therefore represents a misallocation of enforcement priorities. Accordingly, we see no need to comment on the remedies proposed in the consent agreement. We appreciate the opportunity to provide this comment and assist the DOJ in refining its final order

---

[15] *Seila L. LLC v. Consumer Fin. Prot. Bureau,* 591 U.S. 197, 204 (2020).
[16] U. S. Const., art. II, § 3.
[17] *TransUnion LLC v. Ramirez,* 594 U.S. 413, 429 (2021).
[18] See *Heckler v. Chaney,* 470 U.S. 821, 831 (1985).