UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br>    v.<br>HEWLETT PACKARD ENTERPRISE CO., et al.,<br>            Defendants. | Case No.  25-cv-00951-PCP<br><br>**ORDER GRANTING MOTION FOR INTERVENTION**<br>Re: Dkt. Nos. 236. 237 |

After the United States agreed to settle its challenge to defendant Hewlett Packard Enterprise's (HPE) acquisition of defendant Juniper Networks, the attorneys general of twelve states and the District of Columbia ("states") moved to intervene. Dkt. 236. The states argue that the United States's proposed settlement may fail to protect their shared interest in enforcing the federal antitrust laws against illegal mergers, and they seek leave to participate in this Court's proceedings to determine whether entry of the proposed consent decree is in the public interest. *See* 15 U.S.C. § 16(e)(1). The Court granted the states' motion to intervene at a hearing on November 18, 2025. This order provides the Court's reasoning in further detail.

## BACKGROUND

The United States filed its complaint on January 30, 2025, alleging that HPE's acquisition of its "smaller, but innovative rival, Juniper Networks, Inc.," violated Section 7 of the Clayton Antitrust Act. HPE's acquisition of Juniper, the federal government alleged, would violate Section 7's prohibition on acquisitions whose effect may be substantially to lessen competition in the market for "enterprise-grade WLAN solutions"—i.e., sophisticated wireless networking systems for large enterprises. Complaint, at 19 ¶ 61; *see also id.* at 2-3 ¶¶ 4–5. Shortly before trial, on June 27, 2025, the United States entered into a settlement agreement with HPE. *See* Dkt. 218. Under the Antitrust Procedures and Penalties Act, which is also known as the Tunney Act, 15 U.S.C. § 16(b)–(h), the United States filed its proposed final judgment with this Court for public comment. The proposed final judgment requires HPE to divest its "Instant On" business and to

license Juniper's AIOps Mist source code. This Court thereafter granted the parties' asset preservation and hold separate order. Dkt. 220.

During the public comment period, news outlets reported that HPE had hired two individuals close to the President to lobby on its behalf. *See HPE/Juniper: As Fight Between DOJ Leadership and Antitrust Division Broils, Tunney Act Proceeding Looms*, Capitol Forum (July 24, 2025), https://thecapitolforum.com/hpe-juniper-as-fight-between-doj-leadership-and-antitrust-division-broils. In response to that reporting, the attorneys general for the states of Colorado, California, Connecticut, Hawaiʻi, Illinois, Massachusetts, Minnesota, North Carolina, New York, Oregon, Washington, Wisconsin, and the District of Columbia filed the instant motion to intervene. The states want to "participat[e] in all proceedings pursuant to the Court's Tunney Act review authority, which should include discovery into the Settlement and the process that led to it, an evidentiary hearing, and a mandatory pause in integration of the merging entities pending the outcome of those proceedings." Motion for Intervention at 6–7. The states want to conduct discovery regarding the United States's pretrial materials as well as communications and information exchanged between the defendants and the United States "during settlement discussions." *Id.* at 7. The states also propose to, "as necessary, and as determined by each [s]tate, … pursue a claim for relief to block Defendants' merger." *Id.* at 7. The United States and HPE separately oppose the states' proposed intervention. Dkts. 298, 299.[1]

## ANALYSIS

The Tunney Act contains numerous references to third-party participation in the approval process. The Act expressly provides that courts may "authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate." *See* 15 U.S.C. § 16(f)(3). Other provisions invite courts to take testimony from party and non-party expert witnesses, to "appoint a special

---

[1] At the November 18 hearing, this Court vacated the stay that had been put in place due to the October 2025 federal government shutdown. *See* Dkt. 237.

1  master and such outside consultants or expert witnesses as the court may deem appropriate," or to
2  "request and obtain the views, evaluations, or advice of any individual, group or agency of
3  government." 15 U.S.C. § 16(f)(1), (2). All these provisions evince Congress's understanding that,
4  in evaluating the public interest served by a proposed consent decree, courts will often benefit
5  from participation by individuals and entities who are not parties to the underlying agreement that
6  is before the Court for approval.

7  Here, the states seek to intervene as parties pursuant to Rule 24, which "traditionally has
8  received a liberal construction in favor of applicants for intervention." *Wash. State Bldg. &*
9  *Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). As discussed
10 below, Rule 24 provides two alternative ways for intervening in ongoing litigation: intervention as
11 of right and permissive intervention. The states argue that that they should be permitted to
12 intervene under both. For the reasons set forth below, the states have not established that they are
13 entitled intervene of right under Rule 24(a)(1), but they have established that they are eligible for
14 permissive intervention under Rule 24(b)(1)(B) and will be allowed to intervene for the purpose of
15 participating in this Court's Tunney Act review proceedings.

### I. Intervention as of Right

Under Rule 24(a), the court must grant intervention as of right when, upon a "timely motion," "anyone … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Proc. 24(a)(2).[2] The requirements of Rule 24(a)(2) thus include four

---

[2] The Supreme Court has said that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). But "intervenors that seek the same relief sought by at least one existing party … need not" have independent Article III standing. *Washington v. FDA*, 108 F.4th 1163, 1172 (9th Cir. 2024) (quoting *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022)). Here, the states seek the same relief that the United States, an existing party, seeks in the still-operative complaint. Specifically, the states seek to preserve their right to prevent HPE's acquisition of Juniper. Since the hearing on this matter, the states have confirmed that they will adopt the United States' complaint as their own. *See* Motion for Intervention at 14; Dkt. 322. Accordingly, the Court need not consider the

elements: (A) timeliness, (B) that the proposed intervenors have a "significantly protectable interest relating to … the subject of the action," (C) that the proposed intervenors are "so situated that the disposition of the action may as a practical matter impair or impede their ability to protect that interest," and (D) that the proposed intervenors' interest is "inadequately represented by the parties to the action." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)).

The Ninth Circuit has "stress[ed]" that intervention as of right "does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Rule 24(a) applies "when the disposition of the action '*may*' practically impair a party's ability to protect their interest in the subject matter of the litigation, 'unless existing parties adequately represent that interest.'" *Id.* (quoting Fed. R. Civ. Proc. 24(a)(2)) (emphasis added).

### A. The states' motion is timely.

As an initial matter, the states' motion is timely. To determine whether a motion for intervention is timely, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers*, 22 F.4th at 822. The relevant moment under Rule 24 is not when the intervenors learned of the suit but "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* at 822–24 (internal quotation marks omitted). Here, the date when proposed intervenors "should have been aware that their interests would not be adequately protected by the existing parties" was either June 27, 2025, when the parties filed their proposed Final Judgment, or about a month later, when public reporting regarding the lobbying emerged. *See* Reply at 4. The states filed their motion for intervention on October 14, 2025, approximately two-and-a-half to three-and-a-half months after learning that the United

states' standing in determining whether they are entitled to intervene under Rule 24(a).

4

States would not "adequately protect" their interests. Contrary to the existing parties' argument, the relevant starting date is *not* when the United States filed its complaint on January 30, 2025, because the states could fairly have thought until that time that the United States would adequately protect their interests.

Each of the three factors for evaluating timeliness—the stage of the proceedings, the prejudice to other parties, and the reason and length of the delay—favors the states.

First, the stage of the proceedings has not changed since the parties filed their proposed final judgment or news outlets reported on the deliberations. The Court's evaluation of the proposed final judgment remains pending, and the comments submitted in response to the government's notice of the proposed final judgment were not provided to the Court for review until one month *after* the states had moved to intervene (and less than a week before the hearing on that motion).

Second, the parties will not be prejudiced. A party is prejudiced by harm that "flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) (cleaned up). Here, the parties have not identified any prejudice resulting from the few months between the filing of their proposed consent decree and the states' filing of their motion to intervene. Indeed, the Tunney Act's notice-and-comment requirement ensured that nothing could occur in this litigation for the majority of that time. As a result, the parties' circumstances are not "materially different now than they would have been had [the states] sought to intervene" in June or July. *United States v. State of Oregon*, 745 F.2d 550, 552–53 (9th Cir. 1984); *see also id* (finding no prejudice where tribes and states sought to intervene in litigation fifteen years after its start).

Third, and finally, the reason and length of the delay favor a finding of timeliness. The states took a reasonable amount of time to evaluate the proposed final judgment and coordinate their response after learning of the settlement in the context of the public reporting and what that reporting suggested about the settlement's ability to address the harms identified by the original

5

1  complaint. Indeed, because the United States retains the right to withdraw from the consent decree
2  at any time prior to the entry of final judgment, the states arguably could not even be certain that
3  the United States would not protect their interests until the government filed its response to the
4  public comments on November 14, 2025, which made clear that the United States would continue
5  to seek the decree's approval.
6       Accordingly, the states' motion is timely.

### B. The states may have a significant protectable interest in the action.

8  To intervene as of right, a proposed intervenor must have a significant protectable interest
9  in the subject of the proceedings. A protectable interest under Rule 24 need not be a "specific legal
10 or equitable interest" and should be understood not as a "determinative criteria for intervention"
11 but as a "threshold" test. *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Whether a
12 proposed intervenor has a protectable interest "is primarily a practical guide to disposing of
13 lawsuits by as many apparently concerned persons as is compatible with efficiency and due
14 process." *Id.* (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)); *see also* Fed. R. Civ.
15 Proc. 1 ("[The Federal Rules] should be construed, administered, and employed by the court and
16 the parties to secure the just, speedy, and inexpensive determination of every action and
17 proceeding.").
18 Here, the states identify their interest as "protect[ing] their citizens from antitrust
19 violations." Motion for Intervention at 9–10. In determining whether this is a protectable interest
20 in the context of this case, it is notable that states play an important, distinct role in antimerger
21 enforcement. Like other private individuals or entities, they may bring suit in federal court to
22 enjoin violations of the antitrust laws that harm them in their proprietary capacity. *See* 15 U.S.C.
23 § 26; *Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 447 (1945). But unlike other private parties, states
24 may bring *parens patriae* suits to enjoin mergers and other anticompetitive conduct that injure
25 their citizens. *See id.* The antitrust statutes recognize the states' special role in the country's
26 antitrust system in other ways as well. For example, when the Attorney General brings an antitrust
27 suit that a state attorney general could reasonably be expected to also bring, she must "promptly
28 give written notification" to that state attorney general as well as provide "any [relevant]

investigative files or other materials" upon request. 15 U.S.C. § 15f. Additionally, Congress has exempted antitrust suits brought by states from the multidistrict litigation statute. *See* 28 U.S.C. § 1407(h).

The states claim that their recognized interest in preventing anticompetitive harms to their citizens might be impaired by HPE's acquisition of Juniper and the consequent loss of rivalry in the relevant market. *See East Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1001–02 (9th Cir. 2024). While that is undoubtedly a valid and protectable state interest, these proceedings generally will not affect the states' ability to file independent lawsuits challenging the acquisition. The question presented by the states' motion is therefore whether the states have a significant protectable interest in forcing a third party (the United States) to continue pursuing litigation to block the merger. The states have identified no authority suggesting that such an interest is protectable.

As discussed below, however, the states *have* identified at least one way in which the provisions of the proposed consent decree, if approved and entered as an enforceable order of this Court, could interfere with their ability to procure complete relief in a separate lawsuit. Given that potential, the states' interest in protecting their citizens from potentially anticompetitive mergers may constitute a significant and protectable in the specific context of this litigation.

### C. It is unclear whether entry of the proposed final judgment will practically impair or impede the states' ability to protect their interests.

Because the states retain the right to bring their own suits challenging HPE's acquisition of Juniper, their interest in protecting their citizens from anticompetitive conduct will for the most part be unimpaired by the outcome here. Notably, the states have not initiated litigation challenging the merger in any other forum, and in moving to intervene they have stated a desire solely to participant in the Court's Tunney Act proceedings, rather than to pursue their own independent challenge to the merger in this Court. The states' ability to pursue such a challenge will remain intact whether or not this Court approves the parties' proposed Final Judgment.

As the states note, however, that is at least one provision of the proposed Final Judgment that could limit their ability to procure complete relief in any such proceeding. Entry of the

7

proposed Final Judgment would not only end the United States's challenge to the merger but also require HPE to divest its Instant On business and license Juniper's AIOps Mist source code to a competitor. The states contend that even if they procured an order requiring an unwinding of the merger, the licensing of AIOps Mist source code to a competitor would prevent Juniper from being restored to its full pre-merger competitive status. And because the licensing of that code would be undertaken pursuant to a final and enforceable order of this Court, any effort by the states to procure a court order undoing that licensing would at least arguably constitute an enjoinable interference with this Court's own orders and judgment.

If the Court lacked the power to prevent such a conflict, then the states' interest in protecting the availability of complete relief in any challenge they might pursue would face a risk of impairment sufficient to justify intervention as of right. In exercising its equitable powers, however, the Court has "considerable discretion and flexibility … to address … comity considerations." *California ex rel. Lockyer v. USDA*, 710 F. Supp. 2d 916, 921 (N.D. Cal. 2008). In particular, the Court has the authority to provide that an injunction's mandatory provisions will not serve as a bar to relief sought in other challenges to the merger. *See id.* at 922–24 (partially staying injunction to address comity concerns arising from conflicting injunctions). As part of its Tunney Act review, then, the Court will consider whether the public interest requires the inclusion of such a provision in any Final Judgment.

Given the Court's retained authority to prevent any impairment of the states' protectable interests here, the states do not satisfy the third requirement for intervention as of right.

**D.     The states' interest is inadequately represented by the United States.**

Although the absence of an impairment is sufficient to deny the states' motion to intervene of right under Rule 24(a), the Court will address the final relevant factor—whether the states' interest is adequately protected by another party—for the sake of completeness.

There are three factors for determining whether existing parties adequately represent a proposed intervenors' interest: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer

8

any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also State of Oregon*, 839 F.2d at 638.

Here, the United States seeks entry of the proposed final judgment. In contrast, the states do not support its entry and seek discovery regarding various aspects of the judgment, its negotiation, and its effects. The states' interests are therefore no longer aligned with those of the United States, and the United States, while "capable" of making the states' arguments, is not "willing" to do so. *Arakaki*, 324 F.3d at 1086. Indeed, the United States conceded at oral argument that it will not adequately protect the states' interest.

HPE nonetheless argues that the United States adequately represents the states' interest based on the general and "nearly irrebuttable" presumption that the United States adequately represents the public interest in antitrust suits. HPE's Opposition at 16. While courts may usually be able to presume that the United States represents the public interest, Congress enacted the Tunney Act out of a specific concern that such a presumption is unwarranted where the United States enters into consent decrees regarding mergers and other anticompetitive conduct. As the states note, Congress passed the Tunney Act in response to influence peddling, including in particular President Nixon's having ordered the Antitrust Division to settle challenges to an acquisition by International Telephone & Telegraph Corporation under questionable circumstances. The general presumption that the United States advances the public interest in antitrust cases cannot control over the specific scrutiny required by the Tunney Act or the specific and identified differences between the positions of the United States and the states in this proceeding. Indeed, to the extent HPE seeks to rely on such presumptions in defending the proposed Final Judgment, it implicitly suggests that the Court can properly consider as part of its analysis whether the process that culminated in the parties' settlement bears the hallmarks of regularity and principled decision-making that might justify such presumptions.

*   *   *

Because not all of the requirements for mandatory intervention under Rule 24(a) are satisfied here, the states are not entitled to intervene as of right in this matter.

## II. Permissive Intervention

Permissive intervention under Rule 24(b)(1) is proper when, upon a "timely motion, … anyone … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Proc. 24(b)(1)(B). For the reasons noted above, the states' motion is timely. And for those same reasons, the states' motion for intervention satisfies Rule 24(b)(3), which requires this Court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." To the extent that intervention might raise concerns about excessive discovery, as HPE argues, *see* HPE's Opposition at 24–25, the Court can address those concerns as they arise.

As a result, the only remaining question under Rule 24(b)(1) is whether the states have a claim or defense that shares a common question of law or fact with the main action.[3]

The states assert claims that squarely respond to the subject matter of this litigation. Based on the same allegations that the United States asserted in its Complaint, the states contend that the proposed Final Judgment may not serve the public interest because it might not address the competitive harms arising from the merger. That claim shares with the existing proceedings common questions of law—such as whether HPE's acquisition violates Section 7 of the Clayton Act and whether the parties' proposed remedy sufficiently remedies that violation—as well as common questions of fact—such as the effects of the merger on competition in the enterprise WLAN market and how the settlement's curative provisions might address those effects. Indeed, the United States (but not HPE) conceded at argument that the states' claims share a common question of law or fact with the underlying suit.

The existing parties' contrary arguments are unpersuasive. HPE argues that the states do not even *have* a claim and "do not know if they will bring one." HPE Opposition at 23. But the states have since argument indicated that they "adopt the allegations in the [United States's]

---

[3] The states also seek to intervene under Rule 24(b)(2), which allows "a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Because Rule 24(b)(1) provides a sufficient basis for granting permissive intervention, the Court need not address this issue.

10

Complaint" and base their objection to the settlement's approval on those allegations. Dkt. 322 at 1.

The United States, meanwhile, suggests that intervenors may only intervene in Tunney Act proceedings if they have filed a separate lawsuit. *See* Plaintiff's Opposition at 21 ("Here, in contrast [to other Tunney Act cases], the Moving States point to no other litigation they are involved with that raises common claims or defenses. And there is none."). But proposed intervenors generally do not need to file their own suit before seeking to intervene. *See id.*; *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Indeed, the Tunney Act specifically provides that the Court may grant "intervention as a party pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 16(f). Requiring a separate lawsuit would also be at odds with the Federal Rules' goal of effectively streamlining resolution of disputes. Indeed, as the United States acknowledged at the hearing on the motion to intervene, requiring the states to pursue their own suit against HPE and Juniper could give rise to conflicting orders across the different fora.

The United States also argues that Tunney Act proceedings are intended to be streamlined and to include minimally burdensome processes. The Act makes clear, however, that this Court must evaluate the proposed settlement using whatever procedures are necessary, whether or not they are time-intensive or burdensome. *See* 15 U.S.C. § 16(f) (authorizing reviewing courts to "take testimony," "appoint a special master," call for the views of public officials or agencies, grant intervention and appearances by amici curiae, examine witnesses or documents, and take "other action in the public interest as the court may deem appropriate"). To the extent the text of the Act suggests anything, it suggests that the Congress that passed the Tunney Act was far more interested in ensuring a full adjudication of the merits of any proposed consent decree than in streamlining the required approval proceedings and minimizing burdens on the parties.

Because the states' motion was timely and the claims of the United States and the states share common questions of law or fact, the states satisfy the requirements for permissive intervention under Rule 24(b)(1)(B). And because the states' participation in these proceedings will assist the Court in evaluating whether the proposed Final Judgment serves the public interest, the Court will grant the states' motion to intervene under that Rule.

**CONCLUSION**

For the reasons stated above, the states' motion to intervene under Rule 24(b) is granted. The states' motion to intervene as of right under Rule 24(a) is denied. Going forward, the states are entitled to participate as parties in the Court's Tunney Act review proceedings. To the extent any disputes regarding the propriety or scope of discovery arise, those disputes shall be resolved by this Court, rather than by the assigned magistrate judge, pursuant to the provisions of the Court's Standing Order Regarding Discovery Disputes Not Referred to the Magistrate Judge. Should the states wish to pursue an independent challenge to the merger in these proceedings, they must file a separate motion to intervene for that purpose.

**IT IS SO ORDERED.**

Dated: December 1, 2025

P. Casey Pitts
United States District Judge