HENRY C. SU (CA Bar 221202)
JEREMY M. GOLDSTEIN (CA Bar 324422)
MICHAEL G. LEPAGE (DC Bar 1618918)
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
henry.su@usdoj.gov
jeremy.goldstein@usdoj.gov
michael.lepage@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

PHILIP J. WEISER
Attorney General
ARTHUR BILLER (*pro hac vice*)
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Arthur.Biller@coag.gov
Bryn.Williams@coag.gov

*Attorneys for Intervenors*

JULIE ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
FRESHFIELDS US LLP
700 13th St NW
Washington, DC 20005
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

SAMUEL G. LIVERSIDGE (CA Bar 180578)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cv-00951-PCP |
| *Plaintiff,* | |
| STATES OF COLORADO, *et al.*, | JUDGE: Hon. P. Casey Pitts |
| *Intervenors-Plaintiffs,* | MAGISTRATE JUDGE: Hon. Susan van Keulen |
| v. | |
| HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., | **JOINT CASE MANAGEMENT STATEMENT** |
| *Defendants.* | **Status Conference:  Dec. 16, 2025 10:00 a.m.** |

Plaintiff United States of America, Defendant Hewlett Packard Enterprise Co. ("HPE"), and Intervenors Colorado, California, Connecticut, Hawaii, Illinois, Massachusetts, Minnesota, North Carolina, New York, Oregon, Washington, Wisconsin, and the District of Columbia (collectively, the "States"), respectfully submit this Joint Case Management Statement pursuant to the Court's instructions delivered at the conclusion of the hearing on November 18, 2025. *See* Transcript of 11/18/25 Hearing ("Tr.") at 64:5–10; Dkt. No. 314 (Minute Entry). The Parties have met and conferred but were not able to reach agreement on how the Court should conduct the public interest determination required by the Antitrust Procedures & Penalties Act ("Tunney Act"), 15 U.S.C. § 16(e)(1). Each Party sets forth its proposal below, along with its response to the other Parties' proposals. The Parties hope this Joint Case Management Statement will provide a framework for discussion at the upcoming virtual status conference on December 16, 2025, at 10:00 a.m. *See* Dkt. No. 336.

## I.    STATEMENT OF THE UNITED STATES

### A.    The United States' Position

The United States proposes that the Court, in making its public interest determination, receive briefs and entertain any arguments for and against entry of the proposed Final Judgment on dates in early 2026 that are mutually convenient to the Court and the Parties. The United States plans to move for entry of the proposed Final Judgment and notice its Motion for the Court's civil motions docket on Thursday, February 5, 2026, at 10:00 a.m., which the Court of course has the power to reschedule. Civ. L.R. 7-2(a).

#### 1.    All That Remains to Be Done Is for the Court to Determine That Entry of the Proposed Final Judgment Is in the Public Interest.

The only proceeding pending before the Court is the public interest determination under the Tunney Act. If the Court determines that entry of the United States' proposed Final Judgment is "within the reaches of the public interest," *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981), then that decision will resolve the United States' challenge of HPE's acquisition of Defendant Juniper Networks, Inc. ("Juniper") and conclude this action. The Court granted the

States' intervention under Fed. R. Civ. P. 24 as only a procedural vehicle for participating in the public interest determination, not for bringing their own claims challenging the acquisition. *See* Dkt. No. 332 at 12.

On June 27, 2025, the United States and HPE informed the Court that they had reached a resolution of the United States' claim under Section 7 of the Clayton Act, 15 U.S.C. § 18, alleging that HPE's acquisition of Juniper may "substantially lessen competition in interstate trade and commerce in the market for enterprise-grade WLAN solutions in the United States[.]" *See* Dkt. No. 217; Dkt. No. 1 (Complaint), ¶ 61. In accordance with the Tunney Act, which governs "[a]ny proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws," 15 U.S.C. § 16(b), the United States filed a proposed Final Judgment and a Competitive Impact Statement with the Court, attaching them to an Asset Preservation and Hold Separate Stipulation and Order that HPE also signed. *See* Dkt. Nos. 217, 217-1 & 217-2. In light of the settlement, the Court vacated the June 30, 2025 pretrial conference, Dkt. No. 219, and all remaining case deadlines, Dkt. No. 224.

The proposed Final Judgment, as amended, Dkt. No. 311-2, contains all the terms of a final and binding settlement between the United States and HPE, as HPE's executives have confirmed. *See* Dkt. Nos. 298-1 (Declaration of Antonio F. Neri), ¶ 3, & 298-2 (Declaration of John F. Schultz), ¶ 12. All that remains is for the Court to determine whether the proposed Final Judgment is in the public interest in the context of the public comments and the United States' response to those comments.

### 2. The United States and HPE Have Completed All of the Tunney Act Requirements Preceding the Court's Public Interest Determination.

The United States and HPE have now complied with all the requirements preceding the Court's public interest determination, and the United States will be filing a Certificate of Compliance with the Tunney Act and moving for entry of the proposed Final Judgment prior to

the upcoming status conference. Specifically, the following steps have been taken to fully comply with the Tunney Act:

(a)    As required by 15 U.S.C. § 16(b), the United States filed the proposed Final Judgment and the Competitive Impact Statement with the Court, *see* Dkt. Nos. 217-1 & 217-2, and published them in the Federal Register for comment, *see* 90 Fed. Reg. 30,685 (July 10, 2025). Section 16(b) provides for a 60-day period for the public to submit comments to the United States regarding the proposed Final Judgment, and that 60-day comment period has ended.

(b)    As required by 15 U.S.C. § 16(c), the United States caused notice of the settlement and comment procedures to be published in the *Washington Post* on July 9–15, 2025, and in the *Mercury News* on July 9–16, 2025.

(c)    As required by 15 U.S.C. § 16(d), the United States solicited public comments on the proposed Final Judgment. Twelve were submitted, including one by the States, and the United States responded to each of them in a document filed with the Court. *See* Dkt. No. 311. In accordance with the Court's September 24, 2025 Order, Dkt. No. 234, the United States also published in the Federal Register a summary of the comments that were received and the United States' response, *see* 90 Fed. Reg. 52,097 (Nov. 19, 2025), with a link to the Antitrust Division webpage where the comments can be viewed in their entirety. Based on the comments, the United States has amended the proposed Final Judgment (1) to provide additional procedural protections to support the agreed-upon divestiture and licensing, and (2) to enhance the enforcement provisions. *See* Dkt. Nos. 311, at 9 & 311-2.

(d)    As required by 15 U.S.C. § 16(g), HPE filed on July 7, 2025, within ten days following the filing of the proposed Final Judgment, a description and certification of all written and oral communications by, or on behalf of, HPE and Juniper with any officer or employee of the Executive Branch of the United States. *See* Dkt. No. 228.

### 3.    The Court's Public Interest Determination Must Focus on the Competitive Impact of the Proposed Final Judgment.

Under the Tunney Act, "[f]or the purpose of [the public interest] determination," the Court "*shall consider*—(A) *the competitive impact of such judgment*, including [various decree-related factors] and *any other competitive considerations* bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest, and (B) *the impact of entry of such judgment upon competition in the relevant market or markets . . . .*" 15 U.S.C. § 16(e)(1) (emphases added). When it amended the statute in 2004, Congress reaffirmed its intent that, in conducting such a determination, the Court must focus on the competitive impact of the proposed Final Judgment. *See* 150 Cong. Rec. S3618 (daily ed. Apr. 2, 2004) (stmt. of Sen. Kohl) ("Our bill modifies the law by stating that, in making this determination, the court 'shall' look at a number of enumerated factors bearing on the competitive impact of the settlement.").

Underscoring the focus on competitive impact, Congress made two amendments to the language of the enumerated factors. First, it added the adjective "competitive" to the omnibus clause under Section 16(e)(1)(A): ". . . and any other *competitive* considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest[.]" Antitrust Criminal Penalty Enhancement and Reform Act of 2004, tit. II, subtit. B – Tunney Act Reform, § 221(b), Pub. L. No. 108–237, 108 Stat. 661, 669 (June 22, 2004). Second, Congress added the prepositional phrase "upon competition in the relevant market or markets" to the evaluation of the impact of entry under Section 16(e)(1)(B), *id.*, to "ensure that the Tunney Act review is properly focused on the likely competitive impact of the judgment, rather than extraneous factors irrelevant to the purpose of antitrust enforcement." 150 Cong. Rec. S3618 (daily ed. Apr. 2, 2004) (stmt. of Sen. Kohl).

4.     **An Evidentiary Hearing Is Not Required under the Tunney Act, and the Comments Received Do Not Make a Persuasive Case for One Here.**

As the United States has explained in its response to the public comments on the proposed Final Judgment, there is no need for an evidentiary hearing, live testimony, or evidentiary submissions to address any of the factors that bear on the Court's public interest determination under Section 16(e)(1). Dkt. No. 311, at 27–31. The Court is already utilizing one of the procedures specified by Section 16(f), namely, reviewing the comments filed with the United States and the United States' responses thereto. 15 U.S.C. § 16(f)(4). Furthermore, the Court has exercised its discretion to allow the States, who have also submitted comments, to participate in this proceeding as intervenors. 15 U.S.C. § 16(f)(3). These procedures more than adequately ensure that the Court will hear arguments and perspectives for and against entry of the proposed Final Judgment and have a well-developed record on which to make its public interest determination.

The United States therefore proposes that the Court set its forthcoming Motion for Entry of Final Judgment for a hearing on February 5, 2026, or a subsequent date that is mutually convenient to the Court and the Parties. As intervenors, the States would join the United States and HPE in presenting their arguments for or against the entry of the proposed Final Judgment at that hearing. The United States is likewise amenable to changing the standard timetable under Civil Local Rule 7-3 for the submission of briefs in opposition and reply.

**B.     The United States' Response**

**1.     The States' Proposal**

The States' proposed schedule relies on a fundamental misconception of this proceeding. The States could have brought their own action at any time since the acquisition was announced in January 2024. They could have joined the United States as plaintiffs when the United States brought this action in January 2025. They could have joined this action as plaintiffs through an amended pleading after January 2025. If the States intended to engage in full-blown litigation concerning the acquisition, they could have selected any of these options. Instead, they elected to

wait until months after the United States and the Defendants reached a proposed settlement. The Court granted the States' motion to intervene not to re-litigate the case, but because the Court concluded "the states' participation in these proceedings will assist the Court in evaluating whether the proposed Final Judgment serves the public interest[.]" Dkt. No. 332 at 11.

Despite the Court's guidance in the Order Granting Motion for Intervention, the States propose a full-blown litigation schedule including a three- to five-day bench trial. No State Attorney General has ever been permitted in a Tunney Act proceeding to engage in the scope of discovery directed to the United States that the States seek here. As the United States explained previously, a hearing probing the Department of Justice's internal deliberations would constitute an improper intrusion into Executive Branch processes, and compelling testimony from senior Department officials or the production of privileged documents and communications from the Department would raise even graver concerns. *See* Dkt. No. 311 at 4–5, 19–22, & 27–31.

Remarkably, the States' proposed schedule for this Tunney Act proceeding is significantly *longer* than the entire litigation calendar entered by this Court to adjudicate the *merits* of the United States' complaint:

|  | Litigation (Dkt. No. 104) | States' Tunney Act Proposal |
|---|---|---|
| Opening of Discovery to Start of Trial | 146 days (Feb. 14 – July 9, 2025) | 223 days (Dec. 17, 2025 – July 27, 2026) |
| Fact Discovery | 104 days (Feb. 14 – May 28, 2025) | 143 days (Dec. 17, 2025 – May 8, 2026) |

The States' proposal envisions extensive and drawn-out discovery with over three months of document production, six weeks of depositions, and three-rounds of expert reports. If the States intended to engage in full-blown litigation concerning the HPE-Juniper transaction, they could have brought their own action at any time since the acquisition was announced in January 2024. Indeed, as the Court has observed, they could still do so today. But the States' proposal in the context of this Tunney Act proceeding is inconsistent with the statute's purpose and out of

line with past Tunney Act proceedings, would discourage settlements in civil antitrust proceedings brought by the United States, could reduce the efficacy of the proposed settlement, and would impose unnecessary costs on the United States.

**__The States' proposal is inconsistent with the purpose of the Tunney Act.__** Congress did not intend to turn the public interest determination into its own trial. In its hearings on the proposed bills, Congress solicited and received the views of D.C. Circuit Judge J. Skelly Wright on that very point:

> Also, if the inquiry into whether the proposed decree serves the public interest turns into a long minitrial of the antitrust case, the value of the consent decree to the Government diminishes. It seems imperative that, if the consent decree is to retain its vitality, the trial court must adduce the necessary information through the simplest and least time-consuming means possible.
>
> Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral argument, this is the approach that should be used. Only where it is imperative that the court should resort to calling witnesses and other time-consuming factfinding techniques should the court do so.
>
> Some balancing is required in this area, and I believe the bill, or its legislative history, should emphasize the trial court's broad discretion to limit the procedures used to obtain the information necessary to make an informed public interest determination without turning the consent decree approval process into a long minitrial.

Hearings Before the Subcomm. on Antitrust and Monopoly, Sen. Judiciary Comm., on S. 782 & S. 1088, at 149 (Apr. 5, 1973) (Stmt. of Judge J. Skelly Wright). The Senate subsequently issued a report incorporating Judge Wright's suggestions:

> It is not the intent of the Committee to compel a hearing or trial on the public interest issue. It is anticipated that the trial judge will adduce the necessary information through the least complicated and least time-consuming means possible. Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, this is the approach that should be utilized. Only where it is imperative that the court should resort to calling witnesses for the purpose of eliciting additional facts should it do so.

S. Rep. No. 93–298, at 6 (1973). *See also* H.R. Rep. No. 93–1463, at 8 (1974) (indicating agreement with the views in the Senate report).

**The States' proposal is out of line with past Tunney Act proceedings.** Prior Tunney Act proceedings provide no support for the States' proposed schedule. In *United States v. CVS Health Corp.*—the only evidentiary hearing in the recent history of Tunney Act proceedings—the court scheduled two days to hear from live witnesses at a hearing that occurred roughly eight months after the filing of the proposed consent judgment and less than four months after the government's response to comments. 407 F. Supp. 3d 45, 51 (D.D.C. 2019). That is a considerably shorter time frame than the States' proposal here. Moreover, that case (1) concerned an acquisition nearly *five times larger* in dollar value than the one at issue in this case; (2) concerned 34 separate geographic markets across the country; and (3) featured strong opposition to the proposed consent judgment from market participants, including the American Medical Association. Competitive Impact Statement, No. 18-cv-2340, at 1, 3–4 (D.D.C. Oct. 10, 2018) (ECF No. 3); Amicus Br. by Am. Med. Ass'n, No. 18-cv-2340 (D.D.C. filed Mar. 6, 2019) (ECF No. 62). None of those factors are present in this case.

Similarly, in *United States v. SBC Commc'ns, Inc.*, which concerned two separate mergers of major telecommunications companies and numerous geographic product markets, none larger than a metropolitan area and some as small as a single building, the court chose to forgo an evidentiary hearing entirely and instead received evidentiary submissions and briefing from the United States, the merging parties, and several *amici* (including the New York Attorney General). 489 F. Supp. 2d 1, 4–5, 7–10 (D.D.C. 2007). Further, the court allowed the United States "to decide exactly what types of materials were appropriate to submit." *Id.* at 9. In contrast, the States here seek expansive discovery related to issues that will not aid the Court in making its public interest determination.

Nor do allegations of lobbying necessitate an evidentiary hearing as the States argue here. No hearing of any kind was held in the Tunney Act proceeding for the merger between American Airlines and US Airways, despite allegations that the government's decision to settle was influenced improperly by lobbying. *See* Justin Elliott, *The American Way*, Pro Publica (Oct. 11, 2016), *available at* https://www.propublica.org/article/airline-consolidation-democratic-

lobbying-antitrust. And, unlike the present case, the proposed consent judgment in that case was opposed by industry participants. *See United States v. US Airways Group, Inc.*, 38 F. Supp. 3d 69, 81–83 (D.D.C. 2014) (discussing concerns raised by Delta Airlines in public comment). The district court nonetheless determined that a hearing was not necessary. *Id.* at 85.[1] Instead, the court analyzed the existing record, including public comments and the United States' response to them, to determine whether the proposed consent judgment was in the public interest. *Id.* at 76–85. It also rejected requests from *amici* and public commenters to consider the alleged lobbying and instead focused its public interest analysis on what the Tunney Act directs it to consider: the substance and competitive impact of the proposed consent judgment. *Id.* at 76–85.

**The States' proposal would discourage settlements in antitrust proceedings brought by the United States.** In other filings, the States have hinted that they intend to probe the process leading up to the settlement. But such an inquiry is outside the scope of the Tunney Act's public interest analysis. *See Section I.A.3, supra.* In addition, the extended timeline is inconsistent with the Tunney Act's goal of encouraging the continued use of consent judgments in antitrust litigation. As Senator Tunney explained: "The court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent [judgment] process." 119 Cong. Rec. 24,598 (1973). Other legislative history supports the Tunney Act's purpose of encouraging reasonable resolutions that promptly restore competition. *See id.* ("[I]t is most important that the consent [judgment] be preserved as a viable settlement option. This is the Government's philosophy and this remains the philosophy of our bill."); S. Rep. No. 93–298, at 5 & 7 (1973) ("Obviously, the consent decree is of crucial importance as an enforcement tool, since it permits the allocation of resources elsewhere . . . . [T]he [Senate Judiciary] Committee wishes to retain

---

[1] In "an exercise of discretion under the Tunney Act," the court denied a request from one of the amici "to conduct a hearing so that these issues [regarding defendants' lobbying of the Department] can be fully aired and addressed." *See* Br. of Amici Curiae Carolyn Fjord, No. 13-cv-1236 (CKK), at 22–23 (D.D.C. Apr. 25, 2014) (ECF No. 173); Order Granting in Part and Denying in Part Amici Curiae Fjord's Mot. for Leave to File Brief, No. 13-cv-1236 (CKK), at 1 (D.D.C.) (ECF No. 167).

the consent judgment as a substantial antitrust enforcement tool."). The States' proposal is at odds with encouraging the use of consent judgments as an antitrust enforcement tool.

**The States' proposal could reduce the efficacy of the settlement.** The States' proposal also risks undermining the efficacy of the settlement negotiated by the United States and HPE to remedy competitive harms alleged in the United States' complaint. Enterprise-grade WLAN is a fast-moving technology market, and vendors work continuously to develop and bring to market new technologies. While there is robust interest today in the assets HPE will divest and license, it is not clear that every potential buyer and licensee can freeze its product development pipelines while waiting for a year-long Tunney Act process to conclude. Even if they could, the value of the assets may be less attractive as go-to-market strategies evolve, customer needs change, and technology grows stale. The States' proposal risks "killing the patient" in order to "cure a supposed disease" that the States have yet to diagnose.

**The States' proposal would impose unnecessary costs on the United States.** The breadth of the States' proposed discovery plan likely would impose a significant burden on the United States. For example, the "Pretrial Record" as defined by the States would include all trial exhibits, expert reports and cited materials, deposition transcripts and exhibits, interrogatory responses, requests for admission and all unredacted copies of pretrial briefs and proposed findings of fact and conclusions of law. This represents thousands of pages of materials, most of which would never have been used at trial. These materials also contain confidential and highly confidential third-party information that must be redacted under the Protective Order and the Court's Sealing Orders. Seventeen third parties filed sealing motions in this case. Per the Court's order, all these materials are currently sealed, as well as all materials third parties were notified of post-June 25. *See* Dkt. No. 224. The States' proposal would require the United States to carefully review and redact the entire Pretrial Record to protect third-party information, a task which would take weeks of full-time work for a team of staff members and is unnecessary to this Court's assessment of whether the proposed settlement satisfies the Tunney Act's public interest criteria. This problem cannot be rectified by a simple amendment to the Protective Order; third

parties would still need to be notified and given the opportunity to be heard, introducing

unnecessary burden and cost not just to the United States but to third parties as well.

* * *

The extensive and lengthy discovery and evidentiary hearing process contemplated by the

States is appropriate for full litigation on the merits, not a Tunney Act review. The States have

always had, and still have, the option to develop evidence to challenge the merger if they prefer.

The task at hand here is far narrower. The current record, plus any additional briefs submitted for

and against the proposed settlement, should be more than adequate for the Court to determine

that there is a factual basis to conclude that the settlement is in the public interest.[2] *See SBC*

*Commc'ns*, 489 F. Supp. 2d at 17 ("[The United States] need only provide a factual basis for

concluding that the settlements are reasonably adequate remedies for the alleged harms."). The

States' proposal is unnecessary, inefficient, and should be rejected.

### 2.    HPE's Proposal is Consistent with the United States' Proposal

HPE's proposal for completing the Court's public-interest determination is in line with

the United States' proposal. The United States has no objection if the Court prefers the approach

and timetable laid out by HPE, except the United States does not believe that expert declarations

are necessary to assist the Court in determining that entering the proposed Final Judgment is in

the public interest.

## II.    STATEMENT OF HEWLETT-PACKARD ENTERPRISE CO.

### A.    HPE's Position

The States' intervention in these proceedings has caused, and is causing, substantial

uncertainty and confusion for HPE and its employees, customers, and partners.  Accordingly, it

is HPE's strong desire to complete these proceedings as soon as they can reasonably be

completed, while also allowing the Court sufficient time to complete its public interest

---

[2] If the Court decides that it needs more information to make its public interest determination
after reviewing the public comments and the United States' response, then it would be more
efficient for the Parties to make specific proposals targeted to what the Court feels it needs.

determination.  HPE proposes the following process for the Tunney Act proceedings in this matter.

1. **Written Submissions**.  The United States has indicated that it will file its motion for entry of the proposed Final Judgment by the week of December 15, 2025. HPE proposes that within 30 days of the filing of the United States' motion, any party may file a brief of up to 25 pages in support of or opposition to the motion. A party may submit fact or expert declarations and other evidence with its filing. Subsequently, within 10 days of the filing of any such brief in support of or opposition to the motion for final approval, any party may file a response brief of up to 10 pages.

2. **Hearing and Hearing Date.**  The Court is not required to hold a hearing under the Tunney Act, and it is HPE's view that a hearing is not necessary for the Court to determine whether the proposed settlement is in the public interest.  Should the Court decide that a hearing would be useful, HPE believes that a hearing in early February 2026 would be appropriate.

3. **Scope of Hearing**.  Should the Court decide to hold a hearing, it is HPE's view that the hearing should involve oral argument on the submitted briefs and evidence.  In HPE's view, it should not be necessary to hear testimony from live witnesses, as any testimony in support of or opposition to the proposed settlement can be presented to the Court in written form with the party's written submission. If the Court has questions regarding any of the submitted testimony and believes that it would be useful to hear further testimony, a witness could be made available to address the Court's questions.

4. **Discovery.**  It is HPE's position that no discovery should be conducted by parties or intervenors as part of the Court's Tunney Act review.  The Tunney Act review process and the determination of whether the settlement is in the public interest is for the Court and within the purview of the Court, not that of parties or third

parties.  If the Court believes it would be useful to review additional materials or information, it can order the parties to make such information available to it.

### B.    HPE's Response to the States' Proposal

HPE objects to the States' proposal, which, in HPE's view, is unreasonable and unfair to HPE, its employees, its customers, and its channel partners.  The proposal is also unsupported by any legal precedent.  The States propose that the parties and the Court now proceed into a second, full-scale litigation with months of fact and expert discovery, a lengthy pretrial process with exchange of witness and exhibit lists and deposition designations, and a 3-5 day bench trial.  Their proposed schedule spans eight months—*two months longer* than it took HPE and the United States to take this case from complaint to the eve of trial—and will result in HPE and the United States spending *substantial* additional resources to litigate a case they *already settled*.  And it will undoubtedly subject this Court to significant motion practice on discovery and pretrial issues.

This lengthy and expansive process is not consistent with the scope of Tunney Act review.  The determination the Court needs to make is "whether the settlement is within *the reaches* of the public interest."  *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981) (internal quotations omitted).  To make that determination, the Court is required to consider certain mandatory factors—including "the competitive impact of such judgment" and "the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint."  15 U.S.C. § 16(e).  But the caselaw makes clear that the Court should not expand this narrow review into more broad-ranging inquiries.

In *Bechtel*, the Ninth Circuit stated that "[w]e cannot agree that a district court should engage in unrestricted evaluation of what relief would best serve the public."  648 F.2d at 666.  Rather, "[t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left in the first instance to the discretion of the Attorney General" because "[m]ore elaborate requirements might undermine the effectiveness of antitrust

enforcement by consent decree." *Id.* And the Ninth Circuit made clear that the Tunney Act process is *not* a trial of the merits: it is "proper" to "refuse[] to consider ... contentions going to the merits of the underlying claims and defenses." *Id.*

The States' proposal invites the Court to engage in a process that would dramatically exceed these narrow boundaries. The States demand full access to the underlying record and expansive rights to take broad-ranging fact and expert discovery. This is unprecedented under the Tunney Act. The States have other avenues available to them should they wish to relitigate this case on the merits. They cannot properly use the Tunney Act as a tool for investigating whether they should have brought a claim to block the transaction in 2024 (or whether they should do so in 2026), nor is it a mechanism for the States to second-guess the United States's litigation decisions. The Court should reject this proposal.

**There Should Be No Discovery by Parties or Intervenors.** No court has ever permitted intervening parties in a Tunney Act proceeding to take discovery. While the Ninth Circuit has not directly confronted whether discovery is proper under these circumstances, courts in other circuits have explained that discovery by intervenors during the Tunney Act proceedings "runs the risk of turning the flexible proceedings of the Tunney Act into a full-scale trial," which is not what "Congress contemplated." *See United States v. Airline Tariff Pub. Co.*, 1993 WL 95486, at *2 (D.D.C. Mar. 8, 1993); *see also United States v. Int'l Bus. Machines Corp.*, 1995 WL 366383, at *5–6 (S.D.N.Y. June 19, 1995).

HPE is not aware of any instance where a court has permitted a party, nonparty, or intervenor to take discovery for use in, or for purposes of participating in, a Tunney Act proceeding. At most, intervenors have been allowed to submit additional evidence *to the court*. *E.g.*, *United States v. SBC Communications, Inc.*, 489 F.Supp. 2d 1, 9–10 (D. D. C. 2007).

Nor is there any need for the States to take discovery here. This is not a merits trial, and the States cannot use this process as a means to litigate the merits. *Bechtel*, 648 F.2d 666. The Court is charged with determining "whether the settlement is 'within *the reaches* of the public interest,'" *id.*, and if the Court requires documents or other materials to complete its review, HPE

of course will provide them.  If the States are in possession of evidence they think the Court

should consider, they can put that evidence forward in their written submission.

The States had every opportunity to investigate the facts related to this merger.  They did

not do so.  Between the announcement of this merger in January 2024 and the filing of their

comment letter, the States made no attempt to gather any evidence at all.  Indeed, they filed their

Tunney Act comment letter without even contacting HPE or asking for any information about the

transaction or the settlement.  There is no basis for them to come in at this late stage, convert the

Court's public interest determination into an adversarial proceeding, and engage in an open-

ended fishing expedition with the aim of litigating the merits of an already settled case.[3]

**There Should Be No Discovery Into the Settlement Process.**  Further, the States have

been clear in their filings and public statements that their primary interest is in discovery into the

settlement process so that they can present argument to the Court on whether the settlement

negotiation process itself was somehow improper.  But the Tunney Act review process is not

intended to determine whether "the government could have negotiated a more exacting decree."

*United States v. Fokker Servs. B.V.*, 818 F.3d 733, 743 (D.C. Cir. 2016) (internal quotations

omitted)*.*  And any review of the settlement process would raise serious constitutional concerns.

"Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how

aggressively to pursue legal actions against defendants ....'"  *United States v. Texas*, 599 U.S.

670, 678 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)).  Thus, "an

agency's decision not to prosecute or enforce, whether through civil or criminal process, is a

decision generally committed to an agency's *absolute discretion*."  *Heckler v. Chaney*, 470 U.S.

---

[3] Nor is there any basis for the States to conduct any discovery into the proposed remedies here—or argue that they are insufficient—because, among other reasons, the States have already conceded that they are competitively significant.  At the hearing on the intervention motion, the States argued that the license of Juniper's Mist AI Ops is so important that it would be impossible for Juniper to compete if the license is granted.  *See* Nov. 18, 2025 Tr. at 19:9-13 ("there may be a similar issue with respect to the divestiture of Instant On, but certainly the license of Juniper source code is the thing that really impairs our interest if we were to stand Juniper back up as an independent competitor").  The States cannot simultaneously argue that the license of the AI Ops source code is so important that it prevents Juniper from competing and also so competitively meaningless that it is insignificant as a remedy.

821, 831 (1985) (emphasis added); *see also United States v. Int'l Tel. & Tel. Corp.,* 1974 WL 822, at *4 (D. Conn. Jan. 14, 1974) ("The judiciary has neither the power nor the facilities to initiate and conduct investigations into the conduct of members of the executive branch of the government.").

Mindful of these concerns, courts have "'construed the public interest inquiry' under the Tunney Act 'narrowly' in 'part because of the constitutional questions that would be raised if courts were to subject the government's exercise of its prosecutorial discretion to non-deferential review.'"  *See Fokker*, 818 F.3d at 743 (quoting *Massachusetts Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 783 (D.C. Cir. 1997)).  Thus, unsurprisingly, no Tunney Act court has *ever* allowed what the States are proposing here—litigation over whether the settlement process was appropriate.  *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) ("[T]he district court is not empowered *to review the actions or behavior* of the Department of Justice; the court is only authorized to review the decree itself." (emphasis added)).  And in any event, discovery of this information would be barred by the deliberative process privilege and/or settlement communications privilege, and other potential privileges. *See, e.g., United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 543 (S.D.N.Y. 1996) (DOJ "Settlement Memorandum" drafted to analyze antitrust settlement "falls within the governmental deliberative process privilege").

**A Hearing Is Not Necessary or Required.**  While the Tunney Act provides that a court "may" hold a hearing, it makes clear that "[n]othing in [the language of the statute] shall be construed to require the court to conduct an evidentiary hearing …."  15 U.S.C. §16(e)(2).  Here, the Court has or will have everything it needs to make the public interest determination— including public comments on the settlement, as well as written submissions from the parties— and there is no need to hold a lengthy and expensive evidentiary hearing, as is being proposed by the States.

Only once in the history of the Tunney Act has a court held an evidentiary hearing as part of its Tunney Act review of a merger case, in *United States v. CVS Health Corporation.*  But the

circumstances of that case were dramatically different from those here.  In *CVS*, the DOJ
received 173 comments and objections to the settlement, including *dozens* of objections from
industry participants (i.e., customers and competitors of the merging parties and pharmaceutical
and medical industry associations).  Case No. 1:18-cv-02340-RJL (D.D.C. Feb. 13, 2019), Dkt.
56.  The evidentiary hearings in that case were held to allow those industry participants to
present evidence in their possession to the court that was relevant to its assessment of whether
the settlement was in the public interest.  In this case, of the 12 comments the DOJ received
during the public comment period, *not a single one* came from industry participants.  *See* Dkt.
311.  With no objection from the customers and competitors that the Clayton Act is supposed to
protect, and a narrowly focused review process, it is entirely unclear what purpose would be
served by holding a lengthy evidentiary hearing to review the proposed settlement here.

Nor have the States identified any valid reason to hold a hearing.  The Court's Tunney
Act review focuses on the settlement's impact on alleged harms to the market.  If the States have
a basis to argue that the settlement fails to address significant harm to competition
(notwithstanding the total lack of objection from any customer or competitor), they can present
that argument to the Court in a filing.  Any argument or evidence the States would purport to
present on the settlement process would be improper and a sideshow.  But even then, to the
extent the States claim to have relevant evidence regarding the process, they can put it forward in
a written submission.  To date, the States have not offered any evidence of impropriety here,
because there is no such evidence, and there was no impropriety.  The States' unfounded
speculation about what the evidence might possibly show if they got access to it is not a reason
to hold an evidentiary hearing.

At a minimum, in HPE's view, the Court should first review the written submissions
before determining whether a hearing is necessary to complete its Tunney Act review.

**C.    Additional Comments**

The States' intervention in these proceedings—months after the settlement was
announced and the merger was completed—has caused substantial uncertainty for HPE and its

employees, customers, and partners.  The impact on HPE is real, as its competitors—Cisco in particular—are capitalizing on this uncertainty.  The confusion and concern among employees also cannot be overstated.  The States' proposal to now draw out the settlement review process for an extended eight-month period, with expansive fact and expert discovery, and an evidentiary hearing to take place over a year after the settlement was announced is unreasonable, unfair and completely out of step with the purpose and scope of the Tunney Act review process.

This is particularly true given that the States showed no interest in this merger or any concern for the impact it might have on competition or the citizens of their states *for over a year and a half*.  In the intervening months, nothing has changed regarding the potential competitive impact of a transaction that received approval from the European Commission and thirteen other jurisdictions beyond the fact that the parties reached a settlement that—to the extent any relief at all was even necessary—provides meaningful relief.  Yet the States have now taken an interest; not because the alleged competitive harm from the transaction has been shown to be meaningful (to the contrary) or that Enterprise WLAN customers and competitors from the States have publicly commented on the impact of the merger (there have been none from these States or any others), but because a disgruntled former DOJ official made public statements complaining about his former superiors for agreeing to the settlement over his objection.  They now seek an expanded and lengthy Tunney Act review process that does not resemble anything a court has ever permitted before.  And their primary reason for proposing this process, it seems, is to pursue discovery into the decision-making process of the federal government.  The States should not be allowed to commandeer this process—and inflict substantial burdens on HPE, its employees, customers, and partners—in support of their own interests.

## III.     STATEMENT OF INTERVENOR STATES

### A.     States' Position

The States' proposal is for the Court to set an evidentiary hearing for three to five days in July, subject to the Court's availability.  There should be a period of discovery leading up to the hearing, and certain pre-hearing exchanges between the parties, as described below.  This

schedule anticipates that the parties will engage in substantial briefing over the scope of appropriate discovery, including (i) the extent to which the public interest standard in the Tunney Act permits discovery into the process that led to the Settlement, and (ii) the extent to which the United States can shield discovery pursuant to the deliberative process privilege and the attorney work product doctrine. These issues are likely to be briefed in late January and February, and would be ready to be heard by the end of February. The States' proposed schedule therefore builds in time for this briefing and recognizes that substantial discovery may not take place until after those issues are resolved.

The schedule proposed by the States is contingent upon those issues being resolved in time for the United States and HPE to substantially complete document production by March 31, 2026.

| EVENT | DATE |
|---|---|
| Discovery Begins | December 17, 2025 |
| United States and HPE to produce Pretrial Record[4] to the States | January 9, 2026 |
| Parties to substantially complete document production | March 31, 2026 |
| Close of Fact Discovery | May 8, 2026 |
| United States and HPE to serve expert reports | May 15, 2026 |
| States to serve expert reports | June 5, 2026 |
| Exchange witness lists for Evidentiary Hearing | June 17, 2026 |
| United States and HPE to serve reply expert reports | June 19, 2026 |

---

[4] "Pretrial Record" means documents identified on any party's trial exhibit list, expert reports exchanged between the parties and documents cited in those materials, transcripts of depositions and exhibits thereto, the parties' interrogatory responses and responses to requests for admission, unredacted copies of the parties' pretrial briefs and exhibits thereto, and unredacted copies of the parties' pretrial proposed findings of fact and conclusions of law.

| | |
|---|---|
| Exchange exhibit lists (including redacted versions of such exhibits, as set forth in the Protective Order) and opening deposition designations | June 26, 2026 |
| Each Party informs each non-party of all documents produced by that non-party that are on the Party's exhibit list and all depositions of that non-party that have been designated by that Party | June 29, 2026 |
| Close of Expert Discovery | July 1, 2026 |
| Parties exchange of objections to exhibit lists (including redacted versions of any exhibits identified by another Party that contain information the Party previously designated as Confidential or Highly Confidential Information and objections to redactions that were initially exchanged with the exhibit lists, as set forth in the Protective Order), objections to deposition designations, and/or counters to deposition designations | July 2, 2026 |
| Any Party or non-party Protected Person that seeks to prevent its Confidential Information or Highly Confidential Information contained in an exhibit or designated deposition testimony from being disclosed on the public record at the Evidentiary Hearing must file a motion with the Court seeking to seal such information | July 8, 2026 |
| Exchange objections to deposition counter-designations | July 8, 2026 |
| Joint Party Submission to Court regarding disputes about exhibits, confidentiality issues, and deposition designations | July 13, 2026 |
| Pre-Hearing Briefs | July 13, 2026 |
| Final Pre-Hearing Conference | July 20, 2026 |
| Parties submit final exhibits to Court (in a format to be directed by the Court) | July 20, 2026 |

| Evidentiary Hearing Begins | July 27, 2026 |
| Proposed Findings of Fact and Conclusions of Law | 7 days after hearing concludes |

**B.     States' Response**

**1.     The Severity and Unprecedented Nature of This Case Warrants Full Use of the Tools Available Under the Tunney Act.**

The positions of the United States and HPE are deeply out of touch with the severe and unprecedented nature of this case, and inconsistent with the Court's ruling on the States' Motion for Intervention.  The allegations in this case are the first of their kind in the history of the Tunney Act, including reports of literal backroom dealmaking; fierce objections to the Settlement from the head of the Antitrust Division and her top deputies; those top deputies being fired over their opposition to the Settlement; and one of those fired deputies blowing the whistle on the Settlement and calling it a perversion of justice and violation of the rule of law.  This is not a routine case, and it should not be treated like one.

This case is also different from some of the more complex Tunney Act cases that generated concern in the past.  Take for example the CVS/Aetna case, in which an evidentiary hearing took place.  That case drew significant attention within the healthcare industry because there were questions about the wisdom of the settlement, and the court there recognized that it needed to hear more in light of the United States' "perfunctory response to the public comments," and to avoid "an uninformed public interest determination."  *United States v. CVS Health Corp.*, 407 F. Supp. 3d 45, 50-51 (D.D.C. 2019).  But even that case, controversial as it may have been, did not involve allegations of an improper process—there was no suggestion that the United States' decision to settle was the product of anything other than consideration of the merits.  *See generally, id.*  The point is, if that case merited an evidentiary hearing, then this case certainly does, as well as discovery.

The Court has properly recognized that it has a wide range of authority and that this is not a routine case.  Contrary to the United States' and HPE's arguments, the Court correctly and

expressly rejected the notion that it must employ "minimally burdensome processes" here.  *See*

Order Granting Motion for Intervention (Dkt. No. 332) at 11.  Rather, the "Court must evaluate

the proposed settlement using whatever procedures are necessary, whether or not they are time-

intensive or burdensome. . . .  To the extent the text of the Act suggests anything, it suggests that

the Congress that passed the Tunney Act was far more interested in ensuring a full adjudication

of the merits of any proposed consent decree than in streamlining the required approval

proceedings and minimizing burdens on the parties."  *Id.*

The Court has also rightly observed that HPE's position "implicitly suggests that the

Court can properly consider as part of its analysis whether the process that culminated in the

parties' settlement bears the hallmarks of regularity and principled decision-making that might

justify" a presumption that the United States has acted in the public interest here.  *Id.* at 9.

Accordingly, the Court has recognized that some level of discovery will be required in

this case, as it informed the parties that it will handle any discovery disputes directly, rather than

by referring such matters to the assigned Magistrate Judge.  *Id.* at 12.

The United States and HPE ignore the Court's ruling entirely, wrongly persist in urging

the Court to treat this like a routine case, and seek to relegate the States to de facto amici curiae

status by limiting the States to merely filing a brief, without access to the existing Pretrial Record

or the ability to conduct discovery.  This contravenes the Court's ruling, which held that "the

states are entitled to participate as parties in the Court's Tunney Act review proceedings"

because such participation "will assist the Court in evaluating whether the proposed Final

Judgment serves the public interest."  *Id.* at 11-12.

### 2. An Evidentiary Hearing Is Required for an Informed Public Interest Determination.

An evidentiary hearing is necessary here, during which the States can assist the Court

with its public interest review by questioning and cross-examining live witnesses.  There is a

dispute here over whether the Settlement addresses the harms alleged by the United States, and

the Court would benefit from hearing testimony on that, which may include expert economists

and industry or technical experts.[5]  There are also serious allegations here of undue influence by

lobbyists who corrupted the process, and the Court should hear from witnesses who have

knowledge about that process.  Credibility will likely be an issue, so merely submitting

declarations will be insufficient—the Court will have to hear live testimony, and make factual

findings, including on whether the Settlement "bears the hallmarks of regularity and principled

decision-making." *Id.* at 9.

### 3.  Access to the Pretrial Record and Certain Discovery Is Required to Develop a Full Record.

To make the evidentiary hearing productive and help fully inform the Court in its public

interest review, the States will need access to the Pretrial Record, and the ability to conduct

discovery beforehand.

***First, as to the Pretrial Record***, the materials are necessary to evaluate whether the

Settlement actually remedies the harms alleged by the United States.  These are substantive

documents that can be used to analyze the merger's potential anticompetitive effects on

competition, and whether and to what extent the Settlement addresses those effects.  Where, as in

this case, the parties were less than two weeks away from trial, there is no reason to ignore the

substantial record that was developed to evaluate the Settlement's impact on competition, as the

Court is required to do under the Tunney Act.[6]  *See United States v. Am. Tel. & Tel. Co.*, 552 F.

Supp. 131, 161 (D.D.C. 1982) ("It is not improper, however, for the Court to consider whether

the state of proof at trial was such as to sustain this divestiture as being in the public interest.").

---

[5] HPE concedes that, in the event the Court determines to hold a hearing with live witness testimony, it would be appropriate to hear from expert economists.

[6] For example, the Court observed that there was no mention of Instant On, the HPE business line to be divested under the Settlement, anywhere in the materials that had been submitted to the Court.  *See* Nov. 18, 2025 Hearing Tr. at 48:17-49:4 ("[T]here's some questions about the relationship between the relief that was offered as -- in settlement and agreed to in settlement and the underlying allegations of the complaint . . . .  I was knee deep in the weeds of the parties' briefing on this issue; and I don't recall reading about Instant On at any point as I was going through the detailed discussions of the evidence that had been generated, the expert reports, the various entities that had been surveyed about their use of the various enterprise networking WLAN technology.").

Additionally, the United States has sought to justify the Settlement in part on the grounds that the Settlement "is a reasonable compromise between the parties that addresses competitive concerns, given the risk inherent in successfully litigating the matter to a court judgment," Response of United States to Public Comments on the Proposed Final Judgment (Dkt. No. 311) at 14, and that the "Defendants advanced credible defenses that introduced meaningful uncertainty." Plaintiff's Opp. to Mot. For Intervention (Dkt. No. 299) at 24. That assertion can be tested only by access to the full Pretrial Record to see what those "credible defenses" were, and whether the risk that those alleged defenses presented justified the weakness of the remedies agreed to in the Settlement. By the same token, the Pretrial Record will also provide insight into the strengths of the case the United States was prepared to bring, and the United States' view of the loss of competition from the merger can be compared to the Settlement as part of determining whether the Settlement is in the public interest.

To ignore the Pretrial Record is to ignore the alleged grounds on which the United States says it based its determination and give the United States a free pass in a case in which the issue of whether its determination was based on the merits has been called to into serious question. It would also treat this case as a routine case and would fail to provide a "full adjudication of the merits" of the Settlement. Order Granting Motion for Intervention at 11. Put another way, although access to these types of materials may not be required in a routine Tunney Act review, it is certainly merited here.

The Pretrial Record is a set of readily available documents that can, and should, be produced to the States quickly—hence the January 9, 2026 deadline for doing so in the States' proposal. And yet, the United States and HPE have refused to make *any* of those documents available after the States made a request shortly after the November 18, 2025 hearing. The States are not asking for every document that was produced in discovery; rather, the States have

made a tailored request that would enable evaluation of the substance of the Settlement.[7]

***Second, as to discovery***, discovery into the process that led to the Settlement is also necessary. The States understand there will be limits to this discovery and that this is a matter that will require further briefing, as the Court noted during the November 18, 2025 hearing. *See* Nov. 18, 2025 Hearing Tr. at 63:8-18. But the question is not whether to examine the process at all, but to what extent, and that can only be done through discovery. The Court's Order Granting Motion for Intervention recognized that there is an issue in this case as to whether the Settlement "bears the hallmarks of regularity and principled decision-making." (Dkt. No. 332) at 9. And the Court has already informed the parties that it will resolve any discovery disputes, which of course implies that there will be discovery. *Id.* at 12.

That discovery should include communications and documents exchanged between HPE (including its lobbyists) and the United States Department of Justice ("DOJ"), and depositions to discover the substance of oral communications between the two sides. Discovery should also include the "alternative remedies actually considered" by the DOJ.[8] *See* 15 U.S.C. § 16(e)(1)(A). There should also be some discovery into the DOJ's decision-making process that would show whether the Settlement was the product of a consideration on the merits, or of the kind of backroom deal-making that the Tunney Act was meant to stop.[9] And although it is difficult to tell without access to the Pretrial Record, there may be a need for limited supplemental discovery to understand the potential effects of the Settlement's proposed remedies.

---

[7] The United States' refusal to provide the Pretrial Record is curious in light of the fact the government may make information and evidence from the record available to potential private plaintiffs as a condition of consent decrees, to safeguard the private plaintiffs' interests. *See Am. Tel. & Tel.*, 552 F. Supp. at 153 n.93.

[8] In the AT&T case, the court considered in depth the alternative remedies considered by the DOJ, which in that case the DOJ appears to have disclosed in its competitive impact statement. *See Am. Tel. & Tel.*, 552 F. Supp. at 166-168 & nn. 145-46.

[9] Congress recognized that, although "all but a few of the communications between Antitrust defendants and the government are perfectly proper," it is "[t]hose few" that "cast doubt on the entire enforcement process." S. Rep. No. 93-298 at 7 (1973). Discovery is proper here to determine whether improper lobbying contacts infected the decision to settle.

Issues about the scope of permissible discovery are best left to future briefing, which the States anticipate will take place as soon as January and February, after the States have issued their discovery requests and HPE and the United States have lodged their objections.  But discovery into the process behind this Settlement is entirely proper, contrary to the United States' and HPE's positions.  As the Court has noted, "Congress passed the Tunney Act in response to influence peddling," such as the ITT affair that immediately precipitated the Tunney Act, among other examples.  Order Granting Motion for Intervention (Dkt. No. 332) at 9.  Congress was deeply concerned with the economic and political influence wielded by antitrust violators and sought to ensure that such influence did not lead to consent decrees that fail to effectively remedy antitrust violations.  *E.g.*, *CVS*, 407 F. Supp. 3d at 54 (quoting *United States v. Airline Tariff Publ'g Co.*, 836 F. Supp. 9, 11 (D.D.C. 1993)).

Senator Tunney explicitly contemplated that courts could examine the settlement process in appropriate cases: "In reaching its decision the court may, in its discretion, review **both procedural and substantive factors** which the bill enumerates. . . .  The criteria are only guideposts, not designed to put strictures upon the court's freedom, but rather to encourage even greater **illumination of the facts that governed the deliberations** that preceded the fashioning of the consent decree."  119 Cong. Rec. 24598-99 (1973) (emphasis added).  In summing up his legislation, Senator Tunney remarked: "Sunlight is the best of disinfectants.  It is more sunlight that we are seeking to shed on the methods and manner by which we settle complex and costly antitrust suits through the consent decree process."  *Id.* at 24599.

HPE's argument that there is no mechanism for discovery in a Tunney Act proceeding is wrong.  The Act contemplates—in the same paragraph as intervention—that a court may authorize "examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate."  15 U.S.C. § 16(f)(3).  The Court therefore has authority to order discovery that includes production of documents and depositions of witnesses.  The procedures for doing so can be governed by the

Federal Rules of Civil Procedure, or the Court may order departure from those Rules to fit this case.

The States have set forth a reasonable schedule that builds in time for the parties to brief, and the Court to consider, highly important issues regarding the scope of permissible discovery and review in this case, while driving the matter efficiently forward. The schedule culminates in a hearing that will provide the Court with all the information it needs to make a fully informed public interest determination.

### C.    Additional Comments

In the interim between the November 18, 2025 hearing and this joint submission, the States have tried to move this matter forward by requesting a subset of documents within the Pretrial Record that do not implicate third party confidential information—such as deposition transcripts of HPE and Juniper's own employees, trial exhibits that do not contain third party confidential information, and the like. The United States and HPE flatly refused that request on grounds that the States are not entitled to any of those documents.

The States also promptly tried to start negotiating modifications to the operative protective order in this case so that production of the Pretrial Record that may implicate third party confidentiality, and subsequent discovery, could proceed without delay. The United States eventually engaged in that discussion, but as of the time of this submission, HPE has not. Rather than cooperate with the States' requests and expedite the next stage of these proceedings, HPE has chosen to stall while simultaneously complaining about prejudice from a prolonged process.

The parties' proposals for the next stage of this case are worlds apart, but the States are hopeful that, once the Court resolves the present dispute, the parties will be able to cooperate and find more common ground than they have to this point.

Dated: December 9, 2025

/s/ Henry C. Su
Henry C. Su
Jeremy M. Goldstein
Michael G. Lepage
U.S. Department of Justice
Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
(415) 934-5300
henry.su@usdoj.gov
jeremy.goldstein@usdoj.gov
michael.lepage@usdoj.gov

*Attorneys for Plaintiff United States*

Dated: December 9, 2025

/s/ Samuel G. Liversidge
Julie Elmer
Jennifer Mellott
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

Samuel G. Liversidge (CA No. 180578)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

*Attorneys for Defendant Hewlett Packard
Enterprise Co.*

Dated: December 9, 2025

PHILIP J. WEISER
Attorney General

*/s/ Arthur Biller*
ARTHUR BILLER *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
JONATHAN B. SALLET *(Admitted Pro Hac Vice)*
Special Assistant Attorney General
ROBIN ALEXANDER (*Admitted Pro Hac Vice*)
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
　　　　Bryn.Williams@coag.gov
　　　　Jon.Sallet@coag.gov
　　　　Robin.Alexander@coag.gov

*Attorneys for the State of Colorado*

ROB BONTA
Attorney General of California

*/s/ Brian D. Wang*
PAULA L. BLIZZARD, Senior Assistant Attorney
General (SBN 207920)
MICHAEL W. JORGENSON, Supervising Deputy
Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN 284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400
Brian.Wang@doj.ca.gov

*Attorneys for the State of California*

WILLIAM TONG
ATTORNEY GENERAL

1

*/s/ Nicole Demers*
Nicole Demers (*pro hac vice application*

2

*forthcoming*)
Deputy Associate Attorney General

3

Antitrust Section
Connecticut Office of the Attorney General

4

165 Capitol Ave.
Hartford, CT 06106

5

Tel.: (860) 808-5030

6

nicole.demers@ct.gov

7

*Attorneys for the State of Connecticut*

8

9

BRIAN SCHWALB
Attorney General of the District of Columbia

10

11

*/s/ Coty Montag*
Coty Montag (SBN 255703)

12

Deputy Attorney General, Public Advocacy
Division

13

Office of the Attorney General for the District of
Columbia

14

400 6th Street NW

15

Washington, DC 20001
Telephone: (202) 417-5402

16

Coty.Montag@dc.gov

17

*Attorneys for the District of Columbia*

18

19

ANNE E. LOPEZ
Attorney General

20

21

*/s/ Rodney I. Kimura*
RODNEY I. KIMURA *(Admitted Pro Hac Vice)*

22

Deputy Attorney General
Department of the Attorney General

23

425 Queen Street
Honolulu, Hawaii. 96813

24

Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

25

26

*Attorneys for State of Hawaii*

27

28

KWAME RAOUL
Attorney General of Illinois

/s/ Paul J. Harper
*(Admitted Pro Hac Vice)*

ELIZABETH L. MAXEINER
*(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*


COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

/s/ Anthony W. Mariano
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for*
*Commonwealth of Massachusetts*


KEITH ELLISON
Attorney General

/s/ Jon M. Woodruff
*(Admitted Pro Hac Vice)*

ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General

Antitrust Division

JON M. WOODRUFF
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*


LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*
*(Admitted Pro Hac Vice)*

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY McFARLANE
*(Admitted Pro Hac Vice)*
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
*(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust Bureau

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*


JEFF JACKSON
Attorney General of North Carolina

1

2

_/s/ Kunal J. Choksi_
_(Admitted Pro Hac Vice)_

3

4

5

6

7

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

8

_Attorneys for State of North Carolina_

9

10

11

Dan Rayfield
Attorney General of Oregon

12

_/s/ Rachel K. Sowray_

13

14

15

16

17

Rachel K. Sowray _(Admitted Pro Hac Vice)_
Senior Assistant Attorney General
Timothy D. Smith _(Admitted Pro Hac Vice)_
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR 97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

18

_Attorneys for State of Oregon_

19

20

NICHOLAS W. BROWN
Attorney General of Washington

21

22

_/s/ Amy N. L. Hanson_
_(Admitted Pro Hac Vice)_

23

24

25

26

JONATHAN A. MARK _(Admitted Pro Hac Vice)_
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000

27

28

Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*


JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/Caitlin M. Madden*
Caitlin M. Madden *(Admitted Pro Hac Vice)*

Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTORNEY ATTESTATION**

I, Jeremy M. Goldstein, am the ECF user whose identification and password are being used to file the JOINT CASE MANAGEMENT STATEMENT.  In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/  Jeremy M. Goldstein*
Jeremy M. Goldstein