UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>HEWLETT PACKARD ENTERPRISE CO., et al.,<br><br>    Defendants. | Case No. 25-cv-00951-PCP<br><br>**ORDER RE: TUNNEY ACT REVIEW PROCESS**<br><br>Re: Dkt. No. 342 |

This lawsuit began as a challenge by the United States to the proposed merger of defendants Hewlett Packard Enterprise Co. (HPE) and Juniper Networks, Inc. In its January 30, 2025, complaint, the United States alleged that the proposed merger would substantially lessen competition within the market for enterprise-grade WLAN solutions in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. The Court set the matter for trial to begin July 9, 2025, and the parties thereafter engaged in substantial discovery and trial preparation. But on June 27, 2025, just three days before the pretrial conference, the parties announced that they had settled their dispute. Under the terms of the settlement and proposed consent judgment, the United States would withdraw its challenge to the proposed merger, but HPE would agree to divest its "Instant On" business and to license Juniper's AIOps Mist source code to a competitor.

Pursuant to the Antitrust Procedures and Penalties Act, which is also known as the Tunney Act, 15 U.S.C. § 16(b)–(h), the parties' proposed consent judgment cannot be approved and entered unless this Court determines that "the entry of such judgment is in the public interest." 15 U.S.C. § 16(e)(1). In accordance with the Tunney Act, the United States provided public notice of the proposed consent judgment, solicited public comment thereon, and filed with the Court any public comments that were submitted and the Unites States's responses thereto. Before that filing,

the attorneys general for the states of Colorado, California, Connecticut, Hawaiʻi, Illinois, Massachusetts, Minnesota, North Carolina, New York, Oregon, Washington, Wisconsin, and the District of Columbia moved to intervene, expressing concern that the proposed consent judgment was the product of improper lobbying or influence peddling. The Court denied the motion to intervene as of right, but granted the states' motion for permissive intervention, concluding that their participation would "assist the Court in evaluating whether the proposed Final Judgment serves the public interest." Dkt. No. 332, at 11. The Court permitted the states to participate in the Tunney Act review process but explained that if the states wished to pursue an independent challenge to the merger, they would have to file a separate motion to intervene for that additional purpose. *Id.* at 12.

On December 16, 2025, the Court held a further status conference to discuss the process the Court would employ to determine whether entry of the proposed consent judgment is in the public interest. This Order memorializes the Court's rulings at that conference, addresses the proper scope of discovery in connection with the Tunney Act review process, and resolves the parties' dispute regarding the addition of the states to the existing protective order.

I.  **Schedule for Briefing and Hearing Motion for Entry of Final Judgment**

As discussed at the December 16, 2025, conference, the Court will hear the United States's motion for entry of final judgment at 10:00 a.m. on **Monday, March 23, 2026**. The United States must file its motion by no later than **January 5, 2026**. Any statement in support of final approval by HPE must be filed within 28 days of the filing of the Unites States's motion. The states' response to the United States's motion must be filed on or before **March 2, 2026**, and any replies in support of the United States's motion must be filed on or before **March 9, 2026**.

In their briefing to the Court, the parties should address whether an evidentiary hearing is necessary for the Court to determine whether entry of the proposed judgment is in the public interest. *See* 15 U.S.C. § 16(f)(1) (providing that the Court may "take testimony of Government officials or experts or such other expert witnesses, upon motion of any party or participant or upon its own motion, as the court may deem appropriate"). After receiving the states' March 2, 2026, response, the Court will decide whether to hold such a hearing. If the Court concludes that an

2

evidentiary hearing is necessary, the hearing will take place during the week of March 23–27, 2026. The parties should ensure that any witnesses they might wish to call at such a hearing are available to testify during that time.

## II.     The Scope of Discovery

At the December 16, 2025, conference, the United States and HPE argued that the states should not be allowed to conduct any discovery in connection with the Tunney Act review process, while the states contended that they should be permitted to undertake discovery into both the merits of the United States's underlying challenge to the HPE-Juniper merger and the process that led to the settlement.

Because the states have been allowed to intervene as parties, they have the right to pursue discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, … [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). As Rule 26 makes clear, however, determining whether a particular discovery request is "proportional to the needs of the case" turns upon, among other things, "the importance of the issues at stake in the action," "the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues." *Id.* Any discovery by the states must therefore be targeted to the issues that are pending before the Court.

Here, the sole issue before the Court at this time is whether entry of the proposed final judgment is in the public interest as that term is used in the Tunney Act. Although the Act does not provide a specific definition of the public interest, it specifies that the Court "shall" consider:

> (A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and
>
> (B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1). These provisions suggest that the Court's Tunney Act review focuses

primarily on the proposed judgment's competitive effect, including whether the proposed judgment adequately addresses the concerns about lessening of competition that gave rise to the United States's lawsuit and whether it will have other effects on competition resulting in harm or benefit to specific individuals or entities or to the public generally. *See, e.g.*, *United States v. Bechtel Corp.*, 648 F.2d 660, 665–66 (9th Cir. 1981) (concluding that the district court's Tunney Act inquiry was "appropriate in scope" where the district's court "guideline[] for consideration" was "whether the relief provided for in the proposed judgment was adequate to remedy the antitrust violations alleged in the complaint").

The Ninth Circuit has emphasized that "[t]he statute suggests that a court may, and perhaps should, look beyond the strict relationship between complaint and remedy in evaluating the public interest." *Id.* at 666. And as the states note, the statute itself makes clear that at least some aspects of the process that led to the proposed judgment are relevant to the public interest determination. For example, it requires the Court to consider any "alternative remedies" that were "actually considered" during settlement negotiations. 15 U.S.C. § 16(e)(1)(A). And it requires that defendants file with the district court "a description of any and all written or oral communications by or on behalf of such defendant … with any officer or employee of the United States concerning or relevant to such proposal." 15 U.S.C. § 16(g).[1]

At the same time, the Ninth Circuit has held that courts conducting Tunney Act reviews should refrain from "engag[ing] in an unrestricted evaluation of what relief would best serve the public." *Bechtel*, 648 F.2d at 666. To the extent the states suggest that the Tunney Act's public interest standard permits this Court to deny final approval *solely* on the basis of concerns about the process that led to the parties' settlement without any consideration of the proposed judgment's adequacy or competitive effect, this would appear to involve the kind of "unrestricted evaluation" of the public interest that the Ninth Circuit has expressly disfavored.[2] While there is no doubt that

---

[1] The statute exempts from this requirement "any such communications made by counsel of record alone with the Attorney General or the employees of the Department of Justice alone." 15 U.S.C. § 16(g).

[2] To be certain, the Tunney Act's passage was motivated by concerns about the effect of corruption and improper lobbying on antitrust enforcement. *See United States v. BNS Inc.*, 858

4

preventing corruption or improper influence-peddling from influencing the government's decision-making undoubtedly serves the public interest by promoting good government, fairness, and equity, those concerns appear to fall largely outside the scope of the Tunney Act.[3]

In short, the Tunney Act evinces Congress's recognition that the decision-making process that resulted in a proposed final judgment may be relevant in determining whether the judgment serves the public interest, but primarily to the extent that process bears upon the adequacy of the proposed judgment. Applying this principle, it is apparent that at least some of the discovery the states have requested is appropriate and proportional to the needs of the case. The states have requested, for example, that they be provided with the pretrial record. *See* Dkt. 337, at 20 & n.4. That record is undoubtedly relevant because it will help the states evaluate the risks to competition posed by the proposed merger, the degree to which the proposed judgment addresses those risks, and the strength of the United States's underlying case.[4] Nor would such discovery be unduly

---

F.2d 456, 459 (9th Cir. 1988) (noting that the Tunney Act "was enacted in 1974 to preserve the integrity of and public confidence in procedures relating to settlements via consent decree procedures") (citation omitted). But Congress's response to those concerns was not to mandate a probing judicial inquiry into the Department of Justice's internal decision-making process, which could give rise to substantial privilege and separation-of-powers concerns. Instead, Congress required judicial approval of any proposed judgment and focused the judicial inquiry primarily on the proposed judgment's effect on the public interest in fair competition.

[3] That said, to the extent that the United States or HPE ask this Court to defer to the Executive Branch's evaluation of the public interest based on a presumption that its decision was reached through a considered and fair evaluation of the relevant factors, evidence that the conditions justifying such a presumption were not present with respect to the proposed consent judgment here may be relevant.

[4] HPE suggests that *Bechtel* prohibits the Court from considering the merits of the underlying dispute in connection with its Tunney Act review. *See* Dkt. 337, at 15 (citing *Bechtel*, 648 F.2d at 666). But *Bechtel* concluded only that the district court had properly declined to consider the underlying merits where the party opposing approval was itself a party to the consent decree. *Bechtel*, 648 F.2d at 666. As the court explained, "Bechtel was not required to give its consent to the judgment it now protests. It had a right to litigate the applicability of the antitrust laws to its alleged participation in the Arab boycott. It voluntarily surrendered that right." *Id.* at 663.

HPE also contends that the Tunney Act's public interest inquiry must be construed narrowly to avoid "'subject[ing] the government's exercise of its prosecutorial discretion to non-deferential review.'" Dkt. 337, at 17 (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 743 (D.C. Cir. 2016)). But the Court is not asked in this proceeding to review the United States's decision whether to pursue its challenge to the HPE-Juniper merger. Instead, the Court must determine whether to exercise its own judicial power by entering a consent judgment enforceable through contempt of court. While other circuits have suggested that comparable principles should inform the decision to approve a government-proposed consent decree, the parties should address in their briefing any Supreme Court or Ninth Circuit precedent that speaks to that issue.

5

burdensome given that the parties have already compiled the record and filed copies with the Court.

Likewise, the Tunney Act expressly requires consideration of any "alternative remedies" that were "actually considered" during negotiations. The states may accordingly pursue discovery regarding such remedies.[5]

To the extent the states seek discovery regarding communications between the United States and defendants, those communications are also reasonably likely to bear upon the adequacy of the proposed judgment. *Cf., e.g.*, *S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 295 (2d Cir. 2014) (noting that courts considering proposed S.E.C. consent decrees must consider "whether the consent decree is tainted by improper collusion or corruption of some kind"). They may, for example, reveal the parties' contemporaneous positions regarding the judgment's effect on competition within the relevant market and otherwise. If the communications reveal that the parties did not believe the judgment would address the underlying reduction in competition or that the judgment was entered for reasons entirely unrelated to the merits, that would provide some evidence as to the judgment's inadequacy.[6]

Beyond addressing these specific categories, the Court will not at this time attempt to define the universe of discoverable information that the states may request in connection with the Court's Tunney Act review proceedings. Any such discovery must, however, be focused on the issues pending before the Court as defined above. Under that standard, discovery requests that are targeted solely at the Department of Justice's internal decision-making process and that lack any connection to the adequacy of the proposed final judgment would likely be improper. To the

---

[5] It may well be that the deliberative process, attorney work-product, or attorney-client privilege applies to some of this material. The Court's determination that such materials are generally relevant and discoverable is accordingly without prejudice to the parties' assertion of such privileges.

[6] Nor would such communications appear to be privileged. Although Federal Rule of Evidence 408 generally make statements during compromise negotiations inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," it does not provide a privilege against disclosure. *See* Fed. R. Evid. 408(a)(2). To the contrary, it expressly provides that such evidence is admissible for other purposes. *See* Fed. R. Evid. 408(b); *see also* 15 U.S.C. § 16(g) (requiring description of all such communications).

1    extent the parties cannot resolve any disputes that arise regarding the propriety of the states'

2    discovery requests, the Court will resolve those disputes pursuant to its Standing Order re:

3    Discovery Disputes Not Referred to the Magistrate Judge. Given the compressed time-frame

4    available to pursue discovery in advance of the March 23, 2026, hearing, the parties must provide

5    written responses to any discovery requests no later 14 days after receipt of the requests and must

6    be available to meet and confer regarding any disputes within 7 days thereafter.

### III.     Amendment of the Protective Order

Finally, the parties have asked the Court to resolve their dispute regarding certain amendments to the protective order previously entered in this matter that are needed to include the states within its coverage. While they have reached agreement on most of the required amendments, they disagree as to whether the protective order should allow the states to use confidential or highly confidential information "outside the context of this Action (i) to the extent permitted or required by law, court order, or regulation; (ii) for law enforcement purposes; or (iii) for the purpose of securing compliance with a Final Judgment in this Action," as the states request, or whether it should alternatively be modified to provide that the states may use such information "solely for the purpose of participating in the Court's Tunney Act review proceedings." *See* Dkt. 346-1 ¶¶ 34, 39.

The Court is sympathetic to the states' argument that they enforce "a myriad of state and federal laws" and, if they "encounter evidence of criminality or civil violations, … have a duty to either pursue those violations or refer them to the appropriate authorities." Dkt. 346, at 4–5. As the United States and HPE note, however, the Court has at this time limited the states' party status to participation in the Tunney Act review proceedings. The amended protective order proposed by the United States and HPE, Dkt. 346-2, reflects the limited scope of the states' intervention. The Court will accordingly enter that amended protective order. As noted above, however, and contrary to HPE's contentions, issues relating to the merits of the United States's underlying challenge to the merger are relevant to the Court's Tunney Act analysis. For that reason, nothing in paragraph 34 of the amended protective order should be construed to prohibit the states from using information subject to the amended protective order in determining whether to pursue an

7

independent challenge to the merger. To the extent the states seek to rely upon such information in drafting such a complaint, for another law enforcement purpose, or to satisfy any other legal obligation, they may request a further amendment of the protective order from the Court.

**IT IS SO ORDERED.**

Dated: December 31, 2025

P. Casey Pitts
United States District Judge