UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO., et al.,<br><br>Defendants. | Case No. 25-cv-00951-PCP<br><br>**ORDER DENYING MOTION FOR HOLD SEPARATE ORDER**<br><br>Re: Dkt. Nos. 317, 339 |

On November 18, 2025, this Court granted the motion of twelve states and the District of Columbia to intervene in this action to participate in the Court's review of the existing parties' proposed consent judgment, pursuant to which the United States has agreed to permit Hewlett Packard Enterprise's (HPE) acquisition of Juniper Networks subject to certain divestment and licensing obligations. Dkts. 314, 332. Later that same day, the intervenor-states moved for a hold separate order that would require HPE and Juniper to cease any further integration efforts until the Court completes its review. Dkt. 317. HPE opposes the motion. Dkt. 338. The Court heard the parties on January 8, 2026, and denied the states' motion orally. This order provides the Court's reasoning.

## LEGAL STANDARD

"A hold separate order is a form of preliminary relief which permits the challenged transaction to go forward, but requires the acquiring company to preserve the acquired company (or certain of the acquired assets) as a separate and independent entity during the course of antitrust proceedings." *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1075 n.7 (D.C. Cir. 1981). To

obtain preliminary injunctive relief, a party must generally show that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For Tunney Act proceedings, however, the first requirement does not apply because the court's "ultimate authority under the [Tunney] Act is limited to approving or disapproving the consent decree." *United States v. BNS Inc.*, 858 F.2d 456, 464 (9th Cir. 1988). Instead, the court considers only whether "serious questions exist regarding the possibility of irreparable harm to competition in" the relevant market. *Id.* at 464–65. The relevant timeframe is the period prior to the Court's decision whether to approve the proposed consent judgment. *Id.* at 465. The ultimate purpose of any hold separate order is to preserve the court's jurisdiction, including in particular its "power to make its review effective." *Id.* at 461.

The states and HPE disagree as to whether the states' hold separate motion is a prohibitory injunction, "which aim[s] to preserve the status quo by preventing a party from taking action," or a mandatory injunction, which "alters the status quo by requiring a party to take action" and requires a higher burden of the movant. *See Youth 71Five Ministries v. Williams*, 160 F.4th 964, 978 (9th Cir. 2025). HPE argues that the states are seeking an "extreme" mandatory injunction because HPE and Juniper have already combined operations and a hold separate order would compel them to *unwind* their acquisition, rather than merely to pause it. Opposition at 1. The states clarify, however, that they "do not seek to unwind any of the integration steps already taken—only to pause those steps yet to occur." Reply at 3; Motion at 11. The Court will therefore apply the standard for a prohibitory hold separate order set forth in *BNS* rather than any heightened standard for procuring mandatory injunctive relief.

**DISCUSSION**

As noted above, issuance of a hold separate order is appropriate only if the parties seeking such relief have demonstrated a likelihood of irreparable injury to harm in the relevant market—here, the market for enterprise-grade WLAN solutions—in the absence of the requested order. The states' request for the issuance of such relief here suffers from two fundamental problems. First, the relief their motion seeks would extend well beyond the relevant market to encompass all of HPE and Juniper's operations. And second, because the states did not move for relief until several months after the Court had authorized HPE and Juniper to begin integrating their operations, the alleged irreparable injuries to competition they seek to prevent have almost certainly already occurred, and the states have not identified any specific, further harm that is likely to occur before this Court is able to issue any Tunney Act decision.

As an initial matter, the states' request is significantly overbroad. As HPE notes in its opposition, enterprise-grade WLAN solutions are one of several different products and services offered by HPE and Juniper. Schultz Declaration, Dkt. 338-2, ¶ 24; *see also id.* ¶ 2 (reporting that in 2025 HPE's Instant On business took in over $141 million in revenue, $36 million of which came from WLAN). HPE reports that "WLAN is a small part of Juniper's business (~7% by revenue)" and that much of the motivation for HPE's purchase of Juniper was to acquire its other business lines.

The states nonetheless ask this Court to prohibit *any* further integration of Juniper and HPE, including not only the companies' enterprise-grade WLAN solutions but also all other products and services they offer. As the Ninth Circuit made clear in *BNS*, however, any hold separate order must be narrowly tailored to prevent further irreparable injury to competition in the relevant market. Indeed, the *BNS* court modified the district court's hold separate order on precisely that ground, concluding that an order entirely prohibiting the defendant from completing its hostile tender offer was broader than necessary where the injury at issue could be prevented through appointment of a trustee to control the specific facility whose acquisition by the defendant created a risk of irreparable injury to competition. *BNS*, 858 F.2d at 466 ("[W]e have endeavored

to eliminate the harm threatened to the market at issue in the government's antitrust complaint as well as to BNS.").

Perhaps recognizing this problem, the states assert for the first time in their reply that a hold separate order is required to prevent irreparable injury to competition in the enterprise-grade WLAN solutions market resulting from HPE "shift[ing] consumers away from … 'legacy [HPE] Aruba' and 'legacy Juniper' products, depriving consumers of competitive choice, entrenching the combined entity for consumers, and making unwinding the transaction more complicated." Reply at 3–4, 12–13. To prevent this alleged injury, the states at the hearing asked the Court to prohibit HPE from releasing any new WLAN products to consumers.

The Court is disinclined to consider granting relief that the states did not request until the hearing given that HPE has never had an opportunity to provide evidence regarding the need for such relief. But in any event, the states have not carried their burden of showing that any harm associated with consumer entrenchment in the short period during which this Court will conduct its Tunney Act review would be irreparable. The states, for example, have not provided the Court with any evidence of the purported "switching costs" consumers might bear if the Court ultimately denies approval and the United States chooses to reinstitute its challenge to the merger, or why those costs would be imposed on consumers rather than HPE and Juniper.[1] In the absence of such evidence, the Court cannot premise a hold separate order on such a supposed injury to competition.

With respect to the other forms of irreparable injury the states have alleged, the states fail to establish that issuing a hold separate order at this time, long after HPE and Juniper began (and

---

[1] In support of their request for a hold separate order, the states rely entirely upon the allegations in the United States's original complaint in this matter. Because an unverified complaint does not constitute evidence, there is a serious question as to whether the states have satisfied their evidentiary burden as to any of the issues presented by their motion (as HPE notes). But the lack of evidence is particularly notable with respect to their revised request for relief, perhaps because the states did not seek such relief at the outset. As the Court noted as the hearing, if the states during discovery generate evidence of an irreparable injury that might occur prior to this Court's decision, they are free to seek interim relief on that basis in the future.

in fact have largely completed) integrating their operations, would prevent further irreparable injury to competition.

First, the states argue that a hold separate order is required to prevent the irreparable competitive harm resulting from the loss of "fierce head-to-head competition" between HPE and Juniper. Motion at 14 (quoting Complaint ¶¶ 1, 12). But an order that would only enjoin *further* integration of the two companies would not remedy this loss of competition. The relevant market has already lost head-to-head competition between HPE and Juniper. Complaint ¶ 1.

Second, the states argue that competition will be irreparably harmed if "competitively sensitive business information [is] shared between the merging parties." Motion at 15. As the states note, it was precisely this "legitimate threat of immediate, irreparable injury" that supported issuance of a hold separate order in *BNS*. 858 F.2d at 465. But again, HPE and Juniper have already integrated their operations and shared competitively sensitive information. *See* Opposition at 7–9. Issuing a broad hold separate order at this time would not reverse the defendants' sharing of competitively sensitive business information, and the states have not identified any specific future information sharing that would be prevented by their requested order.

As *BNS* emphasized, issuance of a hold separate order may sometimes be necessary to protect the judiciary's remedial authority and preserve the status quo pending the completion of Tunney Act review proceedings. The party seeking such an order, however, must narrowly tailor its request for relief to specific future conduct that is likely to cause irreparable injury to competition in the market at issue and provide an evidentiary basis for concluding that such an injury will occur absent a hold separate order. Here, the states have done neither. As a result, issuance of a hold separate order is not appropriate.

## CONCLUSION

For the reasons stated above, the states' motion for hold separate order is denied. HPE's administrative motion to seal certain portions of the Schultz declaration, Dkt. 339, is granted.

5

**IT IS SO ORDERED.**

Dated: January 26, 2026

_____
P. Casey Pitts
United States District Judge