Honorable P. Casey Pitts
United States District Judge
United States District Court for the Northern District of California
280 South 1st Street
Courtroom 8 – 4th Floor
San Jose, CA 95113

January 26, 2026

RE: *United States v. Hewlett Packard Enterprise Co., et al.*, No. 5:25-cv-00951-PCP
(N.D. Cal.): Joint Letter Regarding Discovery Disputes Between the U.S. and States

Dear Judge Pitts:

Plaintiff United States of America (the "United States" or "US") and the Intervenor States (the "States") respectfully submit this Joint Letter Regarding Discovery Disputes Between the United States and the States. The Parties have met and conferred, but have reached impasse regarding the following discovery issues: (1) the States' request for external communications and interrogatory responses regarding the US and Hewlett Packard Enterprise Co.'s ("HPE's") attempts to settle this lawsuit (the "Settlement"); (2) the States' request for documents related to alternative remedies; (3) the States' request for internal Department of Justice ("DOJ") documents about the Settlement and DOJ's decision to enter into the proposed Final Judgment; and (4) the States' subpoenas seeking depositions of three former DOJ officials.

Exhibit 1 hereto is Intervenors' First Set of Requests for Production to Plaintiff United States of America ("RFPs"). Exhibit 2 is the United States' Responses and Objections to Intervenors' RFPs. Exhibit 3 is Intervenors' First Set of Interrogatories to Plaintiff United States of America ("Interrogatories"). Exhibit 4 is the United States' Responses and Objections to Intervenors' Interrogatories. Exhibit 5 is a copy of a letter from Henry Su to Arthur Biller, copying other counsel of record, dated December 23, 2025. Exhibit 6 is a copy of a letter from Arthur Biller to Henry Su, copying other counsel of record, dated January 5, 2026.

## I.    Settlement Communications and Interrogatories

### A.    States' Position: The US Must Produce Settlement Documents.

The States have asked for the settlement communications between the US and HPE, documents exchanged during settlement discussions, and certain other information such as the people involved in negotiating the Settlement. *See* Ex. 1 RFPs 1, 2, 4 (in part); Ex. 2 Interrogatories 1, 3. The US has refused to produce such documents and information on grounds of a "settlement privilege" and objections based on relevance and the appropriate time period. Such objections are unfounded and contravene the Court's directives.

The Court has already ordered that these documents are relevant and should be produced. "To the extent the states seek discovery regarding communications between the United States and defendants, those communications are also reasonably likely to bear upon the adequacy of the proposed judgment." Order Re: Tunney Act Review Process, at 6, Dkt. 350 (Dec. 31, 2025) ("12/31 Order"). The Court also correctly ruled that such documents would not be privileged. *Id.* at 6 n.6.

The US assertion of a "settlement privilege" fails to distinguish between *admissibility* and *discoverability*. "[I]t is clear that when Congress approved Rule 408 to promote settlements, it chose to do so by limiting admissibility—and not by limiting discovery. Indeed, it specifically provided that settlement negotiations can be admitted for certain purposes. Accordingly, any federal settlement privilege is contrary to the enactment approved by the legislature." *Matsushita Elec. Indus. Co. v Mediatek, Inc.*, No. C-05-3148MMC(JCS), 2007 WL 963975, at *5 (N.D. Cal. Mar. 30, 2007) (citation omitted).

As the court found in *Matsushita*, "[t]he inescapable conclusion is that a privilege against disclosure cannot be found in Rule 408. To the contrary, because the Rule anticipates that settlement negotiations may be admissible, a privilege against their discovery would be inconsistent with Rule 26." *Id.* at *3.

The US misconstrues Rule 408 as embodying a "pro-settlement" policy that protects the documents sought by the States from disclosure. The Ninth Circuit has conversely cautioned parties not to make too much of the "policy behind" Rule 408, for "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161–62 (9th Cir. 2007); *see also Big Baboon Corp. v. Dell, Inc.*, No. CV 09-01198SVW (SSx), 2010 WL 3955831 at *2–3 (C.D. Cal. Oct. 8, 2010). Here, the States seek documents for the purpose of addressing whether the Settlement is in the public interest, not for the purpose of arguing liability.

The US also relies on *United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532 (S.D.N.Y. 1996), *aff'd sub nom. United States v. Bleznak*, 153 F.3d 16 (2d Cir. 1998). That case does not help them. Setting aside that Ninth Circuit courts have rejected a broad settlement privilege, the facts of *Alex. Brown & Sons* are inapplicable here. In *Alex. Brown & Sons*, also involving a Tunney Act proceeding, the intervenors were suing the defendants in a separate multidistrict action and intervened for the purpose of obtaining a "Settlement Memorandum" from the DOJ. The intervenors characterized the Settlement Memorandum as a "road map" for their private damage action against the same defendants and argued that they needed the Settlement Memorandum to litigate the private damage action more efficiently. *Id.* at 542. The court rejected this argument, holding that "the Tunney Act's purpose is to expose consent decrees to greater public scrutiny, not to facilitate discovery in private antitrust suits." *Id.* The court also expressed concern that the Settlement Memorandum contained confidential third party information that the intervenors were not privy to. *Id.* at 543. And although the court expressed a view that Rule 408 reflects a "pro-settlement policy", (a view not adopted by the Ninth Circuit)[1] the court did not hold that Rule 408 makes settlement communications non-discoverable, as opposed to inadmissible in some circumstances. *Alex. Brown* is thus wholly distinguishable from this case, where the State Intervenors are seeking disclosure of settlement communications because that information is "reasonably likely to bear upon the adequacy of the proposed judgment." 12/31 Order at 6.

The US also argues that the States will receive the Settlement communications from HPE. The fact that another party is producing documents does not absolve the US from its own

---

[1] "Courts in the Ninth Circuit have not recognized a federal settlement privilege." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No 1917, 2015 U.S. Dist. LEXIS 177832 at *172 (N.D. Cal. 2015) (citing *Phoenix Solutions Inc v Wells Fargo Bank, NA*, 254 FRD 583, 585 (N.D. Cal. 2008).

production obligation.  The US may have preserved communications that HPE did not, and the States are entitled to the complete set of documents.

**B.      U.S. Position: The Requested Documents Are Neither Relevant nor Proportional to the Needs of the Case.**

Although the States cry havoc in claiming the United States cites a nonexistent privilege, in reality, the States completely ignore the applicability of the Federal Rules of Civil Procedure to the case at bar.  Seeking all communications as between the United States and HPE is neither relevant nor proportional to the needs of the case.  Specifically, the States completely fail to support their insistence on subjecting the American taxpayer to the burden and expense of searching for records already in the possession, custody, and/or control of HPE.  Put differently, as the States seek only those communications between the United States *and* HPE, by definition every such communication will be in the possession, custody, and/or control of HPE.  Accordingly, requiring the United States to search for, identify, review, and produce all such communications is wholly duplicative of the effort HPE will already be undertaking in response to this discovery.

The position of the United States is all the more reasonable given that the Tunney Act expressly allocates to defendants the burden of submitting "a description of any and all written or oral communications" by defendants with "with any officer or employee of the United States concerning or relevant to" any proposal for a consent judgment. 15 U.S.C. § 16(g). *See* H.R. Rep. No. 93-1463, at 9 (1974) ("The sixth subsection of the bill, Section 2(g) is *the only provision made applicable to defendants* in public civil antitrust cases.") (emphasis added). The Tunney Act does not impose any such obligation on the United States. The States' requests seek to rewrite the carefully balanced obligations Congress set forth in the Tunney Act.

The States provide no compelling reason for this Court to order the United States to undertake these burdens, which would come at taxpayer expense. To have the United States produce the same communications and documents would be unnecessarily duplicative and cumulative, and hence not proportional to the needs of the case. *See, e.g., FTC v. Deere & Co.*, 2025 WL 1866817, at *2 (N.D. Ill. July 7, 2025) ("Discovery that is duplicative or cumulative [is] not proportional."). To the extent the States submit that the United States may have preserved more records than HPE, the States should be required to state the basis for their assertion that HPE failed to comply with its obligation to preserve records in anticipation of litigation.

Nor are these discovery requests relevant "to the sole issue before the Court at this time," which is "whether entry of the proposed final judgment is in the public interest as that term is used in the Tunney Act." Order Re: Tunney Act Review Process, ECF. No. 350 at 3 (Dec. 31, 2025) ("12/31 Order"). Even if communications and documents exchanged between the United States and the Defendants "reveal the parties' contemporaneous positions regarding the judgment's effect on competition within the relevant market and otherwise," *id.* at 6:10–12, that would not make them relevant. As the Supreme Court observed in *United States v. Armour & Co.*, a consent judgment "normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." 402 U.S. 673, 681 (1971). One party's view or reaction to a term proposed by the other party is merely an artifact of the negotiation process in which the parties "have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve." *Id.* at 681–82.

Furthermore, the discovery requests are not relevant because they seek not only communications and documents exchanged between the United States and the Defendants "concerning the Settlement," but also "any other potential resolution of a claim or potential claim by the United States concerning the merger of HPE and Juniper." Exh. 1, Req. Nos. 1 & 2. The accompanying instructions define the time period for information and documents sought by these requests as "January 9, 2024, to the present." *Id*., Instr. 8. The discovery requests would therefore cover any discussions between the United States and the Defendants to resolve the United States' concerns about the proposed merger *even before* an enforcement decision had been made by the Department to challenge the merger. At best, such discussions pertain to the United States' enforcement decision, not to its subsequent settlement of the case on the eve of trial.

Lastly, there is the issue of privilege. This Court offered the preliminary view that settlement communications generally would not appear to be privileged. 12/31 Order at 6 n.6. But courts have recognized the limited probity of such communications. For example, in *Cook v. Yellow Freight Sys., Inc.*, the district court held that "one consideration in precluding the discovery of documents generated in the course of settlement discussions lies in the fact that such discussions are frequently not the product of truth seeking." 132 F.R.D. 548, 554 (E.D. Cal. 1990). "Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are 'motivated by a desire for peace rather than from a concession of the merits of the claim.'" *Id.* (quoting *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982)). This is the very rationale adopted by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir. 2003) ("We agree with the reasoning of these lower courts. The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist[.]"). It also underlies the Supreme Court's analysis in *Armour*, discussed *supra*.

In summary, as the Supreme Court and lower courts have recognized, communications and documents exchanged in settlement negotiations are unreliable indicators of the adequacy of the final consent judgment that is reached, which is why the Tunney Act requires the United States to file a competitive impact statement, 15 U.S.C. § 16(b)(1–6), and provides for a period for public comment, *id.* § 16(b). Both mechanisms ensure that the Court has objective, reliable information about the settlement's competitive impact on which to make its public interest determination.

## II.    Alternative Remedies

### A.    States' Position: the US Must Produce Documents and Information About Alternative Remedies.

The States have asked the US to "State the alternative remedies actually considered by You and the anticipated effects thereof, and identify all documents related to such alternative remedies." Ex. 2 at Interrogatory 4.  The States have also requested the US to produce "All documents concerning alternative remedies actually considered by You and the anticipated effects thereof." Ex. 1 at RFP 3.  These requests mirror the Tunney Act, which "expressly requires" the Court to consider "alternative remedies actually considered" and the "anticipated effects" thereof.  15 U.S.C. § 16(e)(1)(A); 12/31 Order at 6.  Recognizing this requirement, the Court ordered that the "States may accordingly pursue discovery regarding such remedies."  12/31 Order at 6.

Seeking to avoid that directive, the US is now pushing an ill-conceived and self-serving definition of the term "alternative remedies" that would render the statutory language meaningless

4

in this, and every other, case. The US says the phrase "alternative remedies" only applies to the moment in time when the US is about to sign a settlement, such that the US need only disclose what other options were "on the table" at that precise moment. Here, they say, the only other option was to go to trial. But applying that definition, that would be true in every case—either sign the agreement that has been negotiated, or back out and go to trial, regardless of whether the US in fact considered other remedies before deciding to reach agreement on one reflected in the settlement.

That definition makes a mockery of the statute. It is also inconsistent with how the US has handled and disclosed alternative remedies in the past. In *United States v. American Telephone and Telegraph Co.*, for example, the US disclosed several alternative remedies that it considered throughout the course of the litigation, including one alternative that was discussed before the negotiations that gave rise to the operative settlement, and another that was discussed shortly before trial and was never even drafted into a written proposal. 552 F. Supp. 131, 166 & nn. 144–46 (D.D.C. 1982). As the court there noted, the alternative remedies disclosed by the US were ones that emerged over the course of the litigation, not just what was "on the table" at the time the operative settlement was signed.[2]

The US position here is also belied by *United States v. SBC Communications, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007). There, the US also tried to say that the only alternative remedy was trial, but the court ascertained that the US had in fact "considered certain detailed alternatives in crafting the particular terms of the Divestiture Assets." *Id.* at 23.

Here, the States inquired as to whether the US ever made a settlement demand or counteroffer to HPE, or if the US received any offers from HPE that differed from what was ultimately agreed to in the Settlement. The US takes the position that such offers and counteroffers are just "back and forth" that apparently have no meaning and that it is irrelevant whether the US at some point had requested a divestiture of assets that were different from, or in addition to, what ended up in the Settlement. That position contravenes the plain meaning of the words "alternative remedies actually considered." Those words clearly direct the US to disclose what else it considered, regardless of when such consideration occurred, as the statute does not impose a temporal restriction. It also contravenes the *AT&T* and *SBC* cases, where the courts in fact analyzed the alternatives that were part of the "back and forth" of negotiations. The whole point is to understand what else could have been done and why this remedy was chosen over those others. The US should not be permitted to reverse engineer a strained statutory construction that allows it to avoid discussion of the alternative remedies that it did in fact consider.

## B.    U.S. Position: The Only Alternative Remedy Actually Considered Was Trial, and the United States Has Already Produced the Pretrial Record.

Although the Court held that the States may pursue discovery regarding any "alternative remedies" that were "actually considered," 12/31/25 Order at 6:3–5, there are in fact no such remedies for the States to discover. As the Court recognizes, the terms any "alternative remedies" that were "actually considered" come directly from the Tunney Act, which requires the United States to provide "a description and evaluation" of any such remedies in its competitive impact

---

[2] In fact, the AT&T case was settled during trial, so if the DOJ then had applied the view being advanced by the DOJ today, they would have said that the only alternative was to continue with trial. *See AT&T*, 552 F. Supp. at 140.

statement. 15 U.S.C. § 16(b)(6). As in many other antitrust settlements, the only "alternative remedy" "actually considered" by the United States here was proceeding with "a full trial on the merits." *See* Competitive Impact Statement, ECF No. 217-2, at 12–13. Not satisfied with this response, the States seek discovery of all settlement proposals made during the negotiation process. The Court should reject this effort because it is couched on a misreading of the statutory language.

Senate Report No. 93-298 (1973), submitted by Senator Tunney, shows the error in the States' statutory construction. During drafting, the Senate Judiciary Committee added the words "actually considered" to "alternatives to such proposal" and "alternative remedies" in section 16(b)(6) and section 16(e)(1), respectively. S. Rep. No. 93-298, at 1 & 2 (1973) (Amendments Nos. 4 & 10). The Report provided the following explanation of amendments:

> Amendments No. 4 and 10 were added to clarify the extent to which alternative remedies are to be included in the public impact statement and to be considered in determining whether or not entry of the proposed consent judgment is in the public interest. The Committee does not wish to impinge upon the free exchange of information among the staff of the Antitrust Division with respect to suggested remedies. On the other hand, where the relief proposed is of a lesser degree than that contained in the complaint, the public and the court should have access to the meaningful alternatives from which the Division made its choice. *In order for the court to make a judgment as to whether or not the proposed relief is sufficient with respect to the conduct alleged in the complaint, it must have access to that which the Division considered in final form. The Committee recognizes, however, that in many instances an alternative may not have been actually considered.*

*Id.* at 3 (emphasis added).

The legislative history thus makes clear that "alternative remedies actually considered" refers only to remedies considered *in their final form* as *alternatives* to the proposed final judgment that was filed with the court. An alternative proposal that was *subject to negotiation and not in final form for consideration* would not fall within the scope of the language. Nor would *non-final, earlier variations* of what ultimately became the proposed final judgment. Indeed, the Senate Committee contemplated that "in many instances an alternative may not have been actually considered." S. Rep. No. 93-298, at 3. Such alternatives would also fall outside the statute's scope.

The States point to *United States v. AT&T Corp.*, 552 F. Supp. 131 (D.D.C. 1982), and *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007), as examples where the court's inquiry went beyond the "alternative remedies actually considered" under the statute. Neither is instructive, however. In *AT&T*, the alternatives considered by the district court were simply different requests for relief that the United States had made in court filings over the course of the litigation. 552 F. Supp. at 139 ("While the action was pending, the government changed its relief requests several times asking, at various times or in various alternatives, for the divestiture from AT & T of Western Electric and portions of the Bell Laboratories."); *id.* at 166 ("Three alternatives to the divestiture of the Operating Companies emerged in the course of the *AT&T* litigation."). These alternatives were already part of the court record. In *SBC Communications*, although "the only other remedy 'actually considered' was seeking to enjoin the entire transaction and proceeding to trial," the United States chose to explain "certain detailed alternatives" it had considered "in crafting the particular terms of the Divestiture Assets." 489 F. Supp. 2d at 23. These details were not "alternative remedies" within the meaning of the statute; rather, they explained

6

how *the terms of the divestiture* were crafted. And this was additional information that the United States chose to disclose under the circumstances of that case, not information sought in discovery.

In summary, the States' interrogatory and request for production directed at "alternative remedies actually considered" are squarely answered by the Competitive Impact Statement, which described proceeding to trial as the only such alternative. The United States has already produced the "Pretrial Record" to the States, and they therefore have more than adequate information about the alternative of a trial on the merits. Accordingly, no additional response or documents are necessary or appropriate. Should the Court rule otherwise and order additional information and documents to be provided or produced, however, the United States reserves the right to invoke any and all privileges that are applicable to such information and documents.

## III.    Internal Documents About the Settlement

### A.    States' Position: the US Must Produce Internal Documents and Information About the Settlement Process and Its Decision to Settle.

The States ask the US to produce "All documents concerning Your communications with Michael Davis, MRD Law, Arthur Schwartz, Axium Advisors, William Levi, or Sidley Austin LLP relating to the merger of HPE and Juniper." Ex. 1 at RFP 4. The States also request "All documents from the custodial files of Chad Mizelle, Stanley Woodward, Roger Alford, or William Rinner concerning the Settlement or any other potential resolution of a claim or potential claim by the United States regarding the merger of HPE and Juniper, including negotiations of such Settlement or resolution." *Id.* at RFP 5. Further, the States request "All documents concerning Your decision to resolve the claim in this action on the material terms reflected in the Proposed Final Judgment filed in this action (Dkt. No. 217-1)." *Id.* at RFP 6. And finally, the States request "All documents concerning any order, instruction, or directive from Chad Mizelle or Stanely Woodward to Your Antitrust Division to resolve the claim in this action." *Id.* at RFP 7. The States also seek testimony regarding these same topics.[3]

The dispute over these documents fall into two categories: internal documents and information about the Settlement process, and internal documents and information about the decision to enter into the Settlement. As to the first category, these are documents that discuss how the Settlement came to be, including the influence that lobbyists had on the process. These could be documents indicating meetings, calls, or other communications with lobbyists, and they may or may not relay the substance of those meetings, calls, and communications. For example, they could be calendar entries, emails relaying the fact of meetings or calls, or emails providing updates to the effect of "Mizelle and Davis are meeting tomorrow," or "Davis is pushing Mizelle to accept a settlement."

As to the second category, these are documents showing who made the decision to settle and on what basis, if any. These could be documents indicating that Mr. Mizelle ordered the DOJ Antitrust Division to enter the Settlement, or that the Settlement was accepted because of HPE's lobbying rather than based on the public interest.

1.    The documents and information are relevant.

The Court explained that "the decision-making process" here "may be relevant in determining whether the judgment serves the public interest, but primarily to the extent that

---

[3] Objections specific to taking testimony on these topics is discussed below.

process bears upon the adequacy of the proposed judgment." 12/31 Order at 5. In particular, if the US or HPE asks the Court "to defer to the Executive Branch's evaluation of the public interest based on a presumption that its decision was reached through a considered and fair evaluation of the relevant factors, evidence that the conditions justifying such a presumption were not present with respect to the proposed consent judgment here may be relevant." *Id.* at 5 n.3. For example, the Court can consider "whether the process that culminated in the parties' settlement bears the hallmarks of regularity and principled decision-making that might justify such presumptions." Order Granting Mot. For Intervention, at 9, Dkt. 332 (Dec. 1, 2025).

The kinds of documents and information sought here will show whether or not the Settlement was the product of a considered and fair evaluation on the merits. The States have carefully crafted the discovery requests in this regard to target that very question, and do not seek documents about trial strategy and the like that should fairly remain protected.

Of course, the States will receive communications between the US and HPE, which will bear on this issue and reveal a portion of the discussions that took place. But HPE has disclosed that there were in-person meetings, calls, and videoconferences as well. Description and Cert. of Written or Oral Communications by HPE and Juniper Concerning the Proposed Final Judgment, at 2, Dkt. 228 (July 7, 2025). And public reporting alleges that the Settlement was the product of literal back-room dealing. *See* Biller Decl. Ex. 1, at 1–2, Dkt. 236-2 (Oct. 14, 2025). That kind of evidence would show that the Settlement was not the product of a considered and fair evaluation. And internal DOJ documents may be the only contemporaneous documentary evidence of what transpired and is therefore critical to answer this question.

2. The deliberative process privilege does not protect these documents and information.

The US assertion of deliberative process privilege fails. The "deliberative process privilege protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. For the deliberative process privilege to apply, the material must be predecisional and deliberative." *Karnoski v. Trump*, 926 F.3d 1180, 1203–04 (9th Cir. 2019) (quotations omitted). This privilege "does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Id.* at 1204 (quotation omitted).

Documents falling in the second category—those relating to the DOJ's decision to settle—are by definition not deliberative because they are not "predecisional." Those documents are therefore not protected by this privilege.

As to documents for which the deliberative process privilege might apply, a litigant can overcome the deliberative process privilege if their "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The Ninth Circuit has set forth four factors to weigh in this determination: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Karnoski*, 926 F.3d at 1206 (quotation omitted). The States meet this standard. The first factor is met because, as discussed above, the documents and information are relevant. The second factor is also met; other evidence is not available because only the DOJ has documents and information

8

about its own process. The US is a party here, so the third factor also favors disclosure. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1092–93 (9th Cir. 2025).

The final factor also favors disclosure, because these documents would not chill frank and independent discussion. To the contrary, disclosure would promote frank and independent discussions within the context of a principled decision-making process, and discourage corruption of a reasoned decision-making process. Additionally, any documents simply containing factual statements about the Settlement process are not protected in any event, or at the least must be redacted and produced so as not to shield those facts from discovery.

Finally, the deliberative process privilege "disappears altogether when there is any reason to believe government misconduct occurred." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997); *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) ("Consequently, where the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied.") (quotation omitted); *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122, 1124 (N.D. Cal. 2003) (government misconduct allegation favors disclosure). Government misconduct is squarely at issue here. Mr. Alford has stated that "in the HPE/Juniper merger scandal Chad Mizelle and Stanley Woodward perverted justice and acted inconsistent with the rule of law. . . . As part of the forthcoming Tunney Act proceedings, it would be helpful for the court to clarify the substance and the process by which the settlement was reached. . . . I hope the court blocks the HPE/Juniper merger. If you knew what I knew, you would hope so too." Dkt. 236-2 at 7–8. The government should not be permitted to shield its misconduct behind a privilege meant to apply to honest conversations.

3. The attorney work product doctrine does not shield the documents and information.

The US assertion of attorney work product protection fails for similar reasons. "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared 'by or for another party or by or for that other party's representative." *ACLU of N. Cal. v. United States Dep't of Justice*, 880 F.3d 473, 484 (9th Cir. 2018) (quotation omitted). The burden is on the party claiming the protection to establish that the withheld documents are protected by the attorney work product doctrine. *Thompson v. C & H Sugar Co., Inc.*, No. 12-CV-00391 NC, 2014 WL 595911, at *2 (N.D. Cal. Feb. 14, 2014); *Skynet Elec. Co. v. Flextronics Int'l, Ltd.,* 2013 WL 6623874, at *2 (N.D. Cal. Dec. 16, 2013). Blanket assertions are not permitted and fail to meet the burden. *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005), *order clarified,* No. CV 02-204744MMMMANX, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) ("[D]efendant's blanket invocation of the work product doctrine is not a sufficient basis to exclude [attorney's] testimony in it[s] entirety.").

Federal Rule 26 provides that work product "may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). But "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The States here seek facts, not the latter kind of opinion work product that is subject to greater protection.

The States have a substantial need for the documents because they are essential to determine whether the US is entitled to any deference in this case, as the Court has outlined. And the States cannot obtain the documents elsewhere—evidence of the DOJ having been improperly influenced by lobbyists and settled the case without a considered and fair evaluation is uniquely within the DOJ's possession. *See, e.g.*, *In re Worlds of Wonder Secs. Litigation*, 147 F.R.D. 208, 212 (N.D. Cal. 1992) (plaintiffs entitled to documents from SEC where "obtaining th[e] documents from the SEC may be the only way plaintiffs may obtain them"). To the extent any documents contain both facts and opinion work product, they should be redacted so that the facts are disclosed. *See Thompson*, 2014 WL 595911, at *4; *ACLU of N. Cal. v. United States Dep't of Justice*, 880 F.3d at 488–89.

   4.  The Attorney-Client Privilege does not shield the documents and
        information.

The US assertion of attorney-client privilege is also unavailing. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir.1997) (quoting *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)), *as amended on denial of reh'g* (Mar. 13, 2002) (quoting *Weil v. Inv./ Indicators, Research & Mgmt., Inc.* 647 F.2d 18, 24 (9th Cir.1981). As the party asserting the attorney-client privilege, the US "has the burden of establishing the relationship and the privileged nature of the communication[s]" sought. *Bauer*, 132 F.3d at 507.

The US "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Martin*, 278 F.3d at 1000. Blanket assertions are "extremely disfavored." *See id.* (quotation omitted). Moreover, "the communication must be between the client and lawyer for the purpose of obtaining legal advice," as opposed to policy advice or political strategic advice. *Id*.

The United States has not met its burden here to describe with specificity why the documents are privileged, and whether *all* the communications it seeks to shield were for the purpose of legal advice, rather than for some other purpose.

But even if the US could articulate an attorney-client privilege, the US has impliedly waived the privilege by putting the communications at issue here. "The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2016 WL 4191612, at *3 (N.D. Cal. Aug. 9, 2016) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

Thus, "an implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would

deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).

Those circumstances have been met here. The US has urged the Court to defer to its assessment of the public interest, relying on a presumption that the Settlement resulted from a fair and reasoned evaluation of relevant factors. *See* Resp. of United States to Public Comments on the Proposed Final Judgment, at 3, Dkt. 311 (Nov. 14, 2025) ("Courts must accord deference to the government's predictions about remedy efficacy"), 14 (citing cases for deference); Pltf.'s Opp. to Mot. For Intervention, at 6, Dkt. 299 (Oct. 28, 2025) (arguing Tunney Act is "highly deferential to the [DOJ]'s assessment of a remedy's competitive impact"); Competitive Impact Stmt., at 14-15, Dkt. 217-2 (June 27, 2025) (arguing for deference); United States' Notice of Mot. For Entry of Final Judgment, at 1 Dkt. 351 (Jan. 5, 2025) (incorporating Competitive Impact Statement and Response to Public Comments).

The Court put the US on notice that if it is going to argue for deference, then there will have to be discovery into whether the conditions justifying such deference with respect to the DOJ's decision-making are present here, i.e., whether the DOJ conducted a considered and fair evaluation of the Settlement. 12/31 Order at 5 n.3. That is the at issue doctrine in a nutshell. The US has continued to assert that it is entitled to deference notwithstanding the public reports and Mr. Alford's statement that the Settlement was not the product of reasoned professional judgment. The US cannot make that assertion and block the evidence that would show otherwise. Fairness requires finding an implied waiver of the privilege in these circumstances so that the States can test the presumption of regularity underlying the US assertion of deference.[4] *E.g.*, *In re Lidoderm*, 2016 WL 4191612 at *6 (defendants' position was essentially "Trust us. The justifications we are putting forward here *are* why we settled.").

## B.     United States' Position: The States' Requests for Privileged Internal DOJ Documents Are Improper.

The States' requests for the production of internal DOJ documents about the settlement are improper on multiple grounds. Many of the documents sought by the States are irrelevant to the core issues in this Tunney Act proceeding and producing them would be unduly burdensome to the United States. Even more significantly, most of the documents are privileged several times over—whether under the deliberative process privilege, attorney-client privilege, or work product doctrine. For these reasons and because "producing such intra-executive branch dialogues implicates separation of process concerns that require the most 'careful consideration' by the judiciary," the Court should categorically bar discovery of internal DOJ documents. *Am. Fed'n of Gov't Emps., AFL-CIO ("AFGE") v. Trump*, 155 F.4th 1082, 1095 (9th Cir. 2025) (Ikuta, J., dissenting) (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1206–07 (9th Cir. 2019)).

1.  The documents most sought by the States are not relevant and production would be unduly burdensome to the United States.

Documents sought by the States about DOJ's internal decision-making processes, even if they were not properly shielded by privilege, will not help the Court determine whether entry of the amended proposed Final Judgment is in the public interest. As the Court recognized, because

---

[4] As the States have explained many times, this is a unique case with extreme allegations. The States do not argue that the US impliedly waives the privilege in every Tunney Act case; but here, it has.

"a probing judicial inquiry into the Department of Justice's internal decision-making process . . . could give rise to substantial privilege and separation-of-powers concerns," the Tunney Act prescribes a review process that "focuses primarily on the proposed judgment's competitive effect," with process only relevant "to the extent [it] bears upon the adequacy of the proposed judgment." 12/31/25 Order at 3:28–4:1, 4 n.2 & 5:4–7. But documents focusing entirely on internal DOJ decision-making processes will not help the Court determine whether the amended proposed Final Judgment's substantive terms adequately protect competition in the relevant market.

The States nonetheless argue that production of internal DOJ documents is necessary to "show whether or not the Settlement was the product of a considered and fair evaluation on the merits." But they cite no legal authority suggesting that vague allegations of lobbyists influencing the internal DOJ review process should have any bearing on the Court's standard of review or on whether the *substance* of the amended proposed Final Judgment is adequate. As the Court has recognized, the States' concerns "fall largely outside the scope of the Tunney Act." 12/31/25 Order at 5:3. The Court should reject the States' attempt to graft additional requirements onto an already comprehensive and well-thought-out statutory scheme.

Even assuming that some internal documents are relevant to the Court's substantive review, the Court must also weigh whether the production of these documents is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It is not. As part of this proceeding, the United States produced to the States its half of the un-redacted "Pretrial Record," which alone comprises more than 27,000 pages of trial exhibits, fact and expert deposition transcripts, expert reports, pre-trial briefs, and proposed findings of fact and conclusions of law. HPE provided the States with its half of the Pretrial Record and is expected to produce communications between HPE and the Department of Justice. Simply put, the States have received an enormous collection of non-public materials related to the underlying merger and the United States's claims—more than is necessary for their participation in these proceedings and *far* more than has been received by any intervenor in other Tunney Act proceedings. They already have ample information to evaluate, and make any arguments they wish about, the substantive adequacy of the amended proposed Final Judgment.

At the same time, collecting and producing hundreds of internal DOJ documents from multiple custodians will unnecessarily burden the United States, particularly considering the short timeline of this proceeding. As discussed below, most of the documents sought by the States are going to be privileged and will require careful examination by DOJ attorneys. Accordingly, because "the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1), the Court should categorically bar discovery of internal DOJ documents.

2.    The deliberative process privilege protects internal DOJ documents.

The States essentially argue that the deliberative process privilege does not apply because unsubstantiated allegations hint at purportedly improper conduct in the settlement negotiation process, and thus the United States' decision-making is supposedly relevant and unprotected. This is not the law. If unsubstantiated allegations alone were sufficient to pry into the internal process of the Executive Branch, the deliberative process privilege would lose all meaning.

In fact, the deliberative process privilege squarely bars the States' requests for internal documents. This privilege protects predecisional and deliberative documents containing opinions, recommendations, or advice about agency policies. *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Of most relevance to this proceeding, the privilege applies to government deliberations concerning whether to pursue a particular course of action in litigation, including

12

entering settlements like the one this case. *See, e.g., United States v. Fernandez*, 231 F.3d 1240, 1246–47 (9th Cir. 2000) (death penalty evaluation form and prosecution memorandum submitted to Attorney General's committee considering whether to authorize pursuit of that penalty were protected by deliberative process privilege and work product doctrine); *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 938–39 (10th Cir. 2005) (reasons for government's motion to dismiss *qui tam* case protected by deliberative process privilege); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (referral memorandum from FTC to DOJ was predecisional and deliberative, so protected by DOJ's deliberative process privilege). Indeed, the Ninth Circuit, in *Warner* itself, found that documents of the *exact same type as here*—internal government communications regarding an antitrust enforcement action—were protected from discovery. *Id.* at 1162.

The Ninth Circuit uses four factors to evaluate whether this qualified privilege can be overcome: (1) the relevance of the evidence sought; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Warner*, 742 F.2d at 1161. Here, three of the four *Warner* factors favor the United States.[5] Regarding the first factor, many of the documents sought by the States are not relevant to the core issue of this Tunney Act proceeding, namely, the competitive impact of the amended proposed Final Judgment. As for the second factor, the States are not lacking for evidence relevant to the competitive impact of the settlement, given that they have access to the entire Pretrial Record and will receive external communications between HPE and the United States as well. *See id.* at 1161–62 (factor favored the government because defendant in antitrust case had access to evidence on relevant market, market structure, barriers to entry, and effects on competition, and therefore did not need FTC's internal memoranda on those issues). As for the fourth factor, the Ninth Circuit recognized in *Warner* that disclosure of internal memoranda and other communications relating to antitrust enforcement decisions "almost certainly injures the quality of [those] decisions. It chills frank decisions and deliberation in the future among those responsible for making governmental decisions*." Id.* at 1162. More recently in *AFGE*, the Ninth Circuit reiterated that the deliberative process privilege is intended to protect "documents contain[ing] material so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." 155 F.4th at 1091 (internal quotation marks omitted). The predecisional documents sought by the States fall into this category and the privilege therefore applies.[6]

The States' contrary arguments are unpersuasive. Their argument that documents "*relating to the DOJ's decision to settle . . . are by definition not deliberative because they are not 'predecisional'*" is a non sequitur (emphasis added). Documents predating the filing of the proposed consent judgment, supplying decisionmakers with relevant opinions and analyses about specific proposed terms for a settlement, and advising whether to enter the settlement are by their nature deliberative and predecisional. Any documents relating to the decision to settle that postdate the filing of the proposed consent judgment, to the extent they even exist, would likely be irrelevant to core issues in this proceeding or otherwise protected by another privilege (such as attorney-client privilege or work product doctrine). The States also assert that disclosure of internal DOJ documents "would promote frank and independent discussions within the context of a principled

---

[5] The Court need not address the third factor as the other three clearly favor the United States.

[6] Like the internal FTC memoranda in *Warner*, any non-privileged factual information in the majority of documents in question "is so interwoven with the deliberative material that it is not severable." *Warner*, 742 F.2d at 1161.

decision-making process." But the Ninth Circuit recognized in *Warner* and *AFGE* that disclosure of emails, memoranda, and other confidential communications will have exactly the opposite effect: it will chill honest and frank deliberations, to the overall detriment of policymaking.

Finally, the States, citing dictum in an out-of-circuit case, misstate the law in the Ninth Circuit (and arguably elsewhere) by asserting that the deliberative process privilege disappears altogether when there is any reason to believe government "misconduct" occurred. The States can point to no Ninth Circuit decisions recognizing such a categorical "governmental misconduct" exception to deliberative process privilege. Instead, courts to this day apply *Warner*'s multi-factor balancing test. *See*, *e.g.*, *AFGE*, 155 F.4th at 1092–93 (applying *Warner* factors); *Karnoski*, 926 F.3d at 1206 (remanding to District Court to apply *Warner* factors). Even the cases cited by the States differ strongly from this one in that misconduct or arbitrary and discriminatory decision-making was squarely at issue in the proceedings. *In re Sealed Case* concerned the invocation of the privilege in response to a criminal grand jury subpoena seeking documents concerning the underlying alleged misconduct under investigation, 121 F.3d 729, 735–36 (D.C. Cir. 1997); *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs* concerned the invocation of the privilege by a government regulatory agency when regulated companies had made a "strong showing" of arbitrary and discriminatory conduct by that agency in the underlying case, 60 F.3d 867, 884–85 (1st Cir. 1995); and *N. Pacifica, LLC v. City of Pacifica* concerned the invocation of the privilege by a city council facing an equal protection lawsuit by a developer that turned in part on the motive and intent of the city council, 274 F. Supp. 2d 1118, 1124–25 (N.D. Cal. 2003). Here, in contrast, the motive and intent of policymakers are not the focus of the proceeding. Furthermore, vague suggestions that "improper" lobbying may have influenced a government action do not constitute a "strong showing" of misconduct and are tangential to the core issue of the consent judgment's adequacy in this Tunney Act proceeding. *See* 12/31/25 Order at 5:1–3 ("[P]reventing corruption or improper influence-peddling from influencing the government's decision-making . . . appear to fall largely outside the scope of the Tunney Act.")

3.    The work-product doctrine shields internal DOJ documents.

The States also cannot surmount the work-product doctrine, as most of the internal DOJ documents sought by the States were prepared in anticipation of litigation or for trial. *See* Fed. R. Civ. P. 26(b)(3)(A). Even if some of these documents may also have non-litigation purposes, they were created "because of" the HPE-Juniper merger litigation "and would not have been created in substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (internal quotation marks omitted).

To be sure, Rule 26(b)(3)(A)(ii) provides for an exception to some (but not all) work-product protections when a party shows a "substantial need" for materials and cannot obtain "their substantial equivalent by other means" "without undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii). But as discussed previously, the States have not made and cannot make such a showing. They have received the entire Pretrial Record from the United States and HPE, and HPE is producing communications between HPE and the United States. As such, the States already have ample information to evaluate, and make any arguments they wish about, the substantive adequacy of the amended proposed Final Judgment. And to the extent the States seek discovery on tangential process issues, the Court has already concluded that "those concerns appear to fall largely outside the scope of the Tunney Act." 12/31/25 Order at 5:3.

4. Attorney-client privilege protects internal DOJ documents.

Finally, many internal Department documents sought by the States are protected by attorney-client privilege, as they contain confidential legal advice given by Department attorneys in relation to the representation of their client—the United States—in this matter. *See Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (describing the Ninth Circuit's test for attorney-client privilege). Legal advice was the "primary purpose" of these documents. *See id.* (stating that the Ninth Circuit uses the "primary purpose" test for determining whether a dual-purpose document is covered by attorney-client privilege); *N. Pacifica*, 274 F. Supp. 2d at 1127–29 (discussing the application of the "primary purpose" test). Furthermore, "an agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *United States v. Pacific Gas and Electric Co.*, Case No. 14-cr-00175-TEH-1, 2016 WL 3252779, at *3 (N.D. Cal. June 14, 2016) (internal quotation marks omitted). Indeed, "the traditional rationale for the [attorney-client] privilege applies with special force in the government context" as "[i]t is crucial that government officials, who are expected to uphold and execute the law . . . be encouraged to seek out and receive fully informed legal advice." *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005).

The States do not assert any of the traditional, narrow exceptions to the attorney-client privilege, such as the crime-fraud exception. Nor could they. Instead, they make the risible argument that the United States impliedly waived the privilege by propounding a rebuttable "presumption" of "fair and reasoned evaluations of relevant factors" that the States can now seek to rebut with the aid of privileged material. In fact, the United States has never advanced such a presumption, and the States cite no legal authority for its existence. The United States' filings cited by the States merely recite the appropriate legal standards for the Court's Tunney Act review. Accordingly, the Court should reject the States' attempt to pierce attorney-client privilege.

## IV.   Deposition Subpoenas to Former DOJ Officials

### A.   States' Position: Depositions of Former DOJ Officials Must Proceed.

The States seek depositions of three former DOJ officials: Roger P. Alford (former Principal Deputy Assistant Attorney General), William J. Rinner (former Deputy Assistant Attorney General), and Chad R. Mizelle (former Chief of Staff to the Attorney General) (collectively, the "Former DOJ Officials").

1. Fact depositions should be allowed.

As a threshold matter, the US argues that the States are not entitled to any depositions at all. This is wrong. The Tunney Act authorizes an array of tools to aid a court in its public interest determination. 15 U.S.C. § 16(e); *see id.* § 16(f). And the Court has decided to use such a tool: the "participation in proceedings before the court" by the States through "intervention as . . . part[ies] pursuant to the Federal Rules of Civil Procedure." *Id.* § 16(f)(3). "Because the [S]tates have been allowed to intervene as parties, they have the right to pursue discovery." 12/31 Order at 3 (citing Fed. R. Civ. P. 26(b)(1)); *see also* Tr. of 12/16/2025 Hr'g, at 10:11–13, Dkt. 349 (rejecting categorical preclusion of discovery for Tunney Act participants: "I'm authorized to impose whatever . . . proceedings under the federal rules I think are appropriate[.]"). Under the Federal Rules, the right to discovery generally includes the right to, "by oral questions, depose any person, including a party, without leave of court." Fed. R. Civ. P. 30(a)(1); *see also* 15 U.S.C. § 16(f)(3) (authorizing "examination of witnesses or documentary materials"). And the Tunney Act

authorizes fact-witness depositions, which are a critical discovery tool in our adversarial justice system. *See* 15 U.S.C. § 16(f)(3) (allowing for a person's "intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate[.]").  Indeed, in addressing the extent to which several (non-exclusive) topics fall within the scope of discovery into the Tunney Act issues, the Court placed no special restrictions on permissible discovery methods beyond Rule 26(b)(1)'s relevance and proportionality limits. 12/31 Order at 3–6.

Deposition testimony of key settlement insiders is necessary here.  The testimony will aid the Court's determination as to whether an evidentiary hearing is needed.  The testimony can preview for the Court what testimony would likely be offered at an evidentiary hearing.  Or, alternatively, it may obviate the need for live witness testimony on some topics—or even any evidentiary hearing at all—if there is no dispute as to the testimony.  For example, deposition testimony may narrow or eliminate fact disputes and show that no credibility issues require determination by the Court.

The testimony is also relevant to the merits of the Court's public interest determination and is necessary here to fill in the gaps in the documentary record.  The Former DOJ Officials were central to the decision-making at issue here and have unique knowledge about key communications informing this decision-making, including the settlement negotiations and communications between HPE's lobbyists and the DOJ, as well as how that lobbying influenced the Settlement. Yet, the US seeks to deny the States *any* questioning of fact witnesses whatsoever.  In other words, if legally sophisticated DOJ officials and lobbyists avoided reducing inculpating information to writing (or if they have not preserved it), the States cannot discover it, and the Court cannot consider it in the pending determinations—no matter how powerful the evidentiary value may be. Such a subversion of this Tunney Act proceeding should be rejected.

2.  The DOJ cannot block the Former DOJ Officials from testifying.

On December 23, 2025, the US sent the States a letter demanding summaries of the testimony sought pursuant to the DOJ's *Touhy* regulations, 28 C.F.R. § 16.21 *et seq*.  Ex. 3.  The DOJ asserted that it could not authorize testimony and objected to the subpoenas until compliance. *Id*.  On January 5, 2026, the States replied, disputing the DOJ's position that the subpoenas must conform to *Touhy* regulations and rejecting the claim that Ninth Circuit law requires a statement summarizing anticipated testimony.  Ex. 4.  Nevertheless, to avoid unnecessary dispute, the States provided summaries of the testimony topics for each witness.  *Id*.

Despite this good-faith effort, the US now asserts that the summaries are inadequate under *Touhy* and demands that the States supply detailed predictions of each witness's specific testimony.  This demand is both unreasonable and legally unsupported.  Discovery exists to uncover information not already known to the requesting party; *Touhy* does not require litigants to "accurately guess" the substance of testimony before obtaining it.  Indeed, 28 C.F.R. § 16.23(c) states:

> "If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter."

This provision simply requires a "summary of the testimony sought—nothing more. It imposes no heightened specificity requirement. *See United States v. Aponte-Sobrado*, 824 F. Supp. 2d 285, 287 (D.P.R. 2011) ("This section of the statute simply requires the party seeking testimony to provide a 'summary of the testimony sought' to the Department attorney and makes no reference to any required level of specificity.") (quoting 28 C.F.R. § 16.23(c)). Although not obligated to comply with the DOJ's regulations in this context, as explained below, the States have nevertheless provided enough information for the DOJ to determine whether to authorize the Former DOJ Officials to testify under their internal regulations.

More importantly, however, *Touhy* provides no independent basis for the DOJ to obstruct or object to subpoenas directed to the Former DOJ Officials.

The Ninth Circuit has made clear that "district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994). In doing so, the court confirmed that 5 U.S.C. § 301, the statute authorizing *Touhy* regulations, is merely a housekeeping statute and does not "create an independent privilege to withhold government information or shield federal employees from valid subpoenas." *Id*. at 777–80; *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979) (nothing in § 301's legislative history indicated that Congress intended the statute to be a grant of authority to withhold information from the public). The Ninth Circuit further rejected sovereign immunity as a basis to avoid compliance, emphasizing that such limits apply only to state court subpoenas, not federal court subpoenas, and warned that allowing agencies to disregard federal court subpoenas would raise serious separation-of-powers concerns. *Exxon*, 34 F.3d at 778. As the Ninth Circuit unequivocally stated: "we decline to hold that federal courts cannot compel federal officers to give factual testimony." *Id*.

Recognizing that its regulations do not provide a basis to shield the testimony, the DOJ now objects to the subpoenas based on relevance and privilege. These objections are equally unavailing. The Court has already recognized that the Tunney Act reflects Congress's intent that the decision-making process underlying a proposed final judgment may be relevant to determining whether the judgment serves the public interest. *See* 12/31 Order at 5. The Court further acknowledged that the Tunney Act requires consideration of "alternative remedies" that were "actually considered" during the negotiation process, and that communications between the US and HPE are relevant as well. *Id*. at 6.

And as referenced above, the US has argued for deference here.[7] As the Court noted, evidence bearing on whether the conditions for such deference are met, including the integrity of the decision-making process, is directly relevant. *Id*. at 5 n.3; *see also* Order Granting Mot. for Intervention, at 9, Dkt. 332 (Dec. 1, 2025).

The Former DOJ Officials have direct, first-hand knowledge of the influence of HPE's lobbyists, the DOJ's decision-making (and whether it was based on a "considered and fair evaluation"), and the alternative remedies considered. Mr. Alford in particular has already commented publicly (twice now) on the government's misconduct in this case and said that "it would be helpful for the court to clarify the substance and the process by which the settlement was reached" and "examine the surprising truth of what happened." Dkt. 236-2 at 3-4; Anti-American

---

[7] HPE has also argued for deference to the DOJ. *See* HPE's Opp. to Mot. For Intervention at 1-2, 24, Dkt. No. 298.

Antitrust: How Foreign Governments Target U.S. Businesses, Testimony of Roger P. Alford,[8] at 2-3 (Dec. 16, 2025). Mr. Alford should have the opportunity to explain what happened, as should the others. Their testimony is central to the Courts' effort to assess whether the Settlement is based on a genuine and informed evaluation of the public interest and whether the Court should accord any deference to the DOJ's decision.

And, for the same reasons discussed as to the documents, the testimony is not shielded by any privilege.

## B.    U.S. Position: Depositions of Former DOJ Officials Are Improper.

On December 22, 2025, the States issued Rule 45(a)(4) subpoenas to three former DOJ officials involved in settlement negotiations: Roger Alford, the former Principal Deputy Assistant Attorney General at the Antitrust Division; William Rinner, the former Deputy Assistant Attorney General and Head of Merger Enforcement at the Antitrust Division; and Chad Mizelle, the former Chief of Staff and Acting Associate Attorney General of the Department of Justice. The States' subpoenas to Mr. Alford, Mr. Rinner, and Mr. Mizelle are improper and should be quashed. The Court has not authorized the States to take depositions, but even if it had, these particular depositions are unduly burdensome and disproportionate to the needs of the case.

Mr. Alford, Mr. Rinner, and Mr. Mizelle have no specialized knowledge related to the market for enterprise-grade WLAN solutions. Their testimony will provide the Court with no insight into how the proposed Final Judgment affects competitive conditions, and therefore it has little value in determining whether the settlement is in the public interest. Instead, the testimony will relate *solely* to the decision-making process that resulted in the proposed Final Judgment, which is, at best, narrowly relevant in these proceedings. *See* 12/31/25 Order at 3–5 and n.2. And, regardless of any potential relevance, much of their expected testimony would be properly shielded from discovery by deliberative process, attorney work product protection, and attorney-client privilege. *See* Section III.B., *supra*.

### 1.    The Court has not authorized depositions in these proceedings.

The States have not been authorized to take depositions in these proceedings—let alone six depositions the probative value of which would be minimal at best to the Court's public interest determination. The Court's December 31 Order, which makes no mention of depositions, permits the States to engage in discovery only to the extent it is proportional to the needs of the case. Depositions at this stage fail that test. The Tunney Act process is *not* a trial on the merits, so traditional justifications for taking depositions—assessing a witness's knowledge and credibility for trial, preserving testimony, and preventing "trial by ambush"—are not applicable. *See United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981). For that reason, just like parties in every other Tunney Act proceeding, the States should marshal whatever information they believe will be helpful to the Court's public interest determination without imposing on the parties the additional cost and burden of taking and defending depositions. *See United States v. CVS Health Corp.*, 407 F. Supp. 3d 45, 51–52 (D.D.C. 2019) (describing *amici*'s examination of experts and third-party witnesses during hearing); *United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 9–10 (D.D.C. 2007) (describing *amici*'s submission of expert and third-party witness declarations).

---

[8] *Available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/alford-testimony.pdf.

Moreover, the Court has already signaled that depositions are unnecessary in this proceeding in one context. In setting a case management plan for the Tunney Act proceeding, the Court declined the States' request for an expert discovery period, observing that it is "overly burdensome to say we're going to go through a full round of expert depositions and the like as opposed to . . . expert testimony com[ing] in through declarations," as often happens with motions for class certification and summary judgment. Hr'g Tr. at 36:25–37:23 (N.D. Cal. Dec. 16, 2025). Here, too, witness declarations from industry participants and customers and documents produced by the Parties constitute less onerous ways to provide the Court with information relevant to its public interest determination. As with experts, the cost of permitting the States to depose fact witnesses outweighs any purported benefit and risks "turning the flexible proceedings of the Tunney Act into a full-scale trial." *See United States v. Airline Tariff Pub. Co*., 1993 WL 95486, at *2 (D.D.C. Mar. 8, 1993) (denying motion to compel).

None of the States' arguments for permitting depositions is persuasive. The States rely heavily on general provisions in the Federal Rules, but those procedures are tailored to trials on the merit, not this Court's Tunney Act proceeding. As the States' participation as parties is limited to the Tunney Act proceeding, they are not entitled to the full range of discovery tools available to normal litigants absent a court order. The States' reliance on Section 16(f)(3) of the Tunney Act is also misplaced, as that provision merely authorizes the Court to allow "interested parties or agencies," like the States, to participate "in proceedings before the court" through the "examination of witnesses or documentary materials." 15 U.S.C. § 16(f)(3). Independent of a court order, it does not affirmatively grant the States deposition powers. The provision merely allows them to question witnesses and introduce exhibits at an evidentiary hearing, should the Court decide to hold one.

Finally, the States argue that deposition testimony of "key settlement insiders" is necessary because it will help the Court determine if an evidentiary hearing is needed, but they fail to explain why submitting documentary evidence—including HPE's forthcoming production of its communications with the Department—is not sufficient here. Similarly, the States claim that depositions are needed to "fill in the gaps in the documentary record," but they have not yet seen those communications. And, regardless, a fulsome record of the Department's decision-making regarding the Settlement is not necessary when the process of negotiating the proposed Final Judgment is only tangentially related to the Tunney Act proceedings in the first place.

> 2. Even if depositions were authorized, the depositions of Mr. Alford, Mr. Rinner, and Mr. Mizelle would be improper.

Even if depositions were permitted, deposing Mr. Alford, Mr. Rinner, and Mr. Mizelle would be improper because the depositions would predominantly focus on topics shielded from discovery by privilege and tangential to the Court's public-interest determination.

For each former DOJ official, the States seek testimony regarding the "decision to resolve the claim in this action on the material terms reflected in the Proposed Final Judgment" and "[a]ny order, instruction, or directive from Chad Mizelle or Stanley Woodward to the Antitrust Division to resolve the claim in this action." *See* Exhibit 6. But the States cannot elicit that testimony for the same reasons that they cannot force production of internal DOJ documents on those topics. *See* Section III.B., *supra*. Any testimony that is not privileged is still irrelevant to the Court's public interest determination and therefore unwarranted. *See* 12/31/25 Order at 4–5.

The remaining topics identified by the States are unlikely to uncover information relevant to the Tunney Act proceedings. The States seek testimony regarding communications between the

United States and Defendants, but the substance of those communications are clear on their face and probing *why* the communications were sent would infringe on the United States' privileges. The same is true of internal discussion of alternative remedies and assessments of their effects. *See* Section II.B., *supra.* As none of the proposed deponents have specialized knowledge related to the market for enterprise-grade WLAN solutions, eliciting testimony related to the "divestiture of HPE's Instant On business line," "license of AI Ops for Mist Source Code," and anticipated effects of alternative remedies is unlikely to uncover information that would assist the Court's factfinding.

At the same time, the States' depositions, if permitted to proceed, would unduly burden the non-parties and attorneys from the United States who would have to appear at those depositions to protect the government's privileges. As those burdens outweigh the probative value of the depositions, the States have not shown the depositions to be proportional to the needs of the case.

> 3. The States have not complied with the government's *Touhy* regulations, denying the U.S. proper notice of the expected testimony.

The Department's regulations, implemented pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), provide, in pertinent part, that if "[i]f oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth *a summary of the testimony sought must be furnished* to the Department attorney handling the case or matter." 28 C.F.R. § 16.23(c) (emphasis added). This is a mandatory requirement, and the Ninth Circuit, among other Circuits, has held that the *Touhy* regulations are valid. *See, e.g., In re Boeh*, 25 F.3d 761, 763-64 (9th Cir. 1994). *See also United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994); *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977).

The States misunderstand the nature and purpose of the regulation. There is no dispute that the regulation itself does not give rise to a separate and independent privilege for resisting discovery. Instead, compliance with the regulations by the party seeking the testimony of a current or former Department employee is what enables the Assistant Attorney General to make an appropriate determination, based on applicable privilege grounds, whether to allow any or all of the requested testimony. *See* 28 C.F.R. § 16.26(a) ("In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider . . . [w]hether disclosure is appropriate under the relevant substantive law concerning privilege.").

In their reply letter, the States do not satisfy the regulation's requirement of providing "a summary of the testimony sought." They list broad topics but do not describe in any detail what each witness is expected to say about any given topic. The deposition subpoenas to Mr. Mizelle, Mr. Alford, and Mr. Rinner should be quashed. *United States v. Henson*, 123 F.3d 1226, 1237 (9th Cir. 1997) (affirming the district court's decision to quash a subpoena for failure to follow the ATF's *Touhy* regulations), *overruled on other grounds by United States v. Foster*, 165 F.3d 689, 692 n.5 (9th Cir. 1999) (en banc); *United States v. Chang*, 2024 WL 3567006, at *2 (E.D.N.Y. July 29, 2024) (granting the Department's motion to quash sixteen subpoenas for which the defense failed to provide the required statements about the testimony sought).

Dated: January 26, 2026

/s/ Henry C. Su
Henry C. Su
Jeremy M. Goldstein
Michael G. Lepage
U.S. Department of Justice
Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
(415) 934-5300
henry.su@usdoj.gov
jeremy.goldstein@usdoj.gov
michael.lepage@usdoj.gov

*Attorneys for Plaintiff United States of America*

Dated: January 26, 2026

PHILIP J. WEISER
Attorney General

/s/ Arthur Biller
ARTHUR BILLER *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
JONATHAN B. SALLET *(Admitted Pro Hac Vice)*
Special Assistant Attorney General
ROBIN ALEXANDER (*Admitted Pro Hac Vice*)
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
        Bryn.Williams@coag.gov
        Jon.Sallet@coag.gov
        Robin.Alexander@coag.gov

*Attorneys for the State of Colorado*

ROB BONTA
Attorney General of California

/s/ Brian D. Wang
PAULA L. BLIZZARD, Senior Assistant Attorney
General (SBN 207920)

21

MICHAEL W. JORGENSON, Supervising Deputy
Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN
284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400
Brian.Wang@doj.ca.gov

*Attorneys for the State of California*


WILLIAM TONG
ATTORNEY GENERAL

*/s/ Nicole Demers*
Nicole Demers (*pro hac vice application*
*forthcoming*)
Deputy Associate Attorney General
Antitrust Section
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel.: (860) 808-5030
nicole.demers@ct.gov

*Attorneys for the State of Connecticut*


BRIAN SCHWALB
Attorney General of the District of Columbia

*/s/ Coty Montag*
Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy
Division
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*

22

ANNE E. LOPEZ
Attorney General

/s/ Rodney I. Kimura
RODNEY I. KIMURA *(Admitted Pro Hac Vice)*
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

*Attorneys for State of Hawaii*


KWAME RAOUL
Attorney General of Illinois

/s/ Paul J. Harper
*(Admitted Pro Hac Vice)*

ELIZABETH L. MAXEINER
*(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*


COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

/s/ Anthony W. Mariano
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor

23

Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for*
*Commonwealth of Massachusetts*


KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*
*(Admitted Pro Hac Vice)*

ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General
Antitrust Division

JON M. WOODRUFF
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*


LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*
*(Admitted Pro Hac Vice)*

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY McFARLANE
*(Admitted Pro Hac Vice)*

24

Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
*(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust Bureau

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*


JEFF JACKSON
Attorney General of North Carolina

*/s/ Kunal J. Choksi*
*(Admitted Pro Hac Vice)*

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*



Dan Rayfield
Attorney General of Oregon

*/s/ Rachel K. Sowray*
Rachel K. Sowray *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
Timothy D. Smith *(Admitted Pro Hac Vice)*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR 97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

*Attorneys for State of Oregon*


NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Amy N. L. Hanson*
*(Admitted Pro Hac Vice)*

JONATHAN A. MARK *(Admitted Pro Hac Vice)*
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*


JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/Caitlin M. Madden*
Caitlin M. Madden *(Admitted Pro Hac Vice)*

Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*