The Hon. P. Casey Pitts
280 South 1st Street
Courtroom 8 – 4th Floor
San Jose, CA 95113

January 26, 2026

RE: *United States v. Hewlett Packard Enterprise Co., et al.*, No. 5:25-cv-00951-PCP (N.D. Cal.): **Joint Letter Regarding Discovery Disputes Between the States and HPE**

Dear Judge Pitts:

Intervenor States and Defendant Hewlett Packard Enterprise Co. ("HPE"), respectfully submit this Joint Letter Regarding Discovery Disputes Between the States and HPE. The States served written requests on HPE for documents, information, and testimony related to, among other topics, three of HPE's advisors—Michael Davis, Arthur Schwartz, and William Levi, as follows.

In their First Set of Requests for Production to Defendant Hewlett Packard Enterprise Co. ("RFPs"), the States requested three categories of documents. Only the first Request is in dispute. The first Request asks HPE to produce the following documents: "All engagement agreements, contracts, and scope of work documents between You and the following Persons or their firms: (i) Michael Davis or MRD Law; (ii) Arthur Schwartz or Axium Advisors; and (iii) William Levi or Sidley Austin LLP." Exhibit 1 is a copy of Intervenors' RFPs.

The States also served a First Set of Interrogatories to Defendant Hewlett Packard Enterprise Co. ("Interrogatories"), which seeks four categories of information from HPE. Only the first Interrogatory is in dispute. The first Interrogatory asks HPE to provide the following information: "State the amount of money and any other consideration paid by You and/or Juniper to each of the following Persons or their firms concerning the merger between You and Juniper: (i) Michael Davis or MRD Law; (ii) Arthur Schwartz or Axium Advisors; and (iii) William Levi or Sidley Austin LLP." Exhibit 2 is a copy of Intervenors' Interrogatories.

The States also served a 30(b)(6) deposition notice on HPE, seeking deposition testimony from HPE on four topics, including: (1) "Your engagement of, including the scope of work, the following Persons or their firms, regarding the merger of You and Juniper Networks, Inc.: (i) Michel Davis or MRD Law; (ii) Arthur Schwartz or Axium Advisors; and (iii) William Levi or Sidley Austin LLP." Exhibit 3 is a copy of Intervenors' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Defendant Hewlett Packard Enterprise Co.

The States also provided the parties with notice of intent to serve subpoenas duces tecum ("SDT") and deposition subpoenas on these same three HPE Advisors. HPE counsel accepted service on their behalf. Each SDT seeks 13 categories of documents. In dispute here is the first request in the Davis and Levi SDTs, which seek the following documents: "All Documents relating to Your retention and scope of work as 'HPE advisor' as referenced in HPE and Juniper's § 16(g) Tunney Act Filing." Exhibits 4 and 5 are copies of the Davis and Levi SDTs, respectively.

The Schwartz SDT seeks the following in its first request: "All engagement agreements, contracts, and scope of work Documents between HPE and You or Your firm, Axium Advisors, relating to the Settlement, or any other potential resolution of a claim or potential claim by the United States relating to the merger of HPE and Juniper, including negotiations of such Settlement or resolution." Exhibit 6 is a copy of the Schwartz SDT.

1

Finally, the deposition subpoenas seek testimony from each of Messrs. Davis, Schwartz, and Levi.

The Parties have met and conferred but have been unable to resolve disputes as to the relevance and proportionality of this discovery to the pending Tunney Act proceedings, and whether it is protected by the attorney-client privilege or as attorney work product.

## THE STATES' POSITION

### I.     The Lobbyists' Engagement Agreements, Scope of Work, and Compensation Are Relevant.

Discovery is relevant if it encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2018 WL 4327876, at *1 (S.D. Cal. Sept. 10, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Evidence of bias "is almost always relevant" to assess witness credibility. *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6216664, at *7 (N.D. Cal. Oct. 25, 2016). "Pecuniary interest may be shown to prove bias." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999) (citing *U.S. v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (abuse of discretion to prevent inquiry into potential bias of a witness). Bias also includes evidence about the "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party," which includes evidence of a witness's "self-interest." *United States v. Abel*, 469 U.S. 45, 52 (1984).

HPE's required Tunney Act disclosure under 15 U.S.C. § 16(g), Dkt. No. 228, demonstrates that the discovery sought on HPE lobbyist engagement agreements, scope of work, and compensation is relevant to the Court's determination of whether it is in the public interest to enter the proposed final judgment. *See United States v. Microsoft Corp.*, 215 F. Supp. 2d 1, 18 (D.D.C. 2002) (the disclosures "serve primarily to assist the Court in assessing the public interest"). HPE's disclosure identifies Mr. Davis and Mr. Levi as people who "had in-person meetings, videoconferences, telephone calls, and written communications with officers and employees of the Department of Justice ('DOJ') relating to the proposed Final Judgment." Dkt. 228 at 2. And although HPE did not list Mr. Schwartz on their disclosure, public reporting has indicated that he lobbied on behalf of HPE. *See* Mot. to Intervene, at 5 & n.5, Dkt. 236-2 (Oct. 14, 2025); *see also* United States Resp. to Public Comments, Dkt. No. 311-6 at 3, 311-9 at 5 n.5, 311-8 at 5, 311-12 at 3 (Nov. 14, 2025) (Tunney Act comments questioning HPE's failure to disclose Schwartz in its required disclosures). The discovery into Mr. Schwartz is reasonably calculated to probe whether HPE has complied with its disclosure obligations. *See Microsoft*, 215 F. Supp. 2d at 18 (quoting S. Rep. No. 93–298, at 7 (1973))(Microsoft supplemented its required disclosure after the district court questioned its completeness, noting that "Congress determined that the disclosures would be useful since it is the 'few' improper communications between antitrust defendants and the government that 'cast doubt on the entire enforcement process'").

The requested discovery bearing on these lobbyists' pecuniary interest and relationship to HPE is highly relevant. For example, when the US filed its Complaint to block the merger, Mr. Davis initially praised the lawsuit, saying, "3 into 2? You must sue." Dkt. No. 236-2 at 5-6. However, he exhibited a remarkable turnaround after being hired by HPE, apparently successfully lobbying the DOJ to settle. The discovery is also foundational to the lobbyists' role in bringing

about this Settlement, and whether they earned "million-dollar success fees" for pushing a deal through. *See* Dkt. 236-2 at 5; Dkt. 311-11 at 6.

## II. Lobbyist Deposition Testimony Is Necessary.

HPE takes the position that no depositions should be allowed, as a threshold matter. That position is unfounded. The Tunney Act authorizes an array of tools to aid a court in its public interest determination. 15 U.S.C. § 16(e); *see id.* § 16(f). And the Court has decided to use such a tool: the "participation in proceedings before the court" by the States through "intervention as . . . part[ies] pursuant to the Federal Rules of Civil Procedure." *Id.* § 16(f)(3). "Because the [S]tates have been allowed to intervene as parties, they have the right to pursue discovery." Order Re: Tunney Act Review Process, at 3, Dkt. 350 (Dec. 31, 2025) ("12/31 Order") (citing Fed. R. Civ. P. 26(b)(1)); *see also* Tr. of 12/16/2025 Hr'g, Dkt. 349 at 10:11–13 (rejecting categorical preclusion of discovery for Tunney Act participants: "I'm authorized to impose whatever . . . proceedings under the federal rules I think are appropriate."). Under the Federal Rules, the right to discovery generally includes the right to, "by oral questions, depose any person, including a party, without leave of court." Fed. R. Civ. P. 30(a)(1); *see also* 15 U.S.C. § 16(f)(3) (authorizing "examination of witnesses or documentary materials"). And the Tunney Act authorizes fact-witness depositions, which are a critical discovery tool in our adversarial justice system. *See* 15 U.S.C. § 16(f)(3) (allowing for a person's "intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate[.]"). Indeed, in addressing the extent to which several (non-exclusive) topics fall within the scope of discovery into the Tunney Act issues, the Court placed no special restrictions on permissible discovery methods beyond Rule 26(b)(1)'s relevance and proportionality limits. 12/31 Order at 3–6.

Deposition testimony of key settlement insiders is necessary here. The testimony will aid the Court's determination as to whether an evidentiary hearing is needed. The testimony can preview for the Court what testimony would likely be offered at an evidentiary hearing. Or, alternatively, it may obviate the need for live witness testimony on some topics—or even any evidentiary hearing at all—if there is no dispute as to the testimony. For example, deposition testimony may narrow or eliminate fact disputes and show that no credibility issues require determination by the Court.

The testimony is also relevant to the merits of the Court's public interest determination, and is necessary here to fill in the gaps in the documentary record. We already know from HPE's disclosure that settlement discussions took place in meetings and calls, as to which there may not be documents memorializing what was discussed. In other words, if legally sophisticated DOJ officials and lobbyists avoided reducing inculpating information to writing (or if they have not preserved it), then HPE's position is that the States cannot discover it, and the Court cannot consider it in the pending determinations—no matter how powerful the evidentiary value may be. Such a subversion of this Tunney Act proceeding should be rejected.

Deposition testimony about the lobbyists' pecuniary interests, relationship to HPE, their role in the Settlement, and other information and documents HPE has agreed to produce is necessary and proportional to the needs of the case. The burden of the lobbyists providing such deposition testimony is no greater than potentially avoided testimony at an evidentiary hearing. *See, e.g., Musk v. Altman*, No. 24- 4722, 2025 WL 2960449, at *1 (N.D. Cal. Oct. 17, 2025), (ordering non-party to appear for *second* deposition after counsel repeatedly instructed him not to

answer questions regarding his pecuniary interest and relationship to the parties), *motion for relief from judgment denied sub nom.,* 2025 WL 3907740 (N.D. Cal. Oct. 31, 2025).

### III. The Attorney-Client Privilege and Attorney Work Product Doctrine Do Not Protect the Requested Discovery.

The attorney-client privilege is "narrowly and strictly construed . . . and the party asserting it bears the burden of proving that it applies." *In re California Bail Bond Antitrust Litig.,* 778 F. Supp. 3d 1051, 1057 (N.D. Cal. 2025).[1] "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*" *Id.* An attorney's advice does not constitute legal advice simply because it relates to regulatory activity. *Id.* at 1060. Moreover, lobbying advice is not legal advice. *Id.* at 1061-62. "[I]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of the lobbying efforts." *Id.* at 1061.

Where such a communication might have more than one purpose, the privilege only applies if "the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice," and it "protects only communications, and not underlying facts." *Id.* at 1057. Additionally, "where there was a clear business purpose in the environment in which the communications occurred, the party asserting the privilege bears the burden of establishing that *each* communication in question was made *primarily* for the purpose of generating legal advice." *Id.*

Here, HPE has not substantiated any claim of privilege as to the lobbyists. Although Mr. Davis and Mr. Levi are lawyers, HPE has not shown that they were retained for the purpose of providing legal advice. But HPE's disclosure, listing Mr. Davis and Mr. Levi as "advisors" rather than lawyers, suggests that they were not retained to provide legal advice. And it is unclear whether Mr. Schwartz is a practicing lawyer.

Moreover, engagement agreements, scope of work, and compensation, are not shielded by attorney-client privilege unless there is legal advice contained within the agreement or scope of work document. *See Clarke v. Am. Comm. Nat'l Bank,* 974 F.2d 127, 129 (9th Cir. 1992). This is HPE's burden to prove in any event, and they have not done so.

Similarly, the attorney work product doctrine does not shield this discovery either. "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared 'by or for another party or by or for that other party's representative.'" *ACLU of N. Cal. v. United States Dep't of Justice,* 880 F.3d 473, 484 (9th Cir. 2018) (quotation omitted). None of it is "work product"—it is merely the terms by which these lobbyists were engaged and how much they were paid. And Mr. Schwartz's work here appears to have been non-legal in nature, but instead related to a PR strategy about national security.

### HPE'S POSITION

As the Court noted, "the sole issue before [it] at this time is whether entry of the proposed final judgment is in the public interest as that term is used in the Tunney Act." ECF No. 350 at 3.

---

[1] Internal quotations and citations have been omitted each time *California Bail Bond Antitrust Litigation* is cited in this letter.

To assist in its Tunney Act determination, the Court has permitted the States to take "some limited amount of discovery" that is "appropriately targeted to the issues that are presented to [the Court]." Dec. 16 Tr. at 11:2–15; ECF No. 350 at 3.

The Court provided guidance regarding the types of discovery it would deem relevant to those issues, identifying: (1) the pretrial record, and (2) communications between HPE and DOJ. *Id.* at 5–6. HPE has already produced the pretrial record to the States, and it has agreed to produce documents and communications exchanged with DOJ, i.e., the "back and forth" between HPE (or its outside counsel and advisors) and DOJ about the settlement, including draft agreements.

The Court also provided guidance regarding the States' expressed intention to explore the settlement process itself. Relying on the text of the Tunney Act, the Court found that "the decision-making process that resulted in a proposed final judgment *may* be relevant in determining whether the judgment serves the public interest, *but primarily to the extent that process bears upon the adequacy of the proposed judgment*." *Id.* at 5 (emphasis added); *see also* Dec. 16 Tr. at 30:12–16 ("really the *only* provision [of the Tunney Act] that *sort of* relates to the process[,] as opposed to the consent decree itself[,] is consider[ation] [of] the anticipated effects of alternative remedies actually considered" (emphasis added)).

The States' discovery requests at issue here go far beyond the Court's guidance, seeking information about HPE's engagement and compensation of attorneys William Levi and Mike Davis, and advisor Arthur Schwartz—information that has no possible bearing on the Court's determination of the "adequacy of the proposed judgment" or the "anticipated effects of alternative remedies actually considered," and that in any event is privileged. The States also seek depositions of HPE and Messrs. Levi, Davis, and Schwartz, which are both unnecessary and unprecedented in the context of a Tunney Act proceeding.

HPE and Messrs. Levi, Davis, and Schwartz respectfully request that the Court sustain their objections to these discovery requests. [2]

## I. HPE's Engagement of Messrs. Levi, Davis, and Schwartz Is Irrelevant to the Court's Tunney Act Review and Protected by the Attorney-Client Privilege and Work-Product Doctrine

HPE retained attorney Mr. Levi (of Sidley Austin) as outside counsel to provide legal advice in this litigation. HPE then, through Mr. Levi, retained attorney Mr. Davis (of MRD law) and advisor Mr. Schwartz (of Axium Advisors) to also advise on the matter, including to aid and inform Mr. Levi, HPE's in-house, and HPE's other outside counsel in their rendering of legal advice to HPE. Mr. Levi and Mr. Davis were not hired in a "lobbying" capacity, as they are not lobbyists. Instead, HPE sought their input on HPE's ongoing strategy in this case, and their expertise in negotiating high-stakes settlements on clients' behalf. As attorneys working on behalf of HPE, they were provided with compensation and were expected to provide zealous advocacy on behalf of HPE, including by advocating for favorable settlement terms on behalf of HPE in

---

[2] Though they fail to mention it in this letter, the States have also sought HPE's privileged *internal* communications, including communications that have nothing to do with the merger, the settlement, or the Court's Tunney Act review. In total, to date, the States have served on HPE two sets of requests for production, totaling thirteen categories of documents; two sets of interrogatories, totaling ten interrogatories; and a Rule 30(b)(6) deposition notice seeking testimony on four different topics. And in addition to the deposition subpoenas served on Messrs. Levi, Davis, and Schwartz, the States served them each with a subpoena duces tecum seeking thirteen categories of documents. It seems abundantly clear that the States intend to push for wide-ranging discovery into issues that go well beyond the issues currently before the Court, and well beyond the guidance previously provided by the Court.

negotiations with DOJ. They also were expected to, and did, keep communications with HPE regarding their legal advice in this matter in confidence, including their engagement and scope of work documents. Mr. Levi in turn retained Mr. Schwartz to provide specialized advisory support relating to settlement strategy and the national security aspects of the merger, including analysis and strategic input designed to inform counsel's legal advice to HPE, and to assist counsel in developing, evaluating, and executing strategy in this matter. He, too, kept his engagement and scope of work documents in confidence. Accordingly, their work to help HPE settle this litigation is core, paradigmatic lawyering (Messrs. Levi and Davis) and advisory work in aid of such lawyering (Mr. Schwartz), and thus all of their internal communications with HPE's in-house and outside counsel are privileged and sacrosanct.

Nevertheless, the States claim that HPE's engagement of, and fees paid to, Messrs. Levi, Davis, and Schwartz are "highly relevant" to the *process* of how the settlement was reached. Putting aside that parties (let alone intervening parties) do not, as a general matter, get to rummage through the engagement agreements of their litigation opponents' counsel and advisors, as discussed earlier, the Court's prior guidance provided that any discovery into the settlement process should be tied to the adequacy of the proposed judgment and remedies actually considered. *See, e.g.*, Dec. 16 Tr. at 30:12–16. Nowhere do the States explain how the engagement of or payments to Messrs. Levi, Davis, and Schwartz are relevant to these issues.

At most, the States suggest that they need this information because it goes to the individuals' "bias." That is nonsensical. There is no dispute that HPE hired them during the course of this litigation to advise and act on its behalf, that they owe duties of loyalty and confidentiality to HPE, and that it would be a breach of such duties if they acted in any manner *other than* in HPE's best interests. The terms of their engagement agreements, including any amounts paid to them, have absolutely no bearing on the Court's Tunney Act determination, including the adequacy of the remedies. Their retention is no more remarkable (or relevant) than any company hiring and compensating outside counsel (and outside counsel in turn hiring additional experts or other advisors in aid of their rendering legal advice) to help the company navigate and resolve a litigation. Similarly, their services, including advocating for settlement terms in their client's best interest, are also unremarkable—that is what lawyers and those lawyers' advisors are expected and required to do. In any event, the Court previously informed the States that its focus on so-called "influence-peddling … fall[s] largely outside the scope of the Tunney Act." ECF No. 350 at 5.[3]

Moreover, even if details regarding the engagement of Messrs. Levi, Davis, and Schwartz were somehow relevant (they are not), such information is protected from disclosure by the attorney-client privilege and attorney work-product doctrine. As noted earlier, HPE retained Mr. Levi and Mr. Davis (both attorneys) as counsel, and Mr. Schwartz as an advisor, in connection with HPE's efforts to settle this litigation and to inform HPE's in-house and other outside counsel in their rendering of legal advice to HPE. Courts, of course, vigorously safeguard the confidences of communications between clients and their attorneys, but they also agree that communications involving a consultant (like Mr. Schwartz) hired by a lawyer (Mr. Levi) "made in confidence for

---

[3] The States also argue that the discovery "is reasonably calculated to probe whether HPE has complied with its disclosure obligations" as they pertain to Mr. Schwartz. But the States have not (and cannot) explain how this inquiry is relevant to a determination that the settlement is in the public interest, especially in light of the fact that HPE and Mr. Schwartz have agreed to produce any communications between Mr. Schwartz and the United States in their possession.

the purpose of obtaining legal advice from the lawyer" are protected by the attorney-client privilege. *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961)).

The Ninth Circuit has long recognized that "the services performed by the attorneys, retainer agreements, contracts, letters of agreement, and related correspondence" cannot be produced, because "this type of demand [is] an unjustified intrusion into the attorney-client relationship." *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982). This makes sense, since these types of communications would reveal "the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided," *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992), which are plainly protected against disclosure.

These protections include the information of non-attorney advisors where that information is created "at the attorney's request, in the course of an attorney-client relationship, for the purpose of advising and defending his clients." *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963). This is especially true where, as here, "a consultant is so intertwined with the attorney in a case, such that he is providing assistance in defending litigation and legal strategies in a manner similar to multiple attorneys working on a case at a law firm, the attorney-client privilege extends to those consultants." *Goldstein v. F.D.I.C.*, 494 B.R. 82, 89–90 (D.D.C. 2013). Relatedly, under the work-product doctrine, documents are "protected from discovery if they are prepared by or for a party or its representative in anticipation of litigation." *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016). "A party representative includes the party's attorney, consultant or agent." *Id.* Moreover, work product created *during* litigation "deserves [even] greater protection" than "work product produced prior to the filing of the lawsuit." *Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 476 (N.D. Cal. 2004).

Here, Messrs. Levi, Davis, and Schwartz were retained to advise HPE in this litigation, and their engagement and scope of work documents are plainly covered by the attorney-client privilege and as attorney work product. It is undisputed that Mr. Levi and Mr. Davis were retained as attorneys for the purpose of providing legal advice and representation to HPE in connection with this litigation, including evaluating claims and defenses, advising on litigation risk, developing strategy, and negotiating a potential resolution with the DOJ. Mr. Schwartz was retained directly by Mr. Levi to assist counsel in the provision of legal advice, by supplying specialized strategic and analytical support relating to settlement evaluation and the national security aspects of the merger, all for the purpose of advancing HPE's legal position in this litigation. These facts are undisputed, and any more granular detail the States seek regarding scope of work and tasks performed accordingly fall squarely within the attorney-client privilege and attorney work-product protections.

Accordingly, HPE requests that the Court sustain HPE's objections to the States' Interrogatory 1 and RFP 1, and prevent discovery into HPE's engagement of Messrs. Levi, Davis, and Schwartz. Similarly, Messrs. Levi, Davis, and Schwartz request that the Court sustain their objections to the first request in each of their respective document subpoenas.

## II.    Depositions Are Unprecedented, Unnecessary, and Not Proportional to the Needs of the Court's Tunney Act Review

The Court deferred its decision as to whether witness testimony was necessary, stating that it would decide that issue *after* briefing is complete on the Tunney Act review. ECF No. 350 at 2 ("After receiving the states' March 2, 2026, response, the Court will decide whether to hold such a[n evidentiary] hearing"); Dec. 16 Tr. at 5:14–18 ("if [the States] continue to oppose and I see an opposition, at that point I would make a determination as to whether there is a need for any kind of evidentiary hearing on the matter rather than making that determination at this time"). Seeking

to avoid the Court's sequencing, the States have served numerous deposition subpoenas, including on HPE and its Messrs. Levi, Davis, Schwartz.

The Court has not specifically authorized depositions, and depositions are unprecedented in a Tunney Act proceeding.[4]  In fact, the Court already rejected the States' request for expert depositions, and its rationale for doing so applies equally (if not more so) to non-expert, non-party depositions, such as of Messrs. Levi, Davis, and Schwartz.  Dec. 16 Tr. at 37:8–23.  The Court explained that there is no concern of "jury prejudice" in the Tunney Act process (which might otherwise be cause for allowing depositions ahead of an evidentiary hearing), and that "if I determine an evidentiary hearing is required, then [the States] can cross-examine any of the experts [or any other witness] at that hearing."  Dec. 16 Tr. at 37:10–16.  Thus, there is no risk of "jury prejudice" nor need to take "depositions beforehand in order to evaluate the validity of the testimony" in advance of a potential evidentiary hearing.  *Id.*

Nor are depositions necessary given the process the Court has prescribed for determining whether witness testimony is warranted.  Permitting depositions now, before the Court has reviewed the parties' submissions and determined whether there is a need for witness testimony would risk needless discovery disputes and burden the parties—and non-parties—with intrusive discovery that may never be relevant.

The proposed depositions also are not "targeted to the issues currently pending before the Court"—i.e., whether the proposed remedies are adequate and within the reaches of the public interest.  ECF No. 350 at 3.  Rather, the States propose to undertake unrestricted and open-ended depositions of HPE (and DOJ) lawyers and advisors on whatever topics they desire, which apparently includes inquiry into areas of privilege and matters unrelated to the issues before the Court.  What the States are proposing in the context of a "narrow" Tunney Act proceeding is inappropriate and unsupported, and will inevitably lead to numerous and ongoing discovery disputes.

For all these reasons, the Court should reject the States' attempt to take depositions in this proceeding.  If the Court concludes that it needs more information, and would like to hear from any witnesses, it can make that decision at a later time once it has received the parties' submissions.

To the extent the Court permits any deposition, HPE requests that the Court limit it to a 30(b)(6) deposition of HPE on the topics related to the proposed remedies, topics 3 and 4 in the Rule 30(b)(6) notice the States served on HPE.  *See* Ex. 3 (Topic 3: "The divestiture of Your Instant On business line as proposed in the Settlement."  Topic 4: "The license of AI Ops for Mist Source Code as proposed in the Settlement.").  HPE notes that the States have also served interrogatories and requests for production on these same topics, and HPE will be providing substantive responses and producing documents regarding these topics.  The States have failed to identify what other information they need that relates to the issues currently before the Court.

---

[4] Only once in the history of the Tunney Act has a court held an evidentiary hearing as part of its Tunney Act review of a merger case, in *United States v. CVS Health Corporation*.  But the circumstances that warranted an evidentiary hearing there, including over 100 comments and dozens from industry participants with concerns about the merger, are not present here.  *See United States v. CVS Health Corporation* et al., Case No. 1:18-cv-02340-RJL (D.D.C. Feb. 13, 2019), Dkt. 56.

Dated: January 26, 2026

PHILIP J. WEISER
Attorney General

*/s/ Arthur Biller*
ARTHUR BILLER *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
JONATHAN B. SALLET *(Admitted Pro Hac Vice)*
Special Assistant Attorney General
ROBIN ALEXANDER (*Admitted Pro Hac Vice*)
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
        Bryn.Williams@coag.gov
        Jon.Sallet@coag.gov
        Robin.Alexander@coag.gov

*Attorneys for the State of Colorado*


ROB BONTA
Attorney General of California

*/s/ Brian D. Wang*
PAULA L. BLIZZARD, Senior Assistant Attorney
General (SBN 207920)
MICHAEL W. JORGENSON, Supervising Deputy
Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN
284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400
Brian.Wang@doj.ca.gov

*Attorneys for the State of California*


WILLIAM TONG
ATTORNEY GENERAL

*/s/ Nicole Demers*

Nicole Demers (*pro hac vice application forthcoming*)
Deputy Associate Attorney General
Antitrust Section
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel.: (860) 808-5030
nicole.demers@ct.gov

*Attorneys for the State of Connecticut*

BRIAN SCHWALB
Attorney General of the District of Columbia

*/s/ Coty Montag*

Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*

ANNE E. LOPEZ
Attorney General

*/s/ Rodney I. Kimura*

RODNEY I. KIMURA *(Admitted Pro Hac Vice)*
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

*Attorneys for State of Hawaii*

KWAME RAOUL
Attorney General of Illinois

*/s/ Paul J. Harper*
*(Admitted Pro Hac Vice)*

ELIZABETH L. MAXEINER
*(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*


COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

*/s/ Anthony W. Mariano*
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for*
*Commonwealth of Massachusetts*


KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*
*(Admitted Pro Hac Vice)*

ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General

11

Antitrust Division

JON M. WOODRUFF
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*


LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*
*(Admitted Pro Hac Vice)*

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY McFARLANE
*(Admitted Pro Hac Vice)*
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
*(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust Bureau

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*


JEFF JACKSON
Attorney General of North Carolina

*/s/ Kunal J. Choksi*
*(Admitted Pro Hac Vice)*

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*


Dan Rayfield
Attorney General of Oregon

*/s/ Rachel K. Sowray*
Rachel K. Sowray *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
Timothy D. Smith *(Admitted Pro Hac Vice)*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR 97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

*Attorneys for State of Oregon*


NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Amy N. L. Hanson*
*(Admitted Pro Hac Vice)*

JONATHAN A. MARK *(Admitted Pro Hac Vice)*
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000

13

Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*

JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/Caitlin M. Madden*
Caitlin M. Madden *(Admitted Pro Hac Vice)*

Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*

Dated: January 26, 2025

*/s/ Sameul G. Liversidge*
Julie Elmer
Jennifer Mellott
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

Samuel G. Liversidge (CA No. 180578)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

*Attorneys for Defendant Hewlett Packard Enterprise Co.*