# EXHIBIT C

SAMUEL G. LIVERSIDGE (Bar No. 180578)
ERIC VANDEVELDE (Bar No. 240699)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and<br><br>JUNIPER NETWORKS, INC,<br><br>*Defendants.* | Case No. 5:25-cv-00951-PCP<br><br>**DECLARATION OF DR. NICHOLAS HILL**<br><br>Judge:           P. Casey Pitts<br>Action Filed:  30 January 2025 |

1

I, Nicholas Hill, declare as follows:

1. I am a Partner at Bates White Economic Consulting. I have personal knowledge of the facts set forth below, and, if called as a witness, I could and would testify to each of them under oath.

2. I have extensive experience applying economic principles to antitrust cases. Prior to working at Bates White, I served for three years as an Assistant Section Chief in the Economic Analysis Group of the US Department of Justice's Antitrust Division. In that role, I supervised teams of economists on a number of important antitrust enforcement actions. Prior to serving as Assistant Section Chief in the Antitrust Division, I was a staff economist at the Federal Trade Commission for a year and a half, and a staff economist at the Antitrust Division for seven years.

3. During my eleven years of government service, I worked on antitrust investigations and litigations related to a wide range of industries, including telecommunications, airlines, banking, casinos, health insurance, pharmaceuticals, and pulp and paper products. Since moving to the private sector, I have been retained by clients, both public and private, in a range of industries, including software, banking, chemicals, dairy, healthcare, oil-field services, pulp and paper products, and transportation equipment. I have testified seven times in Federal antitrust merger cases, on behalf of both federal government plaintiffs and defendants.

4. I was retained by Hewlett Packard Enterprise Co. ("HPE") in early 2025 to evaluate the likely unilateral competitive effects of its proposed acquisition of Juniper Networks, Inc. ("Juniper") (the "merger"), and to respond to two reports submitted by the Department of Justice's expert Dr. Marc Remer—one submitted 28 April 2025, and an errata report submitted 12 May 2025. My expert report was served on 19 May 2025. I gave deposition testimony in this litigation on 11 June 2025.

5. In preparing my report, I analyzed a wide range of materials, including data and documents from HPE, legacy Juniper, and third parties produced through discovery in the litigation, as well as legal filings, deposition transcripts and exhibits, academic articles, and publicly available data and information. The data upon which I relied included revenue, bookings, and opportunity (win/loss) data kept by HPE, legacy Juniper, and third parties in the ordinary course of business.

6. In my report, I concluded that the merger was unlikely to substantially increase concentration. I found instead that the merged firm's market share and the change in concentration due

to the merger either did not satisfy the so-called structural presumption or did so weakly. That is, I concluded that the market for enterprise-grade WLAN solutions in the United States would likely remain materially as competitive after the merger of HPE and Juniper as before. I described the state of the market in early 2025 further in my report and summarized it in my declaration filed with this Court on 9 December 2025.

7. Since submitting my report, I have further analyzed the third-party analyst data (from Dell'Oro) that I relied upon for market shares, and concluded that the market remains as materially competitive as it was prior to the merger. Specifically, I found that aside from the combination of HPE and legacy Juniper into a single entity, as of Q3 2025 (the latest period available) U.S. WLAN market shares have not changed materially.

8. HPE and Juniper have a combined share of 26 percent per the Dell'Oro North American WLAN revenue data for Q1–Q3 2025.[1] Compared to 2024, the merged firm's share increased from 24.7 percent to 25.5 percent. There was also growth for smaller players, such as Ruckus, which increased from 5 percent to 7 percent, and a decrease in share for Cisco, whose share fell from 54 percent in 2024 and 52 percent in 2025.

9. I concluded in my report that the merger was unlikely to substantially reduce competition. I reached this conclusion without considering remedies (e.g., divestitures). That is, I concluded that no remedy was necessary to preserve competition in the relevant market.

10. After my report was served and after I was deposed in this litigation, the United States, HPE, and Juniper nevertheless settled the case by agreeing to the two remedies that are the subject of this Tunney Act proceeding, the sale of the HPE Divestiture Assets (the "Divestiture") and the AI Ops for Mist Source Code License (the "License"), as those terms are defined in the Amended Proposed Final Judgment.

---

[1] In my report, I adjusted Ubiquiti's revenue values for Dell'Oro using the Ubiquiti revenue data. *See* Ex. 65, Hill Rep. at 142 (Appendix G.1), ECF No. 200-9. However, Ubiquiti revenue data for 2025 was not produced. To adjust the 2025 Dell'Oro data for Ubiquiti, I keep Ubiquiti's 2024 share constant for 2025 at 7 percent. Additionally, Dell'Oro North American WLAN revenue-based shares data for HPE and Juniper separately are only available through Q2 2025. HPE and Juniper's shares for Q1 and Q2 2025 are 17 percent and 9 percent, respectively.

11. A remedy can serve to create new competition or preserve existing competition. I concluded that no remedy was necessary in this case, as I did not believe that the merger was likely to materially reduce competition. Should the remedy create new competition, however, that new competition could benefit customers.

12. The enterprise-grade WLAN market has seen material repositioning by existing firms in the recent past. For example, Cisco bought Meraki in 2012. At the time of that acquisition, Meraki was focused on small and medium businesses. Over time, Cisco's investment in Meraki have made it and Catalyst (Cisco's other WLAN solution) leading players for both small and large businesses.[2]

13. Similarly, before Extreme Networks acquired it, Aerohive was a WLAN provider to small and medium businesses, and was among the first to bring enterprise-grade features to small and medium businesses.[3] Under Extreme's ownership, Aerohive (now part of the Extreme brand) has

---

[2] *See, e.g.,* Tom Hollingsworth, *Meraki Will Never Be a Large Enterprise Solution*, NETWORKING NERD (July 7, 2015), https://networkingnerd.net/2015/07/07/meraki-will-never-be-a-large-enterprise-solution/ ("[The] SMB/SME market has historically been the one that Meraki sells into better than anyone else."); Gina Narcisi, *Cisco Meraki Portfolio Is "Intentionally or Accidentally" A Winning Platform for MSPs*, CRN (June 1, 2022), https://www.crn.com/news/networking/cisco-meraki-portfolio-is-intentionally-or-accidentally-a-winning-platform-for-msps (describing a service provider customer "going big with Cisco Meraki as its leading offer within the firm's managed services practice, especially for SMB customers"); John Ciarlone, *Understanding the Cisco Meraki Acquisition and Its Impact*, HUMMINGBIRD NETWORKS (July 18, 2025), https://www.hummingbirdnetworks.com/articles/understanding-the-cisco-meraki-acquisition-and-its-impact (describing the transaction rationale for Cisco as, in part, "capture fast-growing SMB and mid-market segments), *with* Mark Haranas, *Cisco Beefs Up Meraki With New Cloud-Based Management, Now Pitching It To Enterprises*, CRN (Jan. 28, 2015), https://www.crn.com/news/networking/300075526/cisco-beefs-up-meraki-with-new-cloud-based-management-now-pitching-it-to-enterprises (quoting a Cisco executive's blog post that "we are not only seeing Meraki succeed in the midmarket, but in the enterprise space as well. … Our customers are not only deploying Meraki for Wi-Fi but as a broader network, security and mobility management solution.") ; *Compare* Hollingsworth, *supra* n.1, *with* Tom Hollingsworth, *Meraki Is Almost an Enterprise Solution*, NETWORKING NERD (Jan. 31, 2020), https://networkingnerd.net/2020/01/31/meraki-is-almost-an-enterprise-solution/ (describing "the little things that end up mattering … [to] being scalable," which is important to enterprise customers.)

[3] *See* Wayne Rash, *New Aerohive Access Points Simplify Mesh Network Setup for SMBs*, EWEEK (Feb. 7, 2017), https://www.eweek.com/networking/new-aerohive-access-points-simplify-mesh-network-setup-for-smbs/ ("The new series of wireless access points from Aerohive Networks is designed and priced to provide enterprise grade mesh networking to small and medium businesses that until now have had to either make do with consumer WiFi routers or go with expensive enterprise equipment that required IT support staff.").

expanded its customer base to large enterprises, winning contracts with major sports stadiums and large customers such as Kroger and FedEx.

14. Ubiquiti, meanwhile, has repositioned itself from being primarily a small and medium business and consumer vendor to a competitor for large enterprises. Ubiquiti has recently launched more advanced wireless access points directed at large enterprises, along with an all-new channel partner program directed at enterprise sales.[4]

15. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2 February 2026

_____
Dr. Nicholas Hill
Partner
Bates White Economic Consulting

---

[4] *See Ubiquiti Presents at Mobility Field Day 13*, THE FUTURUM GROUP, https://techfieldday.com/appearance/ubiquiti-presents-at-mobility-field-day-13/ (last visited Feb. 2, 2026).