The Hon. P. Casey Pitts
280 South 1st Street
Courtroom 8 – 4th Floor
San Jose, CA 95113

February 11, 2026

RE: *United States v. Hewlett Packard Enterprise Co., et al.*, No. 5:25-cv-00951-PCP (N.D. Cal.): Joint Letter Regarding Discovery Disputes Between the States and HPE

Dear Judge Pitts:

Intervenor States and Defendant Hewlett Packard Enterprise Co. ("HPE"), respectfully submit this Joint Letter Regarding Discovery Disputes Between the States and HPE. The States served a second set of discovery requests to HPE that contain requests related to potential interest and inquiries into the HPE Divestiture Assets or the AI Ops for Mist Source Code License, as those terms are defined in the Amended Proposed Final Judgment and Proposed Final Judgment.

The States' Request No. 4 calls for: "All documents concerning inquiries or interest in the HPE Divestiture Assets or the AI Ops for Mist Source Code License." Exhibit 1 is a copy of Intervenors' Second Set of Requests for Production to Defendant Hewlett Packard Enterprise Co. ("RFPs"). RFP 5 calls for: "All documents concerning Your efforts to market, sell, or advertise the HPE Divestiture Assets or the AI Ops for Mist Source Code License."

The States' Interrogatory No. 3 asks: "Identify all Persons who have indicated interest to You in the HPE Divestiture Assets." Exhibit 2 is a copy of Intervenors' Second Set of Interrogatories to Defendant Hewlett Packard Enterprise Co. ("Interrogatories"). Interrogatory No. 4 asks: "Identify all Persons who have indicated interest to You in the AI Ops for Mist Source Code License."

The Parties have met and conferred but have been unable to resolve disputes as to the relevance, proportionality, confidentiality, and burden of this discovery to the pending Tunney Act proceedings.

THE STATES' POSITION

I. **HPE Must Identify Potential Bidders.**

In response to RFP 4, HPE proposes to produce, in redacted form, the affidavits that it has submitted to the DOJ pursuant to the reporting requirements in the Proposed Final Judgment and Amended Proposed Final Judgment. *See* Amended Proposed Final Judgment at 20, Dkt. 311-2; Proposed Final Judgment at 18, Dkt. 217-1. Critically, HPE intends to redact the identities of the potential bidders or other interested parties. And HPE refuses to answer Interrogatory Nos. 3 and 4 that request the identities of those who have indicated interest in either HPE Divestiture Assets or the AI Ops for Mist Source Code License. HPE has no grounds to withhold the identities of these parties.

HPE's relevance objection is belied by their briefing in support of the Settlement. HPE argues that "the value of the AI Ops license . . . is demonstrated by the interest it has attracted—three bidders have already bid for the license with plans to use the assets to compete in the WLAN

1

market." HPE Stmt. in Support of The Motion for Entry of Final Judgment at 17, Dkt. 369. Although they admit that none of the bidders is a current competitor in the relevant market, they claim this "shows other players believe the license has competitive value." *Id.* HPE also argues that "Instant On's value has been validated by the interest it has garnered during the ongoing auction process," consisting of five bidders, only one of whom is a "WLAN Competitor." *Id.* at 19. HPE also submitted a declaration from an executive, John Sturz, that is entirely focused on the potential bidders and HPE's process for the auction of the divestiture and the license. *See* Sturz Decl., Dkt. 369-2.

HPE cannot tout the purported interest it has received and then shield the identities of those involved. The identity of the potentially interested parties cannot be separated from the viability and potential effectiveness (or lack thereof) of the proposed remedies in the Settlement. HPE and the United States assert that the divested and licensed assets can be used to restore competition in the relevant market—that claim depends at least in part on *who* may get those assets to evaluate how the assets might be used. Indeed, courts routinely scrutinize proposed buyers when evaluating whether a divestiture would restore the competition lost from a merger. *See FTC v. Kroger Co.*, No. 2024 WL 5053016, at *24, 28-30, (D. Or. Dec. 10, 2024) (citations omitted) (explaining that courts evaluating divestitures look at several factors, including "experience of the divestiture buyer" and "independence of the divestiture buyer from the merging seller" and rejecting divestiture due to "serious concerns" about divestiture buyer's ability to "successfully compete against the proposed merged business"); *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 64-74 (D.D.C. 2017) (thorough evaluation of divestiture buyer, including history of trying to compete in relevant market). The United States and HPE recognized the importance of the identity of any divestiture buyer or licensee because the Settlement gives the United States the right to reject a proposed buyer or licensee. *See* Dkt. 311-2 at 18-19.

HPE's objections of proportionality and burden are unavailing. HPE has already agreed to produce the affidavits, and is taking on a greater burden than necessary by applying redactions. And there are a limited number of affidavits, as HPE is only required to submit an affidavit once every 30 days. *See id.* at 20.

HPE's confidentiality concerns about the auction process likewise fail. HPE can designate the materials Highly Confidential, and the interested parties can avail themselves of the protections afforded to non-parties under the terms of the protective order in this case. The States are government enforcers, not competitors—there is no competitive risk in disclosing the bidders here. Nor will the disclosure of these identities to the States somehow interfere with the auction process, as HPE suggests. If the assets are as valuable as HPE says—valuable enough to replace the competition lost due to this merger—then the bidders should remain committed even if the States know who they are.

## II.   HPE Must Produce Communications with Potential Bidders.

RFP Nos. 4 and 5 call for documents related to interest and inquiries received by HPE, and HPE's efforts to market and sell the proposed divestiture and license. Besides the affidavits discussed above, HPE has agreed to provide a management presentation and pre-tax P&L for Instant On made available to parties interested in the divestiture, and a software overview presentation made available to parties interested in the license. The States have also requested, however, that HPE produce any substantive communications it has had with potentially interested parties, such as those containing additional information provided to those parties, or containing

follow-up questions and answers about the proposed divestiture or license.

These documents are relevant because they can provide additional information about the assets involved and how they might be deployed by a potential purchaser. They are also necessary to test the assertions being made by HPE about the auction process and level of interest in the divestiture and license.

## HPE'S POSITION

In an effort to resolve this discovery dispute while protecting the integrity of live negotiations relating to the HPE Divestiture Assets and the AI Ops for Mist Source Code License (jointly, "the Assets"), HPE has offered to provide the States anonymized descriptions of the bidders and redacted substantive communications with the bidders, along with the redacted compliance affidavits.[1] HPE has also offered to make the unredacted materials available to the Court for *in camera* review, if it wishes, since it is the *Court's* (not the States') public interest determination to make. *See United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981); 15 U.S.C. § 16(f) (providing procedures that *the court* may use to get information bearing on *its* inquiry under the Tunney Act). The States have rejected these compromises and, confirming HPE's concerns, reserved the right to contact and serve third-party discovery on the bidders, which would disrupt the ongoing negotiations and potentially impair the very remedies agreed to by the parties and which the Court is now charged with evaluating.

The States' request to compel production of the identities of bidders and potential bidders in a live auction process in response to RFP Nos. 4 and 5 and Interrogatories 3 and 4 should be denied as not proportional to the needs of these Tunney Act proceedings.

**The Discovery Is Not Proportional To the Needs of this Tunney Act Proceeding.**

The States have been granted intervention for the limited purpose of participating in this Tunney Act proceeding. ECF No. 332 at 12. The States are permitted to seek discovery only to the extent it "assist[s] the Court in evaluating whether the proposed Final Judgment serves the public interest." ECF No. 350 at 2 (quoting ECF No. 332 at 11). The information requested by the States is not proportional to that purpose because it threatens the integrity of the ongoing remedy process set forth in the Amended Proposed Final Judgment ("APFJ"), ECF No. 311-2. *See* Fed. R. Civ. P. 26(b)(1) ("whether the burden or expense of the proposed discovery outweighs its likely benefit" informs the assessment of whether discovery is proportional).

The fact that all current bidders and most potential bidders have signed non-disclosure agreements ("NDAs") with HPE that protect even the existence of the negotiations reflects the sensitivity and confidential nature of the information the States seek. Compelling the discovery of the identities and other details regarding the auction participants while the process is still ongoing risks derailing progress made to date on the auction process, including active negotiations with current interested parties. Given the States' refusal to commit to refraining from contacting

---

[1] Section VI of the Proposed Final Judgment, ECF No. 217-1, and Section VII of the Amended Proposed Final Judgment, ECF No. 311-2 require HPE to provide affidavits to the DOJ every 30 days that contain, among other things, descriptions of its communications with potential bidders for the Assets. Ultimately, the United States must approve the buyer of each Asset. *See* ECF No. 311-2, at §§ IV.1.A, V.1.A.

or issuing discovery to actual or potential bidders, there is a substantial risk that bidders will have a negative reaction in response to their exposure to discovery. Existing bidders, who may not want to be caught up in the States' adversarial discovery efforts in this matter, may revise or withdraw their offers, or other potential bidders may refrain from bidding altogether.[2]

Courts' application of the business strategy doctrine in the live corporate takeover setting is instructive in analyzing the proportionality of the States' request for this information, which has limited relevance given that no bidder has yet been selected. Rooted in principles of proportionality, the doctrine temporarily shields from discovery a party's strategies relating to ongoing negotiations while those negotiations are live. *Musk v. Altman*, 2025 WL 2602289, at *3 (N.D. Cal. Sept. 9, 2025) (citing *Matter of Heizer Corp.*, 1987 WL 19560 (Del. Ch. Nov. 9, 1987)); *see also BNS Inc. v. Koppers Co.*, 683 F. Supp. 454, 457−58 (D. Del. 1988); *Temple Holdings Ltd. v. Sea Containers Ltd.*, 131 F.R.D. 360, 361 (D.D.C. 1989); *Stena Fin. B.V. v. Sea Containers Ltd.*, 131 F.R.D. 361, 362−63 (D.D.C. 1989). Applying this doctrine requires a "fact-specific and time-sensitive inquiry," balancing "the interests of the litigant who needs the documents to prepare for trial and the interests of the litigant who seeks to protect its" sensitive strategic information. *Musk*, 2025 WL 2602289, at *2 (quotation omitted).

HPE respectfully submits that the principles underlying the business strategy doctrine apply to the auctions at the heart of the remedy set forth in the APFJ and should shield details relating to the bidders and potential bidders from disclosure to the States until the purchaser and licensee of the Assets have been selected. *See id.* at *3 ("[C]ourts have also applied the business strategy doctrine . . . outside of the context of corporate takeovers.") (collecting cases); *Gioia v. Texas Air Corp.*, 1988 WL 18224, at *3 (Del. Ch. Mar. 3, 1988) (shielding sensitive information under the business strategy doctrine from disclosure even to opposing counsel under a protective order). HPE's "ongoing negotiation with [bidders] is the sort of live transaction that triggers the policy concerns that animate the business strategy doctrine." *Musk*, 2025 WL 2602289, at *3; *see also Stena Fin. B.V.* at 362 (denying motion to compel discovery with respect to third-party negotiations concerning the sale of company's assets when those negotiations were "not yet a 'done deal'"). The auctions are "significant negotiation[s]" and "currently in progress." *See id.*; Decl. of Jonathan R. Sturz ("Sturz Decl.") ¶ 4, ECF No. 369-2; APFJ at §§ IV.1.A, V.1.A., ECF No. 311-2 (directing, in relevant part, sale and license of the Assets to close within five days after notice of entry of final judgment).

The burden on HPE—as well as on the third-party bidders and potential bidders who will be prematurely exposed to discovery when none has yet been selected as purchaser or licensee of the Assets—outweighs the States' claimed need for bidder and potential bidder identifying details. Although the States argue that there is no competitive risk because they themselves are not bidders, HPE's concern that disclosure of bidders' identities and details of "ongoing negotiations" will undermine its ability to successfully conclude those negotiations is well-founded. *See Heizer*, 1987 WL 19560, at *3; *see also BNS Inc.*, 683 F. Supp. at 456 (noting that "Plaintiff concedes that the *identities* of third parties with whom [Defendant] is negotiating are protected by the [business strategy doctrine]," and accordingly excluded that information from its discovery request). NDAs require HPE to notify current and potential bidders that their identities must be disclosed and materials produced to the States. This alone risks a chilling effect on the ongoing remedy process,

---

[2] Should the Court desire further information regarding the chilling effect of the States' proposed discovery, HPE is prepared to submit a declaration regarding the risks to the ongoing auction process.

and is not the type of harm the existing protective order will prevent. *See Gioia*, 1988 WL 18224, at *3 (recognizing that protective orders do not "provid[e] absolute protection," particularly where "it is apparent that [the intervention] is part of a larger dispute").

The States already have more than sufficient information to assist the Court in its public interest review. *See Bechtel*, 648 F.2d at 666. They have more material than the Court possessed for the merits trial, including the pretrial briefing, proposed findings of fact and conclusions of law, trial exhibits, full deposition transcripts, expert reports and documents cited therein, and expert backup data. HPE has also produced or shortly will produce settlement communications with DOJ, business presentations and financial information sufficient to show how it has marketed the Assets, and substantive interrogatory responses. The States will soon depose HPE, several of HPE's lawyers and advisors, and former DOJ officials. The States have not shown that they need details about a bidding process that has not concluded to participate in the Tunney Act proceeding. Descriptions of the bidders, in addition to the substance of HPE's communications with them, should be sufficient for the States to participate in this proceeding. The bidders' actual identities hardly move the needle compared to risks of compromising the bidding process.

The cases cited by the States are inapplicable, as neither was a Tunney Act case or one involving an ongoing, confidential auction process. Rather, both were merits determinations under Section 7 of the Clayton Act where the merging parties had agreed up front to divest certain assets to divestiture buyers of their choosing. *See FTC v. Kroger Co.*, No. 2024 WL 5053016, at *24−30, (D. Or. Dec. 10, 2024); *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 59−60 (D.D.C. 2017). Here, no buyer or licensee has been chosen and HPE remains open to additional bids. Sturz Decl. ¶ 4. Additionally, HPE has offered to provide the States with anonymized descriptions of the bidders and make available to the Court the identities of bidders and potential bidders *in camera*, to the extent the identities of bidders and potential bidders that have not yet been selected are relevant.

HPE's compromise proposal balances the States' need for discovery to participate in the Tunney Act proceedings with HPE's need to protect the integrity of active negotiations in furtherance of the remedy. The States' request for anything further should be denied.

Dated: February 11, 2026

PHILIP J. WEISER
Attorney General

*/s/ Arthur Biller*
ARTHUR BILLER *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
BRYN A. WILLIAMS
First Assistant Attorney General (SBN 301699)
JONATHAN B. SALLET *(Admitted Pro Hac Vice)*
Special Assistant Attorney General
ROBIN ALEXANDER *(Admitted Pro Hac Vice)*
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
           Bryn.Williams@coag.gov

Jon.Sallet@coag.gov
Robin.Alexander@coag.gov

*Attorneys for the State of Colorado*

ROB BONTA
Attorney General of California

*/s/ Brian D. Wang*
PAULA L. BLIZZARD, Senior Assistant Attorney General (SBN 207920)
MICHAEL W. JORGENSON, Supervising Deputy Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN 284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400
Brian.Wang@doj.ca.gov

*Attorneys for the State of California*

WILLIAM TONG
ATTORNEY GENERAL

*/s/ Nicole Demers*
Nicole Demers (*pro hac vice application forthcoming*)
Deputy Associate Attorney General
Antitrust Section
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel.: (860) 808-5030
nicole.demers@ct.gov

*Attorneys for the State of Connecticut*


BRIAN SCHWALB
Attorney General of the District of Columbia

/s/ Coty Montag
Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*

ANNE E. LOPEZ
Attorney General

/s/ Rodney I. Kimura
RODNEY I. KIMURA *(Admitted Pro Hac Vice)*
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

*Attorneys for State of Hawaii*

KWAME RAOUL
Attorney General of Illinois

/s/ Paul J. Harper
*(Admitted Pro Hac Vice)*

ELIZABETH L. MAXEINER
*(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

7

*Attorneys for State of Illinois*

COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

*/s/ Anthony W. Mariano*
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for*
*Commonwealth of Massachusetts*


KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*
*(Admitted Pro Hac Vice)*

ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General
Antitrust Division

JON M. WOODRUFF
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*


LETITIA JAMES
Attorney General of the State of New York

8

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*
*(Admitted Pro Hac Vice)*

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY McFARLANE
*(Admitted Pro Hac Vice)*
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
*(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust Bureau

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*


JEFF JACKSON
Attorney General of North Carolina

*/s/ Kunal J. Choksi*
*(Admitted Pro Hac Vice)*

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*



Dan Rayfield
Attorney General of Oregon

9

/s/ Rachel K. Sowray
Rachel K. Sowray *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
Timothy D. Smith *(Admitted Pro Hac Vice)*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR  97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

*Attorneys for State of Oregon*


NICHOLAS W. BROWN
Attorney General of Washington

/s/ Amy N. L. Hanson
*(Admitted Pro Hac Vice)*

JONATHAN A. MARK *(Admitted Pro Hac Vice)*
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*


JOSHUA L. KAUL
ATTORNEY GENERAL

/s/Caitlin M. Madden
Caitlin M. Madden *(Admitted Pro Hac Vice)*

Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street

Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*

Dated: February 11, 2026

*/s/ Julie S. Elmer*
Julie Elmer
Jennifer Mellott
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

Samuel G. Liversidge (CA No. 180578)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
SLiversidge@gibsondunn.com

*Attorneys for Defendant Hewlett Packard Enterprise Co.*