The Hon. P. Casey Pitts
280 South 1st Street
Courtroom 8 – 4th Floor
San Jose, CA 95113

February 20, 2026

**RE:** *United States v. Hewlett Packard Enterprise Co., et al.*, No. 5:25-cv-00951-PCP (N.D. Cal.): Discovery Disputes Between Roger Alford and HPE

Dear Judge Pitts:

The States' entire basis for intervening in this action and seeking unprecedented discovery regarding the settlement negotiation process is the public speech of Mr. Roger Alford, a former lawyer at the U.S. Department of Justice ("DOJ"). In that speech, Mr. Alford claimed that the HPE-Juniper merger was a "scandal," and asserted that some of the DOJ officials who settled the case "perverted justice and acted inconsistent with the rule of law." ECF No. 236-2, Ex. A at 3. Mr. Alford did not provide any explanation or factual support for this accusation. But he expressed his hope that his statements would somehow be relevant to the Tunney Act. *Id.* at 3-4. The States jumped at the opportunity, presenting a public comment that relies on and attaches Mr. Alford's speech (and references Mr. Alford over twenty times) (*see* ECF No. 236-2 & Ex. A), and filed a motion to intervene that quoted extensively from Mr. Alford's speech and claimed his speech was the basis for intervention. ECF No. 236 at 1-2, 4-6. And in argument before this Court, the States have pointed to Mr. Alford's speech and his subsequent Congressional testimony (where he repeated his accusations) as the *sole* factual support for their claim of "misconduct" here. 2/2/26 Tr. at 49:15-21.

The States have made Mr. Alford's accusations the centerpiece of their objections. However, Mr. Alford is now refusing to provide HPE with *any* discovery regarding those accusations. He has served objections refusing to produce *any* documents about (1) the merger or settlement, (2) his communications with the States, (3) his Congressional testimony, and (4) his speech. *See* ECF No. 395, Ex. 2, Attch. A (discovery requests, which Mr. Alford has refused to respond to). He claims that his "relevant knowledge consists solely of facts that he may be able to provide from the time that he was working at the DOJ," and so any documents he has from after he left the DOJ are irrelevant. ECF No. 395 at 2. This position is nonsensical. His speech and Congressional testimony are purportedly *about* "the time that he was working at the DOJ." And any documents communications he has about his accusations—which, again, are accusations purporting to be based on what happened *while he was at the DOJ*—are obviously relevant, regardless of whether those documents are dated from after he left.

Mr. Alford has also reneged at the eleventh hour on his agreement (made several times) to testify at a deposition on February 23. His unilateral decision to cancel his deposition came shortly after the February 17 case management conference with the Court and appears to be an attempt to support the States's position and goals in this proceeding. At the February 17 conference, the States suggested that the Court should delay the schedule so that they could revisit their challenge to privilege and also brief any disputes they had with the DOJ's *Touhy* letters. The Court denied the States' request to extend the hearing date, while revising the briefing schedule—making HPE's reply brief due on March 16, and giving the States an opportunity to file a sur-reply (addressing

new discovery) on March 20.  Following the conference, on the evening of February 17, HPE received an email from Alford's counsel stating that "[i]n light of the disputes below and the need to seek the Court's guidance concerning the permissible scope of testimony, we will need to reschedule the deposition. Mr. Alford is traveling internationally for several weeks beginning Feb 25 but is available the week of March 16."  ECF No. 395 at 26.  This was the first time that Alford indicated he would not appear for his deposition on February 23.

HPE explained that Mr. Alford had already agreed to appear on February 23 and that the week of March 16 would not work because HPE's reply brief was due on March 16.  *Id.* at 25.  Mr. Alford's counsel then said they had conferred with the States and the States would agree to push back the deadline for HPE's reply brief to accommodate the March 16 deposition.  *Id.* at 22.  This proposal is not reasonable insofar as it causes significant and unnecessary delay, threatening the current schedule, and would allow the States to use Mr. Alford's testimony however they wish in their March 20 brief while preventing HPE from responding.  HPE then offered to take Mr. Alford's deposition remotely on March 4, 5 or 6, but Mr. Alford rejected it; instead, Mr. Alford's counsel offered to have him return early from his travel on March 13 (shortly before HPE's reply brief is due), but did not explain why he could not appear remotely a week earlier.  *Id.* at 20-21.

HPE has sought to be reasonable notwithstanding this scheduling gamesmanship, but it is (1) seeking to maintain the current schedule and hearing date and (2) entitled to defend itself against the very allegations that form the sole basis for the States' objection to the settlement.  To be clear, HPE does not believe Mr. Alford is relevant to the Tunney Act.  If the States were not relying on Mr. Alford, HPE would have no reason to seek discovery from him.  But as long as the States continue to pursue his testimony and rely on his accusations—and treat him as their star witness— HPE is entitled to understand the facts that purportedly underlie those accusations and also probe his credibility and bias.  If the States are allowed to elicit testimony from Mr. Alford about his accusations regarding the settlement, then HPE must be allowed to discover what Mr. Alford said to others about those accusations when he made them.  And HPE should not be prejudiced by having to wait until immediately before its reply brief is due to obtain his testimony (or postpone its reply brief to a few days before the hearing), particularly when Mr. Alford did not raise any issue with the timing of his deposition for months.  HPE should also not be forced to try to guess how the States might try to use their star witness's testimony in their briefing.  Instead, Mr. Alford should be deposed before the States' brief is due on March 9, so HPE can respond to the States' arguments on March 16.  For all of these reasons, Mr. Alford's objections should be overruled, and he should be obligated to sit for his deposition.

## BACKGROUND TO THIS DISPUTE

In December 2025, the States emailed subpoenas to Mr. Alford, asking him to testify and produce documents concerning the merger.  In response, Mr. Alford said his documents were with the DOJ but agreed to testify on February 23, 2026.  On February 9, 2026, after the Court determined that depositions would be appropriate in this case, HPE served its own subpoena in order to ask questions at the February 23, 2026 deposition, and also served four document requests, asking Mr. Alford to produce documents regarding (1) the merger and settlement; (2) communications with the States; (3) his Congressional testimony; and (4) his August 18 speech.  ECF No. 395, Exs. 1 & 2.

Mr. Alford did not immediately respond; on February 10, the States told HPE that Mr. Alford had counsel, who agreed to accept service of the subpoena on February 11. On February 12, HPE's and Mr. Alford's counsel met and conferred, and Mr. Alford's counsel suggested that he would object to the 3rd and 4th topics of the subpoena. However, his counsel also confirmed he would attend the February 23 deposition, as he had agreed. HPE's counsel followed up by email to explain that HPE intended to file a letter briefing regarding topics 3 and 4 and asked for confirmation that he was not objecting to the other topics; Mr. Alford's counsel said he might object to topic 2, but did not commit to object (or not). ECF No. 395 at 28-31.

On February 17, the Court held a hearing on the States' request to extend the hearing deadline. The Court declined to change the hearing date but adjusted the briefing schedule so that the States' brief would be due on March 9 and HPE's brief would be due on March 16. That evening, Mr. Alford's counsel suggested, for the first time, that Mr. Alford would not appear at his deposition on February 23, and that he was travelling until March 16. ECF No. 395 at 26. Mr. Alford's counsel also emailed objections to all four of HPE's document requests, despite previously stating that he objected to only two of them. *See id.* HPE responded that evening that Mr. Alford had agreed to appear on February 23 and the week of March 16 would not work because HPE's reply brief was due on March 16. *Id.* at 25.

Mr. Alford's counsel did not respond until the evening of February 18, when his counsel emailed a portion of a letter brief asking to delay the deposition and protect Mr. Alford from producing any documents. *Id.* at 23-24. Over the course of February 19, HPE and Mr. Alford's counsel exchanged emails regarding alternative approaches to the deposition; HPE suggested a remote deposition on March 4, 5, or 6, and Mr. Alford's counsel suggested either that HPE's reply brief be delayed by a day or two, or that Mr. Alford return early from his travels to be deposed on March 13. *Id.* at 20-22. Mr. Alford's counsel did not explain why he could not be deposed remotely on March 4, 5 or 6.

## ARGUMENT

### I. The Deposition Should Not Be Postponed.

The only emergency here is of Mr. Alford's own making. Despite agreeing to the February 23 deposition date months ago, and despite his counsel re-confirming that date last week, Mr. Alford first asked to delay his deposition on the evening of February 17. If Mr. Alford had some issue with the February 23 deposition date, he could have chosen not to agree to it, or at least asked to reschedule it long ago. Instead, he stayed silent until Tuesday evening—after the States suggested they needed more time to raise challenges to privilege and *Touhy* issues during the case management conference—and then asked that his deposition be pushed off. Mr. Alford's delayed request to reschedule his deposition should be denied—or Mr. Alford's testimony should not be allowed in this proceeding at all.

Mr. Alford's explanations for why he did not think to raise this issue until now do not withstand scrutiny. Mr. Alford says he must reschedule his deposition because there is a dispute regarding whether he must produce documents. ECF No. 395 at 4. But HPE is willing to proceed with his deposition without documents. Mr. Alford also says there is "uncertainty" about "the DOJ's document production, its privilege log, and ... deliberative process privilege" (*id.*), but the DOJ's

3

production and log has nothing to do with Mr. Alford—and the Court has already addressed the deliberative process privilege. Mr. Alford says he requires guidance regarding the DOJ's *Touhy* objections. *Id.* But the DOJ's *Touhy* letter was sent on February 11 (before Mr. Alford's counsel reconfirmed he would appear on February 23), and, in any event, the DOJ's and States' *Touhy* dispute does not impact Mr. Alford.

Mr. Alford also claims he needs clarity regarding the "scope" of his deposition (ECF No. 395 at 4), but he is not a 30(b)(6) witness designated for particular topics, and he agreed to be deposed by the States without any limitation on "scope." Moreover, his argument that the "scope" of his deposition should be limited to "facts that he may be able to provide from the time that he was working at the DOJ" (*id.*)—and that HPE should be prevented from asking any questions about anything he said to anyone *after* he left the DOJ—does not make sense. If Mr. Alford talked to others about what occurred *while he was at the DOJ*, those conversations are obviously relevant to the veracity and credibility of his accusations—regardless of whether those conversations happened *after* he left the DOJ. Indeed, Mr. Alford's public statements attacking the HPE-Juniper settlement—which he made *after* he left the DOJ—are purportedly based on what happened while he was *at* the DOJ, and are the basis for the States' intervention. What Mr. Alford said to others about his statements (and *why* he made them) are highly relevant to his credibility and bias. Further, documents show that Mr. Alford had a phone call with the States about his testimony; HPE is entitled to ask him about any communications with the States and what they discussed.

HPE will of course accommodate minor scheduling issues, but the current record shows that Mr. Alford is seeking to evade his deposition and prejudice HPE's ability to respond to his public statements. Those public statements form the entire basis for the States's objection in these proceedings. If the States agree not to rely on Mr. Alford's testimony in this Tunney Act process, in either their briefing or in any subsequent hearing or proceeding, then HPE will not need to depose him or seek any discovery from him. But the States have treated Mr. Alford as their star witness since the beginning of this proceeding, and they apparently intend to make his testimony a focal point of their sur-reply—a brief to which HPE will not have any opportunity to respond. For months, Mr. Alford represented that he would appear for his deposition on February 23. Then, after the States said they wanted to pursue and revisit scope and privilege—and after the Court adjusted the briefing schedule—Mr. Alford unilaterally pulled the plug on his deposition. HPE has offered reasonable alternative deposition dates, but it should not be subject to the States' and Mr. Alford's manipulation of the process.

## II. If Mr. Alford Is Allowed To Testify, He Should Produce Discovery

Mr. Alford has taken the position that he will not produce documents or communications that post-date his employment at the DOJ. He says his relevance "relevant knowledge consists solely of facts that he may be able to provide from the time that he was working at the DOJ," and so anything he said *after* he left the DOJ is irrelevant. ECF No. 395 at 2. And Mr. Alford maintains he has no materials from his tenure at the DOJ, so Mr. Alford is refusing to produce *any* documents. This makes no sense. HPE is entitled to discover anything Mr. Alford said "from the time that he was working at the DOJ"—including anything he told others about the public accusations he made in his speech and Congressional testimony—even if he made those statements after he left the DOJ.

To be sure, HPE's position has always been that Mr. Alford is irrelevant. He had no substantive involvement in the litigation or settlement. His after-the-fact accusations are devoid of any factual

4

support or explanation. If he was a witness to anything, it would have been internal DOJ discussions, which are not only privileged but irrelevant to whether the settlement was in the public interest. Nevertheless, the States have relied entirely on Mr. Alford to support their participation in this proceeding. They have even argued that his speech and Congressional testimony forms the evidentiary basis for their claims. 2/2/26 Tr. at 49:13-21. And Mr. Alford agreed with the States to sit for a deposition (and even had a phone call apparently to discuss his testimony).

Given that the States are relying on Mr. Alford's accusations (with Mr. Alford's encouragement and cooperation), HPE is entitled to probe the veracity of those accusations and Mr. Alford's bias. His post-DOJ statements—including his public speech and Congressional testimony—purport to be *about* his time at the DOJ, and are the very statements the States relied on when intervening in this proceeding. And anything he said to others about those statements—including what he based them on, and *why* he made them—bears on his veracity and bias. The States cannot repeatedly quote from and rely on Mr. Alford's accusations—and elicit his testimony about what supposedly transpired that supports those accusations—if HPE is not even allowed to probe what Mr. Alford revealed in unguarded communications about those accusations.

Mr. Alford's objections to document production should be overruled. Again, HPE does not believe Mr. Alford is relevant, and if the States were to cease relying on him and seeking his testimony, HPE would have no reason to seek discovery from him. But HPE should not be forced to defend against his public accusations without any ability to obtain discovery about those statements.

Dated: February 20, 2026

*/s/   Sam Liversidge*
Samuel G. Liversidge (CA No. 180578)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

Julie Elmer
Jennifer Mellott
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant Hewlett Packard Enterprise Co.*