SAMUEL G. LIVERSIDGE (Bar No. 180578)
ERIC VANDEVELDE (Bar No. 240699)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:25-cv-00951-PCP |
| *Plaintiff*, | |
| v. | **HEWLETT PACKARD ENTERPRISE CO.'S OPPOSITION TO REQUEST TO HOLD EVIDENTIARY HEARING** |
| HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC., | |
| *Defendants*. | |
| | Judge:         P. Casey Pitts |
| | Action Filed: January 30, 2025 |

The States were permitted unprecedented discovery in this proceeding—they received many thousands of pages of documents, including the entire pre-trial record and all the back-and-forth settlement proposals and other exchanges, and took eight depositions, including of multiple former DOJ officials, HPE's Chief Operating & Legal Officer, HPE's President & General Manager of the HPE networking business, two of HPE's outside lawyers, and another HPE consultant. Not a single witness or document supported the States' (false) insinuations about "corruption" or a "secret" side agreement—an issue they spent untold hours trying (but failing) to substantiate during discovery. In its opposition brief, the States now shift to a series of unfounded and irrelevant side-shows, based on gross distortions of the evidence, which HPE will fully address in its reply. But one thing is clear: there is no need for an evidentiary hearing.

The States suggest that a hearing might be held to hear from two experts (*see* Opp. to PFJ at 50)—an economist Dr. Shapiro, who simply repeats and adopts the DOJ's arguments from its pretrial brief regarding the merits; and a computer science professor, Dr. Ranganathan, who completely misstates and inaccurately describes the features included in the Mist AI Ops for WLAN source code and the license for that source code.[1] But the States have already submitted over 100 pages of material from Dr. Shapiro and Dr. Ranganathan, and do not explain what more they would say at a hearing. To be sure, the States completely stonewalled discovery into these individuals—refusing to answer even basic questions, such as identifying their names, or even the type of expert the States planned to rely on—in a clear effort to jam HPE (and the DOJ) and prevent them from responding to the experts' submissions in the week provided for preparing reply briefs. Nevertheless, HPE is prepared to and will respond to these submissions by next week, when its reply brief is due. There is no reason to hold a hearing to hear the States' experts repeat their reports.

The only other basis the States offer for a hearing is to hear from Roger Alford (*see* Opp. to PFJ at 50), the disgruntled DOJ political appointee who gave a speech claiming that two senior DOJ officials with oversight over the DOJ antitrust division, Chad Mizelle and Stanley Woodward,

---

[1] Although the States claim that Dr. Ranganathan is an expert in AI Ops, he has never worked in the networking industry and has no apparent experience in enterprise networking products or AI Ops for WLAN architecture. His only apparent work or research experience is in cybersecurity.

somehow "perverted justice and acted inconsistent with the rule of law" when negotiating the settlement. But Mr. Alford has never provided any factual support for this claim—and he has still not provided any, even after the States spent over 4 hours taking his deposition as a friendly witness. His deposition revealed exactly what HPE has said from the beginning: Mr. Alford has no knowledge of anything, and was almost entirely uninvolved in the settlement negotiation process. Mr. Alford attended a *single* meeting—where he did not participate substantively—and otherwise did not communicate with HPE at all about the settlement. Mr. Alford's testimony consisted almost entirely of repeating what he claimed *others* told him. And Mr. Alford does not identify a shred of evidence that Mr. Mizelle or Mr. Woodward did anything wrong in negotiating and approving the final settlement—much less "perverted justice and acted inconsistent with the rule of law." Mr. Alford's actual complaint with Mr. Mizelle and Mr. Woodward is that they overruled him and approved a settlement that he—and, allegedly, his friend, Abigail Slater (who was the then-head of the antitrust division)—disagreed with, despite the fact that Ms. Slater signed the settlement agreement on behalf of the DOJ. Mr. Alford's ego was apparently wounded by being overruled by senior DOJ officials, but that does not have any relevance to whether the settlement is in the public interest. And there is no need to hear further from a non-witness with zero personal knowledge of any relevant facts who has already had hours of time to air his grievances—and presented nothing of substance.

Simply put, there is no reason to hold a hearing. The States have had every opportunity to present whatever they wish—and have been granted unprecedented and sprawling discovery, which has caused this Tunney Act proceeding to balloon into an extraordinarily burdensome and costly undertaking.

And the costs are increasing, as the States have engaged in (at best) extraordinarily reckless misconduct that has compromised the integrity of this proceeding, violated the Protective Order, and destroyed the secrecy of the auction process for the remedies. As HPE has warned, the efficacy of the remedies is dependent on maintaining a secret bidding process, to ensure bidders are not intimidated into withdrawing their bids as a result of harassment caused by their involvement in this case. In addition, in the underlying case, HPE, Juniper, and numerous third parties disclosed sensitive business information, which they designated as confidential and highly confidential in order

to avoid competitive harm. But when filing their brief and voluminous exhibits, the States failed to seal the vast majority of their filings—including well over a hundred confidential and highly confidential communications and internal documents, exhibits revealing the identities of every bidder and details of several bids in the auction process, and information from the underlying case designated confidential and highly confidential by third party customers and competitors. Although HPE immediately insisted that the States take action to seal this material as soon as HPE realized it was public, the material was available on the public docket from the evening of March 9 through the morning of March 10. As a result, reporters obtained these hundreds of documents and have now begun asking HPE representatives and attorneys for comment on them, and indicated they intend to publish articles based on the improperly disclosed documents. The States claim their serious breach of the Protective Order was inadvertent, but the speed by which reporters accessed these documents raises questions as to how they were alerted that these filings—which included docket notations claiming (incorrectly) they were "under seal"—were in fact public. At a minimum, the States' extreme recklessness has compromised the auction process—as well as forced HPE to reach out to third parties regarding the disclosure of their confidential information, expending additional attorney time and forcing HPE employees to work to address these breaches. (Indeed, one bidder has already expressed concern to HPE and asked to know exactly what information was disclosed—which unfortunately includes the bidder's confidential bid letter (containing the amount it bid) and related communications.) None of this is okay. Nor is it defensible. HPE is investigating what action to take to defend its rights and remedy this breach, assuming it even can be remedied.

In short, there is no need to prolong this process, and no need for an evidentiary hearing that would only serve to further multiply the burden and expense of this Tunney Act proceeding—and further undermine the policy of promoting consent decrees as a less costly means of resolving antitrust cases. 119 Cong. Rec. 24,598 (1973) (stmt. of Sen. Tunney) ("The court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent process.").

Dated: March 11, 2026

By: */s/ Samuel Liversidge*

Samuel G. Liversidge
*Attorney for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*

Samuel G. Liversidge (Bar No. 180578)
Eric Vandevelde (Bar No. 240699)
Daniel Nowicki (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

Stephen Weissman (*pro hac vice*)
Michael J. Perry (Bar No. 255411)
Kristen C. Limarzi (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
SWeissman@gibsondunn.com
MJPerry@gibsondunn.com
KLimarzi@gibsondunn.com

Julie S. Elmer (*pro hac vice*)
Jennifer Mellott (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
eric.mahr@freshfields.com
jennifer.mellott@freshfields.com

Justina K. Sessions (Bar No. 270914)
**FRESHFIELDS US LLP**
855 Main St
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

*Attorneys for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*