SAMUEL G. LIVERSIDGE (Bar No. 180578)
ERIC VANDEVELDE (Bar No. 240699)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

HENRY C. SU (CA Bar # 211202)
Senior Litigation Counsel
U.S. Department of Justice, Antitrust
Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 705-6338
Email: henry.su@usdoj.gov

ELIZABETH S. JENSEN (CA Bar
# 302355)
Assistant Civil Chief, San Francisco Office
JEREMY M. GOLDSTEIN (CA Bar
# 324422)
MICHAEL G. LEPAGE (DC Bar
# 1618918)
Trial Attorneys
U.S. Department of Justice, Antitrust
Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 229-2934
Email: jeremy.goldstein@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE CO. and<br><br>JUNIPER NETWORKS, INC,<br><br>*Defendants.* | Case No. 5:25-cv-00951-PCP<br><br>**ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS**<br><br>Judge:         P. Casey Pitts<br>Action Filed:    January 30, 2025 |

Plaintiff United States of America ("United States") and Defendant Hewlett-Packard Enterprise Co. ("HPE") (together, the "Parties") file this consolidated Administrative Motion to File Under Seal Certain Tunney Act Briefing Materials ("Motion") pursuant to the Joint Stipulation Regarding Modification of Civil Local Rule 79-5 for Tunney Act Briefing, As Modified, Dkt. 415 ("Joint Stipulation").  Appendix A to this Motion identifies the information that the Parties seek to seal.  HPE submits the Declaration of Robert Particelli ("Particelli Declaration") and the United States submits the Declaration of Henry Su with this Motion in support of their respective sealing requests.

## BACKGROUND

The United States filed its Motion for Entry of Final Judgment on January 5, 2026, Dkt. 351, and HPE filed a Statement in Support on February 2, 2026, Dkt. 369.  On March 6, 2026, the Court entered the Joint Stipulation providing that the Parties would file a Consolidated Sealing Motion concerning the treatment of confidential information contained in or submitted with any opposition to the United States' Motion for Entry of Final Judgment, and the United States' and HPE's reply briefs (together, "Tunney Act Briefing").  Dkt. 415 ¶ 4.[1]  The Intervenor States filed their Opposition to the Motion for Entry of Final Judgment and supporting exhibits on March 9, 2026.  Dkt. 417.  The United States and HPE filed reply briefs and supporting exhibits on March 16, 2026.  *See* Dkt. 438 & 436.[2]

The Parties' arguments in support of fully or partially sealing materials identified in Appendix A to the Proposed Order submitted herewith are set forth below.

## I.   JOINT STIPULATION

The Parties and the Intervenor States, *see* Dkt. 236, stipulate that all personal email addresses and personal phone numbers will be redacted from the Tunney Act Briefing materials, even if these items are not highlighted in the Consolidated Sealing Motion's proposed redactions.

---

[1] For the Intervenor States' sur-reply, if any, "the Parties shall jointly file any remaining Party-specific confidentiality issues in a Second Consolidated Sealing Motion to be filed on March 27, 2026, following the same procedure set forth in paragraph 4."  Dkt. 415 ¶ 5.

[2] The Parties have cited in their briefs various materials that the Court has previously sealed, *see* Dkt. 224, and which do not require a subsequent motion to seal, *see* L.R. 79-5(b) ("A party need not file a motion to seal if a federal statute or a prior court order in the same case expressly authorizes the party to file certain documents (or portions of documents) under seal.").

1

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

The Parties and the Intervenor States, *see* Dkt. 236, stipulate that the identities of the divestiture bidders and the amounts of the bids will be sealed.

## II.    HPE'S MOTION TO SEAL

The "compelling reasons" standard applies to the information submitted concerning the Court's ultimate public interest determination under 15 U.S.C. § 16(e).  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (discussing when "compelling reasons" standard applies).  In applying the "compelling reasons" standard, courts balance "the competing interests of the public and the party who seeks to keep certain judicial records secret."  *Id.* at 1097 (quotation omitted).  Courts seal confidential business information under this standard when disclosure of such information "might harm a litigant's competitive standing."  *Id.* (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  Sealable business information includes "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other" similar materials.  *In re Apple Inc. Device Performance Litig.*, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019).

Many of materials identified in Appendix A reflect competitively sensitive HPE information concerning: i) pricing and discounting, ii) forward-looking strategic planning and analyses, iii) product development plans; and iv) the ongoing bidding processes for the HPE Divestiture Assets and the AI Ops for Mist Source Code License, as those terms are defined in the Amended Proposed Final Judgment, Dkt. 311-2 (the "Bidding Processes").  As described below and in the attached Particelli Declaration, disclosure of this information would place HPE at a competitive disadvantage vis-à-vis both its competitors and its customers and harm the public's interest in the efficacy of the settlement between HPE and the United States in this action.  HPE has maintained the confidentiality of the information it seeks to seal, and its requests are narrowly tailored such that there is no less restrictive alternative to sealing or redacting the information at issue.  HPE also incorporates by reference the reasoning that it and Defendant Juniper Networks, Inc. (together, "Defendants") previously provided for sealing information identified in certain trial exhibits, *see* Dkt. 136-2, 145-2, that are also exhibits

to Tunney Act Briefing.[3]  HPE seeks the same proposed redactions for these documents as Defendants sought for trial.

Pricing and Discounting: Certain information identified in Appendix A reflects competitively sensitive pricing and discounting information, including customer-specific pricing justifications and detailed financial metrics related to pricing and discounting.  Recognizing that the disclosure of such competitively sensitive information can cause a party harm, courts in this District routinely grant motions to seal such information.  *See, e.g.*, *Cont'l Auto. Sys. v. Avanci, LLC*, 2019 WL 6612012, at *4 (N.D. Cal. Dec. 5, 2019) ("[C]ourts in our circuit have found sales data and customer identities to be sealable, to the extent that information is kept confidential."); *Lawson v. Grubhub, Inc.*, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("compelling reason[s]" to seal may include "pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage" (quotations omitted)).

As set forth in the Particelli Declaration, HPE actively seeks to maintain the confidentiality of its pricing and discounting strategy and metrics.  Particelli Decl. ¶ 4.  The disclosure of this highly confidential and sensitive information would cause injury to HPE.  *Id.* ¶¶ 6-9.  Networking vendors like HPE compete to win customers based on a variety of factors, including price and discounts.  *Id.* ¶¶ 7-8. Systematic disclosure of HPE's pricing and discounting strategy across opportunities would enable competitors to use that information to undercut HPE in existing or future opportunities.  *Id.* ¶ 9. Maintaining this information's confidentiality cannot be avoided through less restrictive alternatives than what HPE has proposed here.

Forward-Looking Strategic Planning and Analyses: Certain information identified in Appendix A contains HPE's confidential forward-looking strategic business plans and analyses, the disclosure of which would provide HPE's competitors unfair insight into its ongoing and future competitive strategy, including select aspects of its strategy following the acquisition of Juniper. Courts in this District recognize that there are compelling reasons to seal such information.  *See, e.g., Krieger v. Atheros*

---

[3] The Defendants' motions to seal information contained in trial exhibits, and highlighted versions of those documents containing the Defendants' proposed redactions to those documents, are currently under seal pursuant to the Court's Stipulated Order Granting Relief From Case Deadlines and Order to Seal.  *See* Dkt. 224 ¶¶ 2-3.

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

*Commc'ns, Inc.*, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011) (sealing a presentation that contained "discussions of business strategy[] and competitive analyses"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2018 WL 6002319, at *1 (N.D. Cal. Nov. 15, 2018) (approving the sealing of information that "prevent[s] competitors from gaining insight into the parties' business model and strategy") (citation omitted).

As reflected in the Particelli Declaration, HPE actively seeks to maintain the confidentiality of its forward-looking strategy. Particelli Decl. ¶ 4. Disclosure of forward-looking strategic business planning and analyses would effectively provide HPE's competitors a roadmap for how HPE plans to compete in the future with respect to technical innovations, marketing, and its larger networking portfolio (including products not at issue in the litigation). *Id.* ¶ 10. Such disclosure would also permit competitors to develop business strategies to duplicate, undercut, or otherwise counter HPE's commercial performance. *Id.* ¶¶ 11-14. Maintaining the confidentiality of this information cannot be avoided through less restrictive alternatives.

Product Development Plans: Certain materials identified in Appendix A contain HPE's confidential forward-looking product development plans. Courts in this District recognize that there are compelling reasons to prevent the disclosure of product development plans and technical details related to products that are not yet introduced or released to the public. *Apple Inc. Device Performance*, 2019 WL 1767158, at *2 ("Courts applying the compelling reasons standard have upheld the sealing of trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing."); *Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*, 2024 WL 4894852, at *2 (N.D. Cal. Nov. 26, 2024) (finding compelling reasons to seal information that would reveal "technical features, components, and design of [party's] unreleased platform").

As set forth in the Particelli Declaration, HPE actively seeks to maintain the confidentiality of its product development plans. Particelli Decl. ¶ 4. Networking vendors compete based on, *inter alia*, the innovations they seek to bring to market. *Id.* ¶¶ 15-16. Disclosure of HPE's product development plans, including the timeline for product development, would allow HPE's competitors to refocus their own research and development efforts to duplicate, undercut, or otherwise counter HPE's innovation.

4

*Id.* Even if any given product development plan concerns a limited piece of technology, the systematic disclosure of this information would similarly give competitors a roadmap for how HPE plans to compete in both the near- and long-term future. *Id.*

Bidding Information: Certain materials identified in Appendix A reflect confidential and competitively sensitive information relating to the ongoing, confidential Bidding Processes. "[C]ompelling reasons exist to seal" information "that, if published, may harm" a party's "competitive standing and divulges terms of confidential contracts [or] contract negotiations." *FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019); *see Synchronoss Techs.*, 2018 WL 6002319, at *3 ("[T]he Court finds that there are 'compelling reasons' to seal those portions [of documents] because they appear to disclose confidential negotiations and business strategies."); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (concluding compelling reasons exist to seal "financial terms [and] details of confidential licensing negotiations"). Because the Bidding Processes, which are still live, are at the heart of the remedy at issue in this Tunney Act Proceeding, the public has clear interest in their integrity and efficacy.

HPE has strictly maintained, and actively seeks to maintain, the confidentiality of information relating to the Bidding Processes in order to preserve the competitiveness and integrity of the auctions and maximize the effectiveness of the remedy central to the settlement. Particelli Decl. ¶ 18. Public disclosure of the identities of bidders and potential bidders, the amounts of bids, and other details regarding participants in the Bidding Processes would jeopardize the integrity of the Bidding Processes. *See id.* ¶¶ 19-20. Disclosure of such information could undermine progress made to date in securing bids and damage HPE's relationships with bid participants. *See id.* ¶ 19. Public disclosure of bidder identities and bid amounts could undermine the competitiveness of the Bidding Processes by providing bidders and potential bidders access to the confidential bids of others. *Id.* ¶ 20. Public disclosure of details regarding the Bidding Processes may also deter bidders and potential bidders from participating, thereby undermining the effectiveness of the remedy set forth in the APFJ. *Id.* ¶ 21

HPE respectfully requests that the Court seal the materials identified by HPE in Appendix A for the reasons stated in Appendix A, herein, and in the Particelli Declaration.

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

### III.   UNITED STATES' MOTION TO SEAL

Pursuant to Civil Local Rules 7-11 and 79-5 and the Parties' Joint Sealing Stipulation, Dkt. No. 415, the United States respectfully moves the Court to seal narrowly tailored portions of the Tunney Act Briefing relating to the United States' ongoing divestiture auction and settlement communications.

### A.  Legal Standard

Judicial records are generally sealed in the Ninth Circuit if there are "compelling reasons" for doing so. *See e.g. Apple Inc. v. Rivos, Inc.,* No. 22-CV-02637-PCP, 2024 WL 748394, at *2 (N.D. Cal. Feb. 23, 2024). Although there is a strong presumption in favor of access to court records, the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citing *Foltz v. State Farm Mut. Auto. Ins.* Co., 331 F.3d 1122, 1135 (9th Cir. 2003)). There are compelling reasons to seal documents if "'court files might . . . become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)).

### B.  Argument

The United States seeks to seal two specific, highly sensitive categories of non-public information: (a) information relating to the ongoing divestiture auctions; and (b) confidential information relating to the United States' settlement process. Ninth Circuit courts routinely hold that these categories of information satisfy the compelling reasons standard and warrant sealing. *See e.g., Hadley v. Kellogg Sales Co.*, 2019 WL 12495009, at *2 (N.D. Cal. Dec. 12, 2019) (finding compelling reasons to seal "business strategies and plans for future products"); *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (finding compelling reasons to seal "business information that might harm a litigant's competitive standing"); *Celgard, LLC v. Targray Tech. Int'l Inc.,* No. 19-CV-02401-VKD, 2019 WL 3841997, at *2 (N.D. Cal. Aug. 15, 2019) (finding compelling reasons to seal confidential settlement communications).

The United States has narrowly tailored its requests by redacting only the specific portions of

the briefs implicating these issues, leaving the vast majority of the material available for public review.[4] Sealing this information preserves the integrity of the divestiture auction and the United States' settlement process, while preserving the public's ability to understand the nature of the proceedings and the factual bases for the Parties' arguments. As discussed in the attached declaration of Mr. Su, public disclosure of this information could cause significant competitive harm to auction participants and to the United States' ability to use antitrust settlements as an enforcement tool. *See* Su Decl. ¶ 4.

### C. Auction Materials

Twenty-three of the materials the United States seeks to seal include information relating to the ongoing Instant On and Juniper Mist AI source code divestiture auctions. Pursuant to the amended proposed Final Judgment, the United States is responsible for monitoring HPE's auction of the divestiture assets. Su Decl. ¶ 5. Thus, the United States is evaluating the auction bidders' intent and capability to compete effectively with the HPE Instant On divestiture assets or the Mist AIOps source code in the United States market for enterprise-grade WLAN solutions. *See* Dkt. 311-2 at 19. The viability of this competitive auction depends on the identities, bid amounts, and information surrounding the competing bidders remaining confidential. Su Decl. ¶ 7. The information the United States seeks to seal includes only the bidder identities, their current business plans, the final number of bidders, the identities of companies that chose not to bid, bid amounts, and future-looking business strategies of both bidders and non-bidders. Maintaining the confidentiality of this information is essential for the integrity of the auction.[5] Su Decl. ¶¶ 6-7.

Disclosure of this auction information would irreparably damage the auction's competitive process and harm third-party business plans. This is an ongoing, confidential auction with non-binding bids. Bidders can still adjust or withdraw their bids based on the information revealed in these filings, and thus publicizing the bidder information would destroy the very nature of the auction itself. Su Decl.

---

[4] The only documents the United States seeks to seal entirely involve draft settlement documents, auction affidavits, and confidential email chains with auction bidders and non-bidders. The United States only seeks to seal 20 full documents out of the 258 documents filed in this Tunney Act briefing.

[5] This Court has previously acknowledged the importance of keeping bidder identities and communications confidential. *See* Hr. Tr. Feb. 17, 2026 at 13:5-16.

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

¶ 7. Ninth Circuit courts have consistently found that damage to competitive processes is a compelling reason to support sealing. *See e.g. Lawson v. Grubhub, Inc.*, No. 15-CV-05128, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("[S]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal") (citation omitted); *cf. In re Qualcomm Litig.*, No. 17-cv-00108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) ("The Ninth Circuit has explicitly recognized that compelling reasons exist for the sealing of 'pricing terms, royalty rates, and guaranteed minimum payment terms' of license agreements.") (citing *In re Elec. Arts, Inc.*, No. 08-74426, 298 Fed. Appx. 568, 569 (9th Cir. Oct. 28, 2008)).

The United States further seeks to protect third-parties' future competitive business strategies by sealing future business plans of both bidders and non-bidders, who discussed their future business plans as part of the United States' due diligence investigation in the auction. Su Decl. ¶¶ 8–9. Ninth Circuit courts have consistently found that disclosure of future business plans is a compelling reason to support a seal. *See, e.,g., Synchronoss Techs., Inc. v. Dropbox Inc.,* No. 16-cv-00119-HSG, 2018 WL 6002319, at *1 (N.D. Cal. Nov. 15, 2018) (approving the sealing of information that "prevent[s] competitors from gaining insight into the parties' business model and strategy.") (citation omitted).

Finally, disclosure would damage the integrity of the divestiture processes in future consent decrees. The United States is overseeing this auction and thus has an obligation to maintain fairness and confidentiality for the current bidders who trusted it with highly sensitive information about their businesses. Su Decl. ¶ 9. If the United States failed to protect that trust, it would harm the auction, those firms, their customers, and also impede the United States from overseeing future divestiture auctions. *Id.* ¶ 11. Accordingly, the United States has actively and diligently sought to maintain the confidentiality of this auction. *Id.* ¶ 7. Unsealing this information would damage those efforts and impact the auction, the bidders, and the United States' oversight abilities.

### D.  Settlement Process Materials

Thirty of the materials the United States seeks to seal include information relating to the United States' settlement process. This information includes confidential settlement communications, settlement negotiations, and draft settlement terms. This information is routinely sealed in N.D. Cal under the compelling reasons standard. *See e.g., Milliner v. Mut. Sec., Inc.*, No. 15-CV-03354-DMR,

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

2021 WL 2645794, at *5 (N.D. Cal. June 28, 2021) ("Numerous courts in this district have recognized the importance of protecting confidential settlement communications and materials 'in order to promote settlement' and have concluded that this general policy satisfies the more demanding 'compelling reasons' standard") (collecting cases); *In re Volkswagen 'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2020 WL 2425792, at *4 (N.D. Cal. May 12, 2020) (finding "compelling reasons" to seal "proposed settlement terms and actual settlement negotiations").

Confidentiality fosters settlement, and courts "have long recognized the general policy of protecting settlement negotiations and communications in order to promote settlement." *Celgard*, 2019 WL 3841997 at *2 (finding "compelling reasons" to seal confidential settlement communications). Indeed, the Tunney Act was also not intended to discourage settlement. *See* 119 Cong. Rec. 24,598 (daily ed. July 18, 1973) (statement of Sen. Tunney) ("[I]t is most important that the consent [judgment] be preserved as a viable settlement option."). Public disclosure of internal settlement communications that were provided with the expectation of confidentiality, however, would discourage future settlements. Future parties will be discouraged from engaging in the settlement process, the United States' ability to candidly negotiate will be impaired, and the United States' future antitrust enforcement abilities as a whole will be weakened. *See* Su Decl. ¶ 11. Sealing settlement communications will ensure that this Tunney Act proceeding does not become a "vehicle for improper purposes" with statements made by the United States or defendants as part of the negotiations taken out of context and misconstrued to promote public scandal, rather than to discuss their relevance, if any, to the adequacy and competitive impact of the proposed final judgment. *See Kamakana*, 447 F.3d at 1179; *Four in One Co. v. S.K. Foods*, L.P., No. 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *2 (E.D. Cal. Aug. 14, 2014) (sealing settlement communications under the "compelling reasons" standard as, "settlement negotiations in this action, if accessed by the public, have the potential of being used, for example, to gratify public spite or promote public scandal."); *See* Su Decl. ¶ 12.

### E. Conclusion

The United States respectfully requests that the Court seal the material identified by the United States in the proposed order for the reasons stated in this Motion and the Declaration of Mr. Su.

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING MATERIALS, Case No. 5:25-cv-00951-PCP

Dated: March 19, 2026

*/s/ Julie S. Elmer*
Julie S. Elmer[6] (*pro hac vice*)

Samuel G. Liversidge (Bar No. 180578)
Eric Vandevelde (Bar No. 240699)
Daniel Nowicki (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

Julie S. Elmer (*pro hac vice*)
Jennifer Mellott (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*

Dated: March 19, 2026

*/s/ HENRY C. SU*
HENRY C. SU (CA Bar # 211202)
Senior Litigation Counsel
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 705-6338
Email: henry.su@usdoj.gov

ELIZABETH S. JENSEN (CA Bar # 302355)
Assistant Civil Chief, San Francisco Office

JEREMY M. GOLDSTEIN (CA Bar # 324422)
MICHAEL G. LEPAGE (DC Bar # 1618918)
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102

---

[6] Pursuant to L.R. 5-1(i)(3), the filer attests that each other signatory has concurred in the filing of this document and has authorized this filing.

10

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING
MATERIALS, Case No. 5:25-cv-00951-PCP

Telephone: (415) 229-2934
Email: jeremy.goldstein@usdoj.gov


*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

11
ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN TUNNEY ACT BRIEFING
MATERIALS, Case No. 5:25-cv-00951-PCP