G. CHARLES BELLER (DC Bar 1645076)
HENRY C. SU (CA BAR 221202)
JEREMY M. GOLDSTEIN (CA Bar 324422)
MICHAEL G. LEPAGE (DC Bar 1618918)
United States Department of Justice, Antitrust Division
450 Golden Gate Ave., Room 10-0101
San Francisco, CA 94102
gregory.beller@usdoj.gov
henry.su@usdoj.gov
jeremy.goldstein@usdoj.gov
michael.lepage@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE CO. and JUNIPER NETWORKS, INC. <br><br> *Defendants*. | Case No. 5:25-CV-00951-PCP <br><br> **PLAINTIFF UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE DECLARATIONS AND PROFFERED TESTIMONY OF STATES' PROPOSED EXPERT WITNESSES** <br><br> Judge: Hon. P. Casey Pitts <br><br> Hearing: March 23, 2026 |

The States resorted to gamesmanship by refusing to confirm that they had retained potential experts—and worse, failing to disclose even their identities, let alone anything about the scope of their opinions—until the States filed those experts' declarations concurrently with their opposition brief. After the United States served interrogatories seeking this basic information necessary to litigate on an expedited timeline, mirroring the disclosure required under the Federal Rules, the States objected to these interrogatories, and stood on their objections even *after* they submitted the experts' declarations. Although the Court ruled that expert depositions were unnecessary, nothing in the Court's ruling modified, and the United States did not waive, its right to timely expert disclosures. The States' failure to provide timely answers to these interrogatories unfairly prejudiced the United States by limiting the United States' ability to address the experts' opinions, such as by retaining its own experts in support of a response to the States' experts in the United States' reply brief, which was due seven days later. The States' sandbagging should not be rewarded. Moreover, the opinions of the proffered experts, Carl Shapiro and Aanjhan Ranganathan, are unhelpful to the Court and inadmissible under Federal Rule of Evidence 702, which requires expert opinions to be relevant and reliable. Accordingly, at the March 23, 2026 hearing, the United States will move the Court to exclude the declarations of Dr. Shapiro and Prof. Ranganathan and to decline to permit Dr. Shapiro to testify at the hearing.[1]

## **BACKGROUND**

After the States were permitted to intervene for the narrow purpose of opposing entry of the amended proposed Final Judgment under the Tunney Act, the Court resolved a dispute about whether to permit expert discovery. The States proposed three full rounds of expert reports and discovery, akin to preparation for a full trial on the merits, while the United States objected to any expert involvement. *See* Dkt. 337 (Dec. 9, 2025 Joint Case Management Statement), at 7–9, 12, 19–21. At the December 2025 case management conference, the Court ruled that expert submissions would be allowed, but that a full expert discovery period with depositions was unnecessary. *See* Dec. 16, 2025 Hr'g Tr. at 36:25–37:23 ("I don't know that setting a full expert – mini expert discovery process, including depositions, is

---

[1] The United States understands the Court's March 13, 2026 order directing the States to "ensure that Dr. Carl Shapiro is available" to testify "should the Court determine during the morning's argument that hearing from him would be of use to the Court" to indicate that the Court has already concluded that it would not benefit from hearing from Prof. Ranganathan. Dkt. 431. If the States nonetheless seek to call him despite that order, the Court should also not permit his testimony for the reasons herein.

entirely necessary."). The Court also reserved decision on whether experts could testify at the Tunney Act hearing set for on March 23, 2026, but anticipated allowing cross-examination if they did. *Id.*

To be able to respond to any States' expert through potential rebuttal experts or through cross-examination, the United States served the States with three interrogatories: (1) identify any experts, (2) indicate the subject matter on which those experts would present evidence, and (3) summarize the facts and opinions of those experts expected to be offered. *See* Ex. 1 (Pl.'s First Set of Interrogatories to Intervenors). These simple requests—served nearly a month-and-a-half ago on February 9, 2026—mirror the established requirements of Federal Rule of Civil Procedure 26(a)(2).

The States objected and entirely refused to answer these interrogatories. *See* Ex. 2 (Intervenors' Responses and Objections to Plaintiff United States of America's First Set of Interrogatories), at 4, 5 (objecting to identification of experts, subject matter, and facts and opinions).

Even as the States stonewalled the United States, they retained and worked with Dr. Carl Shapiro and Prof. Aanjhan Ranganathan to prepare their 50-page and 57-page declarations. Dr. Shapiro signed his declaration on March 6, and Prof. Ranganathan on March 8. Dkt. 417-1 & 417-2. The States served these declarations at 11:30 p.m., Pacific Time, on March 9, concurrently with their brief opposing entry of the amended proposed Final Judgment. Dkt. 417-1 to 417-3. This was the first time the United States ever had any knowledge about the experts and their opinions. Two days later, on March 11, the States answered United States' interrogatories for the first time, belatedly identifying Dr. Shapiro and Prof. Ranganathan as expert witnesses—at that point, a hollow formality. *See* Ex. 3 (Intervenors' Suppl. Responses to United States' Interrogatories). In total, the United States had only seven days to digest and respond to the opinions of the State's declarants in its reply brief.

In Dr. Shapiro's declaration, he opines that the United States had a strong case, that the amended proposed Final Judgment is inadequate, and that customers would be better off if the United States had chosen to litigate its case. *See* Shapiro Decl. ¶¶ 10–13 (summary of opinions). The final opinion—criticizing the United States' decision to settle—rests on a groundless counterfactual analysis in which he asserts that "litigating the merger is better for competition and customers if the probability that the DOJ would win the merger challenge is larger than the share of the harm to customers eliminated by the APFJ." *Id.* ¶ 121. The States' other expert, Dr. Ranganthan, criticizes various aspects of the "AI Ops for

–2–

Mist Source Code License." *See* Ranganathan Decl. ¶¶ 14–20 (summary of conclusions).[2]

## ARGUMENT

**I.    The States' Expert Declarations and Proffered Testimony Should Be Excluded**

The States' experts' opinions should be excluded for two independent reasons. *First*, in response to the United States' basic interrogatory requests for expert disclosure, the States chose to stonewall the United States and refused to answer the expert interrogatories until days after the States' brief was submitted—well after any reasonable time for expert disclosure. *Second*, the experts' proffered opinions fail to help the Court and are inadmissible under Federal Rule of Evidence 702 because (i) neither is relevant to the specific Tunney Act public interest question before the Court, and (ii) Dr. Shapiro's opinions concerning the Department of Justice's settlement decision are not a proper subject of testimony by an economic expert nor are they based on sufficient facts or a reliable methodology.

**A.    The States Experts' Opinions Should Be Excluded Because the States Failed to Timely Disclose Their Identities, Subject Matters, and Opinions**

Under the Federal Rules, a litigant "*must* disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). This is not optional—it is mandatory. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)).

The Ninth Circuit affords courts "particularly wide latitude" to exclude an expert as a remedy for failing to fulfill disclosure requirements. *Yeti by Molly*, 259 F.3d at 1106–07. Whether an untimely expert disclosure was "substantially justified" or "harmless" depends on: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

---

[2] The States' failure to provide timely expert disclosures was not their only abuse of the unprecedented discovery they received in this Tunney Act hearing. To name two examples, they used depositions of former senior Department of Justice officials to probe into irrelevant and harassing topics, and recklessly filed highly confidential documents about the pending divestiture auction on the public docket.

*Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191–92 (9th Cir. 2022) (citations omitted).

These factors reveal how the States have partaken in trial by ambush. The States surprised the United States by revealing the identity of their experts and their proffered opinions when they filed their brief in the middle of the night on March 9. With only a week to reply, the United States was prejudiced by the States' belated disclosure and had no chance to cure it. There is no doubt that the States made a calculated choice to hide the ball. The States' decisions to pocket the declarations for days after they had been signed and locked in then also to answer the interrogatories two days after disclosure confirm as much. Ultimately, the States' withholding of *all information* about their proposed expert opinions reeks of bad faith and readily justifies exclusion of those proffered experts under the Ninth Circuit standard.

**B.** **The States Experts' Opinions Should Be Excluded Because the Opinions Are Unhelpful and Inadmissible Under Rule 702**

The Court should decline to consider the opinions of Dr. Shapiro and Prof. Ranganathan for the independent reason that they do not comply with Rule 702 of the Federal Rules of Evidence. *See In re Rich Global, LLC*, No. 16-cv-00217-ABJ, 2018 WL 11536422, at *3 (D. Wyo. Nov. 30, 2018) (in bench trial "[t]he Court still must ensure . . . that the expert's testimony will be helpful to the trier of fact").

The United States has previously demonstrated that Dr. Shapiro's opinions are unhelpful because they fail to meet the threshold criteria of relevance—that it is more likely than not that his expertise will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). *See* Pl.'s U.S.'s Reply in Further Support of Entry of Final Judgment at 22, Dkt. 438 ("Reply Br.").

Dr. Ranganathan's declaration has the same deficiency. While he carps at the amended proposed Final Judgment on technical grounds, despite having zero experience in the networking industry, his marginal criticisms are not helpful to the Court in deciding whether the public interest standard of the Tunney Act is satisfied. As with Dr. Shapiro, they cannot and do not shed light on the Tunney Act question of whether the amended proposed Final Judgment is "within the reaches of the public interest." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981). Under the Tunney Act, "the Court's task is not to assess whether the proposed Final Judgment is perfect." *United States v. Deutsche Telekom AG*, No. 1:19-cv-02232-TJK, 2020 WL 1873555, at *7 (D.D.C. Apr. 14, 2020).

Dr. Shapiro's opinion finding fault with the United States' decision to settle this case fails the

–4–

Rule 702 standard for the additional reason that those opinions are not a proper subject for expert testimony, and even if they were, Dr. Shapiro does not have (or purport to have) sufficient information about the considerations leading the United States to settle this case. *See* Fed. R. Evid. 702(b)–(d) (expert opinions must be "based on sufficient facts or data," "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case"). As the United States showed in its Reply Brief, the decision whether to settle a case and on what terms is an exercise of judgment by the Department of Justice, informed by a variety of legal and pragmatic factors going to prosecutorial discretion. *See* Reply Br. at 22–24, 30. There are no scientific "principles and methods" capturing those discretionary factors, making Dr. Shapiro's opinions as "reliable" as a newspaper op-ed and as helpful to the Court as a tweet. *See United States v. Sutton*, 642 F. Supp. 3d 57, 76 (D.D.C. 2022) (excluding expert opinions that "inappropriately challenge prosecutorial discretion"). While Dr. Shapiro has a background in economics, he is unqualified to offer a legal opinion or an opinion that seeks to displace legal judgment about settling a case that was headed to trial. Nor does Dr. Shapiro's role as a former economic deputy at the Department of Justice provide him with specific decision-making expertise to opine first-hand on the criteria that are weighed in reaching a prosecutorial decision regarding an antitrust settlement. That is a decision made by lawyers at the Department.

Even if Dr. Shapiro's crude probabilistic model of merger enforcement decision-making were plausible, which it is not, Dr. Shapiro lacks (and does not purport to have) "facts or data" about the Department's internal considerations when making its decision to resolve this case by settlement rather than trial. There are no reliable data about the United States' probability of success at trial on which an expert opinion could be based, and, even if there were, the Court would not require an expert witness to perform the simplistic arithmetic that Dr. Shapiro misguidedly suggests should drive the Court's ruling. *See Laatz v. Zazzle, Inc.*, No. 5:22-cv-04844-BLF, 2025 WL 3205586, *11–12 (N.D. Cal. Nov. 17, 2025) (excluding expert opinion that had "no evidentiary basis" and also did "not involve the application of any economics expertise" because it was "simple arithmetic").

### CONCLUSION

For the foregoing reasons, the Court should exclude the declarations of Dr. Shapiro and Prof. Ranganathan and decline to hear testimony from Dr. Shapiro at the March 23 hearing.

–5–

Dated: March 20, 2026                    */s/ Henry C. Su*

G. CHARLES BELLER (DC Bar # 1645076)
Acting Deputy Assistant Attorney General
U.S. Department of Justice, Antitrust Division
950 Pennsylvania Ave, NW
Washington, DC 20530
Telephone: (202) 598-2698
Email: gregory.beller@usdoj.gov

HENRY C. SU (CA Bar # 211202)
Senior Litigation Counsel
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 705-6338
Email: henry.su@usdoj.gov

ELIZABETH S. JENSEN (CA Bar # 302355)
Assistant Civil Chief, San Francisco Office

JEREMY M. GOLDSTEIN (CA Bar # 324422)
MICHAEL G. LEPAGE (DC Bar # 1618918)
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 229-2934
Email: jeremy.goldstein@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Jeremy Goldstien, am the ECF user whose identification and password are being used to file Plaintiff United States' Motion *In Limine* to Exclude Declarations and Proffered Testimony of States' Proposed Expert Witnesses. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: March 20, 2026

*/s/ Jeremy M. Goldstein*
Jeremy M. Goldstein
U.S. Department of Justice
Antitrust Division
450 Golden Gate Ave., Room 10-0101
San Francisco, CA 94102-3478
Telephone: (415) 818-4752
Email: Jeremy.Goldstein@usdoj.gov

*Counsel for Plaintiff United States of America*

PLAINTIFF UNITED STATES' MOT. *IN LIMINE* TO EXCLUDE STATES' PROPOSED EXPERT WITNESSES
CASE NO. 5:25-CV-00951-PCP