**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　**Plaintiff,**<br><br>**v.**<br><br>**HEWLETT PACKARE**<br>**ENTERPRISE, CO. and**<br>**JUNIPER NETWORKS, INC.**<br><br>　　　　**Defendants.** | **Civil Case No. 5:25-cv-00951-PCP** |

# REPLY DECLARATION OF CARL SHAPIRO

## 20 March 2026

1. I respond here to some points about the structural presumption and the HHI metrics made by Dr. Nicholas Hill in his Declaration of 16 March 2026 ("Hill Declaration").

2. As I use the term, a "stronger structural presumption" means that more evidence is required to *rebut* the presumption once it has been established by the government.

3. I agree with Dr. Hill that the HHI metrics in this case are lower than the averages found in mergers the DOJ and the FTC have litigated in recent years. I therefore agree with Dr. Hill that in many cases brought by the DOJ and the FTC in recent years the structural presumption, purely based on the HHI metrics, was stronger than in the current case. Notably, the government did not lose any of the cases listed in Figure 10 of the Hill Declaration in which the government successfully established the structural presumption, with the exception of the United/Change merger where the court accepted the merging parties' complete divestiture of the overlapping business line.

4. I stand by my opinion that the structural presumption in the current case is strong, based on the HHI metrics being substantially above the thresholds in the Merger Guidelines and based on Juniper's growth trajectory.

5. The root of the dispute between me and Dr. Hill regarding the role of the structural presumption appears to be methodological, not numerical. Dr. Hill states:

   "However, as I explain in my expert report, the structural presumption is an initial screen, used to evaluate whether a merger may substantially reduce competition. *Triggering this presumption does not imply that a merger will lead to a substantial reduction in competition.*" Hill Declaration ¶33, emphasis added

6. I take a different approach, under which sufficiently high HHI metrics create a rebuttable presumption that the merger is likely to substantially lessen competition. That presumption reflects learning from industrial organization economics, learning that has been incorporated into the case law for over 60 years. As a result, I place more weight on the HHI metrics than does Dr. Hill. If the presumption is established, I then look for evidence that it has been rebutted. That does not appear to be Dr. Hill's methodology.

7. Dr. Hill claims that the way in which he is applying the structural presumption in this case is consistent with my published writings. It is not. The passage quoted above from ¶33 of the Hill Declartion continues: "Consistent with this view, Dr. Shapiro has himself

described the HHI thresholds in the guidelines as a screen." But that is misleading. Here is the passage that Dr. Hill cites from my 2021 paper with Howard Shelanski:

"[The 2010 Horizontal Merger Guidelines] also retained the use of the Herfindahl-Hirschman Index (HHI) for screening mergers *and for triggering structural presumptions* about likely merger effects, while raising the HHI thresholds to reflect agency practice more accurately." (emphasis added)

8. As indicated in this passage, the HHI metrics serve two distinct functions.

9. First, the HHI metrics serve a screening function: a merger that results in a *low* post-merger HHI is unlikely to harm competition and ordinarily requires no further analysis. By screening out mergers that result in low post-mergers HHIs, the DOJ and the FTC can focus their resources on mergers that are more likely to harm competition while giving useful guidance to the business community. Historically, the DOJ and the FTC have only issued second requests for information under the Hart-Scott-Rodino Act for about 2% to 3% of the mergers reported to them.

10. Second, *high* HHI metrics are used to establish the structural presumption. This is an entirely different beast from the screening function based on low HHIs. The structural presumption can be rebutted, but it is meaningful and in practice matters a great deal when horizontal mergers are litigated. My 2018 paper with Herb Hovenkamp, an authority on antitrust law, discusses the critical role of the structural presumption in effective merger enforcement.[1] No one could read that paper and come away believing that I favor using the HHI metrics only for screening purposes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th day of March, 2026, at Berkeley, California.

*Carl Shapiro*

_____

Carl Shapiro

---

[1] Herbert Hovenkamp and Carl Shapiro, "Horizontal Mergers, Market Structure, and Burdens of Proof," 127 *Yale Law Journal* 1996-2025.