SAMUEL G. LIVERSIDGE (Bar No. 180578)
ERIC VANDEVELDE (Bar No. 240699)
DANIEL NOWICKI (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

JULIE S. ELMER (*pro hac vice*)
JENNIFER MELLOTT (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant*
HEWLETT PACKARD ENTERPRISE CO.

HENRY C. SU (CA Bar # 211202)
Senior Litigation Counsel
U.S. Department of Justice, Antitrust
Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 705-6338
Email: henry.su@usdoj.gov

ELIZABETH S. JENSEN (CA Bar
# 302355)
Assistant Civil Chief, San Francisco Office
JEREMY M. GOLDSTEIN (CA Bar
# 324422)
MICHAEL G. LEPAGE (DC Bar
# 1618918)
Trial Attorneys
U.S. Department of Justice, Antitrust
Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 229-2934
Email: jeremy.goldstein@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 5:25-cv-00951-PCP |
| *Plaintiff,* | **ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT** |
| v. | |
| HEWLETT PACKARD ENTERPRISE CO. and | |
| JUNIPER NETWORKS, INC, | |
| *Defendants.* | Judge:          P. Casey Pitts<br>Action Filed:     January 30, 2025 |

Plaintiff United States of America ("United States") and Defendant Hewlett-Packard Enterprise Co. ("HPE") (together, the "Parties") file this Administrative Motion to File Under Seal Certain Materials from Intervenors' Sur-Reply in Opposition to Motion for Entry of Final Judgment ("Motion"), filed pursuant to the Joint Stipulation Regarding Modification of Civil Local Rule 79-5 for Tunney Act Briefing, as Modified, Dkt. 415 ("Joint Stipulation").  Appendix A to this Motion identifies the information that the Parties seek to seal.  HPE submits the Declaration of Robert Particelli ("Particelli Declaration") and the United States submits the Declaration of Henry C. Su with this Motion in support of their respective sealing requests.

## BACKGROUND

The United States filed its Motion for Entry of Final Judgment on January 5, 2026, Dkt. 351, and HPE filed a Statement in Support on February 2, 2026, Dkt. 369.  On March 6, 2026, the Court entered the Joint Stipulation providing that the Parties would file a Consolidated Sealing Motion concerning the treatment of confidential information contained in or submitted with any opposition to the United States' Motion for Entry of Final Judgment, and the United States' and HPE's reply briefs. Dkt. 415 ¶ 4.  For the Intervenor States' sur-reply, if any, the Parties would "jointly file any remaining Party-specific confidentiality issues in a Second Consolidated Sealing Motion to be filed on March 27, 2026, following the same procedure set forth in paragraph 4."  *Id.* ¶ 5.[1]

The Intervenor States filed their Opposition to the Motion for Entry of Final Judgment and supporting exhibits on March 9, 2026.  Dkt. 417.  The United States and HPE filed reply briefs and supporting exhibits on March 16, 2026.  *See* Dkt. 438 & 436.[2]  The Parties filed a Consolidated Sealing Motion pursuant to paragraph 4 of the Joint Stipulation on March 19, 2026.  *See* Dkt. 444 & 448.

The States filed their Sur-Reply and supporting exhibits on March 20, 2026.  Dkt. 450.  The Parties now file this Second Consolidated Sealing Motion pursuant to paragraph 5 of the Joint

---

[1] As referenced in this Motion, this briefing constitutes, collectively, the "Tunney Act Briefing."

[2] The Parties have cited in their briefs various materials that the Court has previously sealed, *see* Dkt. 224, and which do not require a subsequent motion to seal, *see* L.R. 79-5(b) ("A party need not file a motion to seal if a federal statute or a prior court order in the same case expressly authorizes the party to file certain documents (or portions of documents) under seal.").

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT, Case No. 5:25-cv-00951-PCP

Stipulation. The Parties' arguments in support of fully or partially sealing materials identified in Appendix A to the Proposed Order submitted herewith are set forth below.

## I.    JOINT STIPULATIONS

The Parties and the Intervenor States, *see* Dkt. 236, stipulate that all personal email addresses and personal phone numbers will be redacted from the Tunney Act Briefing materials, even if these items are not highlighted in the Consolidated Sealing Motion's proposed redactions.

The Parties and the Intervenor States, *see* Dkt. 236, stipulate that the identities of the divestiture bidders and the amounts of the bids will be sealed.

## II.    HPE'S MOTION TO SEAL

The "compelling reasons" standard applies to the information submitted concerning the Court's ultimate public interest determination under 15 U.S.C. § 16(e). *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (discussing when "compelling reasons" standard applies). In applying the "compelling reasons" standard, courts balance "the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1097 (quotation omitted). Courts seal confidential business information under this standard when disclosure of such information "might harm a litigant's competitive standing." *Id.* (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Sealable business information includes "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other" similar materials. *In re Apple Inc. Device Performance Litig.*, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019).

Many of the materials identified in Appendix A reflect competitively sensitive HPE information concerning: i) forward-looking strategic planning and analyses, ii) product development plans; and/or iii) the ongoing bidding processes for the HPE Divestiture Assets and the AI Ops for Mist Source Code License, as those terms are defined in the Amended Proposed Final Judgment, Dkt. 311-2 (the "Bidding Processes"). As described below and in the attached Particelli Declaration, disclosure of this information would place HPE at a competitive disadvantage vis-à-vis both its competitors and its customers and harm the public's interest in the efficacy of the settlement between HPE and the United States in this action. HPE has maintained the confidentiality of the information it seeks to seal, and its

requests are narrowly tailored such that there is no less restrictive alternative to sealing or redacting the information at issue.

Forward-Looking Strategic Planning and Analyses: Certain information identified in Appendix A contains HPE's confidential forward-looking strategic business plans and analyses, the disclosure of which would provide HPE's competitors unfair insight into its ongoing and future competitive strategy, including select aspects of its strategy following the acquisition of Juniper. Courts in this District recognize that there are compelling reasons to seal such information. *See, e.g., Krieger v. Atheros Commc'ns, Inc.*, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011) (sealing a presentation that contained "discussions of business strategy[] and competitive analyses"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2018 WL 6002319, at *1 (N.D. Cal. Nov. 15, 2018) (approving the sealing of information that "prevent[s] competitors from gaining insight into the parties' business model and strategy") (citation omitted).

As reflected in the Particelli Declaration, HPE actively seeks to maintain the confidentiality of its forward-looking strategy. Particelli Decl. ¶ 4. Disclosure of forward-looking strategic business planning and analyses would effectively provide HPE's competitors a roadmap for how HPE plans to compete in the future with respect to technical innovations, marketing, and its larger networking portfolio (including products not at issue in the litigation). *See id.* ¶¶ 6-8. Such disclosure would also permit competitors to develop business strategies to duplicate, undercut, or otherwise counter HPE's commercial performance. *See id.* Maintaining the confidentiality of this information cannot be avoided through less restrictive alternatives.

Product Development Plans: Certain materials identified in Appendix A contain HPE's confidential forward-looking product development plans. Courts in this District recognize that there are compelling reasons to prevent the disclosure of product development plans and technical details related to products that are not yet introduced or released to the public. *Apple Inc. Device Performance*, 2019 WL 1767158, at *2 ("Courts applying the compelling reasons standard have upheld the sealing of trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing."); *Nautilus Biotechnology, Inc. v. SomaLogic, Inc.*, 2024 WL 4894852, at *2

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT, Case No. 5:25-cv-00951-PCP

(N.D. Cal. Nov. 26, 2024) (finding compelling reasons to seal information that would reveal "technical features, components, and design of [party's] unreleased platform").

As set forth in the Particelli Declaration, HPE actively seeks to maintain the confidentiality of its product development plans. Particelli Decl. ¶ 4. Networking vendors compete based on, *inter alia*, the innovations they seek to bring to market. *Id.* ¶¶ 9-10. Disclosure of HPE's product development plans, including the timeline for product development, would allow HPE's competitors to refocus their own research and development efforts to duplicate, undercut, or otherwise counter HPE's innovation. *Id.* ¶¶ 9-11. Even if any given product development plan concerns a limited piece of technology, the systematic disclosure of this information would similarly give competitors a roadmap for how HPE plans to compete in both the near- and long-term future. *Id.* ¶ 12.

Bidding Information: Certain materials identified in Appendix A reflect confidential and competitively sensitive information relating to the ongoing, confidential Bidding Processes. "[C]ompelling reasons exist to seal" information "that, if published, may harm" a party's "competitive standing and divulges terms of confidential contracts [or] contract negotiations." *FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019); *see Synchronoss Techs.*, 2018 WL 6002319, at *3 ("[T]he Court finds that there are 'compelling reasons' to seal those portions [of documents] because they appear to disclose confidential negotiations and business strategies."); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (concluding compelling reasons exist to seal "financial terms [and] details of confidential licensing negotiations"). Because the Bidding Processes, which are still live, are at the heart of the remedy at issue in this Tunney Act Proceeding, the public has clear interest in their integrity and efficacy.

HPE has strictly maintained, and actively seeks to maintain, the confidentiality of information relating to the Bidding Processes in order to preserve the competitiveness and integrity of the auctions and maximize the effectiveness of the remedy central to the settlement. Particelli Decl. ¶ 14. Public disclosure of the identities of bidders and potential bidders, the amounts of bids, and other details regarding participants in the Bidding Processes would jeopardize the integrity of the Bidding Processes. *See id.* ¶¶ 15-17. Disclosure of such information could undermine progress made to date in securing bids and damage HPE's relationships with bid participants. *See id.* Public disclosure of bidder

identities and bid amounts could undermine the competitiveness of the Bidding Processes by providing bidders and potential bidders access to the confidential bids of others. *See id.* Public disclosure of details regarding the Bidding Processes may also deter bidders and potential bidders from participating, thereby undermining the effectiveness of the remedy set forth in the APFJ. *Id.* ¶ 17.

HPE respectfully requests that the Court seal the materials identified by HPE in Appendix A for the reasons stated in Appendix A, herein, and in the Particelli Declaration.

### III.    UNITED STATES' MOTION TO SEAL

Pursuant to Civil Local Rules 7-11 and 79-5 and the Parties' Joint Sealing Stipulation, Dkt. 415, the United States respectfully moves the Court to seal narrowly tailored portions of the States' Surreply briefing, Dkt. 450, relating to (1) HPE's ongoing divestiture auctions and (2) the Department of Justice's internal personnel matters and pre-decisional deliberations about this matter.

#### A.  Legal Standard

Judicial records are generally sealed in the Ninth Circuit if there are "compelling reasons" for doing so. *See, e.g.*, *Apple Inc. v. Rivos, Inc.*, 2024 WL 748394, at \*2 (N.D. Cal. Feb. 23, 2024). Although there is a strong presumption in favor of access to court records, the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citing *Foltz v. State Farm Mut. Auto. Ins.* Co., 331 F.3d 1122, 1135 (9th Cir. 2003)). There are compelling reasons to seal documents if "'court files might . . . become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978)).

#### B.  Argument

The United States seeks to seal two highly sensitive categories of information: (a) information relating to the ongoing divestiture auctions; and (b) internal personnel matters and pre-decisional deliberations. Ninth Circuit courts routinely hold that these categories of information warrant sealing. *See, e.g.*, *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (finding compelling reasons to seal "business information that might harm a litigant's competitive standing");

*eBay Inc. v. Boch*, 2022 WL 1131720, at *2 (N.D. Cal. Mar. 21, 2022) (finding "compelling reasons" to seal employment records and reasons for termination); *Al Otro Lado, Inc. v. Wolf*, 2020 WL 6449152, at *5 (S.D. Cal. Nov. 2, 2020) (finding "good cause" to seal government deliberations as public disclosure would still "stifle" government personnel's participation in future decision-making discussions).

The United States has narrowly tailored its requests by redacting only the specific portions of the documents implicating these issues, leaving most of the material available for public review. Sealing this information preserves the integrity of the divestiture auctions and the Department of Justice's internal administration and decision-making, while preserving the public's ability to understand the nature of the proceedings and the factual bases for the Parties' arguments. As explained in the attached declaration of Henry C. Su, public disclosure could cause significant competitive harm to the auction process and to the United States' management of its personnel and their decision-making. *See* Su Decl. ¶ 4.

### a. Auction Materials

Two of the documents the United States seeks to seal include information relating to the ongoing Instant On and Juniper Mist AI source code divestiture auctions. Pursuant to the amended proposed Final Judgment, the United States was entrusted to monitor HPE's auction of the divestiture assets. Su Decl. ¶ 5. Thus, the United States is evaluating the auction bidders' intent and capability to compete effectively with the HPE Instant On assets or the Mist AIOps source code in the United States market for enterprise-grade WLAN solutions. *See* Dkt. 311-2, at 19. The viability of these competitive auctions depends on the identities, bid amounts, and information surrounding the competing bidders remaining confidential. Su Decl. ¶ 7. The information the United States seeks to seal includes only the bidder identities, the numbers of bidders, bid amounts, bidder questions, and bidder identifying information. Su Decl. ¶ 6. Maintaining the confidentiality of information surrounding the competing bidders is essential to the viability and integrity of the auctions.[3] Su Decl. ¶¶ 7–9.

Disclosure of this auction information would irreparably damage the auction's competitive

---

[3] This Court has previously acknowledged the importance of keeping bidder identities and communications confidential. *See* Hr. Tr. Feb. 17, 2026 at 13:5–16.

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT, Case No. 5:25-cv-00951-PCP

process and harm third-party business plans. These are ongoing, confidential auctions with non-binding bids. Bidders can still adjust or withdraw their bids based on the information revealed in these filings, and publicizing bidder information thus would impair the very nature of the auction itself. Su Decl. ¶ 9. Ninth Circuit courts have consistently found that damage to competitive processes is a compelling reason to support sealing. *See, e.g.*, *Lawson v. Grubhub, Inc.*, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("[s]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal") (citation omitted); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) ("The Ninth Circuit has explicitly recognized that compelling reasons exist for the sealing of 'pricing terms, royalty rates, and guaranteed minimum payment terms' of license agreements.") (citing *In re Elec. Arts, Inc.*, No. 08-74426, 298 Fed. Appx. 568, 569 (9th Cir. Oct. 28, 2008)).

Finally, disclosure would set a bad precedent for divestitures in future consent decrees. The United States is overseeing this auction and thus has an obligation to maintain fairness and confidentiality for the current bidders who entrusted the Government with highly sensitive information about their businesses. Su Decl. ¶ 9. If the United States failed to protect that trust, it would harm the auction, those firms, and their customers, and impede the United States from overseeing future divestiture auctions. *Id.* ¶ 11. Accordingly, the United States has actively and diligently sought to maintain the confidentiality of these auctions. *Id.* ¶ 7. Unsealing this information would damage those efforts and impact the auctions, the bidders, and the United States' oversight abilities.

### b. Internal Government Deliberations and Personnel Matters

The United States also seeks to seal ten documents relating to confidential, internal government deliberations and personnel matters. These documents are communications produced by Roger Alford regarding the process of his and other employees' termination and the HPE/Juniper case settlement. Although produced by Mr. Alford from his personal device, these documents include confidential descriptions of the DOJ's disciplinary process and internal government deliberations. Su Decl. ¶ 11.

The Ninth Circuit has consistently recognized that employment and personnel records are sealable under the compelling reasons standard. *See Stiner v. Brookdale Senior Living, Inc.*, 2022 WL 1180216, at *3 (N.D. Cal. Mar. 30, 2022) (finding compelling reasons to seal confidential employment

7

records as "[d]isclosure of this confidential information to the public could result in unnecessary embarrassment and injury to those employees"); *Cross v. Jaeger*, 2016 WL 4499414, at *1 (D. Nev. Aug. 26, 2016) (upholding Magistrate Judge's determination that compelling reasons exist to seal personnel and employment records). In this case, the discussions at issue reference not only Mr. Alford, but also disciplinary issues involving other employees. Su Decl. ¶ 11. The documents identify by name employees reportedly involved in either dispensing or receiving disciplinary measures. Portions of these documents characterize and describe these measures in specific ways that implicate employees' privacy interests. *Id.* There are compelling reasons to seal "[s]pecific employee performance issues, discipline, reasons for termination, and employment records related to third parties" as "public disclosure of such information could lead to harassment and embarrassment for the third parties, and infringes upon their privacy interests in keeping their employment records confidential." *See eBay Inc. v. Boch*, 2022 WL 1131720, at *2 (N.D. Cal. Mar. 21, 2022) (sealing under the compelling reasons standard). Furthermore, the United States has a strong interest in diligently protecting its personnel disciplinary processes on an institutional level, to safeguard its employees' privacy interests in future matters. Su Decl. ¶ 12.

There is also a compelling interest in sealing confidential information that Mr. Alford purportedly obtained as a result of his former position at the DOJ about why the United States settled the HPE/Juniper case, who the decision-makers were, and when the decisions were made. There are also more specific assertions about individual government employees' pre-decisional views about the merger. Su Decl. ¶ 13. These statements—whether accurate or not—purport to reflect deliberations within the Department of Justice that should not be disclosed to the public at large. Although Mr. Alford produced these documents to the States in this action, there is harm to the Government's interests if this information is the subject of public disclosure, or further disclosure.[4]  Releasing such information

---

[4] Exhibits 201 and 209 are unauthorized discussions between Mr. Alford and reporters. To our knowledge, the redacted information in Exhibit 209 was never published. The redacted information in Exhibit 201, which purports to describe confidential government deliberations about the national security implications of the HPE/Juniper merger, was unfortunately published. It should be sealed because further disclosure will only compound the harm. *Cf. In re Civ. Beat L. Ctr. for the Pub. Int.,* 2023 WL 3505330, at *6 (D. Haw. May 17, 2023) (sealing portions of a document that was accidently disclosed and then published to an online news entity).

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-
REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT, Case No. 5:25-cv-00951-PCP

risks also stifling DOJ personnel participation in future decision-making discussions. Su Decl. ¶ 13. *See Al Otro Lado, Inc. v. Wolf*, 2020 WL 6449152, at *5 (S.D. Cal. Nov. 2, 2020) (sealing documents under the "good cause" standard because public disclosure could "stifle" government personnel's participation in future decision-making discussions).

Finally, these topics are of only minimal relevance to this Tunney Act proceeding, which concerns the actual competitive impact of the HPE/Juniper settlement itself. Granting the Government's sealing motion will thus balance both the interests of the public in viewing information core to the Tunney Act proceedings, and the government's interests in protecting the confidentiality of information that could "become a vehicle for improper purposes" and harm third-party privacy interests and the United States' interests as a whole. *Kamakana*, 447 F.3d at 1179.

### C. Conclusion

The United States respectfully requests that the Court seal the material identified by the United States in the proposed order for the reasons stated in this Motion and the Declaration of Mr. Su.

Dated: March 27, 2026

/s/ Julie S. Elmer
Julie S. Elmer[5] (*pro hac vice*)

Samuel G. Liversidge (Bar No. 180578)
Eric Vandevelde (Bar No. 240699)
Daniel Nowicki (Bar No. 304716)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
SLiversidge@gibsondunn.com
EVandevelde@gibsondunn.com
DNowicki@gibsondunn.com

Julie S. Elmer (*pro hac vice*)
Jennifer Mellott (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th St NW
Washington, DC 20005
Telephone: (202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

---

[5] Pursuant to L.R. 5-1(i)(3), the filer attests that each other signatory has concurred in the filing of this document and has authorized this filing.

9

*Attorneys for Defendant*
*HEWLETT PACKARD ENTERPRISE CO.*

Dated: March 27, 2026

*/s/ HENRY C. SU*
HENRY C. SU (CA Bar # 211202)
Senior Litigation Counsel
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: (202) 705-6338
Email: henry.su@usdoj.gov

ELIZABETH S. JENSEN (CA Bar # 302355)
Assistant Civil Chief, San Francisco Office

JEREMY M. GOLDSTEIN (CA Bar # 324422)
MICHAEL G. LEPAGE (DC Bar # 1618918)
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 229-2934
Email: jeremy.goldstein@usdoj.gov

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-
REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT, Case No. 5:25-cv-00951-PCP