The Hon. P. Casey Pitts
280 South 1st Street
Courtroom 8 – 4th Floor
San Jose, CA 95113

March 30, 2026

**RE:** *United States v. Hewlett Packard Enterprise Co., et al.*, **No. 5:25-cv-00951-PCP (N.D. Cal.): Joint Letter Regarding States' Compliance with Second Amended Protective Order**

Dear Judge Pitts:

Defendant Hewlett Packard Enterprise Co. ("HPE"), the United States, and the Intervenor States ("the States") respectfully submit this joint letter regarding the States' compliance with the Court's Second Amended Protective Order, ECF No. 354 (the "Protective Order"). On March 9, 2026, the States filed their Opposition to Entry of Final Judgment. ECF Nos. 417-426. The States filed 119 exhibits on the public docket. HPE, the United States, and the States have conferred regarding what is required of the States to comply with its obligations under the Protective Order but have been unable to resolve their disputes.

## HPE'S POSITION

HPE seeks the Court's assistance in addressing an issue that has arisen as a result of the States' disclosure of confidential information and refusal to take appropriate steps required under the Protective Order to mitigate the potential harm caused by such disclosure. After insisting on access to bidder identities and bid information over HPE's objections, the States filed 119 exhibits, more than 3,000 pages, containing material designated as Confidential or Highly Confidential under the Protective Order on the public docket—making it available to the press, third parties, and market participants for hours. The improperly disclosed information included the names of bidders, bid amounts in the live auction process, as well as related confidential communications. Bidders have been contacted, confidential information has circulated, and there is now public reporting on the very information HPE was concerned about becoming public.

Despite the gravity of the situation and HPE's repeated requests that the States take action to mitigate the potential harm caused by their violation—as is required by the Protective Order—the States have not acted with any urgency nor meaningfully attempted to retrieve the disclosed materials or prevent further dissemination. The States have also refused HPE's requests for information.

Because the Protective Order is clear, the States' improper disclosure undisputed, and the failure to cure is ongoing, the Court should issue an order requiring the States to comply with the Protective Order. Specifically, HPE seeks an order requiring that the States (1) contact all third parties known, likely, or suspected to have obtained the improperly disclosed information, including news outlets the States have been in contact with and/or that have published reports about this case, and confirm that they either do not have the information, or to the extent that they obtained such information, that they have permanently deleted it; (2) request that such third parties refrain from any further dissemination of the information; (3) provide a detailed accounting to

HPE of all steps the States have taken to attempt to mitigate harm from its improper disclosure, including producing communications between the States and third parties relating to the confidential materials that were improperly disclosed; and (4) refrain from making use of the information under the guise that it is now public.

## I.    The States Continue to Violate the Protective Order in This Case

From the outset of discovery, HPE repeatedly explained that information relating to bidder identities, interest, and bid terms was among the most sensitive material in the Tunney Act proceedings.  In response to the States' discovery requests seeking that information, HPE objected that such disclosure during a live auction would risk disrupting negotiations, deterring participation, and undermining the integrity of the remedy process.  ECF No. 380 at 3-4; *see also* Feb. 17, 2026 Tr.  HPE also proposed reasonable alternatives to mitigate those risks, including anonymized disclosures and *in camera* review by the Court.  ECF No. 380 at 3.  The States rejected those proposals.  *Id.* at 1-3.

At a February 17 hearing, the Court considered these competing positions.  HPE reiterated that the auction was ongoing and that disclosure of bidder identities—even outside the public domain—posed severe risks to the process, particularly if it led to further contact with the bidders.  Feb. 17, 2026 Tr. 5:15-6:6.  The Court acknowledged these concerns, recognizing both the sensitivity of the information and the potential burdens on bidders.  *Id.* at 4:7-15.  Ultimately, the Court ordered production, while at the same time imposing limitations designed to mitigate the risks HPE had identified.  ECF No. 403 at 1-2.

HPE complied with that order and produced the requested materials subject to the Protective Order.  HPE designated these materials as Highly Confidential to ensure they would not be disseminated and cause substantial injury to HPE and the bidding process.

On March 9, the States filed their Opposition to Entry of Judgment along with 195 exhibits.  ECF Nos. 417-426.  While *all* of those documents were supposed to be filed under seal, the States filed 119 exhibits on the *public* docket.  As a result, more than 3,000 pages of confidential material were publicly accessible for hours.  The circumstances of how this happened are troubling, for the States have extensive familiarity with the Court's electronic filing system, have successfully filed numerous other documents and exhibits under seal in this matter, and indeed successfully filed certain documents under seal in connection with its opposition—yet somehow selected *public* filing events to file the 119 exhibits containing confidential information.

Only when HPE emailed the States did they begin the process of removing those materials from the docket.  *See* Ex. A.  It took at least 10 hours from the time of the disclosure until the Court's Case Systems Administrator could confirm that the improperly filed exhibits had been sealed.  Included in those 119 exhibits was significant material designated as Highly Confidential by HPE, including material containing bidder identities, bid amounts, and confidential business information belonging to HPE and third parties, including the personal cell phone numbers of HPE employees and representatives.

The consequences of this disclosure were immediate.  Reporters obtained the materials and began contacting HPE and third parties regarding the publicly filed information.  At least one bidder expressed concern about the disclosure of its confidential bid information, including the amount of its bid and related communications.

On March 10, the day after the States' disclosure, HPE wrote the States and demanded that they comply with their obligations under the Protective Order, including by retrieving the disclosed materials and preventing further dissemination. *See* Ex. B. The States did not do so. They did not provide a substantive response to HPE's March 10 letter. Instead, in a brief email, the States told HPE that they would "not respond *now* to the many baseless assertions in this letter" but informed HPE that they would notify third parties of inadvertent disclosure. *See* Ex. A (emphasis added). The States also informed HPE that it was HPE's responsibility to notify the bidders. *Id.* Despite the implication that the States would provide a substantive response and let HPE know when third-party information had been retrieved, HPE never received a letter response from the States. Indeed, the outreach HPE has received from reporters—who have continued to ask questions about, and publish, confidential information—confirms that the States did not take any meaningful remedial measures and instead allowed the improperly disclosed information to continue circulating.

HPE followed up with a second letter on March 19—as it was attempting to navigate the fallout from the States' violation—asking again for remedial measures to be taken and explaining that it would seek assistance from the Court if the States failed to comply with their obligations under the Protective Order. *See* Ex. C. HPE finally received a response that afternoon, in which the States made vague assertions that, following their breach, they "began sending emails and making phone calls to try to remove the inadvertently filed documents from the public docket." *See* Ex. D. The States further explained that they had been in contact with the Bloomberg reporter who had contacted HPE, who referred the States to Bloomberg's in-house counsel. *Id.* The States said, without providing any detail, that they had "followed up with them." *Id.* HPE immediately responded, stating that the States' efforts were insufficient, particularly in light of information HPE received that Bloomberg had shared confidential compliance affidavits with bidders when contacting them for comment, meaning each bidder had visibility into other bidders and their bids, thus jeopardizing the entire auction remedy process. *See* Ex. A. To compound the problem, Bloomberg sent a *public* document hyperlink to bidders that allowed the bidders (and anyone in the world) to see the confidential information. *Id. That document hyperlink remains active and publicly accessible today.* In HPE's email to the States, HPE demanded the States immediately "contact Bloomberg to kill the link, as well as any other similar links to confidential information that the States improperly disclosed," "ask Bloomberg to provide a log of who accessed such links and/or who Bloomberg sent the link(s) to," and "immediately follow up with all of those people/entities to make similar requests to delete and take down confidential information." *Id.* HPE requested the States do the same for "all other media outlets with whom the States have been communicating about this case and/or who have reported on the case before." *Id.* The States never responded.

Bloomberg has since published the public identities of bidders and bid amounts, which could undermine the ongoing auction process. *See* Leah Nylen & Josh Sisco, *HPE Struggled With Asset Sale Required in DOJ Antitrust Deal*, Bloomberg, https://www.bloomberg.com/news/articles/2026-03-23/hpe-assets-struggled-with-buyer-interest-in-antitrust-divestment (Mar. 23, 2026). This article also mimics the States' inaccurate and misleading narrative regarding the remedies.[1]

---

[1] Notably, in addition to Roger Alford communicating with the States prior to and during this proceeding, discovery has shown that Mr. Alford was also communicating with the Bloomberg reporter, Ms. Nylen.

II.     **An Order Compelling Compliance With the Protective Order is Warranted**

When a party violates a discovery order like a protective order, Federal Rule of Civil Procedure 37 authorizes district courts to impose "further just orders." Fed R. Civ. P. 37(b)(2)(A). "[T]he Ninth Circuit has repeatedly held that Rule 37 'provide[s] comprehensively for enforcement of all [discovery] orders, including Rule 26(c) protective orders.'" *In re Uber Techs., Inc., Passenger Sexual Assault Litig*., 2026 WL 440752, at *8 (N.D. Cal. Feb. 17, 2026) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014)).

The Protective Order imposes specific and unambiguous restrictions on the use and disclosure of Confidential and Highly Confidential Information.  It strictly limits disclosure of such information to defined categories of persons and requires that it be used solely for purposes of this litigation.  ECF No. 354 at 8-12.  The Order also imposes obligations in the event of any unauthorized disclosure.  Where protected information is disclosed to an unauthorized person, "the Party responsible for the disclosure must promptly notify the Protected Person whose Confidential Information or Highly Confidential Information has been disclosed and provide all known relevant information concerning the nature and circumstances of the disclosure." *Id.* ¶ 40.  The responsible party is also required to "promptly take all reasonable measures to retrieve the improperly disclosed material and ensure there is no additional unauthorized disclosure or use of the information." *Id.*  These requirements are not discretionary.  They are mandatory, immediate, and leave no room for interpretation.

The States not only violated the Protective Order by disclosing the sealed material that the Order was designed to protect, but also by refusing to take meaningful remedial action.  Because the States failed to take the remedial steps required by the Protective Order, the improperly disclosed information has continued to circulate and has now been published by Bloomberg for the world to see.  The article, which expressly identifies bidders and bid amounts, creates a serious risk that the bidders will withdraw from negotiations or alter their behavior or bids, and that potential bidders will decline to participate altogether.  These are precisely the harms HPE warned might result if this information were not protected, and they are a direct result of the States' breach.  An order compelling compliance and the remedial steps requested by HPE is warranted.

THE UNITED STATES' POSITION

The United States agrees with HPE's position. It also joins HPE's final two requests for enforcing the Second Amended Protective Order ("Protective Order"). Specifically: 1) the Court should order the States to provide a detailed accounting to both HPE *and the United States* of all steps the States have taken to mitigate harm from their improper disclosure, including producing communications between the States and third parties relating to the confidential materials that were disclosed in violation of the Protective Order; and 2) the Court should order the States to refrain from making further public use of the information that was improperly disclosed. The States' improper disclosure of third-party materials in this Tunney Act proceeding risks undermining federal antitrust enforcement, creating repercussions that jeopardize the United States' ability to secure the assistance and cooperation of third parties in future matters, and that also harm the ongoing divestiture process in this matter.

The United States takes the confidentiality of third-party materials extremely seriously. From the earliest stages of an antitrust investigation to the post-judgment stage of litigation, the Department of Justice relies on the cooperation of third-party market participants, such as

customers and competitors. They are often the ones most affected by competition and their insights are essential to the Antitrust Division's investigations and litigations. They also serve as deponents or witnesses at trial, and (as here) help effectuate the remedies necessary to address anticompetitive conduct. Third-party participation is affected by the third parties' desire to assist with the Department's investigations and their trust that the sensitive information provided will be secured and used only for proper purposes. Although the antitrust laws (and, in litigation, the Federal Rules of Civil Procedure) give the United States the ability to compel responses from third parties, even the degree of compliance with compulsory process depends significantly on recipients' confidence that their productions will be safeguarded. To sustain this confidence, the United States works diligently to ensure that third parties' competitively sensitive business information and trade secrets are protected from unauthorized disclosure and use.

In this case, the States' disclosure directly undermines the divestiture and licensing remedies at the heart of this matter. The companies bidding for Instant On and the Mist AIOps source code license operated under the assumption that their competitively sensitive perspectives and business information would be protected by the Second Amended Protective Order. *See* ECF No. 354. Instead, their confidential submissions, business plans, and bid amounts have now been disclosed to other bidders—their rivals—and the public at large. This disclosure fundamentally jeopardizes the ongoing closed auction process because bidders may change their bids or term proposals, or even completely withdraw from the auctions. Accordingly, the States' improper disclosure may ultimately thwart the United States' hard-negotiated interest and objective, as embodied in the amended proposed Final Judgment, to ensure that the divestiture assets and source code license go to businesses that will use them "to compete in the market for the provision of enterprise-grade WLAN solutions in the United States." ECF No. 311-2 at 18-19.

For these reasons, the United States supports HPE's position and requested relief from the Court. Indeed, on March 14, 2026, the United States sent a letter to the States (attached hereto as an exhibit) expressing these concerns about the States' careless disregard of the confidentiality requirements in the Second Amended Protective Order and demanding information about any preventive measures taken by the States. *See* Ex. E. The States did not respond to this letter, or similar letters from HPE, until nearly a week later, after a Bloomberg reporter had contacted bidders and shared with them confidential documents regarding the auction process. As explained by HPE, the States' response is still inadequate. Although the harm caused by the States' improper disclosure is largely irreparable, the Court should enforce its Protective Order to show that the violation will not be tolerated and to mitigate further harm.

THE STATES' POSITION

The States have fully complied with their obligations under the Protective Order, taking prompt and comprehensive steps to address the inadvertent disclosure at issue. The States acted immediately to correct the error, notify affected parties, and prevent further dissemination. HPE and the US do not meaningfully engage with these efforts and instead advance demands that go beyond what the Protective Order requires and what is reasonably within the States' control.

**The States Took Reasonable Steps to Address the Inadvertent Disclosure**

On March 9, 2026, the States filed the Intervenors' Opposition to Motion for Entry of Final Judgment (the "Opposition"), which included a large volume of exhibits. When attempting to file

the submission in a single docket entry, Pacer returned an error. The States then determined to file the exhibits in a series of docket entries with fewer documents in each entry. The first of those entries, Dkt. 417, was filed under seal. However, the next several entries, Dkt. 418 through 423, were mistakenly and inadvertently filed on the public docket instead of under seal. Counsel for HPE alerted the States to the issue and the States immediately stopped filing and examined the issue. Those documents were then re-filed under seal, and the rest of the States' Opposition was then also filed under seal.

That same evening, the States took multiple steps to remove the inadvertently filed documents from the public docket. The States emailed the Pacer help desk, the Court's courtroom deputy, and the San Jose civil docketing clerk, copying HPE and US counsel. The States called the Pacer help desk, but nobody answered and there was no option to leave a voicemail. The States also called both the courtroom deputy and the San Jose civil docketing clerk, and left voicemails with both that evening as well.[2]

The States understand that the San Jose civil docketing clerk listened to our voicemail the following morning, March 10, 2026, and immediately removed the documents from the public docket and placed them under seal. The result was that the documents were temporarily publicly available overnight between March 9th and March 10th.

Each document that was temporarily available on the public docket had a cover sheet indicating that it was filed under seal, and notation was made in the docket description that the documents were to be filed under seal as well. The States' intent to file the documents under seal was therefore clear.

On March 10, 2026, the States, after reviewing the documents that were subject to the filing error, sent notices to all third parties whose Confidential or Highly Confidential Information was impacted.[3] The States explained what happened and the steps taken to remove the documents from the public docket. Some of those third parties have followed up with questions, and the States have been engaged with them. On March 12, 2026, the States also sent notices to all ECF recipients that were listed as having received ECF notices of the inadvertent filing, to notify them of the error and request that they delete and destroy the documents, if they had received or downloaded any of them.

On March 19, 2026, HPE notified the States that Bloomberg had possession of certain of the inadvertently disclosed documents, and demanded the States contact Bloomberg "to demand they agree not to report on the auction process or the bidders." Ex. C at 1. This was an unreasonable demand, as the States cannot dictate to the press what to publish, but the States did contact Bloomberg to notify it that the documents had been inadvertently filed under seal, that the documents were designated Confidential or Highly Confidential, and asked that, pursuant to Paragraph 40 of the Protective Order, Bloomberg delete or destroy any such documents and not intentionally disclose them. Bloomberg nevertheless later published an article about the auction.

---

[2] The first inadvertent filing occurred at 8 pm Pacific Time, which was after business hours for the Pacer help desk and the Court.

[3] Pursuant to emails exchanged on March 10, 2026, between counsel for the parties, the States did not contact the bidders or potential bidders related to the auction, deferring to HPE to contact those parties.

*Cf. Metro. Transp. Auth. v. Duffy*, 782 F. Supp. 3d 193, 198 (S.D.N.Y. 2025) (discussing cases recognizing the "impossibility of making private that which has already become public") (cleaned up).

**HPE's and the US's Requests Are Either Moot or Unreasonable**

The Protective Order requires that a party making an inadvertent disclosure take "all *reasonable* measures to retrieve the improperly disclosed material and ensure there is no additional unauthorized disclosure or use of the information." Dkt. 354 ¶ 40 (emphasis added). The States have already taken many of the steps that HPE and the US have requested, and the rest are unreasonable. Indeed, neither HPE nor the US cite any authority supporting any of their demands. First, there is no way for the States to know exactly who accessed the documents during the overnight period they were available. HPE's request for the States to contact every journalist who has ever reported on this case on the off chance that they possess any of the documents is not reasonable. Nor is it reasonable to demand that the States attempt to prohibit the press from publishing stories, which would raise serious First Amendment concerns. *See, e.g.*, *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971). The States have contacted all parties indicated as having received ECF notices of the inadvertent filings and asked them to delete the documents. The States have therefore taken reasonable steps to satisfy HPE's first and second requests above; but more importantly, the States have complied with Paragraph 40 of the Protective Order.

Second, the States have explained to HPE and the US what steps they have taken pursuant to their obligations under the Protective Order, thus satisfying HPE's third request (which the US joins) above. *See* Ex. D. It is unclear what additional "detailed accounting" HPE and the US seek.

Third, the States have not, and do not, claim that publication by the press of the inadvertently filed documents remove the protections afforded to Confidential or Highly Confidential Information—indeed, paragraph 41 of the Protective Order mandates that inadvertent disclosure does not change the confidentiality status.[4] HPE's fourth request (which the US joins) is thus also satisfied.

Fourth, the States note that HPE's characterization of the scope of the issue is exaggerated. Of the documents that were inadvertently filed, HPE and the US only seek to keep 19 under seal in their entirety, and seek partial redactions to 38; the rest they concede may be filed publicly. *See* Dkt. 444-3.[5]

Finally, the States take their confidentiality obligations very seriously, and fiercely dispute any implication by the US or HPE otherwise. The States, just like the US, also rely on third parties in their investigations and litigation, and seek to protect their confidentiality, as well as the integrity

---

[4] The States and HPE disagree as to the extent to which exhibits to the Opposition should remain under seal, but the States will continue to respect the current status until the Court resolves disputes as to sealing. *See* Dkt. 444 through 449, 451.

[5] The impacted documents were Exhibits 22 through 141. HPE and the US only seek to keep under seal in their entirety Exhibits 78-92, 94-97; and seek only partial redactions as to Exhibits 22-24, 32, 33, 36, 38-41, 43-46, 51, 55-58, 62-64, 67-71, 76, 93, 98, 102, 104, 111, 119, 128, 135, 139, 140.

of the markets in which they operate.  The disclosure here was inadvertent and unfortunately cannot be undone—but the States responded swiftly and appropriately.

The States will continue to take reasonable steps as required by the Protective Order, if necessary, and are willing to cooperate with any reasonable requests from HPE or the US.  But the current set of demands from HPE and the US, beyond those the States have already taken, are simply unreasonable and not required by the Protective Order.  The Court should deny the requested relief here.

Dated: March 30, 2026

/s/ *Samuel G. Liversidge*
Samuel G. Liversidge (CA No. 180578)
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
sliversidge@gibsondunn.com

Julie Elmer
Jennifer Mellott
Freshfields US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
(202) 777-4500
julie.elmer@freshfields.com
jennifer.mellott@freshfields.com

*Attorneys for Defendant Hewlett Packard Enterprise Co.*

Dated: March 30, 2026

/s/ *Henry C. Su*
Henry C. Su
Jeremy M. Goldstein
Michael G. Lepage
U.S. Department of Justice
Antitrust Division
450 Golden Gate Ave, Room 10-0101
San Francisco, CA 94102
(415) 934-5300
henry.su@usdoj.gov
jeremy.goldstein@usdoj.gov
michael.lepage@usdoj.gov

*Attorneys for Plaintiff United States*

Dated: March 30, 2026

PHILIP J. WEISER
Attorney General

/s/ *Arthur Biller*
ARTHUR BILLER *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
BRYN A. WILLIAMS

9

First Assistant Attorney General (SBN 301699)
JONATHAN B. SALLET (*Admitted Pro Hac Vice*)
Special Assistant Attorney General
ROBIN ALEXANDER (*Admitted Pro Hac Vice*)
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720)508-6000
Email: Arthur.Biller@coag.gov
        Bryn.Williams@coag.gov
        Jon.Sallet@coag.gov
        Robin.Alexander@coag.gov

*Attorneys for the State of Colorado*


ROB BONTA
Attorney General of California

/s/ Brian D. Wang
PAULA L. BLIZZARD, Senior Assistant Attorney
General (SBN 207920)
MICHAEL W. JORGENSON, Supervising Deputy
Attorney General (SBN 201145)
BRIAN D. WANG, Deputy Attorney General (SBN
284490)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
(415) 510-4400
Brian.Wang@doj.ca.gov

*Attorneys for the State of California*


WILLIAM TONG
ATTORNEY GENERAL

/s/ Nicole Demers
Nicole Demers (*pro hac vice application
forthcoming*)
Deputy Associate Attorney General
Antitrust Section
Connecticut Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106

10

Tel.: (860) 808-5030
nicole.demers@ct.gov

*Attorneys for the State of Connecticut*

BRIAN SCHWALB
Attorney General of the District of Columbia

*/s/ Coty Montag*
Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy
Division
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*

ANNE E. LOPEZ
Attorney General

*/s/ Rodney I. Kimura*
RODNEY I. KIMURA *(Admitted Pro Hac Vice)*
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

*Attorneys for State of Hawaii*

KWAME RAOUL
Attorney General of Illinois

*/s/ Paul J. Harper*
*(Admitted Pro Hac Vice)*

ELIZABETH L. MAXEINER

11

*(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*


COMMONWEALTH OF MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

*/s/ Anthony W. Mariano*
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for*
*Commonwealth of Massachusetts*


KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*
*(Admitted Pro Hac Vice)*

ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General
Antitrust Division

JON M. WOODRUFF
Assistant Attorney General
Antitrust Division

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600

Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*

LETITIA JAMES
Attorney General of the State of New York

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

*/s/ Elinor Hoffmann*
*(Admitted Pro Hac Vice)*

ELINOR R. HOFFMANN
Chief, Antitrust Bureau
AMY McFARLANE
*(Admitted Pro Hac Vice)*
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ
*(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust Bureau

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*

JEFF JACKSON
Attorney General of North Carolina

*/s/ Kunal J. Choksi*
*(Admitted Pro Hac Vice)*

Kunal Janak Choksi
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.

13

Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*

Dan Rayfield
Attorney General of Oregon

*/s/ Rachel K. Sowray*
Rachel K. Sowray *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
Timothy D. Smith *(Admitted Pro Hac Vice)*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR  97201
503.689.0249 | Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

*Attorneys for State of Oregon*

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ Amy N. L. Hanson*
*(Admitted Pro Hac Vice)*

JONATHAN A. MARK *(Admitted Pro Hac Vice)*
Antitrust Division Chief
AMY N.L. HANSON
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for State of Washington*

14

JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/Caitlin M. Madden*
Caitlin M. Madden *(Admitted Pro Hac Vice)*

Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*