NICHOLAS W. BROWN
Attorney General of Washington
JONATHAN A. MARK *(Admitted Pro Hac Vice)*
Antitrust Division Chief
AMY N.L. HANSON *(Admitted Pro Hac Vice)*
Senior Managing Assistant Attorney General
Antitrust Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
Email: jonathan.mark@atg.wa.gov
Email: amy.hanson@atg.wa.gov
Tel: 206-389-3806 (Mark)
Tel: 206-464-5419 (Hanson)

*Attorneys for Intervenors*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff,*<br><br> vs.<br><br>HEWLETT PACKARD ENTERPRISE CO.<br>and JUNIPER NETWORKS, INC.<br><br>   *Defendants.* | CASE NO. 5:25-cv-00951-PCP<br><br>**INTERVENOR STATES' OPPOSITION TO THE PARTIES' ADMINISTRATIVE MOTION TO FILE UNDER SEAL CERTAIN MATERIALS FROM INTERVENORS' SUR-REPLY IN OPPOSITION TO MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>Judge: P. Casey Pitts<br>Action Filed: January 30, 2025 |

The Court should deny the Parties' motion, Dkt. No. 471, because it is overbroad and fails to provide the Court with compelling reasons that outweigh the strong presumption favoring public access to the information that the States filed in support of their Sur-Reply in Opposition to Motion for Entry of Final Judgment, Dkt. No. 450, regarding: (1) settlement negotiations and related personnel process information; (2) expert information; and (3) auction information. *See* Judge P. Casey Pitts, Standing Order for Civil Cases at 3 (Aug. 2024) ("Standing Order for Civil Cases") ("Frivolous, overbroad, or inadequate sealing motions risk denial, publication without further notice, or sanctions."). While the States agree that any personal email addresses and phone numbers should be redacted, any interest that the DOJ has in keeping its settlement negotiations and related personnel process information confidential is not compelling given the Tunney Act's transparency requirements for antitrust settlements. Additionally, the aggregated data and other expert information do not reveal competitively sensitive information that outweighs the public's strong interest in access. Finally, while the States agree that the identities and bid amounts of the bidders and other interested parties in the assets proposed to be sold at auction should be redacted, the bidders' criticisms, and criticisms of those who passed, should be open to the public.

## ARGUMENT

The strong presumption of access to dispositive briefing information applies absent demonstrated "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure[.]" *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotations and citations omitted). Courts may not keep such information from the public based upon "hypothesis or conjecture." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). This strong presumption of access, coupled with requiring courts to articulate the specific factual basis for keeping any such information from the public, bolsters the public's "understanding of the judicial process" and "confidence in the administration of justice" because it provides a "measure of accountability" for courts. *Id.* at 1096-98. Here, there is no dispute that the compelling reasons standard applies, and the Parties are wrong to claim they can avoid it for previously sealed materials. Dkt. 471 at 1 n.2. "The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Kamakana*, 447 F.3d at 1179 (citation omitted).

- 1 -

I.      **The Parties fail to show their interest in maintaining the seal on settlement negotiations and related personnel process information outweighs the public's access interest.**

"With respect to settlement terms, negotiations, and strategies, the public interest in such materials—in the context of a case about whether the relevant settlements were anticompetitive—far outweighs the ambiguous concern that bad actors might misuse the data." *In re Xyrem Antitrust Litig.,* 789 F. Supp. 3d 760, 770 (N.D. Cal. 2025) (denying sealing of settlement negotiations). When a "case is ultimately about whether the settlements that ended that litigation were anticompetitive" it "risks misuse of judicial proceedings" to file "play-by-play deposition testimony about how settlement was reached (and to what extent such settlement was influenced by privileged advice)" and then keep it secret. *Id.* at 772-73.

HPE notably does not seek to keep the settlement negotiations here sealed, and the DOJ's attempt to do so is contrary to the Tunney Act's mandate that "the court shall consider . . . alternative remedies actually considered" as part of its "public interest" determination. 15 U.S.C. § 16(e)(1)(A). And where, as here, "the relief proposed is of a lesser degree than that contained in the complaint," the Senate intended that "the *public* and the court should have access to the meaningful alternatives from which the Division made its choice." S. Rep. No. 93–298, at 3 (1973), https://www.justice.gov/sites/default/files/jmd/legacy/2014/07/06/senaterept-93-298-1973.pdf (emphasis added).

Indeed, "since it is the 'few' improper communications between antitrust defendants and the government that 'cast doubt on the entire enforcement process," Congress additionally required Section 16(g) disclosures as part of the Tunney Act process. *United States v. Microsoft Corp.,* 215 F. Supp. 2d 1, 18 (D.D.C. 2002) (quoting S. Rep. No. 93–298, at 7 (1973). This provision provides "affirmative legislative action supporting the fundamental principle restated by the Supreme Court . . . [that it] 'is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the *public* to be avoiding it if confidence in the system of representative Government is not to be eroded to a disastrous extent.'" H. R. Rep. No. 93-1463 at 11-12 (1974), https://www.justice.gov/sites/default/files/jmd/legacy/2013/10/23/houserept-93-1463-1974.pdf (quoting *U. S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 564-66 (1973)) ("*Letter Carriers*") (emphasis added).

The *Letter Carriers* backdrop to Congress's 16(g) Tunney Act provision shows DOJ's attempt to keep information from the public about "personnel matters" relating to DOJ employees involved in the HPE/Juniper case settlement must fail. Dkt No. 471 at 7-9. At the time Congress was considering the Tunney Act, it was the "judgment made by this country over the last century that it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service." *Letter Carriers,* 413 U.S. at 557. Congress's codification of this principle in the Hatch Act amendments to the civil service rules led the Court to conclude that the "Government work force should not be employed to build a powerful, invincible, and perhaps corrupt political machine." *Id.* at 565. Instead, "impartial execution of the laws" is required "if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Id.* As such, "employees in the Executive Branch" and "its agencies" must be "sufficiently free from improper influences" to ensure that they "administer the law in accordance with the will of Congress," and "enforce the law . . . without bias or favoritism for or against any political party or group or the members thereof." *Id.* at 564-65. And "employment and advancement in the Government service" must "not depend on political performance[.]" *Id.* at 566. Instead, "Government employees" must "be free from pressure and from express or tacit invitation to . . . perform political chores in order to curry favor with their superiors." *Id.*

The States' evidence that DOJ employees, including but not limited to Mr. Alford, were pressured to accept the proposed HPE settlement or be fired bears directly on the ultimate question here—whether entering DOJ's proposed final judgment is in the public interest. The Parties' reliance on precedent sealing employment records in non-Tunney Act matters where the employment records were not directly relevant to a dispositive motion is thus misplaced. Dkt. No. 471 at 6-9. The mere "fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" does not compel sealing under the compelling reasons standard. *Kamakana*, 447 F.3d at 1179. In Tunney Act proceedings,"'[s]unlight is the best of disinfectants.' It is more sunlight that we are seeking to shed *on the methods and manner* by which we settle complex and costly antitrust suits through the consent decree process." 93 Cong. Rec. 24,599 (1973), https://www.justice.gov/sites/default/files/jmd/legacy/2013/12/31/cr-24596-606-1973.pdf (emphasis added).

- 3 -

## II. The Parties fail to show their interest in maintaining the seal on expert information outweighs the public's access interest.

The party seeking to seal based on competitive standing must show how public access to a "formula, pattern, device, or compilation of information" will encourage "business competitors seeking to replicate [any party's] business practices and circumvent the considerable time and resources necessary in product and marketing development." *Xyrem,* 789 F. Supp. 3d at 765, 767 (citation and quotation marks omitted). "[V]ague references to competitive harms," unsupported with evidence, "provide the Court with an inadequate explanation of how public dissemination of the specific material [sought to be sealed will] harm [the litigant's] competitive standing." *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557-PCP, 2025 WL 1872974, at *3 (N.D. Cal. May 9, 2025); *see also Arrow Elecs. v. Quantum Corp.*, No. 23-CV-03746 NC, 2025 WL 1479659, at *2 (N.D. Cal. Feb. 12, 2025) (A "conclusory 'trade secret' assertion does not overcome . . . 'compelling reasons' standard to validate sealing."); Standing Order for Civil Cases at 3 ("Blanket or generic statements like 'competitive harm' are almost never sufficient").

The Parties here fail to specify how competitors will be able to circumvent the considerable time and resources necessary for product and marketing development to replicate Juniper's Mist AI Ops based upon the information they seek to keep secret in the Ranganathan Reply Declaration. Far from detailed trade secret information, this declaration merely outlines and provides high-level context necessary to understand the significance of the parts of Juniper's Mist AI Ops that are included—and excluded—from the proposed final judgment's license remedy for the competition that HPE's Juniper acquisition eliminated.

Significantly, in antitrust cases like this one, sealing expert opinions that are "highly relevant to material issues of triable fact—i.e., the extent of competition in the [relevant] market" following the settlement "agreement[] at the heart of this case" is "antithetical to the exercise of a public judicial system." *Xyrem*, 789 F. Supp. 3d at 765-66 (denying sealing of lines in motion that referred to an expert's report and deposition transcript). This is particularly true when it is unexplained "how allowing public access to the expert reports and other materials" would "cause irreversible damage." *Id.* at 767. Even with such a showing, sealing should be denied when it is not narrowly tailored to avoid causing irreversible damage. *Id.* For example, it is inappropriate to seal references in expert

- 4 -

reports and testimony to aggregated data. *Id.* at 770–71. It is also inappropriate to seal expert opinions on the relative negotiating positions of the parties in settling the litigation. *Id.* at 772–73.

Here, the outline and high-level context that the States' industry expert provides in his reply declaration about the significance of the parts of Juniper's Mist AI Ops that are included—and excluded—from the proposed final judgment's license remedy goes to the heart of whether the proposed license is sufficient to remedy the competition HPE's Juniper acquisition eliminated. As such, the Parties' interests in keeping secret such high-level, material settlement facts are antithetical to the exercise of a public judicial system and fail to outweigh the public's access interest.

III.    **The Parties fail to show their interest in maintaining the seal on bidders' criticisms and other criticisms of auctioned assets outweigh the public's access interest.**

"With respect to settlement terms . . . the public interest in such materials—in the context of a case about whether the relevant settlements were anticompetitive—far outweighs the ambiguous concern that bad actors might misuse the data." *Xyrem,* 789 F. Supp. 3d at 770. "While the parties understandably wish to forestall efforts to undermine the proposed settlement," it does not warrant keeping relevant information from the public. *Id.* at 773. The public should be able to access information when trying to understand a case that would inform a factfinder whether a given fact pattern amounts to an antitrust violation. *Id.* at 768. "That third parties can use information they find in the public records of the judiciary is not, standing alone, a reason to keep that information secret." *Id.* And the mere "fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" does not compel sealing under the compelling reasons standard. *Kamakana,* 447 F.3d at 1179 (internal quotation omitted). In sum, the public's interest in understanding the sufficiency of the proposed remedies for the enterprise WLAN competition HPE's Juniper acquisition eliminated also outweighs any unspecified HPE trade secret information that bidders' criticisms and other criticisms of auctioned assets could reveal.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Parties' Motion because they have not shown compelling reasons that outweigh the public's strong interest in accessing the States' Sur-Reply information pertaining to whether entry of the proposed final judgment is in its interest.

- 5 -

Dated: March 31, 2026

| | |
|---|---|
| NICHOLAS W. BROWN<br>Attorney General of Washington | ROB BONTA<br>Attorney General of California |
| */s/ Amy N. L. Hanson*[1]<br>AMY N.L. HANSON *(Admitted Pro Hac Vice)*<br>Senior Managing Assistant Attorney General<br>Antitrust Division<br>JONATHAN A. MARK *(Admitted Pro Hac Vice)*<br>Antitrust Division Chief<br>Washington State Office of the Attorney General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>Email: amy.hanson@atg.wa.gov<br>Email: jonathan.mark@atg.wa.gov<br>Tel: 206-464-5419 (Hanson)<br>Tel: 206-389-3806 (Mark) | */s/ Brian D. Wang*<br>PAULA L. BLIZZARD, Senior Assistant Attorney General (SBN 207920)<br>MICHAEL W. JORGENSON, Supervising Deputy Attorney General (SBN 201145)<br>BRIAN D. WANG, Deputy Attorney General (SBN 284490)<br>Office of the Attorney General<br>California Department of Justice<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, California 94102<br>(415) 510-4400<br>Brian.Wang@doj.ca.gov |
| *Attorneys for State of Washington* | *Attorneys for the State of California* |
| PHILIP J. WEISER<br>Attorney General | WILLIAM TONG<br>ATTORNEY GENERAL |
| */s/ Arthur Biller*<br>ARTHUR BILLER *(Admitted Pro Hac Vice)*<br>Senior Assistant Attorney General<br>BRYN A. WILLIAMS<br>First Assistant Attorney General (SBN 301699)<br>JONATHAN B. SALLET *(Admitted Pro Hac Vice)*<br>Special Assistant Attorney General<br>ROBIN ALEXANDER *(Admitted Pro Hac Vice)*<br>Assistant Attorney General<br>1300 Broadway, 10th Floor<br>Denver, CO 80203<br>Telephone: (720)508-6000<br>Email: Arthur.Biller@coag.gov<br>        Bryn.Williams@coag.gov<br>        Jon.Sallet@coag.gov<br>        Robin.Alexander@coag.gov | */s/ Nicole Demers*<br>Nicole Demers (*pro hac vice application forthcoming*)<br>Deputy Associate Attorney General<br>Antitrust Section<br>Connecticut Office of the Attorney General<br>165 Capitol Ave.<br>Hartford, CT 06106<br>Tel.: (860) 808-5030<br>nicole.demers@ct.gov |
| *Attorneys for the State of Colorado* | *Attorneys for the State of Connecticut* |

---

[1] Pursuant to L.R. 5-1(i)(3), the filer attests that each other signatory has concurred in the filing of this document and has authorized this filing.

Intervenor States' Opposition to Administrative Motion to File Under Seal Certain Materials from Intervenors' Sur-Reply in Opposition to Motion for Entry of Final Judgment – Case No. 5:25-cv-00951-PCP

BRIAN SCHWALB
Attorney General of the District of Columbia

/s/ Coty Montag
Coty Montag (SBN 255703)
Deputy Attorney General, Public Advocacy
Division
Office of the Attorney General for the District
of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 417-5402
Coty.Montag@dc.gov

*Attorneys for the District of Columbia*

KWAME RAOUL
Attorney General of Illinois

/s/ Paul J. Harper
ELIZABETH L. MAXEINER *(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
PAUL J. HARPER *(Admitted Pro Hac Vice)*
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street, 35th Floor
Chicago, Illinois 60603
773-590-7935 | elizabeth.maxeiner@ilag.gov
773-590-6837 | paul.harper@ilag.gov

*Attorneys for State of Illinois*

KEITH ELLISON
Attorney General

/s/ Jon M. Woodruff
ELIZABETH ODETTE *(Admitted Pro Hac Vice)*
Manager, Assistant Attorney General
Antitrust Division
JON M. WOODRUFF *(Admitted Pro Hac Vice)*
Assistant Attorney General
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 300-7425
elizabeth.odette@ag.state.mn.us
jon.woodruff@ag.state.mn.us

*Attorneys for State of Minnesota*

ANNE E. LOPEZ
Attorney General

/s/ Rodney I. Kimura
RODNEY I. KIMURA *(Admitted Pro Hac Vice)*
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
Telephone:  (808) 586-1180
Email:  Rodney.i.kimura@hawaii.gov

*Attorneys for State of Hawaii*

COMMONWEALTH OF
MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

/s/ Anthony W. Mariano
Anthony W. Mariano *(Admitted Pro Hac Vice)*
Chief, Antitrust Division
Office of the Massachusetts Attorney
General
One Ashburton Place, 20th Floor
Boston, MA 02108
(781) 835-7990
Anthony.Mariano@mass.gov

*Attorneys for Commonwealth of Massachusetts*

LETITIA JAMES
Attorney General of the State of New York
CHRISTOPHER D'ANGELO
Chief Deputy Attorney General
Economic Justice Division

/s/ Elinor Hoffmann
ELINOR R. HOFFMANN *(Admitted Pro Hac Vice)*
Chief, Antitrust Bureau
AMY McFARLANE *(Admitted Pro Hac Vice)*
Deputy Bureau Chief, Antitrust Bureau
MICHAEL SCHWARTZ *(Admitted Pro Hac Vice)*
Senior Enforcement Counsel, Antitrust
Bureau
New York State Office of the Attorney
General

- 7 -

28 Liberty Street
New York, NY 10005
Phone: (212) 416-8269
Email: Elinor.Hoffmann@ag.ny.gov

*Attorneys for State of New York*

JEFF JACKSON
Attorney General of North Carolina

/s/ *Kunal J. Choksi*
Kunal Janak Choksi *(Admitted Pro Hac Vice)*
Senior Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6032
E-Mail: kchoksi@ncdoj.gov

*Attorneys for State of North Carolina*

Dan Rayfield
Attorney General of Oregon

/s/ *Rachel K. Sowray*
Rachel K. Sowray *(Admitted Pro Hac Vice)*
Senior Assistant Attorney General
Timothy D. Smith *(Admitted Pro Hac Vice)*
Attorney-in-Charge
Economic Justice Section
Oregon Department of Justice
100 SW Market St, Portland OR  97201
503.689.0249 |
Rachel.Sowray@doj.oregon.gov
503.798.3297 | tim.smith@doj.oregon.gov

*Attorneys for State of Oregon*

JOSHUA L. KAUL
ATTORNEY GENERAL

/s/Caitlin M. Madden
Caitlin M. Madden *(Admitted Pro Hac Vice)*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311
caitlin.madden@wisdoj.gov

*Attorneys for State of Wisconsin*

- 8 -